IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIR LLC,

    Plaintiffs,

  v.

INTUITIVE SURGICAL, INC.,

    Defendant.

Civil Case No. 5:19-cv-55-MCR-MJF

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Pursuant to this Court's order (ECF No. 21), Intuitive files this reply memorandum of law in support of its Motion to Dismiss the FAC.[1]

**PRELIMINARY STATEMENT**

Plaintiffs' ability to plead antitrust injury—and, therefore, the viability of their claims—hinges on their theory that Intuitive must provide Plaintiffs with access to its EndoWrist instrument usage counter and distributor's toolkit, which Plaintiffs claim are "essential" to their ability to compete. (Mem. at 11-12, 15-16.) Plaintiffs' theory fails given *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), and its progeny, which hold that a company's

---

[1] Intuitive employs the same terms defined in its moving brief (ECF No. 16, "Mem.").

unilateral refusal to deal with a competitor cannot violate the antitrust laws unless it terminates a course of voluntary dealing between the parties.  (*Id.* at 12-16.)

Plaintiffs do not dispute that they failed to plead any such course of dealing. Rather, they purport to invoke "two other existing exceptions" to the "proposition that there is no duty to aid competitors":  "the essential facilities doctrine and *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973)."  (ECF No. 18, Pls.' Opp. to MTD ("Opp.") at 7 (citation omitted).)

Plaintiffs' argument fails for multiple reasons.  As an initial matter, there is no distinction between the essential facilities doctrine and *Otter Tail*, which is considered "the foundation of the essential facilities doctrine."  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 543 (9th Cir. 1991); *see also Ala. Power Co. v. FCC*, 311 F.3d 1357, 1362 (11th Cir. 2002) (citing *Otter Tail* when describing "[t]he 'essential facilities' doctrine"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 761 F. Supp. 185, 191 (D. Mass. 1991) ("The leading essential facilities case in the monopoly area is *Otter Tail*."), *aff'd*, 36 F.3d 1147 (1st Cir. 1994).

Moreover, the essential facilities doctrine cannot salvage Plaintiffs' claims for three reasons.  **First**, in *Trinko*, the Supreme Court refused to recognize the essential facilities doctrine, and subsequent lower court decisions have rejected essential facilities claims, while questioning the viability of the doctrine.  Indeed,

*all* the post-*Trinko* cases that Plaintiffs cite *rejected essential facilities claims*. **Second**, *Trinko* held that a company cannot be liable under the antitrust laws for refusing to provide a product it does not otherwise sell, and Intuitive does not sell its EndoWrist instrument usage counter or distributor's toolkit. **Third**, the essential facilities doctrine never applied to proprietary information and technology—like the usage counter and distributor's toolkit.

## I. THE SUPREME COURT HAS NEVER RECOGNIZED THE ESSENTIAL FACILITIES DOCTRINE, AND ITS VIABILITY IS QUESTIONABLE

Plaintiffs wrongly argue that "*Trinko* recognized … the essential facilities doctrine." (ECF No. 20, Pls.' Opp. to Leave for Reply at 1.) To the contrary, the Supreme Court stated: "[w]e have ***never recognized*** such a doctrine." *Trinko*, 540 U.S. at 411 (emphasis added).

After *Trinko*, courts—including in this Circuit—have routinely rejected essential facilities claims and questioned the viability of the doctrine. *See, e.g.*, *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 763 F. Supp. 2d 1341, 1349 (S.D. Fla. 2011) (rejecting essential facilities claim while explaining that *Trinko* "appears to have limited the applicability of the duty to deal/essential facility doctrine, placing its contours in some doubt"), *aff'd*, 711 F.3d 1264 (11th Cir. 2013); *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, No. 14-cv-00804, 2015 WL 5693735, at *9 (N.D. Ill. Sept. 28, 2015) ("[T]he Court notes that the viability

3

of the essential facilities doctrine is in question."); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1083 (D. Colo. 2013) ("The viability of the 'essential facilities' theory of anticompetitive conduct has been questioned by both the Supreme Court and the Tenth Circuit."), *aff'd*, 841 F.3d 827 (10th Cir. 2016); *see also* IIIB Phillip E. Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* ¶ 772d3 (4th ed. 2015) ("One is hard-pressed to see any separate vitality remaining in the essential facility doctrine.").

Tellingly, ***all*** the post-*Trinko* decisions Plaintiffs cite (Opp. at 7-10, 30-32) ***rejected essential facilities claims***. *See Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1268 (11th Cir. 2015) ("We are … unpersuaded by [plaintiff]'s suggestion that the Supreme Court's decision in *Otter Tail* applies."); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004) (rejecting essential facilities claim); *Covad Commc'ns Co. v. BellSouth Corp.*, 374 F.3d 1044, 1050 (11th Cir. 2004) ("[Plaintiff's] allegations under the essential facilities doctrine … fail to survive *Trinko*.").[2]  Further, Intuitive is unaware of any post-*Trinko* decision where a plaintiff prevailed on an essential facilities theory.

---

[2] *See also RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 229 (E.D.N.Y. 2009) ("Plaintiff's … theory of monopolization based on the essential facilities doctrine fails as a matter of law."); *Olde Monmouth Stock Transfer Co. v. Depository Tr. & Clearing Corp.*, 485 F. Supp. 2d 387, 395-96 (S.D.N.Y. 2007) (dismissing essential facilities claim); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 323 F. Supp. 2d 559, 569-70 (S.D.N.Y. 2004) (same).

