## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIR LLC,

                    Plaintiffs,

    v.

INTUITIVE SURGICAL, INC.,

                    Defendant.

INTUITIVE SURGICAL, INC.,

                    Counterclaimant,

    v.

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIR LLC,

                    Counterclaim Defendants.

Civil Case No. 5:19-cv-55-TKW-MJF

## DEFENDANT'S ANSWER,
## AFFIRMATIVE DEFENSE AND COUNTERCLAIMS

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSE

Defendant Intuitive Surgical, Inc. ("Intuitive") hereby sets forth the following Answer and Affirmative Defense to Plaintiffs' First Amended Complaint (the "Complaint").  Except as otherwise expressly set forth below, Intuitive denies knowledge or information sufficient to form a belief as to the truth or falsity of

each and every allegation contained in the Complaint.  Any allegation, averment, contention or statement in the Complaint not specifically and unequivocally admitted is denied, including any statement in a heading.  Intuitive preserves all objections regarding the admissibility of any allegations or statements made in the Complaint or in this Answer, Affirmative Defense and Counterclaims.  Intuitive responds to each of the paragraphs of the Complaint as follows:

## RESPONSE TO "PARTIES, JURISDICTION, AND VENUE"

1.     Intuitive denies the allegations in paragraph 1 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

2.     Intuitive admits that it is a Delaware corporation with its executive offices at 1020 Kifer Road, Sunnyvale, California, but otherwise denies the allegations in the first sentence of paragraph 2.  Intuitive admits that it provides surgical systems along with related parts, instruments, accessories and services, to hospitals and surgical centers in Bay County and elsewhere, but otherwise denies the allegations in the second sentence of paragraph 2.  Intuitive admits the allegations in the third sentence of paragraph 2.

3.     Paragraph 3 states a legal conclusion to which no responsive pleading is required.

4.     Paragraph 4 states legal conclusions to which no responsive pleading is required.

5.     Paragraph 5 states legal conclusions to which no responsive pleading is required.

## RESPONSE TO "ROBOTIC SURGERY"

6.     Intuitive denies the allegations in paragraph 6 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

7.     Intuitive admits that one form of robotic-assisted surgery uses several incisions for the insertion of small tools, including a magnified, high-definition 3D video camera and that the surgeon may sit at the computer and use hand controls to manipulate the instruments, which are attached to the system by robotic arms with joints.  Intuitive otherwise denies the allegations in paragraph 7.

8.     Intuitive denies the allegations in paragraph 8 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

## RESPONSE TO "DA VINCI ROBOT"

9.     Intuitive admits that it sells da Vinci Surgical Systems and that the da Vinci Surgical System was cleared by the FDA for general laparoscopic surgery in 2000.  Intuitive otherwise denies the allegations in paragraph 9.

10.     Intuitive admits that it sells instruments and accessories for da Vinci Surgical Systems and that it sells more than eighty different multi-port da Vinci instruments that have been cleared by the FDA and foreign regulatory authorities. Intuitive denies the allegations in the third sentence of paragraph 10 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive otherwise denies the allegations in paragraph 10.

11.     Intuitive admits that da Vinci Surgical Systems are designed to enable surgeons to perform a wide range of surgical procedures, within gynecologic, urologic, general surgery, cardiothoracic and head and neck specialties and that certain da Vinci Surgical Systems are indicated for adult and pediatric use. Intuitive otherwise denies the allegations in paragraph 11.

12.     Intuitive admits that it reported $1,127.1 million in revenue for sales and leases of da Vinci Surgical Systems in calendar year 2018, but otherwise denies the allegations in the first and second sentences of paragraph 12.  Intuitive denies the allegations in the third sentence of paragraph 12 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

13.     Intuitive admits the allegations in paragraph 13.

14.     Intuitive admits that it sells da Vinci Surgical Systems through direct sales organizations in the United States, Japan, South Korea, India, Taiwan and

Europe (excluding Spain, Portugal, Italy, Greece and most Eastern European countries) and that it sells da Vinci Surgical Systems through distributors in other countries.  Intuitive otherwise denies the allegations in paragraph 14.

15.     Intuitive admits that in its latest annual report, Intuitive estimated that surgeons using its technology completed approximately 1,037,000 surgical procedures of various types in hospitals throughout the world during the year ended December 31, 2018.  Intuitive otherwise denies the allegations in paragraph 15.

## RESPONSE TO "SURGICAL ROBOT MARKET"

16.     Paragraph 16 states legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in paragraph 16.

17.     The first and second sentences of paragraph 17 state legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first and second sentences of paragraph 17.  Intuitive denies the allegations in the third and fourth sentences of paragraph 17 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

18.     Intuitive denies the allegations in paragraph 18 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

19.     The first sentence of paragraph 19 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first sentence of paragraph 19.  Intuitive denies the allegations in the second, third and fourth sentences of paragraph 19 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

20.     Intuitive denies the allegations in paragraph 20 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

21.     Intuitive denies the allegations in paragraph 21 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

22.     The first and second sentences of paragraph 22 state legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first and second sentences of paragraph 22.  Intuitive denies the allegations in the third and fourth sentences of

paragraph 22 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

23.     The first and third sentences of paragraph 23 state legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first and third sentences of paragraph 23. Intuitive admits that its surgical systems have been cleared pursuant to a rigorous FDA process, but otherwise denies the allegations in the second, fifth and sixth sentences of paragraph 23 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive admits that as of December 31, 2018, it held ownership or exclusive field-of-use licenses for more than 3,000 U.S. and foreign patents, but otherwise denies the allegations in the fourth and seventh sentences of paragraph 23.

24.     Intuitive denies the allegations in paragraph 24 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

25.     Intuitive denies the allegations in the first sentence of paragraph 25. Intuitive denies the allegations in the second sentence of paragraph 25 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

26.     Intuitive denies the allegations in paragraph 26 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

27.     Intuitive denies the allegations in paragraph 27 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

28.     Intuitive denies the allegations in the first sentence of paragraph 28. Intuitive denies the allegations in the second and third sentences of paragraph 28 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

29.     The first sentence of paragraph 29 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first sentence of paragraph 29.  Intuitive denies the allegations in the second, fourth and fifth sentences of paragraph 29 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive admits that it shipped 926 da Vinci Surgical Systems in the year ended December 31, 2018 and that 581 of these da Vinci Surgical Systems were shipped in the United States, but otherwise denies the allegations in the third sentence of paragraph 29.

