# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC and<br>RESTORE ROBOTICS REPAIRS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>RESTORE ROBOTICS LLC and<br>RESTORE ROBOTICS REPAIRS LLC,<br><br>Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

### PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS WITH SUPPORTING MEMORANDUM

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309

William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401

COUNSEL FOR PLAINTIFFS

October 8, 2019

Pursuant to Fed. R. Civ. Proc. 12(b)(6), Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC (collectively "Restore") hereby move to dismiss the counterclaims of Intuitive Surgical, Inc. ("Intuitive"). The counterclaims here must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (citations and quotation marks omitted). Counts 1 to 6 fail to allege a factual basis for bringing claims based on "false and misleading statements." In addition, they suffer from an absence of facts in support of one or more other elements of the claims. Similarly, Count 7 fails to allege facts in support of several elements of a claim.

Counts 1 to 6: "False and Misleading Statements"

Counts 1 to 6 bring counterclaims based on "false and misleading statements." The counterclaims allege that Restore misleads hospitals by using its website and brochures to advertise that Restore repairs da Vinci robots and EndoWrist instruments manufactured by Intuitive. Counts 1, 2, and 6 are federal and state unfair competition claims alleging that hospitals are likely to be confused by photographs of da Vinci robots and EndoWrist instruments into believing that Restore has been approved by Intuitive to repair the robots and instruments and does business with Restore on that basis. Counts 3 and 4 are tortious interference claims alleging that

1

Restore intentionally induces hospitals with these advertisements to breach their agreements to obtain approval from Intuitive for any third-party service of the robots or instruments. Count 5 is an unjust enrichment claim alleging that Restore has unjustly enriched itself by knowingly taking the benefits of the alleged false and misleading statements.

The legal standards are the same for federal claims and Florida common law and statutory claims for unfair competition. *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009). The tortious interference claims necessarily rely on those same standards of conduct because those claims require proof of improper means in interfering with the business of a competitor.[1] *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004). Similarly, the unjust enrichment claim relies on the use of false and misleading representations. [32] ¶ 64.

In order to prove a violation of the law, the representations must be false or misleading and have the capacity to deceive customers of the service. *Hi-Tech*

---

[1] Intuitive does not and cannot allege that Restore's motive is "purely malicious." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004). Restore is promoting its own financial interest. [32] ¶ 3. In fact, Count 3 alleges that Restore was "motivated purely by its own greed" rather than malice. [32] ¶ 59. While Count 3 fails to allege or specify any improper means, Count 4 alleges "false and misleading statements." [32] ¶ 61.

*Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018). In addition, the deception must have a material effect on the customer's purchasing decision. *Id.*

In looking at whether the representations are misleading, the Court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002)). Again, the factual allegations "must nudge the claim across the line from conceivable to plausible." *Jacobs*, 626 F.3d at 1333.

The counterclaims do not allege that any representation is literally false. Nor do they identify any customer that is actually confused. The only question is whether the representations are misleading and have the capacity to deceive consumers. As a preliminary matter, the counterclaims fail to provide the alleged web page in full. [32] ¶¶ 35-36. It is impossible to say that the web page "in its entirety" is misleading or that the web page "in its entirety" has the capacity to deceive hospitals looking for alternatives to Intuitive for robot or instrument service into believing that Restore has approval from Intuitive to provide service.

Moreover, it is not misleading at all to imply or say that Restore repairs robotic and medical devices, including the da Vinci robot and EndoWrist instruments. That is the truth. Considering Exhibit 1 or Exhibit 2 as a whole, it is simply not plausible

3

that a reasonable customer would be misled to believe that Restore had obtained approval from Intuitive to provide robot and instrument service.  If Restore wanted to convey the impression of approval by Intuitive, they would have to say so explicitly to persuasively make that impression on, and induce a purchasing decision from, hospitals, who are sophisticated and frequent consumers of medical devices.

The other basis for the claims – that Restore misled customers to believe that it had clearance to service the instruments – is contrary to the factual allegations. Restore plainly states that it has not obtained 510K clearance: "our service violates none of the standards that could necessitate a 510K." [32-1 at 2.]  Such statements are not misleading about having clearance and do not have the capacity to confuse customers of medical device repairs.

In addition, that aspect of the claims is preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA").  The allegation is based solely on the premise that Restore was required to get clearance to perform repairs on the instruments and therefore misled customers by advertising that it was in the business of repairing instruments.  The Lanham Act claim cannot require the court to interpret or apply the FDCA to determine whether clearance was required. The FDCA bars "private actions under the Lanham Act premised on enforcement determinations that the FDA and other regulatory agencies did not themselves make." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018) (citations omitted).  The

4

state claims are similarly barred. *Hi-Tech Pharm., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1333 (N.D. Ga. 2016) (explaining plaintiff "may pursue its UDTPA and unfair competition claims on the same grounds as its Lanham Act claims").

## Count 1: Use in Commerce

The Lanham Act counterclaim fails for an additional reason. Since Restore is servicing the hospital's robots and instruments at the hospital's request, the web site and marketing brochure are not being used "in commerce" for purposes of a claim under 15 U.S.C. § 1125(a). "[A] mere repair of a trademarked good, followed by return of the good to the same owner who requested the repair or rebuild, does not constitute a 'use in commerce' of the trademark under the Lanham Act." *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002). Here, the customer is requesting the service to extend the life of the robot or instrument for use for its original purpose. Restore provides that service and does not suggest otherwise on its web site or marketing brochures.

