## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

               Plaintiffs,

v.

INTUITIVE SURGICAL, INC.,

               Defendant.

INTUITIVE SURGICAL, INC.,

               Counterclaimant,

v.

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

               Counterclaim Defendants.

Civil Case No. 5:19-cv-55-TKW-MJF

## INTUITIVE SURGICAL, INC.'S
## OPPOSITION TO RESTORE'S MOTION TO DISMISS

Defendant/Counterclaimant Intuitive Surgical, Inc. ("Intuitive") hereby

responds to Restore Robotics LLC's and Restore Robotics Repairs LLC's

(collectively, "Restore") motion to dismiss Intuitive's counterclaims (the

"Counterclaims").

## PRELIMINARY STATEMENT

Unable to win business on its own accord, Restore has embarked on a campaign of deception to mislead Intuitive customers and, in the process, steal business from Intuitive.  Indeed, Restore's business model depends on using false and misleading advertising to convince Intuitive customers that Restore's service and product offerings for da Vinci Surgical Systems can result in substantial cost savings—without disclosing the considerable risks that accompany them.  More specifically, among other wrongful conduct:  (i) Restore falsely states that its manipulation and reconstruction of da Vinci instruments does not require FDA clearance (when it actually does); (ii) Restore entices Intuitive customers into using Restore for repairs and service (without informing them that it has not been authorized by Intuitive to perform such work and, thus, customers risk having their warranties voided); and (iii) Restore falsely implies an endorsement and affiliation with Intuitive by displaying on its website and in marketing materials da Vinci Surgical Systems and instruments (without authorization from Intuitive). (Counterclaims ("CC") ¶¶ 29-43.)  This deceptive campaign gives rise to multiple claims under state and federal law, which are pled in detail in Intuitive's Counterclaims.

Restore has sought dismissal of the Counterclaims based on misstatements of law and deliberate mischaracterizations of Intuitive's allegations.  Restore's

principal attacks on the allegations is that each one of its false and misleading statements was "technically true."  (Motion ("Mot.") 3.)  Restore's position is unfounded in two respects.  As an initial matter, Restore's representations to customers that FDA "510K Clearance" is not required for its service offerings are patently false.  (CC ¶ 32.)  One of Restore's primary service offerings is the alteration and remanufacturing of da Vinci instruments to exceed their prescribed number of uses.  (*See id.* ¶¶ 3, 32, 33.)  Contrary to its representations, FDA clearance **is** required for this work.  (*See id.*)

Restore's position also reflects a misunderstanding of the law.  To state a claim under the Lanham Act or for common law unfair competition, a statement need not be literally false; rather, it must simply be misleading with the capacity to deceive.  *Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015).  With respect to the other statements by Restore that are identified in the Counterclaims, even if they were technically true, they were misleading with the capacity to deceive.  For example:

- In marketing brochures:  Restore boasts (i) that it provides Intuitive customers with "25% + savings per instrument;" and (ii) that use of its services will result in Intuitive customers "sav[ing] over $100,000 per year per robot." (CC ¶ 34.)  These statements are misleading.  Among other things, Restore fails to disclose that it is not authorized by Intuitive to perform work on da Vinci Systems and instruments and that such unauthorized work could have contract and warranty ramifications (which could offset the purported cost savings).  And, as noted above, to the extent that these cost savings are calculated based on modifications and manipulations of da Vinci instruments, then

Restore fails to notify Intuitive customers that they lack FDA clearance for performing those services.  (*Id.*); and

- In marketing brochures:  Restore states that it "has more than 2 years of history with repairing EndoWrist instruments with well over 1500 repairs resulting in No adverse events and No communication issues between the repaired instrument and the Da Vinci system."  (*Id.* ¶ 33.) This statement is misleading, as it fails to reveal that there have, in fact, been complications that have resulted from Restore's service and repair work—irrespective of whether those complications were ever reported as "adverse events" via MedWatch Reports.  (*See, e.g.*, *id.* ¶ 38 (citing Dkt. 32-3 at 6-7).)

Restore's Motion fails to articulate any basis for the Court to find, at the pleading stage, that any of the alleged misstatements was not actionable—other than to argue that it is "implausible" that any Intuitive customers could have been deceived by Restore's misleading statements.  (Mot. 3-4, 6, 8-9.)  There is no merit to this position.  Although Restore may disagree as to whether Intuitive customers may have been deceived by its false and misleading statements, those are ultimately factual questions that cannot be resolved at the pleading stage.  *See Diamond Resorts Int'l, Inc. v. US Consumer Attorneys, P.A.*, 2019 WL 3412169, at *7 (S.D. Fla. May 14, 2019) ("Defendants' arguments regarding the purported 'truth' of these [allegedly false or misleading] statements cannot be resolved at the motion to dismiss stage, and should therefore be rejected.").

The remainder of Restore's arguments in its Motion are similarly without merit, including that:

4

- There is <u>no</u> requirement that Intuitive specifically identify the Intuitive customers with whose contracts and business relationships Restore has tortiously interfered. *See Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp*., 226 F. Supp. 3d 1346, 1358 (S.D. Fla. 2016).

