UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RESTORE ROBOTICS, LLC,**
and **RESTORE ROBOTICS REPAIRS, LLC**,

    Plaintiffs,

v.                                                                    Case No. 5:19cv55-TKW-MJF

**INTUITIVE SURGICAL, INC.,**

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS

This case is before the Court on Plaintiffs' motion to dismiss Defendant's counterclaims (Doc. 38) and Defendant's response in opposition (Doc. 41). No hearing is necessary to rule on the motion, and for the reasons that follow, the Court finds that the motion is due to be granted in part and denied in part.

### Background

Defendant manufactures and sells surgical robots and related instruments, including the da Vinci robot system and the EndoWrist instruments used with the system (collectively "Defendant's robots"). Defendant sells its robots to hospitals and surgical centers around the world and it competes with Plaintiffs in the aftermarkets for the maintenance and repair of the robots.

Plaintiffs filed an eight-count amended complaint (Doc. 14) alleging that Defendant uses is monopoly power in the surgical robot market to acquire and maintain monopoly power in the maintenance and repair aftermarkets in violation of sections 1 and 2 of the Sherman Act.[1]  Defendant responded with a motion to dismiss, which the Court denied "except insofar as the alleged section 2 claims are based in whole or in part on Defendant's refusal to provide Plaintiffs with the distributor's toolkit or usage counter" for Defendant's robots.  *See* Doc. 31.

Defendant thereafter answered the amended complaint and asserted seven counterclaims against Plaintiffs.  *See* Doc. 32.  The counterclaims allege unfair competition under the Lanham Act[2] and Florida common law (Counts One and Two); tortious interference with contract and with advantageous business relationship / prospective economic advantage under Florida common law (Counts Three and Four); unjust enrichment under Florida common law (Count Five); violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[3] (Count Six); and violation of the Computer Fraud and Abuse Act (CFAA)[4] (Count

---

[1] 15 U.S.C. §§1, 2.

[2] 15 U.S.C. §1051 *et seq.*

[3] §§501.201 - .213, Fla. Stat.

[4] 18 U.S.C. §1030.

Seven). Plaintiffs responded to the counterclaims with a motion to dismiss, which has been fully briefed and is ripe for a ruling.

## Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, mere "[t]hreadbare recitals of the elements of a cause of action" are not sufficient to state a claim. *Id.*; *see also Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (explaining that the Court is not required to accept as true "the labels and legal conclusions in the complaint"). In ruling on the motion to dismiss, the Court only considers the allegations in the counterclaims and any exhibits attached to them and any documents incorporated into them by reference. *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 & n.7 (11th Cir. 2006). The Court accepts the counterclaims' well-pleaded factual allegations as true and construes them in the light most favorable to Defendant. *Iqbal*, 556 U.S. at 679; *Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 874 (11th Cir. 2014).

**Analysis**

<u>False and/or Misleading Statements (Counts One – Six)</u>

Plaintiffs argue that Counts One through Six are all due to be dismissed insofar as they are based on alleged false and/or misleading statements. Although these counts are based on different legal theories, the parties agree that they are subject to the same legal standard for false and/or misleading statements.[5] *See Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) ("The legal standards for Florida statutory and common law claims of . . . unfair competition . . . are the same as those for federal claims of . . . unfair competition.").

The crux of Counts One through Six is that Plaintiffs made false and/or misleading statements that had the capacity to deceive customers in the aftermarkets in which the parties compete. Specifically, Defendant claims that Plaintiffs misrepresented themselves as (1) authorized by Defendant to provide products and services related to Defendant's robots, (2) qualified to provide such products and services without requiring 510(k)[6] clearance from the Food and Drug Administration (FDA), and (3) able to save customers money by servicing Defendant's robots.

---

[5] The tortious interference counts rely on false and/or misleading statements because Defendant proceeds under a theory of improper methods rather than improper motive. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004).

[6] §510(k) of the Food, Drug, and Cosmetic Act (codified at 21 U.S.C. §360(k)).

