IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS
LLC,

                Plaintiffs,

v.

INTUITIVE SURGICAL, INC.,

                Defendant.

Civil Case No. 5:19-cv-00055-MCR-MJF

**PLAINTIFFS RESTORE ROBOTICS LLC AND
RESTORE ROBOTICS REPAIRS LLC'S ANSWER TO
DEFENDANT'S AMENDED COUNTERCLAIMS**

Pursuant to Fed. R. Civ. Proc. 12(a)(1)(B) and (4)(B), Plaintiffs Restore Robotics LLC and Restore Robotics Repair LLC ("Restore" collectively) hereby file their Answer to Defendant's Counterclaims [49]. Plaintiffs generally deny all the allegations except those specifically admitted in the paragraphs below.

## INTRODUCTION

1.    Denied.

2.    Restore admits that Intuitive markets the da Vinci Surgical System and associated instruments and accessories. Restore admits that Intuitive has received clearance from the United States Food and Drug Administration to market and sell

1

the da Vinci Surgical System in the United States.  Restore admits that Intuitive prohibits customers by contract from modifying, disassembling, reverse engineering, or altering the da Vinci Surgical System or its instruments or accessories.  Restore admits that Intuitive limits its obligations to provide service on the da Vinci Surgical System to customers by contract where installation, repair, or adjustments have been made by the customer or a third party without approval from Intuitive.  Restore admits that Intuitive prohibits at least some customers by contract from repairing, refurbishing, or reconditioning their instruments without approval from Intuitive.  Restore otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.

3.     Restore admits that it has built up a business by acting in a manner that suggests it is qualified to service da Vinci surgical devices.  Restore admits that it acts in a manner to suggest that it is qualified to provide products and services related to Intuitive systems and instruments and able to save customers money by servicing the customers' Intuitive systems and instruments.  Restore denies the remainder of the allegations in Paragraph 3.

4.     Denied.

5.     Restore admits that it returns serviced EndoWrist instruments to customers with the Intuitive trademark "da Vinci S."  Restore denies the remainder of the allegations in Paragraph 5.

2

6.  Denied.

7.  Restore admits that the FDA issued guidance on deciding when to submit a 510(k) software change to an existing device on October 25, 2017 and that Restore knew about this guidance.  Restore denies the remainder of the allegations in Paragraph 7.

8.  Restore admits that customers who rely on Restore's statements and actions when assessing their own liability risks would reasonably expect Restore to have applied FDA's guidance or conducted another proper analysis before telling customers that no such clearance was necessary.  Restore denies the remainder of the allegations in Paragraph 8.

9.  Denied.

10.  Denied.

## PARTIES

11.  Admitted.

12.  Admitted.

## JURISDICTION AND VENUE

13.  Admitted.

14.  Admitted.

## GENERAL ALLEGATIONS

**I.      Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Section Heading I.**

15.    Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations that Intuitive designs or manufactures da Vinci Surgical Systems.  Restore admits the remainder of the allegations in Paragraph 15.

16.    Admitted.

17.    Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations that Intuitive manufactures the instruments and accessories customized for use with da Vinci Surgical Systems.  Restore admits the remainder of the allegations in Paragraph 17.

18.    Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations that most surgical instruments are designed to be reused for a defined number of procedures to ensure that they meet exacting performance specifications.  Restore admits the remainder of the allegations in Paragraph 18.

19.    Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19.

20.    Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20.

4

**II.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Section Heading II.**

21.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21.

22.     Admitted.

23.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations that all of Intuitive's current products are Class II medical devices.  Restore admits the remainder of the allegations in Paragraph 23.

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Restore denies that remanufacturing includes the service or repair of medical devices that does not significantly change the device's performance or safety specifications, or its intended use.  Restore denies that remanufacturing includes re-setting an instrument's counter for further uses of the device beyond its original design and placing it back in service with the customer.  Restore admits the remainder of the allegations in Paragraph 29.

