## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

                 Plaintiffs,

    v.

INTUITIVE SURGICAL, INC.,

                 Defendant.

INTUITIVE SURGICAL, INC.,

                 Counterclaimant,

    v.

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

                 Counterclaim Defendants.

Civil Case No. 5:19-cv-55-TKW-MJF

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT AND ADD PLAINTIFF

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309

William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401

COUNSEL FOR PLAINTIFFS

March 23, 2021

Pursuant to Doc. 69, Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC (collectively "Restore") hereby reply to the motion for amending the complaint. Restore respectfully asks the Court to grant leave to amend the complaint to add Clif Parker Robotics LLC ("CPR")[1] and the factual allegations without the Oklahoma state law claims. A revised Second Amended Complaint ("SAC") is attached as Exhibit 1. The Section 203(C) claims have been removed. In its filed response, Intuitive does not object to the addition of CPR or the factual allegations. Restore has already included documents relating to CPR in its productions. The parties have already produced documents relating to the events at Hillcrest. In fact, the new factual allegations are based on those documents.

The parties also agree that the Section 203(C) claims raise a "novel or complex issue of State law" under 28 U.S.C. § 1367(c)(1). See Doc. 71 at 8. Instead of simply adopting a baby Sherman Act, which would incorporate the essential facilities doctrine under the federal case law interpreting Section 2, Oklahoma appears to be the only state to have created a separate statutory claim for access to an essential facility under Section 203(C) of the Oklahoma Antitrust Reform Act of 1998.

---

[1] CPR would be added to "the existing claims under the Sherman Act based on alleged facts occurring after the filing of the FAC regarding the purchase and sale of unused EndoWrist surgical robot instruments. (SAC ¶ 101.)" Doc. 69 at 2.

Therefore, the district court would have the discretion to accept or decline jurisdiction after the filing of an SAC on the Section 203(C) claims after weighing the factors of "judicial economy, convenience, fairness, and comity." *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015).   In addition to the question of comity, the Court has noted the new claims in the proposed SAC could "further delay this two-year-old case."  Doc. 69 at 2.

In fact, delay now seems likely if the SAC included those state law claims. Intuitive has still not substantially completed production on outstanding document requests that have been pending for well more than six months on the existing Section 1 and Section 2 claims in the First Amended Complaint.   As noted in the motion on February 19, "Restore does not want the Second Amended Complaint to lead to any further extensions of the case schedule."  Doc. 67 at 1 n.1.  More than 30 days later, the introduction of the Section 203(C) claims would indeed put that schedule in jeopardy.   The Section 203(C) claims would require discovery – documents and then depositions – on the reasonable terms for access to the Distribution Toolkit and the Usage Counter.  Fact discovery closes on May 28.  For that reason, Restore has proposed the revised SAC to Intuitive.

While Intuitive objects to the exercise of jurisdiction over the Section 203(C) claims in the originally proposed SAC, Intuitive does not agree to the revised SAC. The parties have conferred on the issue.   Intuitive first wants the Court to rule on

whether Restore has adequately alleged claims under Section 203(C) of the Oklahoma Antitrust Reform Act. If the Court rules against Intuitive on how the Oklahoma state statute should be interpreted under the law of the Tenth Circuit, Intuitive then wants the Court to decline jurisdiction because there is a novel or complex issue of Oklahoma state law. Therefore, this reply addresses the question of whether the originally proposed SAC adequately alleges Section 203(C) essential facility claims.

**The SAC Adequately Alleges Section 203(C) Essential Facility Claims.**

The Tenth Circuit has never ruled that federal antitrust law would dictate the viability of Section 203(C). Section 203(C) provides a separate <u>statutory</u> claim for access to an essential facility. *Green Country Food Mkt., Inc. v. Bottling Grp.*, LLC, 371 F.3d 1275, 1278, 1281 (10th Cir. 2004). In its order, the Court "questions whether Plaintiffs can state a claim under the Oklahoma statute when they cannot state a claim under federal antitrust law." Doc. 69 at 3.

That is an open question for a variety of reasons. Oklahoma created a separate statutory claim for access to essential facilities. There is no exception in the state statute for proprietary information or technology. Nor is there such an exception for proprietary information or technology under the federal essential facilities doctrine as adopted and applied in the Tenth Circuit.

First, the Oklahoma legislature, which was presumably aware that the Tenth Circuit expressly adopted the essential facility doctrine as a basis for liability of a monopolization claim under Section 2 of the Sherman Act in 1984,[2] elected to create a separate claim by statute for access to an essential facility in 1998.  Compare Okla. Stat. Ann. 203(B) (monopolization) with Okla Stat. Ann. 203(C) (access to essential facility).  In Oklahoma, it is not a doctrine.  It is a statute.

It is one thing to seek consistency in concepts like defining the relevant market or monopoly power under the state and federal statutes.  It is another thing altogether to believe that the Oklahoma legislature intended to allow the federal courts to abrogate the separate state statutory claim for access to an essential facility.  If it had intended to do so, it would not have enshrined a separate claim for access to an essential facility in the first place.  At that time, it was already a basis for liability under a monopolization claim in federal antitrust law.

Under Section 203(C), a person in control of an essential facility may not "unreasonably refuse to give a competitor or customer of an entity controlling an essential facility access to it upon reasonable terms if the effect of such denial is to injure competition."  79 Okla. Stat. Ann. § 203(C).  Since the claim requires proof

---

[2] *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1520 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985).  This Court has already noted that the Supreme Court has never ruled on the viability of the theory – or set out the requirements for liability under the essential facilities doctrine.  (Doc. 31 at 17 n.11.)

