**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

RESTORE ROBOTICS LLC,
RESTORE ROBOTICS REPAIRS LLC,
and CLIF PARKER ROBOTICS LLC,

                  Plaintiffs,

v.

INTUITIVE SURGICAL, INC.,

                  Defendant.

INTUITIVE SURGICAL, INC.,

                  Counterclaimant,

v.

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

                  Counterclaim Defendants.

Civil Case No. 5:19-cv-55-TKW-MJF

## INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PROFESSOR CHRISTINA DEPASQUALE

Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant/Counterclaim

Plaintiff Intuitive Surgical, Inc. ("Intuitive") hereby moves to exclude certain

opinions of Professor Christina DePasquale, the antitrust economist and damages

1

expert for Plaintiff/Counterclaim-Defendants Restore Robotics LLC, Restore

Robotics Repairs LLC and Clif Parker Robotics LLC ("Restore").  Specifically,

Intuitive moves to exclude Professor DePasquale's opinions:  (i) that there is a

relevant antitrust market for surgical robots for minimally invasive surgery in the

United States ("U.S. Surgical Robot Market"); (ii) that Intuitive has exercised

monopoly power in the sale of da Vinci systems ("da Vincis"), da Vinci service

and EndoWrist instruments ("EndoWrists") because it purportedly has charged

"supracompetitive prices"; (iii) that Intuitive's challenged conduct has caused

anticompetitive effects and lacks any procompetitive justification; and (iv)

regarding her calculation of damages for Restore's EndoWrist "repair" business

after October 2019.

## MEMORANDUM OF LAW
## PRELIMINARY STATEMENT

Restore proffers Professor DePasquale to opine regarding (1) relevant

antitrust markets; (2) the alleged competitive effects of Intuitive's challenged

conduct; and (3) Restore's purported damages.  But Professor DePasquale's reports

and deposition testimony establish that her principal opinions regarding each of

these topics are inadmissible and should be excluded.

*First*, Professor DePasquale's opinion defining a purported U.S. Surgical

Robot Market should be excluded because it is not based on any reliable

methodology and would not assist the trier of fact.  Professor DePasquale concedes that laparoscopic and open surgery are used more commonly than robotic-assisted surgery to perform the surgical procedures for which the da Vinci has obtained clearance from the U.S. Food & Drug Administration ("FDA").  Yet, Professor DePasquale concluded that laparoscopic and open surgery do not compete in the same relevant market as robotic-assisted surgery because those surgeries are only performed when robotic-assisted surgery is unavailable.  Professor DePasquale admittedly based this critical opinion entirely on "***common sense and anecdotal evidence***" (Ex. 1, DePasquale Tr. 120:13-23 (emphasis added)), which is neither a reliable methodology, nor is it helpful to the trier of fact.

*Second*, the Court should exclude Professor DePasquale's opinions that Intuitive has exercised monopoly power in its sales of da Vincis, service and EndoWrists because it purportedly has charged "supracompetitive prices." Professor DePasquale's opinions are contrary to law, rendering them both unreliable and unhelpful to the trier of fact.  The law is clear that proof of supracompetitive pricing requires analysis of a defendant's prices relative to its ***total costs*** (both marginal and fixed, including research and development), but Professor DePasquale only considered Intuitive's marginal costs—not its fixed costs—and, therefore, failed to conduct a legally cognizable pricing analysis.

