# Exhibit 60

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 2 of 9
CONF AEO Kara Reiter                                              May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 1

1        IN THE UNITED STATES DISTRICT COURT
2        FOR THE NORTHERN DISTRICT OF FLORIDA
3              PANAMA CITY DIVISION
4
5   CIVIL ACTION NO. 5:19-cv-55-TKW-MJF
6   RESTORE ROBOTICS LLC, RESTORE ROBOTICS
    REPAIRS LLC, and CLIF PARKER ROBOTICS LLC,
7              Plaintiffs,
    vs.
8   INTUITIVE SURGICAL, INC.,
               Defendants.
9   _____
    INTUITIVE SURGICAL, INC.,
10             Counterclaimant,
    vs.
11  RESTORE ROBOTICS LLC and RESTORE ROBOTICS
    REPAIRS LLC,
12             Counterclaim Defendants.
13
14
15
16
17       CONFIDENTIAL - ATTORNEYS' EYES ONLY
18   REMOTE AND VIDEO DEPOSITION OF KARA ANDERSEN REITER
19
20              May 5, 2021
21
22  REPORTED BY:  Laura H. Nichols
23              Certified Realtime Reporter,
24              Registered Professional
25              Reporter and Notary Public

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 3 of 9
CONF AEO Kara Reiter                                              May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 17

1          MR. BERHOLD:  Concierge, could we go
2   to 211764?
3          VERITEXT CONCIERGE:  Sure.  Please
4   stand by.
5          That document has been introduced as
6   Reiter Exhibit 2 and is now on the screen.
7          (Exhibit 2 was marked for
8          identification.)
9     Q.    (BY MR. BERHOLD:)  Ms. Reiter, would
10  you like to take a moment to review Exhibit 2?
11    A.    I would like to, yes, please.  There
12  it goes, it's on my screen.  So again I am going to
13  divert my eyes to my other monitor, if that is okay
14  with you.
15         (Pause.)
16    A.    Okay.  Again, I have skimmed it.  I
17  have not read every word.
18    Q.    (BY MR. BERHOLD:)  Do you recognize
19  Exhibit 2?
20    A.    I do.
21    Q.    What is Exhibit 2?
22    A.    Exhibit 2 is a letter sent to the
23  administrator of Panama City Surgery Center.
24    Q.    And you signed the letter?
25    A.    I did.  Well, to be clear, I believe

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 4 of 9
CONF AEO Kara Reiter                                           May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 18

1   this is an electronic signature that I specifically
2   authorized.
3           Q.      Okay.  Thank you.  When was the last
4   time you saw Exhibit 2 before today?
5           A.      I would be speculating, but I am
6   guessing back in October of 2019.
7           Q.      And does Exhibit 2 make any demands
8   on the recipient, Panama City Surgery Center?
9           A.      I believe the letter speaks for
10  itself.  I can read the whole thing and let you
11  know.
12                  (Pause.)
13          A.      I don't read any demands in the
14  letter.
15          Q.      (BY MR. BERHOLD:)  Okay.  Thank you.
16                  MR. BERHOLD:  We can take down
17  Exhibit 2.
18          Q.      (BY MR. BERHOLD:)  Ms. Reiter, do you
19  know someone by the name of Ben Lipson?
20          A.      I have -- "know" -- I'm not sure
21  exactly -- I have been in contact with someone
22  named Ben Lipson.
23          Q.      So you are acquainted with
24  Mr. Lipson?
25          A.      I have exchanged a very few emails

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 5 of 9
CONF AEO Kara Reiter                                           May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 19

```
 1   with and spoken to Mr. Lipson.
 2          Q.     How many times have you spoken to
 3   Mr. Lipson?
 4          A.     I believe once.
 5          Q.     How long was that conversation?
 6          A.     I don't recall specifically.
 7          Q.     Was it more or less than an hour?
 8          A.     Less than an hour.
 9          Q.     Less than thirty minutes?
10          A.     Likely.
11          Q.     Less than twenty minutes?
12          A.     I couldn't say.
13          Q.     Did you record the call with any
14   electronic device?
15          A.     I did not.
16          Q.     Do you know whether Mr. Lipson did
17   so?
18          A.     I don't know.  I was not --
19          Q.     What was the purpose of the --
20          A.     Never mind.
21          Q.     What was the purpose of the call?
22          A.     Mr. Lipson had sent an email to four
23   people at Intuitive who had then -- at least one of
24   them had forwarded it to me with some concerns and
25   suggested that we speak.
```

