# Exhibit 63

Page 1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF FLORIDA
2                  PANAMA CITY DIVISION
3
4   RESTORE ROBOTICS LLC and
    RESTORE ROBOTICS REPAIRS
5   LLC,
                                    CIVIL ACTION FILE
6              Plaintiffs,
                                    NO. 5:19-cv-55-TKW-MJF
7        vs.
8   INTUITIVE SURGICAL, INC.,
9              Defendant.
    ~~~~~~~~~~~~~~~~~~~~~~~~~
10
11
12
             REMOTE VIDEO DEPOSITION OF
13
           ROBERT "BOB" JAMES DESANTIS
14
15
16              May 20, 2021
17                9:36 a.m.
18
19
              25 Executive Boulevard
20              Orange, Connecticut
21
22
23
          S. Julie Friedman, CCR-B-1476
24
25

Case 5:19-cv-00055-TKW-MJF   Document 145-63   Filed 01/27/22   Page 3 of 7
AEO Robert "Bob" James Desantis                    May 20, 2021
Restore Robotics LLC v Intuitive Surgical

Page 73

1     Q.    Well, how so?
2     A.    Both Johnson & Johnson and -- and
3  Medtronic have stated publicly that one of their
4  strategies to penetrate the robotic-based system
5  surgical space and to compete with us would be to
6  provide lower-cost instruments, procedures at overall
7  lower cost.
8           So for us, it was a, you know, a potential
9  response, also, to a -- an implied -- well, a stated
10 competitive tactic.
11          MR. BERHOLD:  Chris, can you take down
12     Exhibit 9.
13    Q.    (By Mr. Berhold)  So, Mr. Desantis, are --
14 are you aware that you've been designated to speak on
15 behalf of Intuitive regarding the hacking
16 counterclaim in this litigation?
17    A.    Yes.
18    Q.    So are you aware that Intuitive has
19 alleged that Clif Parker called a former Intuitive
20 employee and solicited his assistance to hack into
21 Intuitive's system to help the PM message go away?
22    A.    Yes.
23    Q.    And the only way to remove the PM message
24 is to access the hospital's robot with the service
25 laptop; is that right?

Case 5:19-cv-00055-TKW-MJF   Document 145-63   Filed 01/27/22   Page 4 of 7
AEO Robert "Bob" James Desantis                    May 20, 2021
Restore Robotics LLC v Intuitive Surgical

Page 74

1      A.     That's one way.  I don't know if that's
2   the only way.
3      Q.     Oh, do you know of any other way?
4      A.     I don't.
5      Q.     Does Intuitive know of any other way?
6      A.     I don't know the answer to that.
7             That would be the way we would do it.
8      Q.     All right.  So the counterclaim alleges
9   also that in response to the attempted hack,
10  Intuitive staff and outside counsel were engaged to
11  determine the scope of the potential intrusion and to
12  assess and plan Intuitive's response.
13            Was Intuitive looking at a potential
14  intrusion into the da Vinci surgical system, the
15  robot?
16     A.     Intuitive -- so in preparation for this --
17            Since I wasn't involved in that response,
18  but in preparation for this deposition, what I saw
19  was, is that Intuitive was responding to that
20  potential hack into the system from a legal
21  standpoint, from a, you know, kind of overall company
22  standpoint so --
23            But I wasn't personally involved in the
24  response.
25     Q.     And the system was the surgical system,

1   the robot?
2        A.   Yes.
3        Q.   Who was the former Intuitive employee that
4   was the source of these allegations?
5        A.   It was a fellow named Ben Lipson.
6        Q.   Did Mr. Lipson provide Intuitive with any
7   notes of his conversation with Mr. Parker?
8        A.   He -- He wrote an e-mail to the company
9   stating that he -- he was contacted and asked if he
10  can get into the software and make the message go
11  away.
12            There was a follow-up discussion with Kara
13  Andersen Reider, where she described his recollection
14  of the events.
15       Q.   And did Intuitive bring its counterclaim
16  in response to the information provided by Mr. Lipson
17  to Miss Reider?
18       A.   That's beyond my -- my knowledge.
19       Q.   Was anything done in response to the
20  information from Mr. Lipson besides preparing the
21  counterclaim?
22       A.   I -- I don't know.  I wasn't personally
23  involved in it.
24            We -- We take any, you know, software
25  hack into our system or any hack at all into our

Page 76

1  system very seriously.  We would have to file it as a
2  complaint, I believe.  The FDA takes it very
3  seriously, so our -- our normal procedure would be to
4  investigate and mitigate.
5       Q.   And what was --  And what investigation
6  was undertaken by Intuitive in response to the
7  information from Mr. Lipson?
8       A.   Everything that we have just discussed
9  from a legal standpoint, from a
10 software/technical/compliance standpoint.
11           I --  I wasn't personally involved, and I
12 don't have the details.
13      Q.   Do you know if Intuitive filed a complaint
14 with the FDA?
15      A.   I don't.
16      Q.   Do you know if Intuitive contacted any law
17 enforcement agency in response to the information
18 from Mr. Lipson?
19      A.   I don't know that either.
20      Q.   Does Intuitive have any other documents
21 besides the e-mails that relate to any communications
22 with Mr. Lipson regarding these allegations?
23      A.   Again, I believe Kara had a conversation
24 with Ben Lipson; and Kara described his version of
25 the story, the events, so I'm sure that document

1   exists.
2        Q.   Oh, what document exists?
3        A.   Kara's documenting her conversation with
4   Ben where she scribed his telling of the events.
5        Q.   Are you aware of any other documents,
6   though?
7        A.   No.  I --  I don't believe so.
8        Q.   Are you aware of any other documents that
9   relate to the response by Intuitive to the
10  information from Mr. Lipson?
11       A.   No.  Not currently.
12       Q.   Are you aware of any other documents
13  related to any damage or loss incurred by Intuitive
14  in acting in response to the information from Mr.
15  Lipson?
16       A.   No.  I don't believe so.
17       Q.   So, Mr. Desantis, you're aware that
18  Intuitive filed the counterclaim; is that right?
19       A.   Yes.
20       Q.   And that Intuitive or its lawyers
21  undertook efforts to file that counterclaim; is that
22  right?
23       A.   Yes.
24       Q.   Are you aware of any other specifac
25  (ph.) -- specific action taken by Intuitive in