IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, and CLIF PARKER ROBOTICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. <br><br> INTUITIVE SURGICAL, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

**PLAINTIFFS RESTORE ROBOTICS LLC AND RESTORE ROBOTICS REPAIRS LLC'S RESPONSE IN OPPOSITION TO DEFENDANT INTUITIVE SURGICAL, INC.'S MOTION FOR RECONSIDERATION**

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309

William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401

Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC hereby file this response in opposition to the motion for reconsideration filed by Plaintiff Intuitive Surgical, Inc. ("Intuitive") of the order on summary judgment entered by the Court relating to the antitrust claims on EndoWrist repair service. Intuitive points to "new evidence" in (1) internal FDA documents from March 2020 and August 2020 regarding repairs of EndoWrists by Restore and third party Rebotix Repairs and (2) emails from April 2022 between the FDA and third party Rebotix Repairs regarding its repairs of EndoWrists.

Intuitive does not offer any basis for the admissibility at trial of this new hearsay evidence.[1] Furthermore, this Court has already held – at the behest of Intuitive – that evidence from other emails between employees of Rebotix and employees at the FDA in this same line of communication are inadmissible because they are "full of hearsay." Doc. 154 at 1-2. Assuming that this new hearsay evidence is admissible in whole or in part, it does not change the analysis in the order on summary judgment.

This new evidence does not change the undisputed fact that FDA has never taken formal action against Restore to enjoin Restore from providing repair services to hospitals on their EndoWrists without clearance. This new evidence also does not

---

[1] Moreover, the relevant documents in the FOIA response are largely redacted. Doc. 160-2 at 63-64 (706025-706026 and 706072-706073).

1

change the undisputed fact that Restore is the first and only organization seeking clearance from the FDA to market and sell reprocessed EndoWrist instruments.

Nor does it change the disputed fact that the FDA may not have taken formal action against Restore to enjoin it from providing repair services if Restore had continued to provide repair services but for Intuitive's anticompetitive conduct. Restore still contends that its EndoWrist repair services do not fall under the jurisdiction of the FDA regulating the marketing and sale of devices (as opposed to providing repair services) – and that Restore does not make a significant change to the intended use of the EndoWrist that would trigger a requirement for a new 510(k) in any event.[2]  Intuitive is well aware that adverse communications are not the same as a prohibition from the FDA.[3]

---

[2] In fact, it is undisputed that Intuitive itself has extended the usage limits on its Xi instruments without obtaining clearance for the new usage limits.

[3] In its signed annual report to shareholders, Intuitive explains the difference between an adverse communication from the FDA and a formal prohibition by the FDA:

> The FDA has, in the past, issued and could, in the future, issue Warning Letters or other adverse communications to us. If we fail to satisfy or remediate the matters discussed in any such Warning Letters or communications, the FDA could take further enforcement action, including prohibiting the sale or marketing of the affected product. Our failure to comply with applicable requirements could lead to an enforcement action that may have an adverse effect on our financial condition and results of operations.

And the new evidence does not resolve the question of if or when the FDA would have enjoined Restore from continuing to provide repair services without 510(k) clearance. In fact, we know that the FDA would not have enjoined Restore because it has not enjoined Rebotix.[4] Nor did the FDA even offer an informal decision that it "believes" clearance is necessary until April 8, 2022. Doc. 160-1 at 5 (Intuitive-00706086).

In any event, the new evidence does not change the undisputed fact that Restore sold repair services using the Rebotix technology from July 2018 to the termination of its distributor agreement with Rebotix in October 2019. Nor does it

---

Intuitive Form 10-K at 40 (February 3, 2022) (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1035267/000103526722000014/isrg-20211231.htm); see also id. at 41 ("In addition, any modification or change of medical devices cleared for market requires the manufacturer to make a determination whether the change is significant enough to require new 510(k) clearance. . . From time to time, we modify our products, including the hardware and software in the da Vinci Surgical System, after we obtain 510(k) clearance from the FDA for the devices in ways that we do not believe require new 510(k) clearance. We cannot provide assurance that the FDA would agree in all cases with our determinations not to seek new 510(k) clearance for any of these changes. If the FDA disagrees with our assessments that a new 510(k) clearance was not required prior to commercializing the devices with these changes or modifications, then the FDA could impose enforcement sanctions and/or require us to obtain 510(k) clearance or other FDA marketing authorization for any modification to our products. We may be prohibited from marketing the modified device until such marketing authorization is granted.").

[4] Intuitive complained to the FDA about Restore and Rebotix – and the FDA looked at both companies – at the same time.

3

change the undisputed fact that "facilities were willing to use (and did use) Restore's services" notwithstanding "the lack of clearance and/or the uncertainty about whether clearance was required." Order (Doc. 158) at 8. "Thus, when the evidence is viewed in the light most favorable to Restore, a jury could find that Restore would have continued to provide its EndoWrist "repair" services to at least some health care facilities (unless and until the FDA enjoined it from doing so) but for the restrictions imposed in the SLSA." Order (Doc. 158) at 8-9 (emphasis added).

Nor does the evidence change the disputed fact that Restore would have continued to provide repair services – with the Rebotix technology and then switching to the Iconocare technology starting in July 2020 – but for Intuitive's anticompetitive conduct unless and until it was enjoined by the FDA. Defendant's Exhibit 2 does not show that the FDA took action to enjoin Restore from providing EndoWrist repair services or that Restore conceded the FDA's authority to do so. In fact, Defendant's Exhibit 2 is largely redacted versions of emails already produced in full in this litigation. Compare Doc. 160-2 to attached Opp. Ex. 1 (Restore-00055975). In those emails, which are unredacted in the exhibit attached to this brief, Restore explained its belief that no clearance was required to repair EndoWrist instruments – and never backs away from that position.

