## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, and CLIF PARKER ROBOTICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. | Civil Case No. 5:19-cv-55-TKW-MJF |
| INTUITIVE SURGICAL, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Counterclaim Defendants. | |

**INTUITIVE SURGICAL, INC.'S REPLY IN SUPPORT OF MOTION
FOR RECONSIDERATION OF THE SUMMARY JUDGMENT ORDER
RELATING TO RESTORE'S ENDOWRIST "REPAIR" BUSINESS**

Pursuant to this Court's direction at the April 27, 2022 conference, Intuitive

files this reply memorandum of law in support of its motion for reconsideration

(ECF 160, "Motion" or "Mot.").

## PRELIMINARY STATEMENT

Restore's opposition (ECF 165, "Opp.") confirms that Intuitive's Motion should be granted, and Restore's claims relating to its EndoWrist "repair" business should be dismissed.[1]  Critically, Restore ***does not dispute*** that a plaintiff that operated an illegal business cannot prove antitrust injury and, therefore, lacks standing to assert claims related to that illegal business.  Given the FDA decision that extending EndoWrist uses requires 510(k) clearance (which Restore never obtained), Restore's EndoWrist "repair" business was at all times illegal.  Restore accordingly lacked standing to bring these claims.  Restore has no answer to this.  Instead, it offers a series of unavailing arguments, none of which creates a material fact dispute for the reasons explained below.

## ARGUMENT

### I.   FDA'S FINDING OF ILLEGALITY REQUIRES SUMMARY JUDGMENT ON RESTORE'S ENDOWRIST "REPAIR" CLAIMS

#### A.   Because Restore Had No Legitimate Interest in Its Illegal Business, It Cannot Have Suffered Antitrust Injury

Restore wrongly suggests that it can establish antitrust injury because

---

[1]  As Intuitive has contended throughout this litigation—and as FDA has now definitively confirmed—Restore does not "repair" EndoWrists (i.e., remedying some kind of defect in the product), but rather "remanufactures" the medical device to tamper with its intended design and specifications.  Nonetheless, as Restore has referred to these claims as its "EndoWrist repair" claims, this memorandum uses that terminology also for purposes of simplicity.

Restore (i) sold EndoWrist "repairs" using Rebotix's technology from July 2018 to October 2019 and (ii) could have continued to sell those "repairs" but for Intuitive's alleged misconduct.  (Opp. at 3-4.)

It is well established that a plaintiff engaged in an illegal business cannot suffer *antitrust* injury resulting from alleged misconduct that purportedly restrained its unlawful business because a plaintiff can have no legitimate interest in such a business.  (Mot. at 8.)  Antitrust injury is absent even if a plaintiff was able to sell its services prior to a definitive determination that they were unlawful—e.g., if some customers were willing to purchase the services when their legality was uncertain.  For example, in *Broker's Title, Inc. v. Main*, 806 F.2d 257 (table), 1986 WL 18199 (4th Cir. 1986), a real estate company asserted antitrust claims against attorneys who refused to deal with the plaintiff.  1986 WL 18199, at *1.  While the antitrust action was pending, a state court held that the real estate company was engaged in the unauthorized practice of law.  As a result, the district court dismissed plaintiff's antitrust claims (and the Fourth Circuit affirmed), holding that because "plaintiff had no legal right to engage in the unauthorized practice of law, it had suffered no 'injury'" and thus "had no standing to recover for damages to its illegal operations."  *Id.*; *see also Bubis v. Blanton*, 885 F.2d 317, 319 (6th Cir. 1989) (affirming dismissal for lack of antitrust standing notwithstanding plaintiff's profits from operation of unlawful liquor store because

3

plaintiff had no "legitimate business or property interest that was injured by reason of the unlawful conspiracy"); *Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*, 460 F. Supp. 1060, 1068 (C.D. Cal. 1978) (plaintiffs profiting from sales of pirated tapes were "engaged in wholly illegal enterprises which are directed against the public in violation of clear federal and state statutory criminal prohibitions, and as such, should not be able to assert or claim that they have rights protected by the anti-trust laws").