## II.  UNDER *TRINKO*, INTUITIVE CANNOT BE LIABLE FOR REFUSING TO PROVIDE PRODUCTS IT DOES NOT SELL

The *Trinko* Court distinguished *Otter Tail* and held that defendant could not be liable for refusing to deal with plaintiff because:

> in *Otter Tail* … , the defendant was already in the business of providing a service to certain customers … , and refused to provide the same service to certain other customers.  In the present case, by contrast, the services allegedly withheld are not otherwise marketed or available to the public.

*Trinko*, 540 U.S. at 410.  Thus, at minimum, "the Court limited liability for refusal to deal to those situations where the defendant was already selling some particular product or service to others but refused to sell that same product or service to the plaintiff."  Areeda, *supra*, ¶ 772d3; *see also Levine v. BellSouth Corp.*, 302 F. Supp. 2d 1358, 1371 (S.D. Fla. 2004) (dismissing refusal to deal claim because "as in *Trinko*, [p]laintiff is demanding a product [defendant] has never offered"); *cf. Cavalier Telephone, LLC v. Verizon Va., Inc.*, 330 F.3d 176, 187 (4th Cir. 2003) ("[U]nder the essential facilities doctrine applied in *Otter Tail*, a legal monopoly cannot be forced to get into a business it was not traditionally in …." (citations omitted)).

Here, Plaintiffs do not—and cannot—allege that Intuitive sells its EndoWrist instrument usage counter or distributor's toolkit.  Accordingly, their essential facilities theory fails for this reason alone.

5

## III. THE ESSENTIAL FACILITIES DOCTRINE NEVER APPLIED TO PROPRIETARY INFORMATION OR TECHNOLOGY

Even pre-*Trinko*, courts consistently held that the essential facilities doctrine does not apply to proprietary information or technology. As the Middle District of Florida concluded in rejecting an essential facilities claim, "[t]his Court can find no case to indicate that access to proprietary information, not in the public domain, is an essential facility." *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d 1269, 1285 (M.D. Fla. 2002), *aff'd*, 364 F.3d 1288 (11th Cir. 2004). "[A] court's role is not to force access to proprietary information in the name of competition, as that would reduce incentive to innovate and ultimately harm consumers." *Id.*; *see also Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1357-58 (Fed. Cir. 1999) ("The notion that withholding of technical information … violates the Sherman Act, based on essential facility jurisprudence, is an unwarranted extension of precedent."); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 743, 744-45 (D. Md. 2003) (defendant's argument that "the essential facilities doctrine has never been and should not be applied in a case such as this one involving technological innovations or information" was "persuasive" because "to require one company to provide its intellectual property to a competitor would significantly chill innovation" (citation omitted)); *Data Gen.*, 761 F. Supp. at 192 ("The case law has consistently affirmed that a manufacturer is under no obligation to pre-disclose or disclose its knowledge about its products so that competition

6

may arise in the related peripheral hardware, software, and repair services markets.").

Here, Intuitive's EndoWrist instrument usage counter and distributor's toolkit constitute proprietary information and technology. (Mem. at 7-8.) The usage counter is "a programmed memory chip inside each EndoWrist instrument [that] prevent[s] the instrument from being used for more than a certain number of procedures" (FAC ¶ 73), and Plaintiffs concede they have "been unable so far to develop or obtain technology to reset the usage count during repair service of EndoWrist instruments for the da Vinci X and Xi robot systems." (*Id.* ¶ 74.) Similarly, Plaintiffs allege the distributor's toolkit includes "all necessary documentation, software, and passwords to service da Vinci robot systems" (*id.* ¶ 55) and "cannot be practically duplicated." (Opp. at 31.)

Thus, because Intuitive's EndoWrist instrument usage counter and distributor's toolkit constitute propriety information and technology, they cannot be subject to the essential facilities doctrine.

## CONCLUSION

Accordingly, Intuitive respectfully requests that the Court reject Plaintiffs' arguments regarding the essential facilities doctrine and dismiss the FAC with prejudice.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Intuitive certifies this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because it contains 1,499 words, excluding the parts exempted by said Local Rule.

Dated:  July 10, 2019

Respectfully submitted,

/s/ David L. McGee
DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

ALLEN RUBY (*Pro Hac Vice*)
ABRAHAM M. ANDRADE III (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4500
allen.ruby@skadden.com
abraham.andrade@skadden.com

KAREN HOFFMAN LENT (*Pro Hac Vice*)
MICHAEL H. MENITOVE (*Pro Hac Vice Admission to be applied for*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

Counsel for Defendant
Intuitive Surgical, Inc.

## **CERTIFICATE OF SERVICE**

I CERTIFY that a copy hereof has been filed via CM/ECF for electronic distribution to the following counsel of record on July 10, 2019:

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, N.E., Suite 1050
Atlanta, GA 30309
Telephone: (404) 872-3800
jeff@berhold.com

William G. Harrison, Jr.
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401
Telephone: (850) 769-1414
wharrison@harrisonrivard.com

/s/ David L. McGee
DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com