30.     The first sentence of paragraph 30 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first sentence of paragraph 30.  Intuitive denies the allegations in the second sentence of paragraph 30.

31.     The first sentence of paragraph 31 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first sentence of paragraph 31.  Intuitive admits that for calendar year 2018, its product gross profit represented 70.7% of product revenue, but otherwise denies the allegations in the second and third sentences of paragraph 31.  Intuitive denies the allegations in the fourth and fifth sentences of paragraph 31 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

32.     Intuitive denies the allegations in the first sentence of paragraph 32. Intuitive denies the allegations in the second and third sentences of paragraph 32 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**RESPONSE TO "AFTERMARKETS:**
**PARTS, SERVICE, AND INSTRUMENTS"**

33.     Paragraph 33 states legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in paragraph 33.

34.     The first, second, third and fifth sentences of paragraph 34 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first, second, third and fifth sentences of paragraph 34.  Intuitive admits that it sells parts for da Vinci Surgical Systems, but otherwise denies the allegations in the fourth sentence of paragraph 34.

35.     The first and sixth sentences of paragraph 35 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first and sixth sentences of paragraph 35. Intuitive denies the allegations in the second sentence of paragraph 35 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive admits that servicing da Vinci Surgical Systems requires specialized training and experience and that Intuitive provides service on da Vinci Surgical Systems to customers inside and outside the United States. Intuitive otherwise denies the allegations in paragraph 35.

36.     The first, second and sixth sentences of paragraph 36 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first, second and sixth sentences of paragraph 36.  Intuitive admits that it designs and manufactures EndoWrist instruments for da Vinci Surgical Systems and that Intuitive sells EndoWrist

instruments to customers inside and outside the United States.  Intuitive otherwise denies the allegations in paragraph 36.

37.     Paragraph 37 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 37.

38.     The allegation in the first sentence of paragraph 38 that "Intuitive was the only manufacturer in the surgical robot market" states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies that allegation in the first sentence of paragraph 38.  Intuitive admits that it has installed base of more than 3,000 da Vinci Surgical Systems, but denies the remaining allegations in the first sentence of paragraph 38.  Intuitive denies the allegations in the second sentence of paragraph 38 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive denies the allegations in the third sentence of paragraph 38.

39.     Intuitive denies the allegations in paragraph 39 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

40.     Intuitive denies the allegations in the first sentence of paragraph 40 and the part of the second sentence stating that "[t]he customer cannot predict the

timing for replacing instruments" because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive denies the remaining allegations in paragraph 40.

41.     Intuitive denies the allegations in the first, second and third sentences of paragraph 41 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  Intuitive admits that it manufactures parts for da Vinci Surgical Systems, but otherwise denies the allegations in the fourth, fifth, sixth, seventh and eighth sentences of paragraph 41.

### RESPONSE TO "DA VINCI ROBOT PARTS AFTERMARKET"

42.     Paragraph 42 states legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in paragraph 42.

43.     The first sentence of paragraph 43 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first sentence of paragraph 43.  Intuitive denies the allegations in the second sentence of paragraph 43 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein. Intuitive denies the allegations in the third and fourth sentences of paragraph 43.

44.     Intuitive denies the allegations in the first and third sentences of paragraph 44 because it is without knowledge or information sufficient to form a

belief as to the truth of the allegations therein.  Intuitive admits that for calendar year 2018, its product gross profit represented 70.7% of product revenue, but otherwise denies the allegations in the second sentence of paragraph 44.

## RESPONSE TO "DA VINCI ROBOT SERVICE AFTERMARKET"

45.     Paragraph 45 states legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in paragraph 45.

46.     Intuitive admits that for calendar year 2018, it reported $635.1 million in revenue and $421.2 million in gross profit for services and that it had an operating margin of 66.3% in services.  Intuitive otherwise denies the allegations in paragraph 46.

47.     Intuitive denies the allegations in paragraph 47 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

48.     The first sentence of paragraph 48 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 48.  Intuitive denies the allegations in the second, third, fourth and fifth sentences of paragraph 48 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

49.     Paragraph 49 states legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in paragraph 49.

50.     Intuitive admits that more than 60% (3,070) of its installed base of da Vinci Surgical Systems has been shipped within the last five years.  Intuitive otherwise denies the allegations in paragraph 50.

51.     Intuitive admits that it has sold, rather than leased, the majority of da Vinci Surgical Systems shipped to its customers.  Intuitive otherwise denies the allegations in paragraph 51.

52.     Intuitive admits that as of December 31, 2018, a total of 350 da Vinci Surgical Systems, which is less than 10% of Intuitive's installed base of da Vinci Surgical Systems, had been installed under a lease agreement.  Intuitive admits that a customer leasing a da Vinci Surgical System is responsible for insuring the surgical system and for paying the costs of repairs on the return of the surgical system at the termination of the lease.  Intuitive otherwise denies the allegations in paragraph 52.

53.     Intuitive admits that it has reported that "substantially all" of its customers have sourced services on their da Vinci Surgical Systems from Intuitive through service contract commitments or time and materials contracts.  Intuitive otherwise denies the allegations in paragraph 53.

54.     Intuitive admits that it sells parts for da Vinci Surgical Systems, but otherwise denies the allegations in paragraph 54.

55.     The allegations in paragraph 55 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.

56.     The allegations in paragraph 56 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.

57.     The allegations in paragraph 57 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.

58.     The allegations in paragraph 58 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.

59.     The allegations in paragraph 59 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.

60.     The first sentence of paragraph 60 states a legal conclusion to which no responsive pleading is necessary.  To the extent a response is required, Intuitive denies the allegations in the first sentence of paragraph 60.  Intuitive denies the allegations in the second and third sentences of paragraph 60 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

61.     The first sentence of paragraph 61 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive

denies the allegations in the first sentence of paragraph 61.  Intuitive denies the allegations in the second sentence of paragraph 61.