## Counts 3 and 4: Identity of Customer

The tortious interference counterclaims also fail for an additional reason. Intuitive does not identify the customers that were induced to switch their business to Restore through the allegedly false and misleading statements. For a cognizable

claim for tortious interference, Intuitive must identify ongoing relationships with specific customers. *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *7 (N.D. Fla. Sept. 27, 2018). Intuitive cannot simply allege relationships with the general public or past customers. The counterclaims must "allege . . . a business relationship with an identifiable person. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996).

### Count 5: No Knowledge of Benefit

Intuitive fails to allege a factual basis that Restore was unjustly enriched through the advertising on its website and brochures. "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). It is simply not plausible from the factual allegations that Restore knew that it was misleading and deceiving customers to believe that Restore had been approved by Intuitive to repair products sold by Intuitive. Nor is it plausible that Restore should have reasonable expected to pay some sort of toll to Intuitive for the right to repair or service the customer's robot or instruments.

Count 6: No Action for Consequential Damages

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) counterclaim also fails to allege a factual basis for actual damages as required by the statute. The counterclaims refer to the loss of business and damage to reputation. [32] ¶¶ 46-47. Intuitive may not bring an FDUTPA claim for consequential damages, such as "competitive harm, lost sales, harm to the goodwill and reputation of the plaintiff, and the like." *Emondson v. 2001Live, Inc.*, No. 8:16-CV-3243-T-17AEP, 2017 WL 10085028, at *2 (M.D. Fla. Mar. 30, 2017). "A plaintiff must allege actual, as opposed to consequential damages, to state a claim under the FDUTPA." *Id.* Actual damages are "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012).

Count 7: Computer Fraud and Abuse Act

Finally, Intuitive fails to allege a sufficient factual basis for its counterclaim for attempting to violate the Computer Fraud and Abuse Act. Intuitive sets out a single sentence in support of its claim of "criminal behavior:" "[A]fter having been confronted with a preventative maintenance message on a da Vinci Surgical System,

7

Restore executive Clif Parker called a former Intuitive employee, and solicited his assistance to 'hack into [Intuitive's] system to help the PM message go away.'" [32] ¶ 44.  It is unclear if Intuitive is quoting Mr. Parker or the former Intuitive employee with use of the term "hack."  Nor is it plausible that a single telephone conversation of this kind "constitutes a substantial step toward commission of the crime" to establish an attempt to commit a crime.  *United States v. Forbrich*, 758 F.2d 555, 557 (11th Cir. 1985)

In any event, the counterclaim fails to allege several elements of a viable CFAA claim.  The counterclaim does not cite a specific provision of 18 U.S.C. § 1030(a) or (b).  Based on the wording of the counterclaim, Intuitive apparently alleges that Restore attempted to violate 18 U.S.C. § 1030(a)(4).[2]  [32] ¶¶ 73-75.  The counterclaim does not plausibly allege how Restore would seek or obtain access to robots without authorization of the owner or exceed the authorization of the owner.  In fact, Restore would not have physical access to robots without the consent of the owners.  Moreover, the owner would not provide access unless Restore was performing service on the robot.  Furthermore, there is no factual allegation that the

---

[2] Section 1030(a)(4) sets out liability for anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

Intuitive sales or lease agreements prohibit third parties from accessing the robot with the consent of the owner or that Restore was aware of such prohibitions at the time of the alleged telephone conversation on July 26, 2019. *See EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1231-32 (N.D. Ga. 2014), *aff'd,* 703 F. App'x 803 (11th Cir. 2017).

Nor does the counterclaim plausibly explain how Restore intended to defraud the customer by removing the preventative maintenance message after Restore serviced the robot at the customer's request. In fact, there is no explanation of how Restore intended to deceive customers. The customers would presumably want to eliminate the preventative maintenance message after obtaining service from Restore. Therefore, the counterclaim fails both for the absence of facts regarding unauthorized access by Restore and the absence of facts regarding an intent to defraud the customer.

In addition, Intuitive lacks statutory standing to bring a civil action under 18 U.S.C. §1030. "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. §1030(g). Instead of setting out a specific factual basis of the damage that would result from removing of the preventative maintenance message at the request of the hospital after service of the robot, Intuitive

9

simply copies and pastes the statutory language for the factors in 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(IV).³ [32] ¶ 77.

Moreover, Section 1030 only provides a civil action for a "person who suffers damage or loss by reason of a violation." 18 U.S.C § 1030(g). The counterclaim does not allege that anyone suffered damage as a result of an alleged attempt to violate Section 1030(a)(4). Paragraph 77 simply says that Restore "would have caused" various kinds of damage. In fact, Intuitive would not be the one to suffer any of the damages alleged in Paragraph 77. Furthermore, the counterclaim does not allege any loss to Intuitive as defined under Section 1030(e)(11). The counterclaim concedes that Intuitive was well aware that Restore had not "completed" its alleged attempt. For these reasons as well, Count 7 should be dismissed.

## Conclusion

For all the foregoing reasons, the counterclaims should be dismissed.

---

³ "(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety;" *Id*.

Respectfully submitted on October 15, 2019.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 (telephone)
jeff@berhold.com

/s William G. Harrison, Jr.
William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
FL. Bar No. 0765058
101 Harrison Avenue
Panama City, FL 32401
850-769-1414 (telephone)
wharrison@harrisonrivard.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 5.1(F)(1)(a), a certificate of service is not required.

Pursuant to Local Rule 7.1(F), the memorandum contains 2,357 words.