- Intuitive has adequately pleaded "actual damages" and "aggrievement" in connection with its FDUTPA claim. Claims for past lost profits, which Intuitive seeks here, are "actual damages" under FDUTPA. *Glob. Tech LED, LLC v. HiLumz Int'l Corp.*, 2017 WL 588669, at *9 (M.D. Fla. Feb. 14, 2017). Moreover, harm to Intuitive's reputation and customer goodwill, both of which are similarly alleged, constitute aggrievement for purposes of the injunctive relief Intuitive seeks. *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc*., 123 So. 3d 1149, 1152 (Fla. Dist. Ct. App. 2012).

- The attempt by a Restore executive to hack into Intuitive's computer system to alter the system maintenance schedule for a da Vinci Surgical System is a clear violation of the Computer Fraud and Abuse Act ("CFAA")—as each of the elements of the claim has been satisfied. *See* 18 U.S.C. § 1030(a), (b), (g).

Restore's Motion accordingly fails as a matter of law and should be denied in its entirety.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Plausibility is the key, as

the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotations omitted).  In considering Rule 12(b)(6) motions, courts must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Indeed, a defendant's "arguments regarding the purported 'truth' of [allegations] cannot be resolved at the motion to dismiss stage, and should therefore be rejected."  *See Diamond Resorts*, 2019 WL 3412169, at *7.

**ARGUMENT**

**I.     INTUITIVE ADEQUATELY PLED UNFAIR COMPETITION UNDER THE LANHAM ACT.**

Under the Lanham Act, an unfair competition claim for false advertising requires a plaintiff to show that:

> (1) [The opposing party's] advertisements . . . were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  Here, Intuitive's Counterclaims satisfy each of the elements of a Lanham Act unfair competition claim.  Restore's Motion challenges only the adequacy of Intuitive's allegations under the first, second and fourth prongs.  The remainder of the

6

elements must be deemed established for purposes of resolving this Motion.
*See Mt. Hawley Ins. Co. v. One River Plaza Co.*, 2014 WL 11721638, at \*2 (S.D.
Fla. Sept. 18, 2014) (finding that complaint stated a claim for relief "where, as
here, [the defendant] has not challenged the remaining allegations").[1]

Restore's challenges to Intuitive's Lanham Act claim can be summarized as
follows:  (a) the statements that form the basis for Intuitive's claims were
"technically true" and, thus, there has been no "actual confusion" among customers
(Mot. 3); and therefore it is "implausible" that any Intuitive customers could have
been deceived by Restore's statements (*id.* at 3-4); (b) the false and misleading
statements had no impact on interstate commerce (*id.* at 5); and (c) any claims that
involve statements about whether FDA clearances were necessary are preempted
(*id.* at 4-5).  As set forth below, each of Restore's challenges is baseless.

A. <u>Restore Made False And Misleading Statements, Which Deceived Or Had The Capacity To Deceive Intuitive Customers.</u>

Intuitive's Counterclaims set forth more than a half dozen statements made
by Restore on its website and in its marketing brochures that were false and
misleading and either deceived or had the capacity to deceive Intuitive customers.

---

[1]  Having failed to challenge prongs three and five of the Lanham Act claim in its
opening brief, Restore is precluded from challenging them (or any other non-
challenged claim element) in a reply brief.  *See Foley v. Wells Fargo Bank,
N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for
Defendant to raise this new argument in its Reply brief, the argument will not
be considered.").

Each of these statements, separately or in combination, violated the Lanham Act. (CC ¶¶ 29-43.)

Contrary to Restore's assertion that all of the statements targeted by the Counterclaims were "technically true," the assertion that its "service violates none of the standards that could necessitate a 510K [FDA clearance]" was plainly false. (*Id.* ¶ 32.)  As explained in the Counterclaims, because certain of Restore's service offerings involved manipulating and remanufacturing da Vinci instruments to allow them to exceed the prescribed number of uses, those services would require 510K clearance from the FDA.[2]  (*Id.* ¶¶ 3, 32-34.)  It was, thus, misleading for Restore to suggest otherwise.  *See Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009) (holding that a literal false statement "would be false and misleading per se").

For the remaining statements in the Counterclaims, even if they were "technically true" as Restore suggests, they are nonetheless actionable because they were misleading and either deceived or had the capacity to deceive Intuitive customers.  (CC ¶¶ 3, 32); *see Duty Free Ams.*, 797 F.3d at 1277 ("The Lanham Act's false advertising provision allows a plaintiff to base its claim not only on statements that are literally false, but also on statements that are misleading when

---

[2]   To the extent the parties disagree as to the truth of these allegations, in resolving this Motion, they must be accepted as true.  *See Pielage*, 516 F.3d at 1284.

considered in their full context."); *Hickson*, 357 F.3d at 1261 (holding that "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers," and thus violate the Lanham Act).

A sampling of Restore's false and misleading statements are set forth below, with a brief explanation as to how each was misleading or had the capacity to deceive Intuitive customers:

- On its website:  Restore advertises that it "can provide routine preventive maintenance programs and spot repairs on your surgical robots," and that "[t]he preventative maintenance diagnostic testing is a full spectrum review of the da Vinci robotics functionality."  (CC ¶ 31.)  This advertisement is misleading as it fails to inform Intuitive customers that Restore lacks Intuitive's authorization to service Intuitive products, and that these service offerings could void Intuitive customers' Sales, License and Service Agreements ("SLSAs").  (*Id.*) The advertisement is also false because by Restore's own admission, Restore lacks access to Intuitive's service toolkit, which Restore represents is "essential . . . to provide complete da Vinci robot service."  (*See* Dkt. 14 ¶ 56 (further alleging Restore's inability to provide complete "da Vinci robot service").)