4

On the first point, Plaintiffs argue that they never falsely stated that they *were* authorized to service Defendant's robots; however, as Defendant persuasively explains (Doc. 41, at 7-12), a technically true statement can still be misleading in context. Here, the Court agrees with Defendant that the counterclaims plausibly allege that Plaintiffs' failure to state that they *were not* authorized to service Defendant's robots, when viewed in context, had at least the potential to mislead consumers into thinking that Plaintiffs were authorized by Defendant to service its robots. Although Plaintiffs may be correct that hospitals are "sophisticated and frequent consumers of medical devices" who would not be misled by their failure to explicitly state that they were not authorized by Defendant to service its robots (Doc. 38, at 5), that is a factual question that cannot be resolved on a motion to dismiss.

On the second point, Plaintiffs argue that their statement that they are qualified to service Defendant's robots is true, as is the statement that their service "violates none of the standards that could necessitate a 510K [sic]." They further argue that any allegation that the 510(k) statement is false is preempted by the Food, Drug, and Cosmetic Act (FDCA) because "[t]he Lanham Act claim cannot require the court to interpret or apply the FDCA to determine whether clearance was required." Doc. 38, at 5 (citing *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018)). In response, Defendant argues that Plaintiffs are not qualified to work on its robots and the allegations of the falsity of Plaintiffs' 510(k) statement are not

5

preempted because "courts can review a claim that a competitor falsely represented its product as FDA approved [and] claims that involve whether a product's advertising misleads consumers[.]" Doc. 41, at 16.

The Court agrees with Plaintiffs that their 501(k) statement cannot be reasonably read to represent that their services are FDA approved; rather, the statement represents that FDA approval—510(k) clearance in particular—is not required. The FDA may decide that this statement is false, but the Court will not do so because it agrees with Plaintiffs that determining the truth or falsity of the statement would require it to "make determinations . . . more properly within the exclusive purview of the FDA" and to "substitute its own judgment . . . for the FDA's judgment" such that Defendant's counterclaims would be impermissibly "premised on enforcement determinations that the FDA and other regulatory agencies did not themselves make." *Hi-Tech Pharm.*, 910 F.3d at 1199; *see also Belcher Pharm., LLC v. Hospira, Inc.*, 2018 U.S. Dist. LEXIS 225600, at *9 (M.D. Fla. Apr. 9, 2018) ("A Court cannot hear a Lanham Act claim that would require litigation of an alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was a violation.") (alterations and internal quotation marks omitted). Although the allegation that the statement is false is preempted (and, thus, is due to be dismissed), the extent to which Plaintiffs are qualified to repair Defendant's robots regardless of the FDA issue is a factual issue that cannot be

resolved on a motion to dismiss. *See Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) ("At the pleading stage, [a claimant] is not required to submit [its] evidence. It is sufficient for [the claimant] to allege that the statements are deceptive.").

On the third point, the Court agrees with Defendant that the counterclaims plausibly allege that Plaintiffs' statements that their services can save customers money had the potential to mislead customers because the statements fail to mention the potential financial consequences that unauthorized work on the robots might have on the customers. Thus, the counterclaims are not due to be dismissed on this issue.

Accordingly, for the reasons stated above, the motion to dismiss Counts One through Six for failure to adequately allege false and/or misleading statements is due to be denied with the exception of the claims based on the 510(k) statements.

### Use in Commerce (Count One)

Plaintiffs argue that Count One fails to adequately allege that their conduct satisfies the "use[] in commerce" element of a Lanham Act claim under 15 U.S.C. §1125(a)(1) (subjecting to civil liability "[a]ny person who . . . **uses in commerce** [certain false and/or misleading statements]" (emphasis added)). Doc. 38, at 6. The Court disagrees.

The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. §1127. Under the Supreme Court's Commerce Clause jurisprudence, Congress may lawfully regulate as commerce

> three categories of activity . . . : (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce . . . so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal.