30.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30.

31.     Restore admits that the 510(k) submitted to the FDA on March 28, 2014 lists 24 instruments and 12 accessories for the da Vinci Xi and states that the instruments are "reusable" and "programmable with a maximum number of surgical procedures based on life testing.  Restore denies the remainder of the allegations in Paragraph 31.

32.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32.

**III.   Restore admits that Intuitive offers maintenance services and replacement of instruments and accessories to its customers.  Restore denies the remainder of the allegations in Section Heading III.**

33.     Restore admits that Intuitive has a network of field service engineers. Restore admits that Intuitive maintains relationships with various distributors. Restore admits that Intuitive offers services for customers, including installation, repair, and maintenance.  Restore lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 33.

34.     Restore admits that hospitals purchase replacement instruments and accessories.  Restore admits that Intuitive offers maintenance services for the da

Vinci Surgical System.  Restore lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 34.

**IV.     Denied.**

35.     Denied.

**A.     Denied.**

36.     Restore admits that Restore services da Vinci Surgical Systems and EndoWrist instruments and that Restore's technicians are qualified to perform service on Intuitive devices.  Restore denies the remainder of the allegations in Paragraph 36.

37.     Restore admits that its website has included statements that it "can provide routine preventative maintenance programs and spot repairs on your surgical robots" and that the preventative maintenance diagnostic testing is a full spectrum review of the da Vinci robotics functionality."  Restore denies the remainder of the allegations in Paragraph 37.

38.     Restore admits Exhibit 2 was created by Restore.  Restore denies the remainder of the allegations in Paragraph 38.

**B.     Denied.**

39.     Restore admits that Exhibit 1 was created by Restore and includes statements that it "has more than 2 years of history with repairing EndoWrist instruments with well over 1500 repairs resulting in No adverse events and No

communications issues between the repaired instrument and the Da Vinci system."
Restore denies the remainder of the allegations in Paragraph 39.

40.    Restore admits that it has referred to the da Vinci Surgical System and included photographs of da Vinci Surgical Systems on its website.  Restore admits that it has stated on its website that the da Vinci Surgical System is marketed by Intuitive and that Restore is not affiliated with Intuitive.   Restore denies the remainder of the allegations in Paragraph 40.

41.    Restore admits that its website has included images of the da Vinci Surgical Systems and EndoWrist instruments.  Restore admits that it has stated on its website that the da Vinci Surgical System is marketed by Intuitive and that Restore is not affiliated with Intuitive.   Restore denies the remainder of the allegations in Paragraph 41.

42.    Restore admits that some of its marketing materials have included images of the da Vinci Surgical Systems and EndoWrist instruments.  Restore admits that some of marketing materials have stated that "Restore Robotics is not affiliated with Intuitive Surgical, Inc."  Restore denies the remainder of the allegations in Paragraph 42.

43.    Restore admits that it does not remove Intuitive's trademarks after servicing da Vinci Surgical Systems or EndoWrist instruments.  Restore admits that

it received the cease-and-desist letter in Exhibit 3. Restore denies the remainder of the allegations in Paragraph 43.

**C.    Denied.**

44.    Restore admits that the FDA issued guidance on deciding when to submit a 510(k) software change to an existing device on October 25, 2017 and that Restore knew about this guidance.  Restore denies the remainder of the allegations in Paragraph 44.

45.    Denied.

46.    Restore admits that the FDA empowers manufacturers and third parties to determine, in the first instance, whether 510(k) clearance is needed and that companies have access to guidance issued by the FDA in making that decision. Restore denies the remainder of the allegations in Paragraph 46.

47.    Restore admits that the FDA states in the guidance on deciding when to submit a 510(k) software change to an existing device issued on October 25, 2017 that "For those circumstances where the proposed change is not addressed in this guidance, in Deciding When to Submit a 510(k) for a Change to an Existing Device, or in a device-specific guidance, manufacturers are encouraged to contact the appropriate office in CDRH or CBER." Restore denies the remainder of the allegations in Paragraph 47.