4

of monopoly power in a relevant market, those elements of the claim are "construed in accordance with federal antitrust law." *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1281 (10th Cir. 2004).

On the other hand, federal antitrust law does not provide an independent antitrust claim for access to an essential facility. *TKO Energy Servs., LLC v. M-I L.L.C.*, 539 F. App'x 866, 872 (10th Cir. 2013). Instead, it is a theory of liability under Section 2 of the Sherman Act. *Id.* This Court has already noted that the Supreme Court has never ruled on the viability of the theory – or set out the requirements for liability under the essential facilities doctrine. (Doc. 31 at 17 n.11.)

The Tenth Circuit has expressly recognized liability under the essential facilities doctrine under Section 2. *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 721 (10th Cir. 2004). There are "four elements necessary to establish liability under the essential facilities doctrine: (1) control of the essential facility by a monopolist; (2) a competitor's inability to duplicate the facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." *Id.*

In sum, the Tenth Circuit has never ruled that federal antitrust law has repealed Section 203(C) or imposed limitations on what constitutes an essential facility as defined by the federal common law in 1984 or the Oklahoma state statute in 1998. In fact, the essential facilities doctrine remains a viable theory of liability under

Section 2.  The SAC adequately alleges facts that give rise to claims under the requirements of Section 203(C) as defined by the state legislature and the essential facilities doctrine as defined by the Tenth Circuit.

Moreover, there is no exception to liability for proprietary information or technology in Section 203(C).  Intuitive cites no case holding so.  In fact, such an exception would largely gut the statute as applied to our modern economy.  Nor is there any such exception under the essential facilities doctrine as recognized and defined by the Tenth Circuit, which establishes the federal antitrust law governing Oklahoma.  The Tenth Circuit sets out a very specific four element test.  358 F.3d 694 at 721.

The Tenth Circuit has no exception to liability for proprietary technology. Intuitive cites no case of the circuit holding so.  Moreover, the Eleventh Circuit did not create such an exception in *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1296 (11th Cir. 2004).  The court held that there was no essential facilities claim because the defendant offered access to competitors for a license fee but the plaintiff insisted on receiving access *for free* rather than paying the established license fee.  *Id.* The Eleventh Circuit never opined on whether the essential facilities doctrine should or should not apply to proprietary information or technology where

6

access is denied.[3]  In fact, proprietary technology goes hand in hand with restricted access, which is the entire point of the essential facilities doctrine.

In addition, Intuitive argues that the essential facilities doctrine is not available for failing to provide access to products that are not marketed or available to the public except by mandate of federal legislation or regulation under *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).  The Supreme Court only held that the essential facilities doctrine would not be applicable in *Trinko* because there was access to the essential facility under the Telecommunications Act of 1996. *Id.* at 411.  The Supreme Court did not want to interfere in the regulatory workings of that access mandated by statute. *Id.*  "It suffices for present purposes to note that the indispensable requirement for invoking the doctrine is the unavailability of access to the 'essential facilities'; *where access exists*, the doctrine serves no purpose." *Id* (emphasis added).  Here, however, Intuitive points to no such access mandated by any federal statute or regulation.  Therefore, *Trinko* is entirely inapplicable to the SAC.

The Supreme Court in *Trinko* also held that the complaint did not state a claim against the defendant for a refusal to deal claim, as opposed to an essential facility

---

[3] "PGA is willing to sell its product to its competitors, including Morris, thereby allowing credentialed media organizations like Morris to syndicate compiled real-time golf scores after paying a licensing fee to PGA."  *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1296 (11th Cir. 2004).

claim, because its "prior conduct sheds no light upon the motivation of its refusal to deal." *Id.* at 409.   The defendant was compelled to create "something brand new" and "at considerable expense and effort" by mandate of the Telecommunications Act of 1996. *Id.* Therefore, its prior conduct did not suggest "its regulatory lapses were prompted not by competitive zeal but by anticompetitive malice." *Id.*

Here, however, the product has always been in hand.  Intuitive has already voluntarily undertaken the expense and effort to create the Distributor's Toolkit and the ability to reset the Usage Counter.  SAC ¶¶ 55, 85.  Moreover, there is abundant evidence that Intuitive uses its control over the Distributor's Toolkit and the Usage Counter to restrain and prevent competition in robot service and instrument repair and replacement.  Intuitive vigorously attacks any competitor servicing da Vinci robots or EndoWrist instruments.  SAC ¶¶ 68-71, 99-101, 103.  The SAC alleges that Intuitive used its control of the Distributor's Toolkit to force customers to enter expensive service contracts with Intuitive and used its control of the Usage Counter to foreclose the ability of rivals to compete in instrument repair and replacement. SAC ¶¶ 55-60, 85-88.  In any event, the SAC is bringing an essential facility claim rather than a refusal to deal claim and must meet all the requirements for access to an essential facility as defined by the statute.

**Conclusion**

The originally proposed SAC is not futile.  Instead of holding so, the Court can grant leave for the filing of the revised SAC, which is Exhibit 1 to this reply. Intuitive has no objections to the addition of the allegations in the revised SAC.

Respectfully submitted on March 23, 2021.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 (telephone)
jeff@berhold.com

/s William G. Harrison, Jr.
William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
FL. Bar No. 0765058
101 Harrison Avenue
Panama City, FL 32401
850-769-1414 (telephone)
wharrison@harrisonrivard.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 5.1(F)(1)(a), a certificate of service is not required.

Pursuant to Local Rule 7.1(F), the memorandum contains 2,023 words.

10