*Third*, Professor DePasquale's opinions regarding the purported competitive

3

effects of Intuitive's challenged conduct should be excluded.  Her opinions that Intuitive's alleged tying arrangements are anticompetitive are contrary to law because she failed to analyze the relevant question required by case law, including this Court's decision at the motion to dismiss phase—i.e., whether the combined prices for Intuitive's products would be lower if they had been sold separately. Indeed, Professor DePasquale did not analyze what the but-for world prices would be for *any* of Intuitive's products, including da Vincis, service or EndoWrists. And her opinion that there are no procompetitive justifications for Intuitive's conduct should be excluded because it is based on her opinion that Restore's "repaired" EndoWrists are safe, yet she lacks the qualifications to render—and provides no analysis supporting—any such opinion.[1]

*Fourth*, Professor DePasquale's calculation of damages to Restore's EndoWrist "repair" business after October 2019 should be excluded because it depends on unreliable assumptions.  Specifically, Professor DePasquale assumes that from October 2019 until June 2020, Rebotix Repair LLC ("Rebotix") would have provided Restore with the "Interceptor" technology that Restore previously used to perform EndoWrist "repairs" from October 2018 to October 2019.  But

---

[1]  Restore's EndoWrist "repair" process involves insertion of a printed circuit board to override Intuitive's use counter and, therefore, allow the EndoWrist to be used beyond the use limit that Intuitive has prescribed.

Rebotix terminated the agreement between the parties (the "Distributor Agreement") as of October 2019, and Professor DePasquale provides no explanation as to why that outcome would differ in the but-for world. In addition, Professor DePasquale calculates damages from July 2020 through 2024 based on the assumption that Restore would launch an EndoWrist "repair" business using its own technology. But—more than 16 months after July 2020— ███████████████ ████████████████████████████████' nor has it received FDA clearance to market this technology. Yet, Professor DePasquale assumes that Restore's technology works and that it would have launched its "repair" business in July 2020 based solely on the representations of Clif Parker, an owner of each of the three Restore plaintiffs. Because Professor DePasquale simply accepted these assumptions (which are contrary to the record evidence) from Mr. Parker without independently validating them, they are unreliable, and her calculation of damages based on these assumptions should be excluded.

## ARGUMENT

Expert testimony is inadmissible unless it satisfies the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). As this Court has explained, the district court acts "as a 'gatekeep[er]' to ensure that '"speculative, unreliable expert testimony does not reach the jury."'"

*Middleton v. Morgan*, No. 3:17-cv-346-TKW-MJF, 2019 WL 10630840, at *1 (N.D. Fla. Nov. 1, 2019) (Wetherell, J.) (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002))).  The district court must "engage in a 'rigorous three-part inquiry'" to determine the admissibility of expert testimony.  *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *Frazier*, 387 F.3d at 1260).  Specifically, the proponent of the testimony must establish "by a preponderance of the evidence" that the expert:  (i) "'is qualified to testify competently'" regarding a matter, (ii) reached conclusions based on a "'sufficiently reliable'" methodology, and (iii) will "'assist[] the trier of fact.'"  *Id.* (quoting *Frazier*, 387 F.3d at 1260).

Reliability is determined based on four non-exhaustive factors, including: (i) "whether the expert's methodology has been tested, or is capable of being tested"; (ii) "whether the [expert's] technique has been subject to peer review and publication"; (iii) "the known and potential error rate of the methodology"; and (iv) "whether the technique has been generally accepted in the proper scientific community."  *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

To be helpful, an expert opinion must "concern[] matters that are beyond the understanding of the average lay person," and offer something "more than what lawyers for the parties can argue in closing arguments."  *Frazier*, 387 F.3d at 1262-

63.  Accordingly, an expert's opinion is unhelpful if it is based on "common sense" because matters of common sense are "well within common knowledge that would be obvious to the average juror." *McDowell*, 392 F.3d at 1299.

For the reasons set forth below, Professor DePasquale's opinions fail to satisfy these requirements.

## I.   PROFESSOR DEPASQUALE'S OPINION THAT THE "U.S. SURGICAL ROBOT MARKET" IS A RELEVANT ANTITRUST MARKET SHOULD BE EXCLUDED

Professor DePasquale purports to define a relevant market for "U.S. Surgical Robot[s]." (Ex. 2, Expert Report of Christina DePasquale ("Rep.") at 3.) But her opinion should be excluded because it is unreliable and unhelpful to the trier of fact.