1       Q.      And did you get an opportunity to get
2  all of the necessary information from him in that
3  one call?
4       A.      I am not sure what the necessary
5  information would have been.
6       Q.      Okay.  What subject of concern had he
7  raised with anyone at Intuitive?
8       A.      There's an email that I believe has
9  been produced to you, and that sets forth what I
10 assume are his opinions.  That is what I know from
11 him.
12      Q.      And did you have a phone call with
13 him to get more detail?
14      A.      I had a phone call with him to follow
15 up on that.
16      Q.      Was that an important phone call, in
17 your mind?
18              MR. RUBY:  Well, I will object to
19 that question on the grounds of attorney work
20 product privilege, and I will instruct the witness
21 not to answer.
22      Q.      (BY MR. BERHOLD:)  After you talked
23 to him by phone, did you undertake any other
24 investigation of the information from his email?
25      A.      I don't believe that I personally

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 7 of 9
CONF AEO Kara Reiter                                                May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 21

1  did.
2         Q.     Did anyone else at Intuitive do so?
3                MR. RUBY:  I will object to that on
4  grounds of attorney work product and instruct the
5  witness not to answer.  I also add to my objection
6  attorney work product -- excuse me, attorney-client
7  privilege, to the extent that there were any
8  communications to or from the witness with others
9  on the subject of -- raised by your question.
10        Q.     (BY MR. BERHOLD:)  At some point
11 after the phone call, Ms. Reiter, did you prepare a
12 declaration for consideration by Mr. Lipson?
13        A.     I was involved in such activity.  A
14 proposed declaration.  I wouldn't say a
15 declaration.
16        Q.     Fair enough.  And did you have prior
17 experience in drafting proposed declarations for
18 possible witnesses?
19        A.     As a litigator, I -- in my previous
20 jobs, I have helped work on declarations for
21 witnesses that stated their opinions.
22        Q.     What about declarations of fact, have
23 you had any experience previously in that regard?
24        A.     Yes.  In my previous career as a law
25 firm lawyer.

Page 22

```
 1                    MR. BERHOLD:  Can we get 595666?
 2                    VERITEXT CONCIERGE:  Sure.  Please
 3      stand by.
 4            Q.    (BY MR. BERHOLD:)  While he is
 5      pulling up this next exhibit, Ms. Reiter, do you
 6      recall who else was involved in drafting the
 7      declaration?
 8            A.    Counsel.
 9                    VERITEXT CONCIERGE:  595666 has been
10      introduced as Exhibit 3.  Sorry.
11                    (Exhibit 3 was marked for
12                    identification.)
13            Q.    (BY MR. BERHOLD:)  And counsel means
14      your outside counsel for this case?
15                    MR. RUBY:  Excuse me, Counsel.  I
16      didn't mean to interrupt.  I will object on grounds
17      of attorney work product and attorney-client
18      privilege and also relevancy.
19                    The relevancy objection goes to
20      qualified attorney work product privilege.  But in
21      any event, for those reasons I instruct the witness
22      not to answer.
23            Q.    (BY MR. BERHOLD:)  So have you had a
24      chance to look at Exhibit 3?
25            A.    Yes.
```

Case 5:19-cv-00055-TKW-MJF   Document 145-60   Filed 01/27/22   Page 9 of 9
CONF AEO Kara Reiter                                              May 5, 2021
Restore Robotics LLC v Intuitive Surgical

Page 23

1      Q.     What is Exhibit 3?  Well, let me ask
2  you first, do you recognize Exhibit 3?
3      A.     I do.
4      Q.     What is Exhibit 3?
5      A.     It is an exchange of emails between
6  me and Mr. Ben Lipson.
7      Q.     And is this the email transmitting
8  the draft declaration to Mr. Lipson that you
9  referenced earlier in your testimony?
10     A.     Well, as I read this, it is a string
11 of emails, the last one of which has some text and
12 does attach the proposed draft declaration, yes.
13            MR. BERHOLD:  And could we now turn
14 to 595672?
15            VERITEXT CONCIERGE:  It looks like it
16 is a different document.  Please stand by.
17            MR. BERHOLD:  Oh, sorry, yes, that is
18 a different exhibit.  Sorry about that.
19            VERITEXT CONCIERGE:  Yes.  I saw this
20 one ended at 671 so -- all right.  That exhibit has
21 now been introduced as Reiter Exhibit 4 and is now
22 on the screen.
23            (Exhibit 4 was marked for
24            identification.)
25            MR. RUBY:  Is that the Bates page