4

> We believe that our services meet the definition of repair in the May 2018 FDA Report on the Quality, Safety, and effectiveness of Servicing of Medical Devices, in accordance with Section 710 of the Food and Drug Administration Reauthorization Act of 2017 (FDARA). The device ownership is always maintained by the hospital. The repairs are done at the request of the hospital. No cleaning or sterilization is taking place. Therefore, we believe no 510(k) is needed for our operations.

Opp. Ex. 1 at Restore-00055982. And the FDA acknowledged that it was aware of that position: "Thank you for your email response on February 27th, 2020. As previously discussed, Restore Robotics believes the activities performed on hospital-owned equipment devices constitute repair." Opp. Ex. 1 at Restore-00055981.

Nor does Defendant's Exhibit 2 change the fact that "a jury could find that any further preparatory steps by Restore would have been futile in light of the anticompetitive restrictions." Order (Doc. 158) at 9-10. "There is no point in attempting to sell to customers in the face of the actions of Intuitive pending an outcome of the litigation." Doc. 136 at 12. In fact, Restore informed the FDA that "Restore Robotics has indefinitely ceased its robotics repair services for business reasons that predate the pandemic" and that Restore would notify the FDA of any change in circumstances. Opp. Ex. 1 at Restore-00055976. Since that time, there has been no communication whatsoever, much less an adjudication, between the FDA and Restore whether clearance would ever be required for the Iconocare repair technology.

Defendant's Exhibit 2 does not change this analysis. In a largely redacted document from March 29, 2020, Katelyn Bittleman of the FDA's Neurodiagnostic Devices Team recommends to the Team Lead of the Robotic Assisted Surgical

5

Devices Team that EndoWrist repairs need 510(k) clearance to "legally market" the devices because the extended life "significantly change the devices' intended use." Doc. 160-2 at 64. The "consult evaluation" section is redacted in its entirety. Id. Of course, Intuitive itself has extended the usage limits on Xi instruments without a new clearance.

Regardless, this internal staff recommendation is far from a definitive adjudication between the FDA and Restore. The recommendation was never formally adopted by the FDA. It was not even shared with Restore. Nor did Restore have an opportunity to object to or oppose any recommendation, much less object to or oppose any decision, of the FDA.

In fact, the FDA had chosen "Surveillance" rather than "Outreach" or "Enforcement" of the complaint because the "Risk" was "Minor." Doc. 160-2 at 17. In August 2020, the staff even discontinued surveillance because Restore removed references to the robotic instrument repair from its website. Id. Again, Restore informed the FDA that "Restore Robotics has indefinitely ceased its robotics repair services for business reasons that predate the pandemic" and that Restore would notify the FDA of any change in circumstances. Opp. Ex. 1 at Restore-00055976. And Defendant's Exhibit 2 does not change the analysis that "a jury could find that any further preparatory steps by Restore would have been futile in light of the anticompetitive restrictions." Order (Doc. 158) at 9-10.

6

In any event, none of this newly discovered evidence, if admissible, would change the fact that a 510(k) clearance has not been required for EndoWrist repairs over the last 45 months. In fact, Doc. 160-2 is far from definitive regarding the question of whether clearance is now required going forward for the Rebotix repair technology. It is not a full adjudication against Rebotix regarding its repair technology. In fact, Rebotix may "provide objections so that the FDA can further consider the issue as it develops the new guidelines on remanufacturing." Doc. 160-1 at 3. And it is certainly not an adjudication against Restore or the Iconocare technology.

For the foregoing reasons, the motion for reconsideration should be denied.

Respectfully submitted on April 29, 2022.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 (telephone)
jeff@berhold.com

/s William G. Harrison, Jr.
William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
FL. Bar No. 0765058
101 Harrison Avenue
Panama City, FL 32401
850-769-1414 (telephone)
wharrison@harrisonrivard.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 7.1(F), the memorandum contains 1,673 words.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. <br><br> INTUITIVE SURGICAL, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, I served the **PLAINTIFFS RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, AND CLIF PARKER ROBOTICS LLC'S RESPONSE IN OPPOSITION TO DEFENDANT INTUITIVE SURGICAL, INC.'S MOTION FOR RECONSIDERATION** to the following counsel of record via email:

ALLEN J RUBY — allen@allenruby.com
ANDREW DAVID LAZEROW — alazerow@cov.com
ABRAHAM M ANDRADE, III — abraham.andrade@skadden.com
KAREN MARY LENT — karen.lent@skadden.com
LANCE A ETCHEVERRY — lance.etcheverry@skadden.com

9

| | |
|---|---|
| MICHAEL H MENITOVE | michael.menitove@skadden.com |
| MICHAEL SCOTT BAILEY | michael.bailey@skadden.com |
| MICHAEL WILLIAM FOLGER | michael.folger@skadden.com |
| JORDAN ADAM FEIRMAN | jordan.feirman@skadden.com |
| SONYA DIANE WINNER | swinner@cov.com |
| DAVID LEE MCGEE | dlm@beggslane.com |

                                     s/ Jeff Berhold
                              Jeffrey L. Berhold
                              COUNSEL FOR PLAINTIFFS