Moreover, Restore's suggestion that "510(k) clearance has not been required for EndoWrist repairs over the last 45 months" (Opp. at 7) is belied by the record. FDA has consistently taken the position that extending EndoWrist uses constitutes remanufacturing and requires 510(k) clearance.[2]  There is no evidence to the contrary.

---

[2] *See* ECF 109-57 at Restore-00001256 (February 2020 email to Restore stating FDA "believe[s] that a 510(k) is needed before you continue your operation" of "restor[ing] robotic instruments and extend[ing] the lives of these instruments [more] than the intended limit"); *see also* ECF 109-51 at REBOTIX1228997 (December 2014 letter to Rebotix stating "YOU MAY NOT PLACE [REMANUFACTURED ENDOWRISTS] INTO COMMERCIAL DISTRIBUTION UNTIL YOU RECEIVE A LETTER FROM FDA ALLOWING YOU TO DO SO"); ECF 109-53 (June 2015 email to Rebotix stating "[i]f you market [remanufactured EndoWrists] without FDA clearance, you will be in violation of the Federal Food, Drug, and Cosmetic Act"); ECF 109-58 at REBOTIX166917 (June 2018 email to BPI stating "for the reusable EndoWrist Instruments, if the use-life counter is reset or extended past the number of available use lives, then the device specifications are changed," and "you would be considered a remanufacturer …. subject to premarket notification (510(k))

*(cont'd)*

FDA's decision confirms that Restore's EndoWrist "repair" business is (and

was at all relevant times) illegal, and Restore has no basis to bring an antitrust

claim asserting injury to that business.  Accordingly, Restore cannot establish

antitrust injury or damage resulting from Intuitive's conduct that purportedly

impaired Restore's ability to sell its unlawful "repairs."[3]

## B.      Restore Cannot Establish Damages Based on a "But-For" World That Assumes Its Business Was Lawful

Restore's EndoWrist "repair" claims also fail because Restore's evidence of

damages arising from those claims consists solely of expert opinion that *assumes*

its EndoWrist "repair" business did not require 510(k) clearance.  Restore's

---

requirements").

[3] As the above cases demonstrate, in the but-for world where a plaintiff's conduct was unlawful, that unlawfulness is by definition the "material cause" of plaintiff's alleged injuries, thus precluding recovery of damages. *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1170 (N.D. Cal. 2004) ("Because [plaintiff's] conduct was unlawful by its own terms, [defendant's] response— however anti-competitive or seemingly monopolistic—could not inflict an [sic] cognizable antitrust injury."), *aff'd, Modesto Irrigation Dist. (MID) v. Pac. Gas & Elec. Co.*, 158 F. App'x 807 (9th Cir. 2005); *see also City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998) (an antitrust plaintiff cannot establish cognizable damage where its participation in a market is barred by regulation because "it is the structure of the regulated industry, not the defendants' conduct, which creates the lack of competition"); *In re Disposable Contact Lens Litig.*, Nos. 3:00-94 MD 1030 et al., 2001 WL 203964, at *5 (M.D. Fla. Jan. 5, 2001) (acknowledging that summary judgment dismissing antitrust claims against contact lens manufacturer for restricting sales to "alternative" distributors would be required if state statutes precluded contact lens sales by such distributors because "Plaintiffs cannot meet their burden of proving injury in fact").

damages case is based entirely on the testimony of Dr. DePasquale, and one of the

foundational assumptions underlying her opinions is that in the "but-for" world,

Restore would have free rein to pursue its EndoWrist "repair" business,

unencumbered by the absence of 510(k) clearance. (*See, e.g.*, ECF 110-2 at 4 n.2,

14-16, 22-27.) That assumption has now been definitively shown to be incorrect.