62.     Intuitive denies the allegations in paragraph 62 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

63.     Intuitive denies the allegations in the first sentence of paragraph 63. Intuitive admits the allegations in the second sentence of paragraph 63.

64.     The first sentence of paragraph 64 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first sentence of paragraph 64.  Intuitive denies the allegations in the second sentence of paragraph 64 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

65.     The first and second sentences of paragraph 65 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first and second sentences of paragraph 65. Intuitive denies the allegations in the third sentence of paragraph 65 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

## RESPONSE TO "ENDOWRIST INSTRUMENT AFTERMARKET"

66.     The first and third sentences of paragraph 66 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first and third sentences of paragraph 66. Intuitive denies the allegations in the second sentence of paragraph 66.

67.     Intuitive admits the allegations in the first sentence of paragraph 67. Intuitive admits that for calendar year 2018, its product gross profit represented 70.7% of product revenue, but otherwise denies the allegations in the second sentence of paragraph 67.

68.     The first sentence of paragraph 68 states a legal conclusion to which no response is required.  To the extent a response is required, Intuitive denies the allegations in the first sentence of paragraph 68.  Intuitive denies the remaining allegations in paragraph 68 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

69.     Intuitive denies the allegations in the first, second and third sentences of paragraph 69 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.  The fourth sentence of paragraph 69 states a legal conclusion to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the fourth sentence of paragraph 69.

70.     The first, fifth and sixth sentences of paragraph 70 state legal conclusions to which no responsive pleading is required.  To the extent that a response is required, Intuitive denies the allegations in the first, fifth and sixth sentences of paragraph 70.  Intuitive denies the allegations in the second sentence of paragraph 70.  Intuitive admits that as of December 31, 2018, it held ownership or exclusive field-of-use licenses for more than 3,000 U.S. and foreign patents, but otherwise denies the allegations in the third sentence of paragraph 70.  Intuitive admits that its surgical systems, instruments and accessories have been cleared pursuant to a rigorous FDA process, but otherwise denies the allegations in the fourth sentence of paragraph 70 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

71.     Paragraph 71 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 71.

72.     Intuitive denies the allegations in paragraph 72.

73.     Intuitive denies the allegations in the first and second sentences of paragraph 73.  The allegations in the third, fourth and fifth sentences of paragraph 73 relate exclusively to a theory that has been dismissed and, therefore, no response to these allegations is required.  To the extent a response is required,

Intuitive denies the allegations in the third, fourth and fifth sentences of paragraph 73.

74.    Intuitive denies the allegations in paragraph 74 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

75.    Intuitive denies the allegations in paragraph 75 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

76.    Intuitive denies the allegations in paragraph 76.

77.    Intuitive denies the allegations in the first sentence of paragraph 77. Intuitive admits that its contracts with customers and its instrument catalogs do not refer to regulatory requirements imposing usage limits for EndoWrist instruments, but otherwise denies the allegations in the second sentence of paragraph 77.

78.    Intuitive denies the allegations in the first and second sentences of paragraph 78.  Intuitive denies the allegations in the third sentence of paragraph 78 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

79.    Intuitive denies the allegations in paragraph 79.

80.    Intuitive admits that it has set higher limits regarding the number of procedures for which certain EndoWrist instruments can be used when they are

used for training than when they are used for clinical purposes.  Intuitive denies the

remaining allegations in paragraph 80.

81.    Intuitive denies the allegations in paragraph 81 because it is without

knowledge or information sufficient to form a belief as to the truth of the

allegations therein.

82.    Intuitive denies the allegations in paragraph 82.

83.    Intuitive denies the allegations in paragraph 83.

84.    Intuitive denies the allegations in paragraph 84.

85.    Intuitive denies the allegations in paragraph 85.

86.    The first sentence of paragraph 86 states legal conclusions to which

no responsive pleading is required.  To the extent a response is required, Intuitive

denies the allegations in the first sentence of paragraph 86.  Intuitive denies the

allegations in the second sentence of paragraph 86.

87.    Intuitive denies the allegations in the first sentence of paragraph 87.

Intuitive admits that on or about February 12, 2019, it sent a letter to Restore

Robotics LLC demanding that Restore Robotics LLC cease and desist from,

among other things, "marketing and offering a servicing process in the course of

which the use counter of Endo Wrist® instruments' memory device is manipulated

and/or replaced to permit more than ten uses" or "contacting Intuitive's customers

20

to offer services related to Intuitive's products."  Intuitive otherwise denies the allegations in the second sentence of paragraph 87.

88.     The first sentence of paragraph 88 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first sentence of paragraph 88.  Intuitive denies the allegations in the second sentence of paragraph 88 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

89.     The first and second sentences of paragraph 89 state legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in the first and second sentences of paragraph 89.  Intuitive denies the allegations in the third sentence of paragraph 89 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