- In marketing brochures:  Restore falsely states that it "has more than 2 years of history with repairing EndoWrist instruments with well over 1500 repairs resulting in No adverse events and No communication issues between the repaired instrument and the Da Vinci system." (CC ¶ 33.)  This statement is misleading, as it fails to reveal that there have, in fact, been complications that have resulted from Restore's service and repair work—irrespective of whether those complications were ever reported as "adverse events" via MedWatch Reports.  (*See,*

*e.g.*, *id.* ¶ 38 (citing Dkt. 32-3 at 6-7).)[3]   The statement also fails to inform Intuitive customers that Restore has neither received authorization from Intuitive nor clearance from the FDA to perform these "repairs."  (*Id.* ¶ 33.)

- In marketing brochures: Restore boasts that (i) it provides Intuitive customers with "25% + savings per instrument;" (ii) that use of its services will result in Intuitive customers "sav[ing] over $100,000 per year <u>per robot</u>;" (iii) that its "patented repair/reset process combined with our other offerings puts you in control of your robotic system;" and (iv) that it can perform "Repairs to the Robot."  (*Id.* ¶ 34.)  These statements are misleading.  Among other things, Restore fails to disclose that it is not authorized by Intuitive to perform work on da Vinci Systems and instruments and that such unauthorized work could have contract and warranty ramifications under Intuitive's SLSAs with its customers (which could offset the purported cost savings).  And to the extent that these cost savings are calculated based on modifications and manipulations of da Vinci instruments to exceed their prescribed uses, then Restore fails to notify Intuitive customers that they lack FDA clearance for performing those services.  (*Id.*)

- On its website and in marketing brochures: Restore publishes, without Intuitive's authorization, images of da Vinci Surgical Systems and instruments.  These images misleadingly suggest an endorsement by or affiliation with Intuitive.  (*Id.* ¶¶ 35-37.)

Without any credible basis on which to attack these well-pleaded allegations,

---

[3]   In deciding this Motion, the Court may consider the exhibits attached to the Counterclaims.  *See Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) ("[A]ttachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."); *Dupree v. Haskins*, 2008 WL 3540304, at *3 (N.D. Fla. Aug. 11, 2008) ("The court may consider documents attached to the complaint or directly referenced in the complaint as part of the complaint.").  Exhibit 3 to the Counterclaims is a cease-and-desist letter that Intuitive sent Restore in February 2019.  In it, Intuitive describes several instances where Restore's service and repair work caused complications with da Vinci Systems and instruments.  (Dkt. 32-3 at 6-7.)

Restore nonetheless seeks dismissal because:  (i) the Counterclaims purportedly do not "identify any customer that is actually confused;" and (ii) it is not "plausible" that its false or misleading statements had the capacity to mislead Intuitive customers.  (Mot. 3.)  Restore's arguments are without merit.

"Actual confusion" is not required for a false advertising claim under the Lanham Act; rather, as explained above, the plaintiff need only allege that misleading statements have the capacity to deceive.  *See Hickson*, 357 F.3d at 1260 ("[A] plaintiff must establish . . . the advertisements deceived, or had the capacity to deceive, consumers.").

Nevertheless, although not required to state a claim, Intuitive did allege in its Counterclaims that its customers were <u>actually confused</u> by Restore's misleading statements:  Restore's advertisements left Inuitive's "customers confused as to the truth behind Restore's offered services, products and promised savings."  (CC ¶ 47.)  These allegations must be taken as true for purposes of resolving Restore's Motion.  *See Pielage*, 516 F.3d at 1284.

Restore's "implausibility" argument similarly falls flat.  Although Restore attempts to couch its argument as one of "plausibility" under the Supreme Court's decision in *Twombly*, the argument is really an invitation for the Court to make inappropriate factual determinations at the pleading stage.  Indeed, the question of whether a particular false or misleading statement had the capacity to deceive is a

factual determination that cannot be resolved at the pleading stage; an allegation will suffice.  *See AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) ("At the pleading stage, [plaintiff] is not required to submit this evidence.  It is sufficient for [plaintiff] to allege that the statements are deceptive.").  Although Restore may disagree with Intuitive's allegation that its customers were deceived (or could have been deceived) by Restore's false and misleading statements, Intuitive's allegations must again be taken as true at the pleading stage.  *See Pielage*, 516 F.3d at 1284.

      B. <u>Restore's Misrepresentations Affect Interstate Commerce.</u>

As set forth above, to state a Lanham Act claim, a claimant must allege facts to demonstrate that "the misrepresented product or service affects interstate commerce."  (*Supra* Section I.)  "Advertising that affects interstate commerce and solicitation of sales across state lines or between citizens of the United States and citizens and subjects of a foreign nation is therefore commerce within the meaning of the Lanham Act."  *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983); *see also Ace Novelty Co. v. Vijuk Equip., Inc*., 1990 WL 129510, at *5 (N.D. Ill. Aug. 31, 1990) ("[T]he Lanham Act is meant to apply to the outer limits of the Constitution's commerce power which, as we know, is fairly far out.").

The Counterclaims allege that Restore disseminates its marketing brochures

to Intuitive customers throughout the United States (CC ¶¶ 32-34, 37), and, additionally, that Restore's publicly accessible website advertises its services. (*Id.* ¶¶ 31, 35, 36.) These allegations are sufficient to satisfy the "interstate commerce" prong of the Lanham Act. *See Lancaster v. Bottle Club, LLC*, 2017 WL 3008434, at *5 (M.D. Fla. July 14, 2017) (finding plaintiff sufficiently pleaded use in commerce when complaint alleged "that Defendants use[d] the internet and social media to advertise their [services and products to] entice out-of-state individuals").