*Taylor v. United States*, 136 S. Ct. 2074, 2079 (2016) (citation and internal quotation marks omitted).

Plaintiffs cite a non-binding case from the Ninth Circuit to argue that because they are merely repairing the robots at the owners' requests, their marketing materials are not being "use[d] in commerce." Doc. 38, at 6 (citing *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002)). Defendant responds that Plaintiffs' repairs effectively change its robots into a different product because "after [Plaintiffs] modif[y] and remanufacture[] da Vinci instruments, [the instruments] retain [Defendant]'s name and trademarks, but lack the quality, safety, and precision of a[] [Defendant]-manufactured, FDA-cleared surgical device," thereby amounting to a use in commerce. Doc. 41, at 14. Defendant further argues that the allegation that Plaintiffs publish their marketing materials throughout the United States and advertise their products and services

8

through a publicly available website suffice to meet the Lanham Act's "use[] in commerce" requirement. *Id.* at 12-13; *see also Lancaster v. Bottle Club, LLC*, 2017 U.S. Dist. LEXIS 109230, at *13 (M.D. Fla. July 14, 2017) (recognizing that use of the internet to advertise to out-of-state individuals amounts to use in interstate commerce).

The Court agrees with Defendant that given the reach afforded to "commerce" under the Lanham Act (and to Congress under the Constitution), the counterclaims adequately allege the "use[] in commerce" element. Accordingly, the motion to dismiss Count One is due to be denied.

## Identifiable Customers (Counts Three and Four)

Plaintiffs argue that Counts Three and Four are due to be dismissed because those counts do not identify the customers whose relationship with Defendant was allegedly interfered with by Plaintiffs' actions. The Court agrees with respect to Count Four, but disagrees with respect to Count Three.

Counts Three and Four allege two related but distinct torts under Florida common law: tortious interference with contract and tortious interference with advantageous business relationship / prospective economic advantage. The elements of these torts are as follows:

> To state a claim for tortious interference with a contractual relationship under Florida law, a plaintiff must allege: (1) the existence of an enforceable contract, (2) the defendant's knowledge of that contract, (3)

9

> an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages.
>
> To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: (1) the existence [of] a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship.

*Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007) (citations and internal quotation marks omitted).

The Florida Supreme Court has held that to satisfy the first element of tortious interference with a business relationship, the claimant must allege a relationship with specific, identifiable customers rather than the public in general. *Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1994) (citing *S. Alliance Corp. v. Winter Haven*, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)). Tortious interference with contract has the same requirement (to allege identifiable contracting parties) by virtue of the plaintiff's need to support the existence of the enforceable contract with sufficient factual allegations. *See Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976) ("[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship.").

Here, Defendant adequately alleges that it has contractual agreements with its existing customers that prohibit repair, refurbishment, or reconditioning of

10

Defendant's robots without Defendant's approval and that Plaintiffs knowingly and intentionally interfered with those contractual relationships by inducing the customers to allow Plaintiffs to perform unauthorized work on Defendant's robots. These allegations are sufficient to allege a claim for tortious interference with a contract. Thus, the motion to dismiss Count Three is due to be denied.[7]

By contrast, Defendant has not adequately alleged a claim for tortious interference with advantageous business relationships / prospective economic advantage. Aside from stating in a conclusory manner that it has "business relationships with medical facilities throughout the country," Doc. 32, at 49 (¶61), Defendant does not provide any detail about what these relationships are, how they are different from the contractual relationships at issue in Count Three, and how Plaintiffs interfered with the relationships. Indeed, because Plaintiffs' business is robot repair (not robot sales), it is difficult to conceive of any type of non-contractual relationship between Defendant and the customers who own Defendant's robots (and presumably have agreed to service them only with Defendant) with which Plaintiffs could be interfering. Accordingly, Count Four is due to be dismissed.

---

[7] The Court has not overlooked Plaintiffs' argument that Defendant did not identify the specific customers that were induced to switch their repair business to Plaintiffs through the allegedly false and misleading statements. However, that level of detail is not required at this stage of the proceeding. *See Total Mktg. Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, 2012WL 33150, at *3 (M.D. Fla. Jan. 6, 2012).