48.    Denied.

9

49.    Denied.

**V.    Denied.**

50.    Restore admits that Intuitive's Sales, License and Service Agreements prohibit use of instruments beyond the maximum number of uses, as is specified in the documentation accompanying the instrument.  Restore denies the remainder of the allegations in Paragraph 50.

51.    Restore lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 51.

52.    Restore lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 52.

53.    Restore lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in Paragraph 53.

54.    Denied.

55.    Restore admits that Restore executive Clif Parker had a telephone conversation with Ben Lipson to ask if there was a way to remove the preventative maintenance message from the da Vinci Surgical System for potential customers interested in hiring Restore for robot service.  Restore denies that Mr. Parker sought to hack into Intuitive's system, denies that any of its employees have shown a willingness to engage in criminal behavior, and denies the remainder of the allegations in Paragraph 55.

**VI.    Denied.**

    56.    Denied.

    57.    Denied.

    58.    Denied.

    59.    Denied.

<u>**COUNT ONE**</u>
**(Federal Unfair Competition – Lanham Act)**

    60.    Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

    61.    Denied.

    62.    Denied.

    63.    Admitted.

    64.    Denied.

<u>**COUNT TWO**</u>
**(Federal Unfair Competition – Lanham Act)**

    65.    Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

    66.    Denied.

    67.    Denied.

    68.    Admitted.

    69.    Denied.

## COUNT THREE
**(Common Law Unfair Competition)**

70.     Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

71.     Restore admits it is a competitor of Intuitive.   Restore denies the remainder of the allegations in Paragraph 71.

72.     Denied.

## COUNT FOUR
**(Common Law Tortious Interference With Contract)**

73.     Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

74.     Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations that Intuitive had contractual relationships with its customers.   Restore denies the remainder of the allegations in Paragraph 74.

75.     Denied.

76.     Denied.

## COUNT FIVE
**(Florida Deceptive And Unfair Trade Practices Act –
Fla Stat. §§ 501.201 To 501.213)**

77.     Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

78.     Denied.

79.   Denied.

80.   Denied.

## COUNT SIX
### (Computer Fraud And Abuse Act, 18 U.S.C. §§ 1030(a), (b))

81.   Restore incorporates its answers to the allegations in the previous and subsequent paragraphs of the Counterclaims.

82.   Denied.

83.   Restore lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 83.

84.   Denied.

85.   Denied.

86.   Denied.

87.   Denied.

88.   Denied.

89.   Denied.

## JURY TRIAL

90.   Restore admits that Intuitive requests a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

91.   Denied.

## AFFIRMATIVE DEFENSES

Restore affirmatively states the following defenses:

### <u>FIRST AFFIRMATIVE DEFENSE</u>

The Counterclaims fail to state a claim upon which relief can be granted.

### <u>SECOND AFFIRMATIVE DEFENSE</u>

The Counterclaims are barred in whole or in part by the defense of fair use.

### <u>THIRD AFFIRMATIVE DEFENSE</u>

The Counterclaims are barred in whole or in part by the doctrine of unclean hands.

### <u>FOURTH AFFIRMATIVE DEFENSE</u>

The Counterclaims are barred in whole or in part by the illegality of Defendant's contracts.

### <u>FIFTH AFFIRMATIVE DEFENSE</u>

The Counterclaims are barred in whole or in part by Defendant's restraints of trade.

### <u>SIXTH AFFIRMATIVE DEFENSE</u>

The Counterclaims are barred in whole or in part because Defendant's contracts are contrary to public policy.

## SEVENTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part because Restore had justification for its actions under competitor's privilege.

## EIGHTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part by Defendant's failure to mitigate damages.

Respectfully submitted on December 12, 2019.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 Telephone
(678) 868-2021 Fax
jeff@berhold.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 5.1(F)(1)(a), a certificate of service is not required.