Courts routinely exclude market definition opinions as unreliable when an expert fails to meaningfully consider whether other potential substitute products should be included within the relevant market. *See, e.g.*, *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-md-1628 (RMB)(MHD), 2009 WL 3241401, at *7 (S.D.N.Y. Sept. 30, 2009) (excluding expert's testimony regarding the relevant product market as unreliable because his methodology did not "consider meaningfully" whether other products were "reasonable substitutes"), *aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010); *Corey Airport Servs., Inc. v. City of Atlanta*, 632 F. Supp. 2d 1246, 1294 (N.D. Ga. 2008)

(expert "failed to meaningfully consider whether there were any substitute products"), *rev'd in part on other grounds sub nom. Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280 (11th Cir. 2009); *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 737 (W.D. Va. 2000) (expert "in his market analysis, did not thoroughly examine substitutes when defining the market").

　　Professor DePasquale's opinion is unreliable because she did not meaningfully consider whether laparoscopic and open surgery are substitutes for robotic-assisted surgery that should be included within the relevant market.  At deposition, Professor DePasquale conceded that for the procedures for which the da Vinci has obtained FDA clearance, the majority of surgeries are ***not*** performed by robotic-assisted surgery, "or at least it's a pretty close split" among robotic-assisted, laparoscopic and open surgery.  (Ex. 1, DePasquale Tr. 113:5-22.) Nevertheless, Professor DePasquale opines that, based on "***common sense and anecdotal evidence***," laparoscopic and open surgery are not substitutes for robotic-assisted surgery because they are performed "simply because [customers] haven't adopted the technology of the robotic-assisted surgery." (*Id.* 111:13-15, 120:13-23 (emphasis added).)  She further testified:  "Do I have actual numbers?  No. That's … where I mean the ***common sense*** aspect." (*Id.* 121:22-23 (emphasis added).)  Because Professor DePasquale's reliance on common sense and anecdotal evidence, without empirical evidence, does not amount to "meaningful

consideration," her opinion that there is a "U.S. Surgical Robot Market" is unreliable and should be excluded for this reason alone.

Professor DePasquale's opinion defining a "U.S. Surgical Robot Market" also should be excluded because testimony based on "common sense" is not helpful to the trier of fact. *See McDowell*, 392 F.3d at 1299; *see also In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 484 (S.D.N.Y. 2016) ("If [an expert's] opinion is based on simple common sense, it is not helpful; the jury does not need expert opinion because its common sense will suffice.").

## II.   PROFESSOR DEPASQUALE'S MONOPOLY POWER OPINIONS BASED ON INTUITIVE'S PURPORTED SUPRACOMPETITIVE PRICING SHOULD BE EXCLUDED

Professor DePasquale opines that Intuitive has monopoly power in the purported U.S. Surgical Robot Market, as well as in purported aftermarkets for (i) "repairing and replacing the instruments used with Intuitive's da Vinci robots in the United States (U.S. EndoWrist Aftermarkets)"; and (ii) "maintaining and servicing Intuitive's da Vinci robots in the United States (U.S. da Vinci Service Aftermarket)." (Ex. 2, Rep. at 3-4.)  Specifically, Professor DePasquale opines that "Intuitive is exercising monopoly power by extracting supracompetitive prices for its robots, instruments, and service." (Ex. 3, Rebuttal Expert Report of Christina DePasquale ("Rebuttal") at 7; *see also* Ex. 2, Rep. at 19.)  But Professor

DePasquale's opinions regarding supracompetitive pricing are contrary to law and, therefore, should be excluded.