At a recent status conference, the Court specifically commented on this point

and invited Restore to address it in its Opposition to the Motion. (Ex. 1, Apr. 27,

2022 Hr'g Tr. at 23:4-19.) Restore did not do so. There is no answer Restore

could have offered. Restore thus lacks an evidentiary basis to establish damage

relating to its EndoWrist "repair" claims, providing an additional ground for

summary judgment. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

("Rule 56(c) mandates the entry of summary judgment … against a party who fails

to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.").

## II.   FDA'S DECISION NOT TO PURSUE AN ENFORCEMENT ACTION IS NOT EVIDENCE THAT RESTORE'S BUSINESS WAS LAWFUL

Restore argues that the new evidence does not change the fact that FDA did

not seek to enjoin Restore's EndoWrist "repair" business, and the agency "may not

have taken formal action against Restore" in the but-for world. (Opp. at 2-4.)

Restore's argument is irrelevant; FDA's exercise of its prosecutorial discretion is

not evidence that Restore's business was lawful or that it suffered antitrust injury.

6

As established in Section I, *supra*, FDA has definitively concluded that Restore's EndoWrist "repair" business required 510(k) clearance, confirming that this business has always been illegal.

In any event, in the antitrust context, as elsewhere, courts routinely reject the argument that the absence of an enforcement action indicates that a business was lawful. For example, in *In re Canadian Import Antitrust Litigation*, 470 F.3d 785 (8th Cir. 2006), plaintiffs alleged that defendants restricted their ability to import prescription drugs from Canada. *Id.* at 787. The Eighth Circuit concluded that "importation of drugs from Canada is prohibited by federal law." *Id.* at 791. Plaintiffs argued that they nonetheless sustained cognizable damage because, prior to defendants' allegedly anticompetitive conduct, "FDA declined to enforce a legal prohibition on personal importation of Canadian drugs." *Id.* at 792. The court disagreed, holding that plaintiffs could not establish antitrust injury and affirmed dismissal of their claims. *Id.* at 793.

In *JEM Marketing, LLC v. Cellular Telecommunications Industry Ass'n*, 705 A.2d 798 (N.J. Super. Ct. App. Div. 1998), plaintiff alleged that defendants engaged in antitrust misconduct that harmed plaintiff's business of "cloning" cellular phones. *Id.* at 799. Although the Secret Service investigated plaintiff's business and declined to prosecute, the court stated "that was a matter within the discretion of the Secret Service" and concluded "that the practice of cellular

cloning does not constitute a lawful business enterprise under federal statutes and regulations." *Id.* at 802. As a result, the court affirmed dismissal of plaintiff's claims, holding that plaintiff "demonstrated no property or business interest, present or future, that is deserving of legal protection." *Id.* at 803.

Similarly, here, the legality of Restore's business is not determined by FDA's choices regarding its prosecutorial discretion. Conduct that violates the law does not become lawful simply because the police elect not to make an arrest or a prosecutor chooses not to prosecute. Tellingly, Restore cites no authority for its argument that an FDA enforcement action is a prerequisite for a determination that its EndoWrist "repair" business was illegal. There is none.

Moreover, Restore overlooks that FDA had no incentive to pursue an enforcement action against Restore. Shortly after FDA contacted Restore and stated that 510(k) clearance was necessary to extend EndoWrist uses, Restore "formally confirm[ed]" to FDA that it "ha[d] indefinitely ceased its robotics repair services," removed references to robotics instrument "repair" from its website, and promised to notify FDA of any change in circumstances. (Opp. at 6; ECF 165-1 at Restore-00055976.) Given the fact that Restore committed to abandoning its unlawful business, it is hardly surprising that FDA placed its priorities elsewhere.

## III.   THE NEW EVIDENCE IS ADMISSIBLE AND APPLIES TO RESTORE

Restore argues that the new evidence contains inadmissible hearsay (Opp. at 1, 7) and should be disregarded because it includes FDA findings that are inapplicable to Restore, "informal" and "far from definitive," and incorrect under the law (*id.* at 2-4, 6-7).  All of these arguments fail.