### RESPONSE TO "COUNT ONE – MONOPOLIZATION (DA VINCI ROBOT SERVICE)"

90.     To the extent Plaintiffs re-allege paragraphs 1-89, Intuitive reasserts its answers to those paragraphs.

91.     Paragraph 91 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 91.

92.     Paragraph 92 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 92.

**RESPONSE TO "COUNT TWO –
ATTEMPTED MONOPOLIZATION  (DA VINCI ROBOT SERVICE)"**

93.     To the extent Plaintiffs re-allege paragraphs 1-92, Intuitive reasserts its answers to those paragraphs.

94.     Paragraph 94 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 94.

95.     Paragraph 95 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 95.

**RESPONSE TO "COUNT THREE –
TYING (DA VINCI ROBOT SERVICE)"**

96.     To the extent Plaintiffs re-allege paragraphs 1-95, Intuitive reasserts its answers to those paragraphs.

97.     Paragraph 97 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 97.

98.    Paragraph 98 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 98.

## RESPONSE TO "COUNT FOUR –
## EXCLUSIVE DEALING (DA VINCI ROBOT SERVICE)"

99.    To the extent Plaintiffs re-allege paragraphs 1-98, Intuitive reasserts its answers to those paragraphs.

100.   Paragraph 100 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 100.

101.   Paragraph 101 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 101.

## RESPONSE TO "COUNT FIVE –
## MONOPOLIZATION (ENDOWRIST INSTRUMENT AFTERMARKET)"

102.   To the extent Plaintiffs re-allege paragraphs 1-101, Intuitive reasserts its answers to those paragraphs.

103.   Paragraph 103 states a legal conclusion to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 103.

104.   Paragraph 104 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 104.

## RESPONSE TO "COUNT SIX – ATTEMPTED MONOPOLIZATION (ENDOWRIST INSTRUMENT AFTERMARKET)"

105.   To the extent Plaintiffs re-allege paragraphs 1-104, Intuitive reasserts its answers to those paragraphs.

106.   Paragraph 106 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 106.

107.   Paragraph 107 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 107.

## RESPONSE TO "COUNT SEVEN – TYING (ENDOWRIST INSTRUMENT AFTERMARKET)"

108.   To the extent Plaintiffs re-allege paragraphs 1-107, Intuitive reasserts its answers to those paragraphs.

109.   Paragraph 109 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 109.

110.    Paragraph 110 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 110.

## RESPONSE TO "COUNT EIGHT – EXCLUSIVE DEALING (ENDOWRIST INSTRUMENT AFTERMARKET)"

111.    To the extent Plaintiffs re-allege paragraphs 1-110, Intuitive reasserts its answers to those paragraphs.

112.    Paragraph 112 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 112.

113.    Paragraph 113 states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Intuitive denies the allegations in paragraph 113.

## RESPONSE TO "PRAYER FOR RELIEF"

Responding to the unnumbered paragraph and each of its subparts under the heading "PRAYER FOR RELIEF," Intuitive denies that Plaintiffs are entitled to any damages, costs of suit, attorney's fees, injunctive relief or any other form of relief.

## RESPONSE TO "DEMAND FOR JURY"

Intuitive admits that Plaintiffs demand trial of their claims by jury to the extent authorized by law.

## PREAMBLE TO AFFIRMATIVE DEFENSES

Intuitive reserves the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial and thus reserves the right to amend its Answer and Counterclaim.  By asserting the following affirmative defense, Intuitive does not allege or admit it has the burden of proof or the burden of persuasion with respect to any matter:

## FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiffs have acted contrary to applicable FDA regulations and/or engaged in other misconduct, including tortious interference with Intuitive's contracts and business relationships.

## COUNTERCLAIMS

Intuitive, by its undersigned counsel, counterclaims against Restore Robotics LLC and Restore Robotics Repair LLC (collectively, "Restore"), and alleges, upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Unable to compete in the marketplace on its own accord, Restore has relied on a tangled web of illegal conduct and deception to accomplish its business purposes.  Indeed, through false and misleading statements, Restore has sought to

convince current and potential Intuitive customers that it is both authorized and qualified to perform service on Intuitive's flagship line of da Vinci Surgical Systems, as well as to reprogram, remanufacture and modify the surgical systems' associated instruments and accessories.  The truth reveals no such authorization or qualifications and, once duped into entrusting Restore for these services and product offerings, Intuitive customers and their patients are placed directly in harm's way.  Having failed in its initial efforts to get Restore voluntarily to cease its illicit campaign, Intuitive is now left with no choice but to seek relief in Court.

2.     Intuitive is a pioneer in surgical robotics.  After spending over two decades and hundreds of millions of dollars in research and development, Intuitive designs, manufactures and markets the world renowned da Vinci Surgical System and associated instruments and accessories, which provide the benefits of minimally invasive surgery for patients.  With patient safety as the paramount concern, these surgical systems are regulated by the United States Food and Drug Administration (the "FDA").  As a manufacturer in the space, Intuitive goes to great lengths to ensure that service and repairs on these highly technical devices are performed by qualified technicians to exacting standards.  As such, Intuitive contracts with its customers to prohibit unauthorized personnel from modifying its systems and instruments, and voids the warranties on its systems and instruments if customers use non-Intuitive-approved technicians to perform maintenance or other

modifications on da Vinci Surgical Systems and instruments.  (*See infra* at

Paragraphs 40-42 for details about Intuitive's Sales, License and Service

Agreements.)

3.      Restore has built up an apparently sizable business by falsely

representing its qualifications to service, modify, reprogram and even

remanufacture da Vinci surgical devices—all under the false premise of being able

to save Intuitive customers large sums of money, allegedly without compromising

the quality or reliability of the devices, as manufactured by Intuitive.  Those claims

are false, as Restore knows full well that it is neither authorized by Intuitive to

perform any service or repair work on its devices (so such work could carry

adverse contract and warranty ramifications for unsuspecting Intuitive customers).

Nor has Restore received the required clearances from the FDA to modify or

remanufacture any da Vinci instruments or accessories.  Restore's claims of cost

savings to Intuitive customers are similarly inaccurate, as service and

modifications performed by Restore have at times gone awry (which has resulted

in the need for additional servicing and compromised system performance), and

also resulted in factory warranties being voided (as set forth in Intuitive's Sales,

License, and Service Agreements)—with a cost factor to Intuitive customers that

Restore plainly overlooks.

4.     In some instances, Restore's conduct has even crossed the line of civil wrongdoing into the realm of criminal misconduct.  For example, when Restore technicians could not deliver on false promises to an Intuitive customer that they could override da Vinci Surgical System error messages for preventive maintenance (which appear on the da Vinci screen as "PM Due"), the technicians resorted, at Restore's direction, to desperate measures.  Namely, a Restore executive contacted a former Intuitive employee via telephone to elicit his assistance to "hack into" Intuitive's systems and remove the error message.  This blatantly illegal act demonstrates the lengths to which Restore will go to secure business from Intuitive customers under false pretenses.

5.     Without judicial intervention, Restore's campaign to deceive and mislead Intuitive's customer base, in violation of state and federal law, will proceed unfettered.

## PARTIES

6.     Intuitive is a Delaware corporation with its principal place of business at 1266 Kifer Road, Sunnyvale, California.  Intuitive manufactures and sells surgical systems, along with related instruments and accessories, and also offers maintenance services to hospitals and surgical centers world-wide.