Despite this established authority, Restore argues that because its services are performed at the request of hospitals, its website and brochures are not used in commerce under the Lanham Act. (Mot. 5.) Restore is wrong. "[N]othing in the language of the [Lanham Act] itself expressly precludes a repair or reconstruction from constituting a 'use in commerce.'" *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002). "If the reconstructed product still bearing the original manufacturer's trademark is so altered as to be a different product from that of the original manufacturer, the repair transaction involves a 'use in commerce.' The repair company in that situation is trading on the goodwill of, or association with, the trademark holder." *Id.* at 856.

In *Karl Storz*, when the defendant repair company serviced used endoscopes by replacing multiple components, the rebuild created a "different product" that was used in commerce. *Id.*; *see also Elf Cocoon, LLC v. Philip Stein Holding Inc.*,

13

2009 WL 10667773, at *19 (S.D. Fla. Aug. 11, 2009) (finding that defendant's

watch repair transformed a high-end watch into a "different product" by replacing

a unique chip because it was "an integral part of that product").

Here, as in *Karl Storz*, Restore's manipulation and remanufacture of da

Vinci instruments to exceed their prescribed use limits transforms precision-tested,

FDA-cleared surgical instruments into something entirely different.  (CC ¶ 34.)  As

Intuitive has explained to Restore:

> This change impacts the intended use of the device, exceeds the
> verified and validated testing used to support the FDA clearance, and
> thereby constitutes a major change to the device.  This change could
> significantly affect the safety and effectiveness of the device and
> therefore requires clearance of a new 510(k).

(*Id.* ¶ 38 (citing Dkt. 32-3 at 4).)  That is, after Restore modifies and

remanufactures da Vinci instruments, they retain Intuitive's name and trademarks,

but lack the quality, safety, and precision of an Intuitive-manufactured, FDA-

cleared surgical device.  *See Elf Cocoon*, 2009 WL 10667773, at *19 (holding that

altering "an integral part of that product" constitutes a "use" in commerce).

Notwithstanding the above, the question of whether Restore's alterations

transformed da Vinci instruments into a "different product" is a factual question

that cannot be resolved at the pleading stage.  *Karl Storz*, 285 F.3d at 856 (holding

that the question of whether defendant's rebuild constituted "a different product"

raised "a triable issue of fact" as to "use in commerce"); *see Diamond Resorts*,

14

2019 WL 3412169, at *7 (rejecting defendant's request to resolve factual disputes "at the motion to dismiss stage").

C. Intuitive's Lanham Act Claim Is Not Preempted By The FDCA.

Restore argues that Intuitive's claim that Restore misled customers by suggesting that FDA clearance is unnecessary for its service offerings (even those that involve the manipulation and remanufacturing of da Vinci instruments) is preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA").  (CC ¶ 32; Mot. 4-5.)  There is no basis for preemption here, as Intuitive is not attempting to "enforce" the FDCA.  Rather, Intuitive has sued Restore for, among other things, falsely representing to its customers that FDA clearance is unnecessary for the work it performs.  *See Par Sterile Prods., LLC v. Fresenius Kabi USA LLC*, 2015 WL 1263041, at *4 (N.D. Ill. Mar. 17, 2015) ("[T]he Lanham Act is concerned to the extent [the alleged misconduct] involves deception of consumers as to the fact of whether a product carries the imprimatur of FDA approval, not whether the product is safe and effective enough to be approved by the FDA.").

Restore appears to conflate the interests served by the Lanham Act and the FDCA, which courts have explained are related and complementary:

> The FDCA and the Lanham Act both regulate the promotion and sale of drug products in the market.  But each has its own scope and purpose:  the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety.  The FDCA grants the FDA near-exclusive authority to pursue violations of the FDCA.  There is no private right of action under the FDCA. The

15

> Lanham Act on the other hand empowers competitors with knowledge of their own markets to sue when they suffer from another competitor's deceptive advertising practices.   The two statutes complement each other.

*Belcher Pharm., LLC v. Hospira, Inc.*, 2018 WL 4643292, at *3 (M.D. Fla. Apr. 9, 2018) (citing *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 12, 115 (2014)) (citations and internal quotations omitted).

To this end, "courts can review a claim that a competitor falsely represented its product as FDA approved [and] claims that involve whether a product's advertising misleads consumers."  *Id.* at *4.  For example, in *Belcher*, the defendant represented that its medical injection device was AP-rated, which required FDA approval that the defendant did not have.  *Id*. at *6.  Thus, the court held that "Plaintiff's allegations regarding Defendant's representation of its injection project as 'AP-rated' are sufficient to state a claim that Defendant marketed its product as an FDA approved generic drug in violation of the Lanham Act."  *Id.*; *see also Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716 (N.D. Ill. 1989) (finding no preemption when plaintiff "relie[d]  on the FDA regulation merely to establish" that defendant's statements regarding its product were misleading).