Knowledge of Benefit Conferred (Count Five)

Plaintiffs allege that the unjust enrichment claim in Count Five is due to be dismissed because it fails to allege what benefit was conferred on them by Defendant. The Court agrees.

To state a claim for unjust enrichment under Florida law, the plaintiff must allege: "(1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Vibo Corp. v. US Flue-Cured Tobacco Growers*, 762 F. App'x 703, 705 (11th Cir. 2019) (quoting *Fito v. Attorneys' Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d DCA 2011)).

As the Court understands this claim, the benefit to which Defendant is referring in Count Five is its "stellar reputation in the industry" (Doc. 32, at 49 (¶64)) that Plaintiffs allegedly received by misleading customers to believe that they were authorized to service Defendant's robots; however, it is unclear how Defendant *conferred* that benefit on Plaintiffs. Indeed, the crux of the counterclaims is that Plaintiffs appropriated that benefit *without Defendant's approval* by making false and/or misleading statements to consumers. *See Geodata Sys. Mgmt. v. Am. Pac. Plastic Fabricators, Inc.*, 2015 U.S. Dist. LEXIS 193679, at *17 n.55 (C.D. Cal. Sept. 21, 2015) ("[Plaintiff]'s unfair competition, infringement[,] and tortious


interference claims involve defendants' allegedly unfair interference with [plaintiff]'s goodwill, customer base[,] and sales.  Because these are not benefits [plaintiff] conferred on defendants, but rather opportunities and profits defendants allegedly stole from [plaintiff], they cannot form the basis for an unjust enrichment claim.").  *But see Taylor v. Trapeze Mgmt., LLC*, 2018 U.S. Dist. LEXIS 50972, at *23-24 (S.D. Fla. Mar. 26, 2018); *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, 2013 U.S. Dist. LEXIS 201882, at *27-28 (S.D. Fla. Aug. 9, 2013).  Although these actions might give rise to other claims, they do not state a claim for unjust enrichment.  *See Gibson v. BTS North, Inc.*, 2018 U.S. Dist. LEXIS 24132, at *31-32 (S.D. Fla. Feb. 14, 2018) ("I am not convinced that the circumstances are such in this case that it would be inequitable for [d]efendants to retain this alleged received benefit, especially where [p]laintiffs will receive compensation through at least two other claims . . . for the exact same harm.").  Accordingly, Count Five is due to be dismissed.

<u>Actual Versus Consequential Damages (Count Six)</u>

Plaintiffs argue that Defendant has not adequately alleged a basis to recover monetary damages under FDUTPA.  *See* Doc. 38, at 6.  The Court disagrees.

FDUTPA allows for declaratory and injunctive relief under §501.211(1), Fla. Stat., and monetary damages under §501.211(2).  Monetary damages are limited to "actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

§501.211(2), Fla. Stat.  In Count Six, Defendant seeks both injunctive relief and monetary damages.  *See* Doc. 32, at 50 (¶69) ("[Plaintiffs'] unfair and deceptive acts and practices have caused significant **harm, both monetary and irreparable**, to [Defendant].") (emphasis added); *see also id.* at 52 (¶80); Doc. 41, at 24.

A claim for monetary damages under FDUTPA has three elements: "(1) a deceptive act or unfair practice[,] (2) causation[,] and (3) actual damages." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).  The surviving allegations concerning Plaintiffs' false and/or misleading statements suffice to satisfy the first element, and it is plausible that such statements could cause harm to Defendant's business, satisfying the second.  Plaintiffs focus on the types of harm that Defendant alleges it suffered, and challenge its ability to show actual, as opposed to consequential, damages.  Doc. 38, at 8.  Although future lost profits are not actual damages under FDUTPA, past lost profits are, and Defendant alleges past lost profits.  *See Glob. Tech LED, Ltd. Liab. Co. v. HiLumz Int'l Corp.*, 2017 U.S. Dist. LEXIS 20512, at *25 (M.D. Fla. Feb. 14, 2017) ("Past lost profits . . . appear to be a proper form of 'actual damages.'"); *see also id.* at 25 n.15.  Accordingly, the motion to dismiss Count Six is due to be denied.