It is well established that "[e]xpert opinions that are contrary to law are inadmissible" because they are inherently unreliable and unhelpful to the trier of fact. *Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 WL 5100536, at *14 (S.D. Fla. Jan. 6, 2006) (alteration in original) (citation omitted); *see also Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2000) (excluding economist's opinions regarding market power based on analysis that "contradicted Eleventh Circuit jurisprudence"), *aff'd*, 284 F.3d 1237 (11th Cir. 2002); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 4259332, at *7-9 (S.D. Fla. Oct. 21, 2010) (excluding testimony conflicting with controlling precedent).

With regard to proving monopoly power through evidence of supracompetitive pricing, the law is clear that analyzing defendant's prices relative to its marginal costs is insufficient; rather, the analysis must consider defendant's ***total costs***, including research and development. *See, e.g.*, *In re Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d 675, 681 n.10 (D.N.J. 2005) ("[W]ithout evidence that sheds light on material factors such as [defendant's] price relative to its ***total costs*** (marginal ***and*** fixed) ... , ***monopoly power cannot be found as a matter of law***." (first and third emphases added)); *United States* v. *Eastman Kodak Co.*, 63 F.3d 95, 109 (2d Cir. 1995) ("Certain deviations between

marginal cost and price, such as those resulting from high fixed costs, are not evidence of market power.").[2]

Here, Professor DePasquale's opinions that Intuitive has exercised monopoly power by charging supracompetitive prices for da Vincis, service and EndoWrists are contrary to law because they are based solely on her analysis of Intuitive's prices relative to its marginal costs.  Professor DePasquale disregarded Intuitive's fixed costs (*see* Ex. 2, Rep. at 12, 15, 19), including research and development, even though she acknowledges Intuitive's significant research and development expenditures elsewhere in her reports (*see* Ex. 3, Rebuttal at 7 (acknowledging Intuitive's "research and development expenses of $239 million in 2016")).  Accordingly, Professor DePasquale's opinions that Intuitive has exercised monopoly power based on its purported supracompetitive pricing are inherently unreliable and unhelpful to the trier of fact, and should be excluded.

## III. PROFESSOR DEPASQUALE'S COMPETITIVE EFFECTS OPINIONS SHOULD BE EXCLUDED

Professor DePasquale opines that Intuitive has caused anticompetitive

---

[2] *See also* 2B Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 516(g) (4th ed. 2014 & Supp. 2021) ("No matter how accurately measured, of course, a substantial excess of price over marginal cost does not necessarily bring excess returns on investment.  A firm generates excess profit *only if price exceeds its average total cost*, including its cost of capital." (emphasis added)).

effects in the purported aftermarkets for EndoWrists and da Vinci service through its alleged tying and exclusive dealing. (Ex. 2, Rep. at 2-4.) She further opines that Intuitive's contractual restrictions prohibiting customers from using "repaired" EndoWrists are "without any procompetitive justification." (*Id.* at 3-4.)

Professor DePasquale's anticompetitive effects opinions should be excluded as contrary to law because she failed to analyze what the prices for Intuitive's products would be absent the challenged conduct. In addition, Professor DePasquale's opinions regarding the absence of procompetitive justifications should be excluded because she is unqualified to opine on the patient safety justifications for Intuitive's conduct, and, in any event, she failed to perform analysis to support her opinions, but instead merely narrates facts in the record.

### A.   Professor DePasquale's Analysis of Anticompetitive Effects Is Contrary to Law Because She Failed To Analyze Prices in the But-For World

As explained above, opinions that are contrary to law are inadmissible. (*See supra* p. 10.) Moreover, as this Court already held, to establish anticompetitive effects of a tying arrangement, "the plaintiff is required to show that 'the combined price for the tying and tied products was greater than if they had been sold independently.'" *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19cv55-TKW-MJF, 2019 WL 8063989, at *3 (N.D. Fla. Sept. 16, 2019) (Wetherell, J.) (quoting *Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1361 (S.D.

12

Fla. 1998)).