*First*, the three documents at issue—the (i) FDA decision, (ii) August 10, 2020 Allegation Assessment Review Memorandum, and (iii) March 29, 2020 Consult Review Memorandum—are admissible under the public records hearsay exception.[4]  Federal Rule of Evidence 803(8) excludes from hearsay, "[a] record or statement of a public office" that sets out "factual findings from a legally authorized investigation" unless the opponent shows "that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).  Public records containing factual findings are presumptively admissible under this hearsay exception, with the burden on the party objecting to the evidence to prove that the public records are untrustworthy. *See Beech v.*

---

[4]  Restore wrongly contends that "this Court has already held—at the behest of Intuitive—that evidence from other emails between employees of Rebotix and employees at the FDA in this same line of communication are inadmissible because they are 'full of hearsay.'" (Opp. at 1.)  To the contrary, the Court held that Stan Hamilton's declaration and a ***Rebotix*** letter to FDA were full of hearsay (ECF 154 at 1-2), without addressing the admissibility of any FDA statement.

9

*Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988); *Johnson v. City of Pleasanton*, 982 F.2d 350, 352-53 (9th Cir. 1992).

Here, all three documents contain factual findings prepared in the course of FDA's investigation into allegations of regulatory misconduct by Restore and Rebotix (Mot. at 4-6), which FDA was authorized by law to pursue. *See* https://www.fda.gov/medical-devices/medical-device-safety/reporting-allegations-regulatory-misconduct. The records represent FDA's views, are unambiguous and refer explicitly to the "repair" service at issue, and they were prepared by FDA employees involved in the investigations. (Mot. at 4-6.) Courts have repeatedly held that FDA correspondence and reports, such as these, fall within the ambit of Rule 803(8). *See, e.g.*, *Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2021 WL 4940974, at *1 (N.D. Ill. Oct. 5, 2021) (collecting cases where courts admitted FDA warning letters that contained factual findings); *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL 5314576, at *4-5 (E.D. Tenn. Oct. 17, 2014) (admitting FDA alert letter); *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 142-43 (D. Mass. 1990) (admitting FDA letter where recommendation for a box warning "is expressed as a final opinion of the FDA, rather than a tentative conclusion of [the FDA employee] alone"). And because Restore has not challenged the trustworthiness of the records, which it could not do in any event, *see Sabel*, 737 F.

Supp. at 143-44 (finding FDA letter prepared in similar circumstances trustworthy), the documents qualify for the public records hearsay exception.[5]

*Second*, the new evidence applies to Restore because FDA made "[a] decision" that "extending the number of uses and modifying [EndoWrist] instrument[s] with a new chip" is remanufacturing and requires 510(k) clearance. (ECF 160-1 at Intuitive-00706086.) Both the Interceptor technology—which Restore licensed from Rebotix—and the Iconocare technology plainly fall within the ambit of this decision. Moreover, far from being "informal" or indefinite, the "decision" represents the views of the "Agency" (*id.*) in connection with "CPT2000126 and Rebotix Repair" (*id.* at Intuitive-00706087), an investigation that dates back to February 2020 (ECF 160 at 4 n.1; ECF 116-3).

*Third*, Restore's challenges to the finality and merit of the FDA decision are improper in this forum. The Court held that the issue of 510(k) clearance was "for the FDA to determine in the first instance" and that it would not "usurp the FDA's responsibility for deciding that issue." (SJ Order at 7 n.4.) Restore's attempted collateral attack on the FDA decision is contrary to this prior ruling and should be rejected.

---

[5] The trustworthiness of the records is reinforced by: (i) Rebotix's submission of the FDA decision—one that was undoubtedly adverse to Rebotix—to a federal court as representative of FDA's views (ECF 160-1); and (ii) FDA's production of the memoranda as agency records in response to a FOIA request.

## IV.   THE ICONOCARE 510(K) APPLICATION CANNOT CURE RESTORE'S STANDING DEFICIENCIES

Finally, Restore cites the pendency of Iconocare's 510(k) application as a basis to deny summary judgment. (Opp. at 2, 5.) This argument fails for multiple, independent reasons.