7.     Restore Robotics LLC and Restore Robotics Repair LLC are Florida limited liability companies with their principal address at 7506 Holley Circle,

Panama City Beach, Florida.  Both Restore entities offer services on surgical systems and related instruments and accessories.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Intuitive's federal claims under 28 U.S.C. § 1331 and § 1332.  The federal claims arise under the Lanham Act, 15 U.S.C. § 1125.  This Court has supplemental subject matter jurisdiction over Intuitive's state-law claims under 28 U.S.C. § 1367(a).

9.    This Court has personal jurisdiction over Restore, and venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c), as Restore has appeared in this action and has filed claims against Intuitive in this District.

## GENERAL ALLEGATIONS

**I.    Intuitive Is A Pioneer In Surgical Robotics.**

10.    Intuitive designs, manufactures and markets da Vinci Surgical Systems and related instruments and accessories, which have become widely known as an advanced generation of surgery.  Da Vinci surgery combines the benefits of minimally invasive surgery for patients with the ease of use, precision and dexterity of open surgery for surgeons.  A da Vinci Surgical System consists of a surgeon's console, a patient-side cart and a high-performance vision system.  Da Vinci technology translates a surgeon's natural hand movements, which are

performed on instrument controls at the console, into corresponding micro-movements of instruments positioned inside the patient through small incisions or ports.  In short, the da Vinci Surgical System is designed to provide its operating surgeons with intuitive control, range of motion, fine tissue manipulation capability and three-dimensional, high-definition vision while simultaneously allowing surgeons to work through small ports.

11.    Intuitive has commercialized the following four generational platforms of da Vinci Surgical Systems:  (i) first generation da Vinci standard Surgical System; (ii) second generation da Vinci S Surgical System; (iii) third generation da Vinci Si Surgical System; and (iv) fourth generation da Vinci X, da Vinci Xi and da Vinci SP Surgical Systems.

12.    In addition to the primary surgical platforms, Intuitive manufactures a variety of compatible instruments and accessories customized for various surgical procedures, most of which incorporate "EndoWrist" technology with wristed joints for natural dexterity.  Da Vinci instruments include forceps, scissors, electrocautery tools and scalpels, which may be selected and used during surgery.

13.    To ensure that surgical instruments meet exacting performance specifications, most are designed to be reused for a defined number of procedures. A programmed memory chip inside each such instrument performs several functions that help determine how the da Vinci system and instruments work

together.  Among other things, the chip will not allow many instruments to be used for more than a prescribed number of procedures.

14.     Intuitive focuses its research and development efforts on innovation and improvement for products and services that align with its core vision: minimally invasive care is life-enhancing care.  In particular, Intuitive employs engineering, research and development staff tasked with improving existing technologies and developing future innovation that will improve surgical outcomes in the future.  Intuitive expends substantial sums of money on research and development and on preserving and protecting the quality of its products.

15.     Intuitive has also established strategic alliances with other medical and technology companies to complement its research and development efforts. To date, these alliances have taken several forms, including cooperation in the areas of product development, training, procedure development, marketing and distribution in certain markets to authorized distributors.

## II.     Intuitive Strives To Ensure That Its Surgical Devices And Services Meet The Highest Quality Standards And Are Compliant With Applicable State, Federal And International Requirements And Guidelines.

16.     Many of Intuitive's products and operations are subject to regulation in each of the countries and regions where it markets and sells its products, including in the United States by, among others, the FDA and regulators from the State of California.  In addition, Intuitive's products must meet the requirements of

a large and growing body of international standards, which govern the design, manufacture, materials content and sourcing, testing, certification, packaging, installation, use and disposal of its products. Intuitive must continually keep abreast of these standards and requirements and integrate its compliance into its product development and regulatory documentation.

17.     Among the regulatory requirements are those imposed by the FDA. The FDA regulates the development, testing, manufacturing, labeling, storage, recordkeeping, promotion, marketing, distribution and service of medical devices in the United States. The FDA likewise regulates the export to foreign markets of medical devices manufactured in the United States and the importation of medical devices manufactured abroad.

18.     Intuitive has submitted to FDA clearance processes for many of its systems, instruments and accessories. Under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), medical devices are classified into one of three classes—Class I, Class II or Class III—depending on the degree of risk associated with each medical device and the extent of control needed to provide a reasonable assurance of safety and effectiveness. Intuitive's current products are Class II medical devices.

19.     Class II devices are those which are subject to general controls and typically require premarket demonstration of adherence to FDA performance

standards or other special controls in order to obtain FDA clearance. Premarket review and clearance are accomplished through the 510(k) premarket notification process. Unless a Class II device is exempt from premarket review, the manufacturer must submit to the FDA a premarket notification submission demonstrating that the device is "substantially equivalent" in intended use and technology to a "predicate device" that is either: (i) a device that has grandfather marketing status because it was legally marketed prior to May 28, 1976, the date upon which the Medical Device Amendments of 1976 were enacted; or (ii) a device that has previously been cleared through the 510(k) process.

20.     If the FDA agrees that the device is substantially equivalent to a predicate device, it may grant clearance to commercially market the device in the United States. The FDA has a statutory 90-day period to respond to a 510(k) submission, or a guidance-based 30-day period for "special" 510(k) submissions, which generally have a more restrictive scope and minimal changes to a legally marketed device. As a practical matter, however, clearance often takes longer. The FDA may require further information, including clinical data, to make a determination regarding substantial equivalence. If the FDA determines that the device, or its intended use, is not "substantially equivalent," the FDA may deny clearance, which means the device may not legally be distributed or sold in the United States.

21.     After a device receives FDA 510(k) clearance, any modification that could significantly affect its safety or effectiveness, or that would constitute a major change in its intended use, requires a new 510(k) clearance or could require a premarket application ("PMA") approval.  (21 C.F.R. § 807.81(a)(3).)  The FDA requires each manufacturer to make the determination of whether a modification requires a new 510(k) notification or PMA application in the first instance, but the FDA has the authority to review and potentially disagree with any such decision. If the FDA disagrees with a manufacturer's decision not to seek a new 510(k) clearance or PMA approval for a particular change, the FDA may retroactively require the manufacturer to seek 510(k) clearance or PMA approval.  The FDA can under certain circumstances require the manufacturer to cease U.S. marketing and/or recall the modified device until 510(k) clearance or PMA approval is obtained.