Here, Intuitive's Lanham Act claim falls squarely within *Belcher*.  As in that case, Restore passes itself off as being FDA compliant by falsely stating that its "service violates none of the standards that could necessitate a 510K" FDA

16

clearance.  (CC ¶ 32.)  Intuitive, however, alleges that Restore's core product and service offerings (*i.e.*, altering or remanufacturing da Vinci instruments to exceed their prescribed usage limits) do, in fact, require FDA clearance—so its statement to the contrary is patently false and misleading.  (*See id. ¶¶* 3, 32-34.)  Consistent with the court's holding in *Belcher*, these statements are actionable under the Lanham Act.[4]

## II.  INTUITIVE ADEQUATELY ALLEGES A CAUSE OF ACTION FOR COMMON LAW UNFAIR COMPETITION.

To state a claim for unfair competition under Florida common law, "a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion."  *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007); *see AstroTel, Inc. v. Verizon Fla., LLC*, 2012 WL 1581596, at *9 (M.D. Fla. May 4, 2012) (holding plaintiff stated a claim for unfair competition by alleging competitor's disparaging statements were likely to confuse customers).

Here, Intuitive pleaded the first element by alleging that Restore is a competitor that engaged in deceptive conduct in marketing its products and

---

[4]   Restore's reliance on *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018), appears misplaced as that case supports Intuitive's position. The court in that case rejected a preemption argument and upheld a Lanham Act claim regarding FDA compliance.  *Id.* at 1199.  Specifically, the court held that allegations that a product label was misleading for failing to specify an ingredient's source supported a Lanham Act claim.  *Id.*

services on its publicly accessible website and in marketing brochures.  (CC ¶¶ 31-38, 54.)  The false and misleading statements outlined in the Counterclaims created a likelihood of confusion among consumers.  (*Supra* Section I.A; CC ¶¶ 31-38, 54); *see Third Party*, 492 F. Supp. 2d at 1324 (holding complainant sufficiently alleged a likelihood of consumer confusion under Florida common law by stating as much).

Restore offers little challenge to these elements, arguing in conclusory fashion that the Counterclaims fail to adequately allege false or misleading statements.  (Mot. 1.)  But, as explained above, Intuitive adequately pled that Restore made false and misleading representations in connection with its Lanham Act claim, which suffices for a common law unfair competition claim.  *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2018 WL 4932871, at *9 (S.D. Fla. Apr. 23, 2018) (upholding common law unfair competition claim when complainant already alleged facts supporting Lanham Act claim).

**III.   INTUITIVE ADEQUATELY ALLEGES CAUSES OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP.**

Under Florida law, tortious interference with contract and tortious interference with business relationship represent two separate causes of action, but courts have acknowledged that they are "very similar."  *Marjam*, 2018 WL 4932871, at *10 (noting the relatedness of the two claims).  In fact, the elements

18

for both causes of action are virtually identical:

> To state a claim for tortious interference with a contractual relationship under Florida law, a plaintiff must allege: (1) the existence of an enforceable contract, (2) the defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages.
> []
> To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: (1) the existence of a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship.

*Id.* (quoting *Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007)).  Here, Intuitive pled facts to establish both causes of action.  Restore concedes as much for purposes of its Motion by failing to challenge any of the elements of either cause of action.  *See One River*, 2014 WL 11721638, at *2 (finding that complaint stated a claim for relief "particularly where, as here, [the defendant] has not challenged the remaining allegations").  Indeed, Restore's lone challenge to the tortious interference claims is that "Intuitive does not identify the customers that were induced to switch their business to Restore."  (Mot. 5-6.)  There is no merit to Restore's position.

To adequately plead a cause of action, it is well-established that a claimant must simply "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 545 (alteration in original).  A

cause of action for tortious interference is no different.  In this vein, courts have
held that a complainant need not identify specific customers with whose contracts
or business relationships a defendant is alleged to have tortiously interfered.  *See
Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1570 (S.D. Fla.
1996) (rejecting argument that alleged relationships were "with the community at
large" when they asserted interference with "on-going business relationships with
existing customers," and holding that "specificity is not required under our liberal
system of notice pleading").

Here, in addition to identifying the affected contractual and business
relationships with which Restore interfered (*i.e.*, all Intuitive customers with
SLSAs that engaged Restore for unauthorized service and repairs on their da Vinci
Systems or instruments (CC ¶¶ 39-42)), the Counterclaims also identify, more
specifically, at least two of those Intuitive customers.  (*Id.* ¶ 38 (citing Dkt. 32-3 at
6-7(describing customers who experienced issues after receiving Restore's
service)).)  Furthermore, given that Restore's entire business model is to provide
unauthorized service and repairs on da Vinci Systems and instruments, Restore
need simply refer to its own customer list to identify every contractual and
business relationship with which it has interfered.  (*Id.* ¶¶ 3, 46, 61); *see Total
Mktg. Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, 2012
WL 33150, at *3 (M.D. Fla. Jan. 6, 2012) (rejecting failure to specify customers

argument when complaint alleged that defendant poached plaintiff's customers, so "it [was] plausible that these customers or prospective customers may be identifiable through discovery").[5]

## IV.   INTUITIVE ADEQUATELY ALLEGES A CAUSE OF ACTION FOR UNJUST ENRICHMENT.

A well-pleaded cause of action for unjust enrichment requires allegations that "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *AstroTel*, 2012 WL 1581596, at *10 (citation omitted). Intuitive's unjust enrichment claim is well pled, as each of these elements is satisfied by the allegations in the Counterclaims (CC ¶¶ 26-43, 63-65)—which is conceded by Restore, as the Motion does not challenge any of the elements. *See One River*, 2014 WL 11721638, at *2.