CFAA (Count Seven)

Plaintiffs argue that Defendant failed to allege a viable claim under the CFAA because, among other things, Count Seven fails to allege that Defendant suffered damage as a result of Plaintiffs' alleged attempt to violate the CFAA. See Doc. 38, at 10. The Court agrees.

Although the CFAA is chiefly a criminal statute, it authorizes "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" provided that "the conduct [complained of] involves 1 of the factors set forth in subclause (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. §1030(g). The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information," §1030(e)(8), and defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service," §1030(e)(11).

Here, Defendant does not allege that it suffered any of these types of harm; rather, it alleges that it "would have" suffered them had Plaintiffs succeeded in their attempt to engage in prohibited conduct, Doc. 32, at 51 (¶76), and that this chance

of harm is all the law requires to state a claim under §1030(g), Doc. 41, at 30-31. The Court disagrees. By its plain language, §1030(g) requires the claimant to have "suffer[ed] damage or loss," not just to have had the chance of doing so. The harm suffered may have occurred as a result of conduct prohibited under §1030(a) or actions taken in furtherance of a conspiracy or attempt to engage in such conduct (made violations under §1030(b)), but the harm must have actually occurred.

The case that Defendant cites on the issue—*Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1322-24 (S.D. Fla. 2003), *aff'd in part, rev'd in part on other grounds sub nom. Four Seasons Hotels v. Consorcio Barr S.A.*, 138 F. App'x 297 (11th Cir. 2005)—shows how it is possible to suffer actual harm by reason of an attempt to engage in prohibited conduct. In *Four Seasons*, the defendant attempted to gain prohibited access to the plaintiffs' computers. *Id.* at 1322. The actions taken in the attempts involved "spoofing" the plaintiffs' IP addresses. *Id.* The court held that the spoofing caused damage within the meaning of the statute because "[the defendant]'s spoofing, which [wa]s analogous to forgery, impaired the integrity of [the plaintiffs'] computer systems." *Id.* Here, unlike in *Four Seasons*, Defendant does not allege that Plaintiffs engaged in conduct like spoofing that, it would be plausible to say, actually impaired the integrity of the computer systems in Defendant's robots.

16

Accordingly, because Defendant does not allege that it suffered damage or loss by reason of Plaintiffs' alleged attempts to violate the CFAA, Count Seven fails to state a plausible claim for relief and is due to be dismissed.

## Leave to Amend

At the end of its response in opposition to the motion to dismiss, Defendant requests leave to amend its counterclaims if the Court grants any portion of the motion to dismiss. It is unlikely that Defendant will be able to cure all of the pleading deficiencies discussed above, but it may be possible for it to cure some of them. Defendant has not previously amended the counterclaims and the Court does not see how Plaintiffs would be prejudiced if Defendant was given one (and only one) opportunity to do so. Accordingly, the Court will grant Defendant's request for leave to file amended counterclaims. *See* Fla. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

## Conclusion

In sum, for the reasons stated above, it is **ORDERED** that

1. Plaintiffs' motion to dismiss (Doc. 38) is **GRANTED in part**, and the following counts in Defendant's counterclaims are **DISMISSED without prejudice**: Counts Four, Five, and Seven, and Counts One through Six to the extent those counts are based on Plaintiffs' statement that "[their] service violates none of the standards that could necessitate a 510K."

2. In all other respects, the motion to dismiss is **DENIED**.

3. Within 14 days from the date of this Order, Defendant may file amended counterclaims curing the pleading deficiencies discussed in this Order if it can do so in good faith.

**DONE and ORDERED** this 14th day of November, 2019.

*T. Kent Wetherell, II*

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**