Nevertheless, Professor DePasquale opines that Intuitive's alleged tying arrangements caused anticompetitive effects, even though she failed to analyze what the combined prices would be for any of Intuitive's products (i.e., da Vincis, service or EndoWrists) if they had been sold separately (as they would be in the but-for world). At deposition, Professor DePasquale conceded that she has reached no opinion regarding the prices Intuitive would charge for EndoWrists in the but-for world. (Ex. 1, DePasquale Tr. 125:5-8 ("Q. Well, is it fair to say that you reached no opinion as to forecast for Intuitive's price behavior regarding instruments in your but-for world? A. Yeah, that's correct.").) Moreover, nowhere in her reports does she address the but-for world prices for da Vincis or service. Because Professor DePasquale failed to analyze—as required by case law—whether total prices for Intuitive's products would be lower if they had been sold separately, her opinions that Intuitive's challenged conduct is anticompetitive are unreliable, unhelpful and should be excluded.

**B.      Professor DePasquale Is Unqualified To Opine Regarding Patient Safety and Provides No Analysis To Support Her Conclusions**

In the context of opining that there is no procompetitive justification for Intuitive's challenged conduct, Professor DePasquale concludes that patient safety concerns do not justify Intuitive's conduct. (*See* Ex. 3, Rebuttal at 10-12.) Professor DePasquale supports that opinion by asserting that Restore's "repaired"

instruments are safe.  (Ex. 1, DePasquale Tr. 129:3-8.)  Her stated bases for this claim are that:  (i) surgeons effectively test the quality of EndoWrists prior to using them in the operating room (Ex. 3, Rebuttal at 10); (ii) EndoWrists are "check[ed]" by MediVision (at Restore's behest) following "refurbishment" (Ex. 1, DePasquale Tr. 129:13-22); (iii) a single study regarding defect rates in medical devices reports higher defect rates in devices from the original equipment manufacturer (Ex. 3, Rebuttal at 10 n.34); (iv) "FDA has not reported any adverse event related to Restore" (*id.* at 11); and (v) there allegedly is "demand" for "refurbished medical equipment" (Ex. 1, DePasquale Tr. 130:17-131:3).  Her opinion that Intuitive's conduct lacks procompetitive justifications should be excluded for two reasons.

**First**, Professor DePasquale is wholly unqualified to opine regarding patient safety.  Rule 702 requires an expert to be qualified either "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Accordingly, an expert's opinion is inadmissible when, as here, the expert lacks "experience or training" needed "to competently testify" regarding a matter the expert seeks to address. *Simon v. HealthSouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236-VMC-AEP, 2021 WL 268496, at *4 (M.D. Fla. Jan. 27, 2021); *see also Martinez*, 2006 WL 5100536, at *12, *15 (excluding expert as unqualified to opine on a "wide array" of topics because the requisite "expertise" was "not discernable" from expert's "resume and relevant work history").  Professor DePasquale concedes that she is

14

not an expert regarding (i) medical devices or different kinds of surgeries, (ii) the responsibilities of surgeons regarding the equipment they use or (iii) the legal responsibilities relating to malpractice.  (Ex. 1, DePasquale Tr. 88:22-89:3, 96:16-20, 137:10-12.)  Having admitted that she lacks the "experience or training" needed to "competently testify," Professor DePasquale's opinions regarding Intuitive's patient safety justifications are inadmissible.

**Second**, and in any event, Professor DePasquale offers no analysis to support her conclusions, but instead merely narrates facts in the record.  "Acting simply as a narrator of the facts does not convey opinions that are based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology."  *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd sub nom. ScentSational Techs. LLC v. PepsiCo, Inc.*, 773 F. App'x 607 (Fed. Cir. 2019); *see also Bowe v. Pub. Storage*, No. 1:14-cv-21559-UU, 2015 WL 10857339, at *8 (S.D. Fla. June 2, 2015) (excluding portions of expert's opinion that were "not based on his expertise" but, rather, "an improper presentation of hearsay evidence" under "the guise of an expert opinion"); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1337, 1345 (S.D. Fla. 2010) (excluding expert's opinion in part because "the majority of the [expert's] opinions fall outside the proper scope of expert testimony because they consist of a narrative of selected regulatory events and a summary of

15

[defendant's] internal documents").