*First*, Iconocare's submission of a 510(k) application *nearly two years after* Restore filed suit cannot create antitrust standing. "[A]n antitrust plaintiff must possess antitrust standing on the date when it files its Complaint." *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2021 WL 3144711, at *10 (D. Kan. July 26, 2021). "'[T]he standing requirements in the antitrust context are more rigorous than that of the Constitution'" *id.* (citation omitted), and the Eleventh Circuit has made clear that even "'Article III standing must be determined as of the time that the plaintiff's complaint is filed,'" such that a plaintiff cannot "retroactively" cure a standing deficiency. *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1217, 1219 (11th Cir. 2020) (citation omitted). Thus, the submission of the Iconocare application in February 2021 cannot cure Restore's lack of standing when it filed suit in February 2019.

*Second*, Restore misleadingly asserts that "there has been no communication whatsoever … between the FDA and Restore whether clearance would ever be required for the Iconocare repair technology." (Opp. at 5.) ████████████

████████████████████████████████████████████████████████████



**Third**, any argument that clearance of the Iconocare 510(k) is forthcoming is too speculative to create a triable issue. ███████████████████████

███████████████████████████████████████████████████

███████████████ Thus, any argument that Iconocare (or Restore) might obtain FDA clearance at some indeterminate future date cannot defeat summary judgment. *See, e.g., Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 865 (D.C. Cir. 2008) (affirming summary judgment for defendant because "plaintiffs have not adduced evidence sufficient for a reasonable juror to find the FDA would have approved Andrx's ANDA in February 2001 but for Biovail's [alleged misconduct]"); *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1368-69 (S.D. Fla. 2004) (because generic drug "ha[d] not even received **tentative** FDA approval, … [p]laintiffs cannot show a causal link between the

alleged antitrust violation and the alleged antitrust injury of preventing generic

entry").

## CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that the Court grant

its motion for reconsideration and grant summary judgment dismissing Restore's

EndoWrist "repair" claims.


Dated:  May 6, 2022                      Respectfully submitted,

                                          /s/ Karen Lent


KAREN HOFFMAN LENT (*Pro Hac Vice*)      DAVID L. McGEE
MICHAEL H. MENITOVE (*Pro Hac Vice*)     Fla. Bar No. 220000
SKADDEN, ARPS, SLATE,                    BEGGS & LANE, RLLP
 MEAGHER & FLOM LLP                      501 Commendencia Street
One Manhattan West                       Pensacola, FL 32502
New York, NY 10001                       Telephone: (850) 432-2451
Tel: (212) 735-3000                      dlm@beggslane.com
karen.lent@skadden.com
michael.menitove@skadden.com

MICHAEL S. BAILEY (*Pro Hac Vice*)       ALLEN RUBY (*Pro Hac Vice*)
1440 New York Avenue, N.W.               Attorney at Law
Washington, DC 20005                     15559 Union Ave. #138
Tel: (202) 371-7000                      Los Gatos, CA 95032
michael.bailey@skadden.com               Tel: (408) 477-9690
                                         allen@allenruby.com

                                         SONYA D. WINNER (*Pro Hac Vice*)
                                         COVINGTON & BURLING LLP
                                         Salesforce Tower

14

415 Mission Street, Suite 5400
San Francisco, CA 94105
swinner@cov.com

ANDREW D. LAZEROW (*Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
alazerow@cov.com

*Counsel for Intuitive Surgical, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Intuitive certifies this Memorandum complies with the word count limitation

set forth in Local Rule 7.1(F) because it contains 3,002 words, excluding the parts

exempted by said Local Rule.

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2022, I caused **INTUITIVE SURGICAL,**

**INC.'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF**

**THE SUMMARY JUDGMENT ORDER RELATING TO RESTORE'S**

**ENDOWRIST "REPAIR" BUSINESS** to be served on the following counsel of

record by email:

| William Gerald Harrison, Jr. | wharrison@harrisonrivard.com |
|---|---|
| Jeffrey Berhold | jeff@berhold.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com