22.     In addition, after a device is commercially distributed, numerous FDA and other regulatory requirements continue to apply.  These include:  establishment of FDA registration and device listing; compliance with medical device reporting regulations, which require that manufacturers report to the FDA if their device may have caused or contributed to a death or serious injury or malfunctioned in a way that would likely cause or contribute to a death or serious injury if it were to recur; and compliance with corrections and removal reporting regulations, which require

that manufacturers report to the FDA field corrections and product recalls or removals if undertaken to reduce a risk to health posed by the device or to remedy a violation of the FFDCA that may present a risk to health.

23.     Product and service advertising is also regulated by the FDA and the Federal Trade Commission.  The primary purpose of these regulations is to ensure that manufacturer and service provider claims are consistent with their regulatory clearances, that there is scientific data to substantiate the claims and that the advertising is neither false nor misleading.  Many foreign jurisdictions have a similar regulatory framework for product and service advertising.

24.     Any company that remanufactures devices or instruments and seeks to place the remanufactured devices or instruments back into the market must obtain 510(k) clearance.  (21 C.F.R. § 807.81(a)(3).)  According to FDA regulations, remanufacturing may include, among other things, processing, conditioning, renovating, repackaging, restoring or performing any act on a finished device that significantly changes the device's performance or safety specifications, or its intended use.  (21 C.F.R. § 820.3(w).)  This could include, for example, re-setting an instrument's counter for further uses of the device beyond its original design and placing the altered instrument back on the market.

25.     Intuitive's regulatory compliance department consists of over 550 full-time personnel, who focus on helping to ensure that Intuitive's product and service offerings are compliant with applicable regulations.

III.   **As A Complement To Its Product Offerings, Intuitive Provides Comprehensive Instrument And Accessory Replacement And Maintenance Service Offerings To Its Customers.**

26.     Intuitive has a network of field service engineers across the United States, Europe and Asia.  It also maintains relationships with various distributors and service providers around the globe.  This infrastructure of service and support specialists offers a full complement of services for Intuitive's customers, including 24/7 support, installation, repair and maintenance.

27.     Replacement instruments and accessories are generally purchased by hospitals in the normal course of business depending on the number and type of procedures performed.  Most of the instruments and accessories offered by Intuitive, like the EndoWrist, are covered by 510(k) clearances.

28.     Intuitive also offers maintenance services for the da Vinci Surgical System—both through in-house technicians and a network of approved third-party service providers.

IV.   **Restore Robotics' Business Model Preys On Consumer Confusion And Deception.**

29.     Since as early as 2018, Restore has tried to generate revenue by whatever means necessary, including by way of illegal conduct, deceptive and

misleading advertising and widespread misrepresentations to current and former Intuitive customers.

30.     Restore has focused on servicing da Vinci Surgical Systems and on unauthorized remanufacturing of da Vinci instruments to work past their pre-programmed lives.  Restore relies on deceptive marketing, seeking to convince Intuitive customers that Restore's technicians are authorized to perform service on Intuitive devices, as well as to supply remanufactured parts at a fraction of the ordinary cost.  Left unsaid by Restore, however, is that it lacks authorization from Intuitive to perform work on Intuitive devices (and could, therefore, subject customers to contract and warranty ramifications under their Sales, License and Service Agreements with Intuitive by virtue of using unauthorized service technicians).  Restore also fails to disclose that it lacks FDA clearance (where applicable) for the work that it performs and the products that it offers.

31.     For example, Restore's website advertises that it "can provide routine preventative maintenance programs and spot repairs on your surgical robots."  It further states that "[t]he preventative maintenance diagnostic testing is a full spectrum review of the da Vinci robotics functionality."
(Restore Website: https://www.restorerobotics.com, a screenshot of which is below.)  This advertisement is misleading, as it fails to inform Intuitive customers that Restore lacks Intuitive's authorization to service Intuitive products under the

terms of the customers' Sales, License and Service Agreements, much less to use the da Vinci name and trademark in its advertising and marketing channels. Moreover, this advertisement fails to inform consumers that by performing unauthorized service or repairs on da Vinci products, the customers' warranties could be voided under the terms of Intuitive's Sales, License and Service Agreements.  (*See infra* at Paragraphs 40-42 for a discussion of the terms of Intuitive's Sales, License and Service Agreements.)

32.    Restore also falsely proclaims in its marketing brochures disseminated to Intuitive customers across the United States that its "service violates none of the standards that could necessitate a 510K."  (*See* Ex. 1 (Restore Marketing Brochure, entitled "Discussion of Risk Management and Liability With Regard to Surgical Robot Instrument Repair").)  This statement is misleading.  To the extent Restore's offered "services" consist of supplying manipulated or remanufactured da Vinci instruments that are purportedly able to exceed the prescribed number of uses (as set forth on labels affixed to the instruments), Restore's marketing fails to inform Intuitive customers that it lacks Intuitive's authorization and the FDA's clearance for those service offerings.

33.    Restore likewise claims in its marketing brochures disseminated to Intuitive customers throughout the United States that it "has more than 2 years of history with repairing EndoWrist instruments with well over 1500 repairs resulting

in No adverse events and No communication issues between the repaired instrument and the Da Vinci system." (*See id.*).)  This statement is misleading. Restore fails to inform Intuitive customers that it is not authorized by Intuitive to perform any repair work on its instruments (or that there could be contract and warranty ramifications from doing so).  Nor does Restore disclose that any such "repairs" that consist of manipulating or remanufacturing da Vinci instruments to exceed their pre-programmed lives (the primary alleged "cost saver" offered by Restore) are performed without Intuitive's authorization or the FDA's clearance.