---

[5]   Restore argues that Intuitive's tortious interference claims fail to allege that Restore's conduct was "purely malicious." (Mot. 2 n.1.) But an allegation of "purely malicious" behavior is not required to state a claim for tortious interference. (*Supra* Section III (citing elements of tortious interference claims).) *KMS Restaurant Corp. v. Wendy's International, Inc.*, 361 F.3d 1321 (11th Cir. 2004), cited by Restore for this proposition, does not suggest otherwise. The *KMS* court held that malice is only required under a motive theory of tortious interference, and that "a tortious interference claim [will otherwise] succeed if improper methods were used." *Id.* at 1326-27. Here, Intuitive alleges that Restore used improper methods—*i.e.*, false and misleading statements (*see supra* Section I.A)—to interfere with contractual and business relationships between Intuitive and its customers. (CC ¶¶ 29-44, 56-62.)

Restore's only attack on the unjust enrichment claim is its conclusory argument that "it is simply not plausible" that Restore knew it was misleading customers into believing it had Intuitive's approval, or that Restore "should have expected to pay" for the right to service da Vinci Surgical Systems and instruments.  (Mot. 6.)  Restore's oft-repeated "implausibility" argument is unfounded.

Intuitive's allegations in the case, which must be accepted as true for purposes of this Motion, are that Restore's entire business model is premised on deceiving Intuitive customers into using it for unauthorized service and repairs on da Vinci Systems and instruments.  (CC ¶ 3.)  Although couched as a "plausibility" argument, Restore's argument raises a factual dispute about whether it knowingly misled Intuitive customers or whether it should have been expected to give Intuitive some or all of the profits from its unauthorized activities.  As noted above, those factual questions are inappropriate for resolution at the pleading stage. *See Diamond Resorts*, 2019 WL 3412169, at *7 (rejecting defendant's request to resolve factual disputes "at the motion to dismiss stage").

Although the Court need not reach this issue at this juncture, Restore cannot credibly feign ignorance regarding its obligation to compensate Intuitive for remanufacturing Intuitive-branded instruments and then reselling them to customers—all under the false pretense that Intuitive had authorized the

modifications to its instruments and that FDA clearance was unnecessary.  (*See* Mot. 6; CC ¶¶ 3, 29-47.)  At minimum, Intuitive is entitled to restitution of all profits unjustly generated by Restore's wrongful conduct.  *See Aceto Corp. v. TherapeuticsMD, Inc*., 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) ("[W]hen an entity enriches itself unjustly to the detriment of another . . . [that] entity should be required to make restitution of all the benefits received, retained, or appropriated [even] when . . . the benefit is conferred through an intermediary."); *Williams v. Wells Fargo Bank N.A*., 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (plaintiff adequately pleaded unjust enrichment by alleging defendant was enriched through kickbacks received from a third party as a result of defendant's "wrongful conduct").

## V.       RESTORE ENGAGED IN DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLORIDA LAW.

"To state a claim for Deceptive and Unfair Trade Practices under Florida law, a party must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement." *Third Party*, 492 F. Supp. 2d at 1326. Intuitive's Counterclaims sufficiently pleaded each of these elements.  (CC ¶¶ 31-43, 45-47,  67-69.)  Restore fails to challenge the first two elements, arguing only that Intuitive does not allege that it had suffered "actual damages."  (*See* Mot. 7.) The first two elements are, therefore, conceded for purposes of this Motion.  *See One River*, 2014 WL 11721638, at *2.

With respect to damages, Restore argues that Intuitive allegedly suffered only "consequential damages," which cannot support a FDUTPA claim. (Mot. 7.) Restore again misstates the law. Profits already lost by a business as a result of deceptive and unfair trade practices by a competitor constitute "actual damages" under FDUTPA. *See Global Tech*, 2017 WL 588669, at *9 ("Past lost profits, in turn, appear to be a proper form of 'actual damages' [to support a FDUTPA claim]." (citation omitted)).[6] That is precisely what occurred here: Restore's false and misleading statements caused Intuitive customers to divert service and replacement parts business away from Intuitive (thereby depriving Intuitive of the profits that it would have generated from that segment of its business). (*See* CC ¶¶ 31-43, 45-47, 67-69.)

Similarly, Intuitive has sought injunctive relief under FDUTPA (namely to enjoin any further deceptive and unfair trade practices by Restore). To be entitled to injunctive relief under FDUTPA, Intuitive must show only that it was "aggrieved" by Restore's conduct. *See Wyndham Vacation*, 123 So. 3d at 1152 ("Section 501.211(1), Florida Statutes, permits a claim for injunctive relief by '*anyone aggrieved*' by an unfair or deceptive act, which has occurred, is now

---

[6]   *Accord Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, 2011 WL 13117118, at *7 (N.D. Fla. Oct. 24, 2011) ("[Plaintiff] is not seeking future lost profits, but rather the lost profits that it has already suffered. It would appear that such damages constitute 'actual damages' under FDUTPA.").

occurring, or is likely to occur in the future." (emphasis added)).  Harm to

Intuitive's reputation and customer goodwill, both of which are alleged in the

Counterclaims, constitutes aggrievement for purposes of the injunctive relief that

Intuitive seeks.  *See id.* ("Such conduct could create consumer confusion and

damage [plaintiff's] goodwill, which is actionable under FDUTPA."); *Tracfone*

*Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009)

("Plaintiff has alleged it was aggrieved . . . by pleading that consumer confusion

has been a threat to and undermined the reputation of its business.").