Each piece of Professor DePasquale's evidence is unsupported by the requisite expert analysis and is simply a narration of the facts. First, Professor DePasquale testified that the basis for her understanding that surgeons check surgical instruments was the deposition testimony of one lay witness from one hospital, Dr. Eugene Dickens. (Ex. 1, DePasquale Tr. 50:2-7, 90:4-11.) Merely reciting the testimony of a single witness, without actual analysis, is unreliable. *See Delta T, LLC v. Dan's Fan City, Inc.*, No. 19-cv-1731-VMC-SPF, 2021 WL 2103074, at *4 (M.D. Fla. May 25, 2021) ("An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence." (citation omitted)). Second, Professor DePasquale's claim (made only at deposition) regarding MediVision's safety checks is similarly infirm, including because she admittedly is "not entirely sure" what the process entails. (Ex. 1, DePasquale Tr. 50:12-17.) Third, Professor DePasquale cites (in a footnote) the results of one study regarding medical device failure rates—a study that did not encompass EndoWrists. (Ex. 3, Rebuttal at 10 n.34.) She simply repeats the researchers' high-level findings without providing analysis or explaining the purported relevance to her opinions. Fourth, Professor DePasquale cites FDA adverse event data, but offers no methodology, context or analysis as to why the data is relevant or representative of the safety of Restore's procedures.

16

(*Id.* at 11.)  Finally, Professor DePasquale's reference to alleged customer "demand" for refurbished instruments (even if accurate) is another recitation of a fact, devoid of methodology or analysis.  Thus, Professor DePasquale's opinions regarding the lack of procompetitive justifications for Intuitive's conduct should be excluded.

## IV.   PROFESSOR DEPASQUALE'S OPINIONS REGARDING RESTORE'S ENDOWRIST "REPAIR" DAMAGES AFTER OCTOBER 2019 SHOULD BE EXCLUDED

Professor DePasquale calculates damages to Restore's EndoWrist "repair" business based on assumptions that in the but-for world:  (i) Rebotix would have supplied Interceptor technology to Restore from October 2019 through June 2020; and (ii) in July 2020, Restore would have launched a "repair" business using its own technology.  (Ex. 2, Rep. at 24-25; Ex. 4, Supplemental Expert Report of Christina DePasquale ("Supplemental Rep.") at 2.)[3]  Because Professor DePasquale's assumptions are unsupported and contrary to the record, they are unreliable, and her calculations of Restore's purported EndoWrist "repair" damages after October 2019 should be excluded.

---

[3]  Professor DePasquale initially opined that Restore would have launched an EndoWrist "repair" business using its own technology in April 2020, but she subsequently revised her damages period—based on conversations with Mr. Parker (Ex. 1, DePasquale Tr. 66:25-67:12)—and now opines that Restore would not have launched that business until July 1, 2020.  (Ex. 4, Supplemental Rep. at 2.)

**A.    Professor DePasquale's Assumption That
Rebotix Would Have Continued To Supply Interceptor
<u>Technology to Restore Is Unsupported and Unreliable</u>**

When an expert relies on "unsupported and unverified assumptions, [the

expert's] ultimate opinion … amounts to nothing more than [her] own *ipse*

*dixit.*  Such an opinion is the product of an unreliable and inadmissible

methodology."  *Martinez*, 2006 WL 5100536, at *14; *see also In re TMI Litig.*, 193

F.3d 613, 677 (3d Cir. 1999) (expert's "supporting assumption must be sufficiently

grounded in sound methodology and reasoning to allow the conclusion it supports

to clear the reliability hurdle"), *amended on other grounds*, 199 F.3d 158 (3d Cir.