34.    In other marketing brochures disseminated to Intuitive customers across the United States, Restore claims:  (i) it provides Intuitive customers with "25% + savings per instrument"; (ii) using its services will result in Intuitive customers "sav[ing] over $100,000 per year per robot";  (iii) "[o]ur patented repair/reset process combined with our other offerings puts you in control of your robotic system"; and (iv) that it can perform "Repairs to the Robot."  (Ex. 2 (Restore Marketing Brochure, entitled "Save Over $100,000 Per Year Per Robot").)  These claims are false and misleading because, among other things, Restore fails to inform Intuitive customers that it lacks authorization from Intuitive to perform "repair" or "reset" work on da Vinci systems or instruments and that such unauthorized work could have warranty ramifications.  Likewise, to the extent that the "reset process" and promised "cost savings" relate to Restore manipulating

or remanufacturing da Vinci instruments to exceed their prescribed use limits, then Restore fails to notify Intuitive customers that it lacks authorization from Intuitive or clearance from the FDA for performing that work and reselling those products. Finally, Restore's projected cost savings are unsubstantiated and purely speculative.

35.     In an effort to conceal from Intuitive customers the risks they could face by using an unauthorized service provider (like Restore) to perform repair work on the da Vinci Surgical System or its instruments (e.g., voiding their warranties or jeopardizing patient safety), Restore has published without authorization the da Vinci name and photographs of the da Vinci Surgical System and instruments on its website and in marketing brochures disseminated to Intuitive customers across the United States.  Indeed, the first image that customers view when visiting Restore's website is the da Vinci Surgical System—with no corresponding statement that Restore is neither authorized nor endorsed by Intuitive to perform repair services on its equipment:



(*See* Restore Website: https://www.restorerobotics.com.)

36.     As the customer scrolls down on the webpage, the website displays

additional images of the da Vinci Surgical System and various da Vinci

instruments (again, without any corresponding acknowledgment that Restore lacks

Intuitive's authorization to perform repairs on its systems or instruments):





(*Id.*)

37.     Restore has likewise published photographs of the da Vinci Surgical System and related instruments in marketing brochures disseminated to Intuitive customers around the country.  (*See* Exs. 1-2.)

38.     Given the false and misleading nature of these advertisements, which suggest a non-existent Intuitive endorsement or authorization, Intuitive has repeatedly cautioned Restore that it is engaging in the unauthorized manufacturing and marketing of medical devices and services without Intuitive's consent and, where applicable, without proper regulatory authorization from the FDA (including as recently as February of this year, when Intuitive sent Restore a cease-and-desist letter).  (*See* Ex. 3.)  Those admonitions have fallen on deaf ears, however, as Restore has continued with its false and misleading marketing campaign.

## V.     Through Its Unfair Business Practices, Restore Has Knowingly Interfered With Intuitive's Business And Contractual Relationships With Its Customers.

39.     To ensure that Intuitive devices operate in conformity with manufacturer and regulatory standards, which are implemented to ensure patient safety, Intuitive negotiates Sales, License and Service Agreements with each customer that typically prohibit customers from altering or manipulating da Vinci Surgical Systems and instruments.  In the event that a customer does so without authorization from Intuitive, their warranties will be voided.  For example, using instruments beyond the programmed number of uses constitutes a material breach

of the Sales, License and Service Agreement, as the products manufactured and

sold by Intuitive are designed and tested to achieve a targeted level of safety,

precision and dexterity for a limited number of uses.

40.    In particular, the Sales, License and Service Agreements typically

provide that:

> Instruments and Accessories are subject to a limited license to use
> those instruments and Accessories with, and prepare those
> Instruments and Accessories for use with, the System. ***Any other use
> is prohibited, whether before or after the Instrument or Accessory's
> license expiration, including repair, refurbishment, or
> reconditioning not approved by Intuitive***. ***This license expires once
> an instrument or Accessory is used up to its maximum number of
> uses specified in the Documentation accompanying the Instrument
> or Accessory***.

41.    Similarly, the Sales, License and Service Agreements typically

provide that:  "Customer will not, nor will Customer permit any third party to,

modify, disassemble, reverse engineer, alter, or misuse the System or Instruments

and Accessories."  And if a Customer fails to comply with this provision, "Intuitive

may terminate this Agreement immediately upon written notice, and any

warranties applicable to the System will become void."

42.    Importantly, any unauthorized repairs or modifications to Intuitive

systems or instruments typically will also serve to contractually void any potential

liability on the part of Intuitive for any resulting "claims or damages" against

Intuitive customers.

43.     Rather than being open and honest with Intuitive customers about the lack of authorization by Intuitive for the work that it advertises, Restore conceals these critical facts and, instead, encourages Intuitive customers under false pretenses to act in a manner that will void its system maintenance warranty and cause customers to be in breach of their Sales, License and Service Agreements for any unauthorized alterations to da Vinci instruments.

44.     Restore employees have also shown a willingness to cross the line into criminal behavior.  For example, on July 26, 2019, after having been confronted with a preventive maintenance message on a da Vinci Surgical System, Restore executive Clif Parker called a former Intuitive employee, and solicited his assistance to "hack into [Intuitive's] system to help the 'PM' message go away." Recognizing the illegal nature of Restore's request, the former Intuitive employee declined Mr. Parker's invitation, and instead reported the request to Intuitive.

## VI.   In Light Of Restore's Unfair And Deceptive Business Practices, Restore Has Inflicted Substantial Harm On Intuitive.

45.     Restore's unfair business practices have harmed Intuitive on a number of levels.

46.     As an initial matter, Restore's false and misleading statements to customers have interfered with Intuitive's contractual relationships and deprived the company of future business.  The precise amount of Intuitive's monetary losses

will be shown according to proof at trial.  Additional harm is being suffered every day.

47.    Restore's conduct has also served to damage Intuitive's reputation, as unauthorized and inadequate service and product offerings (as well as manipulation of da Vinci instruments) have caused discord among Intuitive's customer base—with customers confused as to the truth behind Restore's offered services, products and promised savings.  Moreover, Restore's actions jeopardize the public trust and confidence that Intuitive has inspired among its customers' patients.  This harm to Intuitive's reputation is irreparable and cannot be redressed through money damages.

## COUNT ONE
### (Federal Unfair Competition – Lanham Act)

48.    Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

49.    Restore has made repeated and willful false and misleading statements, and improperly sought to suggest an affiliation with and endorsement by Intuitive, in commercial advertisements for its products and services in violation of 15 U.S.C. § 1125(a).  Those false and misleading statements have deceived or had the capacity to deceive a substantial segment of Intuitive's current and potential consumers.