## VI.  RESTORE'S ATTEMPT TO HACK INTUITIVE'S COMPUTER SYSTEM VIOLATED THE COMPUTER FRAUD AND ABUSE ACT.

Intuitive sufficiently pleads a claim that Restore violated the CFAA under 18

U.S.C. § 1030(a), (b).  To state a civil claim under the CFAA, a claimant must

allege that:  (1) the defendant engaged in, or attempted to engage in, misconduct

under Subsection 1030(a) (wherein certain misconduct requires (a) unauthorized

access to a protected computer, (b) an intent to defraud, or (c) intentional conduct);

and (2) the misconduct caused (or in the case of attempt, would have caused, if

completed) one of the harms specified under Subsections 1030(c)(4)(A)(i)(I)-(V).

Relevant to this case, the CFAA prohibits, among other things, the following

misconduct:  (1) obtaining information from a protected computer through

intentional, unauthorized access; (2) intentionally accessing a protected computer

knowingly and with the intent to defraud, obtaining anything of value through said

unauthorized access; and (3) intentionally accessing a protected computer without authorization, causing damage or loss. *Id.* § 1030(a)(2), (4), (5). The CFAA imposes civil liability when the prohibited conduct causes (or in the case of attempt, would have caused, if completed): loss exceeding $5,000 in a one-year period; potential modification or impairment of a person's medical care or treatment; physical injury; or a threat to public health or safety. *Id.* § 1030(g) and 1030(c)(4)(A)(i)(I)-(IV). A protected computer is one used in interstate commerce, *id.* § 1030(e), and the CFAA imposes liability for conspiracy and attempts to commit these prohibited acts. *Id.* § 1030(b).

For example, in *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, the court found the defendant liable for attempted CFAA violations when he "attempted on numerous occasions within a one-year period to intentionally access without authorization [the plaintiff's] protected computers located both within and outside of the United States." 267 F. Supp. 2d 1268, 1322 (S.D. Fla. 2003), *aff'd in part, rev'd in part on other grounds sub nom. Four Seasons Hotels v. Consorcio Barr S.A.*, 138 F. App'x 297 (11th Cir. 2005). Likewise in this case, Intuitive alleges that Restore violated the CFAA by attempting to hack into Intuitive's computer network.

A. Intuitive Pleads The Statutorily Proscribed Misconduct Under Subsections 1030(a)(2), (4), (5) Of The CFAA.

Intuitive pleads that da Vinci Surgical Systems are designed to undergo

periodic preventative maintenance at pre-programmed intervals in order to preserve their safety, integrity, and efficacy.  (CC ¶ 4.)  When the maintenance is due, a "PM Due" message appears on the da Vinci screen.  *Id.*  Intuitive alleges that Restore executive Clif Parker, acting in his capacity as a Restore representative, requested that a former Intuitive employee "hack into [Intuitive's] system to help the 'PM Due' message go away."  (*Id.* ¶¶ 44, 71 (alteration in original).)

B.  Intuitive Pleads That, In Attempting To Access Intuitive's Protected Computer, Restore Acted With An Intent To Defraud.

Intuitive alleges that its system was a protected computer used in interstate commerce; that Parker acted intentionally, with the intent to defraud Intuitive; and that the "PM Due" messages that Restore sought to override are valuable to Intuitive, as they help to ensure that da Vinci Systems are serviced at pre-determined intervals to promote patient safety.  (CC ¶¶ 72-75.)

C.  Intuitive Likewise Pleads The Statutorily-Outlined Harm Required For Civil Actions Under Subsections 1030(g) And 1030(c)(4)(A)(i)(I)-(IV).

Intuitive alleged that, if completed, Restore's attempt to remove the "PM Due" message would confuse customers and disrupt Intuitive's business.  (*Id.*)  Further, Intuitive alleges that Parker's attempted hacking, if completed, "would have caused a loss to Intuitive in excess of the statutorily required amount . . . namely, through removing a message that ensures the proper and quality controlled

27

use of the da Vinci Surgical System." (*Id.* ¶ 76.)  Given that Restore's hacking

attempt sought to bypass FDA-compliant safety measures, Intuitive additionally

pleads potential harm in the form of impairment to medical care or treatment,

physical injury, and/or a threat to public safety.  (*Id.*)

     D. <u>Restore's Challenges To Intuitive's CFAA Claims Are Unavailing</u>.

     Restore contends that it is unclear whether Clif Parker or the former Intuitive

employee used the term "hack." (Mot. 8.)  But the word "hack" itself is not an

element of the claim; thus, it makes no difference whether it was actually used.

(*Supra* Section VI.)  And, even if it were an element, Intuitive specifically alleges

that Parker asked the Intuitive employee to hack Intuitive's system:  "Clif

Parker . . . solicited his assistance to 'hack into [Intuitive's] system to help the PM

message go away.'" (CC ¶ 44, *see id.* ¶ 71.)  That allegation must be taken as true

for purposes of evaluating the pleading, and any ambiguity should be decided in

Intuitive's favor.  *See Pielage*, 516 F.3d at 1284.

     Restore likewise argues that it is not plausible "that a single telephone

conversation of this kind 'constitutes a substantial step toward commission of the

crime." (Mot. 8.)  But the Counterclaims make clear that Parker's requested

hacking **<u>is</u>** the attempt.  *See United States v. Bailey*, 228 F.3d 637, 640 (6th Cir.