2000).

Professor DePasquale calculates damages for Restore from October 2019

through June 2020 based on the unsupported assumption that Restore would have

continued to license Interceptor technology from Rebotix to "repair" EndoWrists.

(Ex. 4, Supplemental Rep. at 2-3).  But Professor DePasquale fails to address the

record evidence that ███████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ (Ex. 5, Papit Tr. 132:12-15.)  While Professor

DePasquale posits that "but-for Intuitive's conduct, … [the] agreement … would

have been generating large license fees for Rebotix" (Ex. 2, Rep. at 25), she

provides no basis to support that assumption.  Accordingly, Professor

DePasquale's calculation of EndoWrist "repair" damages for Restore from October 2019 through June 2020 is unreliable and should be excluded.

**B.     Professor DePasquale's Assumptions Regarding Restore's EndoWrist "Repair" Technology Are Unreliable Because They Are Unsupported, Contrary to the <u>Record and Based on Mr. Parker's Unvalidated Representations</u>**

An expert opinion is inadmissible if the expert merely repeats the assertions of a party or other witnesses without independently validating those assertions. *See Delta T,* 2021 WL 2103074, at *4 (excluding expert's opinion that "simply repeat[ed] counsel's opinion or analysis" because expert had "conducted no research"); *Cano v. 245 C & C, LLC,* No. 19-21826-CIV, 2021 WL 684188, at *7, *12-14 (S.D. Fla. Feb. 19, 2021) (excluding expert who "simply parrot[ed] back what she was told by Plaintiffs without any attempt to test the validity or veracity of their claims").

Professor DePasquale's calculation of Restore's EndoWrist "repair" damages after July 2020 relies solely on Mr. Parker's assertions that Professor DePasquale admittedly accepted without independently validating. ███████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

 Professor DePasquale does not

address this evidence.

Thus, because Professor DePasquale failed to independently validate her

assumptions derived from Mr. Parker (which are also contrary to record evidence), her assumptions are unreliable, and her calculation of damages to Restore based on those assumptions should be excluded.

## **CONCLUSION**

For the foregoing reasons, Intuitive respectfully requests that the Court exclude Professor DePasquale's opinions:  (i) that there is a relevant antitrust market for U.S. Surgical Robots; (ii) that Intuitive has exercised monopoly power in the sale of da Vincis, service and EndoWrists because it purportedly has charged supracompetitive prices; (iii) that Intuitive's challenged conduct has caused anticompetitive effects and lacks any procompetitive justification; and (iv) regarding her calculation of damages for Restore's EndoWrist "repair" business after October 2019.

Dated:  November 12, 2021                Respectfully submitted,

/s/ Karen Lent

DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

KAREN HOFFMAN LENT (*Pro Hac Vice*)
MICHAEL H. MENITOVE (*Pro Hac Vice*)
MICHAEL W. FOLGER (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com
michael.folger@skadden.com
MICHAEL S. BAILEY (*Pro Hac Vice*)
1440 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 371-7000
michael.bailey@skadden.com

ALLEN RUBY (*Pro Hac Vice*)
Attorney at Law
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690
allen@allenruby.com

**COUNSEL FOR DEFENDANT AND
COUNTERCLAIMANT INTUITIVE**

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)**

Intuitive certifies that its counsel conferred by telephone with Plaintiffs'
counsel regarding this motion on November 10, 2021.  The conference did not
resolve the issues raised in the motion.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Intuitive certifies this Memorandum complies with the word count limitation
set forth in Local Rule 7.1(F) because it contains 4,226 words, excluding the parts
exempted by said Local Rule.

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, I caused **INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PROFESSOR CHRISTINA DEPASQUALE** to be served on the following counsel of record by email:

| William Gerald Harrison, Jr. | wharrison@harrisonrivard.com |
| Jeffrey Berhold | jeff@berhold.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com