46

50.     The false and misleading statements by Restore are material, in that they deceived or had the capacity to deceive Intuitive customers into believing, among other things, that Restore is:  (i) authorized by Intuitive to perform service on da Vinci Surgical Systems and instruments, such that doing so would not void their warranties under the Intuitive Sales, License and Service Agreement; (ii) authorized by Intuitive to repair, modify and/or remanufacture da Vinci Surgical Systems without violating or voiding their warranties under the Intuitive Sales, License and Service Agreement; and (iii) cleared by the FDA to modify and/or remanufacture da Vinci Surgical Systems or instruments.

51.     Intuitive's da Vinci Surgical Systems and Restore's services are advertised and sold in interstate commerce throughout the United States.

52.     Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Restore's actions.

## COUNT TWO
### (Common Law Unfair Competition)

53.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

54.     Restore is a competitor of Intuitive and has engaged in deceptive and fraudulent conduct in the marketing of its products and services that has caused a likelihood of confusion among consumers.

55.     Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Restore's actions.

## COUNT THREE
### (Common Law Tortious Interference With Contract)

56.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

57.     At all relevant times, Intuitive had contractual relationships with its customers, including the Sales, License and Service Agreement, which contained proscribed limitations and procedures for Intuitive customers to modify or reprogram Intuitive surgical instruments.  Restore was at all times aware of these contractual relationships and undertook intentional acts to disrupt them and/or induce Intuitive customers to breach them.

58.     There was no legal justification for Restore's actions, which were motivated purely by its own greed and subjected Intuitive patients, Intuitive customers and Intuitive itself to substantial harm.

59.     Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Restore's actions.

## COUNT FOUR
### (Common Law Tortious Interference With
### Advantageous Business Relationship/Prospective Economic Advantage)

60.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

61.     Intuitive has business relationships with medical facilities throughout the country.  Restore was at all times aware of these business relationships and has made it a hallmark of its business model to interfere with them—through false and misleading statements and other illicit conduct, for which there is no legal justification.

62.     Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Restore's actions.

## COUNT FIVE
### (Common Law Unjust Enrichment)

63.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

64.     As a result of the unlawful activities as described herein, and on the back of Intuitive's stellar reputation in the industry, Restore has received without authorization a significant benefit which includes, but is not limited to, profits received from the sale of services that were secured by false and misleading representations.

65.     The amount that Restore has unlawfully received will be proven at the time of trial and amounts to at least all profits derived from Restore's wrongful conduct.  Because these amounts were secured through deception by Restore, principles of equity dictate that the fair value of such benefits should be paid to Intuitive.

## COUNT SIX
### (Florida Deceptive And Unfair Trade Practices Act –
### Fla. Stat. §§ 501.201 To 501.213)

66.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

67.     Restore's actions specified in the paragraphs incorporated into this Count constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute § 501.204.

68.     Restore willfully used or practiced these acts in violation of Section 501.204, and knew or should have known that its acts were unlawful and would damage Intuitive and injure consumers by its deception.

69.     Restore's unfair and deceptive acts and practices have caused significant harm, both monetary and irreparable, to Intuitive.

## COUNT SEVEN
### (Computer Fraud And Abuse Act, 18 U.S.C. §§ 1030(a), (b))

70.     Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

71.     Clif Parker, acting within the scope of his employment at Restore, and at the direction of and to obtain a competitive edge for Restore, knowingly attempted to "hack into [Intuitive's] system to help the 'PM Due' message go away," as admitted in a telephone call with a former Intuitive employee.

72.     Intuitive's system is a "protected computer" under 18 U.S.C. § 1030 because it is used in and affects interstate or foreign commerce or communication.

73.     Knowingly and with the intent to defraud, Restore attempted to access the protected Intuitive system without authorization.

74.     Knowingly and with the intent to defraud, Restore attempted to exceed authorized access of the protected Intuitive system.

75.     Knowingly and with the intent to defraud, Restore attempted to obtain value from removing the "PM Due" message, thereby conveying to users that no maintenance or repair is required, and thereby legitimizing Restore's services and business model.

76.     Through this conduct, Restore would have caused a loss to Intuitive in excess of the statutorily required amount, if completed—namely, through removing a message that ensures the proper and quality controlled use of the da Vinci Surgical System.

77.     If completed, Restore would have modified Intuitive products to prevent user prompts on required maintenance and equipment replacement. Restore thus would have caused:  (i) modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more individuals; (ii) potential physical injury to a patient; and/or (iii) a threat to public health or safety.

78.     By virtue of this conduct, Restore attempted to violate the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a), (b).

## JURY TRIAL

79.     Intuitive requests a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

80.     Intuitive respectfully requests this Court enter judgment in favor of Intuitive and against Restore including an Order granting Intuitive the following relief:

a.   Compensatory damages on all applicable causes of action alleged herein;

b.   All unjust enrichment wrongfully obtained by Restore;

c.   Actual costs, expenses and attorneys' fees incurred in this lawsuit;

d.   All exemplary and punitive damages;

e.   Pre-judgment and post-judgment interest;

f.   Preliminary and permanent injunctive relief; and

g.   Such other and further relief as the Court shall deem just and proper.

Dated:  September 30, 2019

Respectfully submitted,

/s/ Allen Ruby
ALLEN RUBY (*Pro Hac Vice*)
LANCE A. ETCHEVERRY (*Pro Hac Vice Admission to be applied for*)
ABRAHAM M. ANDRADE III (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4500
allen.ruby@skadden.com
lance.etcheverry@skadden.com
abraham.andrade@skadden.com

KAREN HOFFMAN LENT (*Pro Hac Vice*)
MICHAEL H. MENITOVE (*Pro Hac Vice Admission to be applied for*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

Counsel for Defendant
Intuitive Surgical, Inc.

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been filed via CM/ECF for electronic

distribution to the following counsel of record on September 30, 2019:

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
Telephone:  (404) 872-3800
jeff@berhold.com

William G. Harrison, Jr.
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401
Telephone:  (850) 769-1414
wharrison@harrisonrivard.com

/s/ Allen Ruby
ALLEN RUBY (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4500
allen.ruby@skadden.com