2000) (holding that criminal defendant took "substantial step" in attempt to violate

child abuse statute by asking for sexual acts via email).[7]

Restore also argues that the Counterclaims do not explain how Restore would gain access to the robot without the owner's (*i.e.*, the hospital's) consent. (Mot. 8-9.)  Restore misses the point.  The unauthorized access Intuitive alleges is to <u>Intuitive's</u> protected computer system, which maintains contact with da Vinci Surgical Systems (and monitors when preventive maintenance is due).  (CC ¶¶ 4, 44, 71.)  Thus, the CFAA claims are directed at Restore's attempt to access <u>Intuitive's</u> computer system, not a hospital's.[8]

Restore next argues that the Counterclaims fail to explain how Restore, by

---

[7]  Restore cites *United States v. Forbrich*, 758 F.2d 555 (11th Cir. 1985), but *Forbrich* does not stand for the proposition that a single telephone call cannot form the basis for an attempt.  *Forbrich* involved an East German spy attempting to send classified U.S. documents abroad during the Cold War.  *Id.* at 557.  The defendant spy bought the documents from an undercover agent, was arrested before leaving the hotel where the exchange occurred, and later argued he had not yet taken a substantial step.  *Id.*  But even there, the court held that the defendant took a substantial step towards committing the crime by purchasing classified U.S. documents from an undercover agent.  *Id.*  Thus, *Forbrich* does not support Restore's position.

[8]  Restore relies on *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017), for the proposition that it was unaware of any prohibitions in the SLSAs regarding third-party access to da Vinci Surgical Systems.  (Mot. 9.)  Again, Restore misses the point.  The access that gives rise to the CFAA claim is access to Intuitive's computer system, not a hospital's da Vinci Surgical System.  (CC ¶¶ 4, 44.)  *EarthCam* is, therefore, distinguishable because it addressed only the issue of whether using a third party's login credential to access a computer (*i.e.*, voluntarily sharing passwords) was prohibited under the CFAA.  *EarthCam*, 49 F. Supp. 3d at 1231.

its attempts to hack, intended to defraud customers.  (Mot. 9.)  As explained above, the claim is directed to Restore's attempts to gain unauthorized access to Intuitive's protected computer to cause a preventive maintenance message to be overridden on a customer's da Vinci Surgical System.  (CC ¶¶ 4, 44, 71.)  By doing so through illegal hacking, rather than with authorization from Intuitive, Restore was attempting to allow its customer to avoid having to perform required maintenance on its da Vinci Surgical System—without informing either Intuitive or the customer that this activity was being done through illegal access to Intuitive's computer system.  (*Id.* ¶¶ 4, 44, 71-77.)

Finally, Restore argues that Intuitive lacks standing to bring a CFAA claim because Intuitive suffered no harm (including the statutorily required harm under § 1030(g)).  (Mot. 9-10.)  Restore misunderstands the law.  As in *Four Seasons*, Intuitive alleged that Restore's attempted hacking caused or, if completed, would have caused, the harm outlined in Subsections 1030(c)(4)(i)(I)-(V) of the CFAA—namely:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
>
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person; [and]

(IV) a threat to public health or safety.

*Id.*; (*see* CC ¶¶ 76-77.)

As set forth in the Counterclaims, the "PM Due" message performed an important safety function, by notifying customers when preventive maintenance was due.  (CC ¶¶ 4, 44, 71.)  By attempting to remove that message and encouraging da Vinci Surgical Systems to be operated without receiving required maintenance, Restore, if successful, would have caused the statutorily proscribed harm, including: potentially modifying or impairing patients' medical treatment or care, causing physical injury to patients, and damaging the public's confidence in Intuitive products.  (*Id.* ¶¶ 71-77.)

## CONCLUSION

Based on the foregoing, Intuitive respectfully requests that the Court deny Restore's Motion in full.  Alternatively, if the Court grants any portion of the Motion, Intuitive requests leave to amend.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Intuitive certifies this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because it contains 7,510 words, excluding the parts exempted by said Local Rule.

Dated:  October 29, 2019                    Respectfully submitted,

                                            /s/   Allen Ruby
                                            ALLEN RUBY (*Pro Hac Vice*)
                                            LANCE A. ETCHEVERRY (*Pro Hac
                                            Vice Admission to be applied for*)
                                            SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP
                                            525 University Avenue
                                            Palo Alto, CA 94301
                                            Tel: (650) 470-4500
                                            allen.ruby@skadden.com
                                            lance.etcheverry@skadden.com

                                            KAREN HOFFMAN LENT (*Pro Hac
                                              Vice*)
                                            MICHAEL H. MENITOVE (*Pro Hac
                                              Vice Admission to be applied for*)
                                            SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP
                                            4 Times Square
                                            New York, NY 10036
                                            Tel: (212) 735-3000
                                            karen.lent@skadden.com
                                            michael.menitove@skadden.com

                                            DAVID L. McGEE
                                            Fla. Bar No. 220000
                                            BEGGS & LANE, RLLP
                                            501 Commendencia Street
                                            Pensacola, FL 32502
                                            Telephone: (850) 432-2451
                                            dlm@beggslane.com

                                            Counsel for Intuitive Surgical, Inc.

Pursuant to Local Rule 5.1(F)(1)(a), a certificate of service is not required.