UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RESTORE ROBOTICS, LLC**, et al.,

    **Plaintiffs**,

v.                                                                          Case No. 5:19cv55-TKW-MJF

**INTUITIVE SURGICAL, INC.**,

    **Defendant**.

_____/

## ORDER DENYING RECONSIDERATION

This case is before the Court based on Intuitive's motion for reconsideration (Doc. 160).  Upon due consideration of the motion, Restore's response (Doc. 165), Intuitive's reply (Doc. 170), and the documents attached to those filings, the Court finds that the motion is due to be denied.

### Background

The motion seeks reconsideration of the summary judgment order (Doc. 158) insofar as it denied Intuitive's motion for summary judgment on Restore's antitrust claims related to its EndoWrist "repair" business.  The motion is based on "new evidence" showing that the Food and Drug Administration (FDA) recently determined that the EndoWrist "repair" services provided by non-party Rebotix

Repair, LLC[1] require 510(k) clearance. Restore opposes the motion, arguing that this new evidence does not undermine the Court's ruling in the summary judgment order.[2] The Court agrees with Restore.

Intuitive has argued from the outset of this case that Restore's EndoWrist "repair" business is unlawful because the "repair" services require 510(k) clearance from the FDA, which Restore does not have. The summary judgment order explained that the Court was not going to decide the legality (or not) of Restore's EndoWrist "repair" business because that was an issue for the FDA to decide in the first instance. Doc. 158 at 7 n.4. The Court further explained that the "[t]he evidence on this issue is not as clear-cut as Intuitive argues [because] although the FDA has signaled that 510(k) clearance is required, it has not definitively said so." *Id.* at 7.

Intuitive argues in its motion for reconsideration that, after the summary judgment order was entered, it received evidence showing that the FDA has now "definitively" determined that Restore's EndoWrist "repair" business requires 510(k) clearance. This evidence is comprised of (1) an email chain between Rebotix and the FDA that was filed by Rebotix in its separate antitrust suit against Intutitive,[3]

---

[1] Rebotix developed the technology that Restore used in its EndoWrist "repair" business.

[2] Restore also argues in passing that none of the alleged new evidence is admissible, but the Court finds that argument unpersuasive for the reasons stated in Intuitive's reply. *See* Doc. 170 at 9-11.

[3] *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, M.D. Fla. Case No. 8:20cv2274.

2

Doc. 160-1 (hereafter "the FDA email chain"); and (2) the FDA's response to Intuitive's Freedom of Information Act request for records related to the EndoWrist "repair" services provided by Rebotix and Restore, Doc. 160-2 (hereafter "the FOIA response").

## Analysis

A motion for reconsideration cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Williams v. QuikTrip Corp.*, 817 F. App'x 743, 747 (11th Cir. 2020) (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). "The only grounds for granting [a motion for reconsideration] are newly-discovered evidence or manifest errors of law or fact." *Id.* (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)) (alteration in original); *see also McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1222-23 (M.D. Ga. 1997) (explaining that a district court "will grant a motion for reconsideration of an interlocutory order only if the movant demonstrates [1] that there has been an intervening change in the law, [2] that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or [3] that the court made a clear error of law").

Here, the FDA email chain is newly discovered evidence because it was not available to Intuitive until after the summary judgment order was entered, but the

3

FOIA response is not newly discovered evidence because Intuitive received it a week before the summary judgment order was entered and could have brought it to the Court's attention then.  *See Prieto v. Storer Commc'ns, Inc.*, 152 F.R.D. 654, 655 (M.D. Fla. 1994) (explaining that evidence is not "newly discovered" for purposes of reconsideration if it was available during the pendency of a motion for summary judgment and could have been introduced before the court ruled on the motion).  Moreover, many of the documents in the FOIA response were already included in the summary judgment record in unredacted form.  *Compare*, *e.g.*, Doc. 160-2 at 5-13 *with* Doc. 109-57 at 2-10.  Thus, although the FDA email chain might provide a basis for reconsideration, the FOIA response does not.[4]

The key portion of the FDA email chain is the April 8, 2022, email to Rebotix from a "Team Lead" at the FDA, which states in pertinent part:

> [T]he Agency believes that the activities of Rebotix constitute remanufacturing and would require FDA review and clearance (e.g. 510(k) / de Novo).  We therefore request that Rebotix stop engaging in the current activities until an application is reviewed and cleared/granted.
>
> The instruments in question no longer maintain the same safety and effectiveness profile as cleared with the original manufacturer's own submission. …. By extending the number of uses and modifying the instrument with a new chip, the prior information is no longer valid and

---

[4] Even if the FOIA response could be considered newly discovered evidence, it does not change anything because none of the documents in the response contain a definitive statement or final determination by the FDA that EndoWrist "repair" services provided by Rebotix or Restore require 510(k) clearance.  Moreover, most of the documents in the FOIA response are so heavily redacted that they provide no useful information.

4

>requires additional review to the new labeled usage limit in order to establish safety and effectiveness. This is therefore different than returning the device to its original condition.

Doc. 160-1 at 5.

Intuitive argues that this email definitively establishes that 510(k) clearance from the FDA was required for Restore's EndoWrist "repair" business—which means that means that Restore cannot establish "antitrust injury" with respect to that business because it is "unlawful." The Court disagrees.

Initially, the Court is not persuaded that the email quoted above is, in fact, a definitive final statement of the FDA's official position. For example, the record does not reflect where a "Team Lead" fits in the FDA bureaucracy or whether such an employee has the authority to announce agency policy or take final action on behalf of the agency. Likewise, although the email "request[s]" that Rebotix stop engaging in its current activities, a request from an agency employee is presumably not the same thing as a formal warning letter or other enforcement action from the agency itself. Moreover, the email following the one quoted above informed Rebotix that it can "provide Objections to [the Team Lead's] decision so that the FDA can further consider the issue," Doc. 160-1 at 5, and the record does not reflect whether Rebotix has provided objections.[5] Thus, although the FDA email chain is

---

[5] The only thing the record reflects on this point is that, as of April 11, 2022, Rebotix had not decided whether it was going to provide objections or seek 510(k) clearance for its "repair" services. *See* Doc. 160-1 at 3.

5

certainly stronger evidence of the FDA's position as to whether 510(k) clearance is required for Restore's EndoWrist "repair" services, the Court is not persuaded that it reflects a definitive final resolution of that issue by the FDA.

Additionally, even if the FDA email chain was considered a definitive final determination by the FDA that Restore's EndoWrist "repair" business was unlawful without 510(k) clearance, that does not necessarily bar Restore's antitrust claims for three interrelated reasons.

*First*, "antitrust injury," in the context of the Sherman Act, includes "those injuries that result from interference with the freedom to compete." *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1338 (11th Cir. 1998). Here, as detailed in the summary judgment order, there is evidence from which the jury could find that Restore suffered an antitrust injury because it was essentially driven out of the EndoWrist "repair" business by the tying agreements between Intuitive and its customers, rather than its lack of 510(k) clearance. *See* Doc. 158 at 7-9. The new evidence showing that Restore may have been unlawfully engaged in the EndoWrist "repair" business does not change the evidence that it was driven out of that business by the tying agreements and goes more to the issues of causation and damages than to the existence of antitrust injury itself.

*Second*, the Supreme Court long ago rejected the proposition that an antitrust plaintiff's unlawful conduct bars it from pursuing an antitrust claim, reasoning that

6

the overriding public policy of the antitrust laws would be undermined if the plaintiff's alleged illegal conduct could be used by the defendant to avoid liability for its anticompetitive conduct. *See Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138-39 (1968); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 214 (1951).[6] Although those cases involved plaintiffs who were parties to the challenged anticompetitive conduct (*Perma Life*) or were engaged in other anticompetitive conduct of their own (*Kiefer-Stewart*), their reasoning has been applied to plaintiffs who (like Restore) were "unlawfully" engaged in activities that were the subject of the defendant's alleged anticompetitive conduct. *See Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1369-70 (10th Cir. 1972) ("If participation by a plaintiff in an illegal conspiracy in restraint of trade [as in *Perma Life*] is not to bar him, it follows that [the plaintiff's] violation of a state [licensing] statute which is unrelated to the antitrust laws would carry even less moral impact and would assume even less applicability as a barrier to an antitrust suit."); *see also Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 689 (9th Cir. 1976) ("[I]f [the plaintiff] proves that defendants unlawfully foreclosed it from the … market …, it is entitled to recover damages actually suffered even though the market position from which [the plaintiff] was displaced had been attained only through illegal

---

[6] Both cases were overruled on other grounds in *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), but they remain good law for the cited proposition.

conduct. To rule otherwise would effectively frustrate the important public policy underlying the antitrust laws: encouragement of private antitrust suits in order to deter the illegal exercise of market power."); *Sweeney v. Athens Reg'l Med. Ctr.*, 709 F. Supp. 1563, 1575 (M.D. Ga. 1989) (citing *Keifer-Stewart* for the proposition that "the alleged illegal conduct of an antitrust plaintiff [illegally practicing medicine] does not justify an unlawful conspiracy being carried out by the defendants" and concluding that "even if the factual questions concerning the illegality of [the plaintiff's] business did not exist, Supreme Court precedent seems to indicate that [her] alleged illegal conduct would not be a viable defense to her antitrust claim").

*Third*, even if Restore was not lawfully entitled to provide the EndoWrist "repair" services when it did because Rebotix's technology did not have the required 510(k) clearance at the time, that would not necessarily mean that Restore did not suffer an antitrust injury (or that it cannot establish any damages) because, as detailed in the summary judgment order, there is evidence from which a jury could find that Restore was prepared (or was preparing) to compete in the EndoWrist "repair" market with different technology that would have obtained FDA clearance were it not for Intuitive's anticompetitive conduct. *See* Doc. 158 at 9-10.[7] The lack

---

[7] Intuitive did not challenge this ruling in its motion for reconsideration (likely because the new evidence it submitted had nothing to do with this ruling), but it appears to take issue with this ruling in its reply. *See* Doc. 170 at 12-14. The Court is not inclined to reconsider this ruling, and even if it was, it would not do so based on an argument raised for the first time in a reply brief. *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).

8

of FDA clearance is a factor to consider, but it is not dispositive. *See Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 105 (2d Cir. 2019) (Katzmann, C.J., concurring) ("Rather than a strict requirement, probability of FDA approval should be treated simply as a significant factor in the broader preparedness inquiry."); *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806-08 (D.C. Cir. 2001) (rejecting argument that drug manufacturer could not establish antitrust injury or damages simply because the manufacturer did not have FDA approval, because a competitor that has not yet entered the market may also suffer injury if the competitor demonstrates both its intention to enter the market and its preparedness to do so).

The Court did not overlook the cases cited by Intuitive for the proposition that a plaintiff lacking regulatory approval lacks antitrust standing. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785 (8th Cir. 2006); *RSA Media, Inc. v. AK Media Grp. Inc.*, 260 F.3d 10 (1st Cir. 2001); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998). However, these cases do not support the proposition that lack of regulatory approval is a per se <u>legal</u> bar to an antitrust suit.

Rather, these cases simply stand for the proposition that a regulatory bar can <u>factually</u> break the chain of causation between an antitrust defendant's challenged conduct and the plaintiff's injury. *See Wellbutrin*, 868 F.3d at 165-69 (acknowledging that "a regulatory … bar can break the chain of causation in an

9

antitrust case," and finding no record evidence from which a jury could find that the challenged conduct, rather than the regulatory scheme, was the cause of the plaintiff's injuries); *Canadian Imp.*, 470 F.3d at 791 (absence of Canadian competition in the prescription drug market, allegedly leading to higher prices, was factually caused by the government's statutory and regulatory scheme prohibiting importation of Canadian drugs not the defendants' conduct); *RSA Media*, 260 F.3d at 14-15 (affirming the district court's determination that there was no material issue of fact that "the claimed injury was not causally related to the alleged antitrust violation" in light of a state regulatory scheme prohibiting the building of new billboards); *City of Pittsburgh*, 147 F.3d at 268 (noting the "lack of causal connection between the violation alleged and the City's injuries"). Indeed, the district court in *Wellbutrin* recognized that there is a distinction between asserting an illegality defense, which would be barred under *Perma Life*, and arguing that the regulatory scheme factually cuts off the chain of causation. *See* 133 F. Supp. 3d 734, 763 n.43 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132 (3d Cir. 2017).

Here, as discussed above, the "new evidence" submitted by Intuitive does not undermine the Court's determination in the summary judgment order that there is evidence from which a jury could find that Intuitive's alleged anticompetitive conduct was a "material cause" of Restore's injury, notwithstanding its lack of FDA clearance. Thus, although "[c]ourts often find a lack of antitrust injury when it views

a regulatory barrier, rather than the defendant's alleged anticompetitive activities, as the cause of the plaintiff's inability to enter the market," *Biocad JSC*, 942 F.3d at 104 (Katzmann, C.J., concurring), the Court cannot resolve that issue on summary judgment in this case because of the conflicting evidence on causation.

Nor did the Court overlook the cases cited by Intuitive for the proposition that an antitrust plaintiff lacks a cognizable interest in a business in which it lacks the legal right to compete, thereby precluding it as a matter of law from establishing antitrust injury as to that business. *See Modesto Irrigation Dist. (MID) v. Pac. Gas & Elec. Co.*, 158 F. App'x 807 (9th Cir. 2005); *Bubis v. Blanton*, 885 F.2d 317 (6th Cir. 1989); *Broker's Title, Inc. v. Main*, 1986 WL 18199 (4th Cir. Nov. 24, 1986); *Pearl Music Company v. Recording Industry Ass'n of America, Inc.*, 460 F. Supp. 1060 (C.D. Cal. 1978); *JEM Marketing, LLC v. Cellular Telecommunications Industry Ass'n*, 705 A.2d 798 (N.J. Super. Ct. App. Div. 1998). However, the only one of these cases that involves remotely similar circumstances as this case is *Broker's Title*, and the Court finds the reasoning in that case unpersuasive.

*Broker's Title* is an unpublished opinion in which the Fourth Circuit affirmed the district court's ruling that a real estate company that was found to be illegally engaged in the unauthorized practice of law suffered no injury and lacked standing to recover antitrust damages from attorneys who allegedly refused to deal with the company. *See* 1986 WL 18199, at *1. The court distinguished *Kiefer-Stewart* and

11

*Perma Life* because "in neither of those cases were the damages claimed based on harm to plaintiff's illegal activities." *Id.* That is true, but based on Tenth Circuit's reasoning in *Semke*, the Court finds that distinction unpersuasive.

*Semke* is a published opinion in which the Tenth Circuit held that the fact that the plaintiff was effectively engaged in an unlawful business did not bar his antitrust suit. The plaintiff in *Semke* was a used car dealer who did not have a state license to sell new cars and alleged that a group of new car dealers used various means to stop him from selling new cars, including persuading the state motor vehicle commission to bring an injunction suit against him in state court. *See* 456 F.2d at 1363, 1365. The district court instructed the jury that the plaintiff could not recover any damages related to lost new car sales, either before or after the entry of the injunction, because the statutory scheme precluded him from selling new cars. *Id.* at 1365. The Tenth Circuit reversed this ruling,[8] explaining:

> The underlying basis for the *Perma Life* decision is the superior public interest in enforcing even by private action the antitrust laws. As the [Supreme] Court put it, the weighing of the relative moral worth of the parties would seriously undermine the value of the private action in antitrust enforcement. If participation by a plaintiff in an illegal conspiracy in restraint of trade is not to bar him, it follows that his violation of a state statute which is unrelated to the antitrust laws would carry even less moral impact and would assume even less applicability as a barrier to an antitrust suit.

---

[8] The Tenth Circuit affirmed the district court's ruling that the plaintiff could not recover damages resulting from the defendants' efforts to persuade the regulatory agency to bring an injunction suit against the plaintiff. *See Semke*, 456 F.2d at 1365-66. Restore did not seek damages on that basis in this case.

12

*Id.* at 1369-70 (footnote omitted). The Court remanded the case for a new trial at which the plaintiff would be permitted to recover pre-injunction[9] damages that resulted from the defendants' anticompetitive conduct. *Id.* at 1370.

Thus, consistent with *Semke*, even if Restore's EndoWrist "repair" business may have been (and likely was) unlawful, that is not a per se bar to Restore's antitrust claim and does not, as a matter of law, preclude Restore from recovering damages that the jury finds, as a matter of fact, were caused by Intuitive's anticompetitive conduct rather than the FDA regulatory scheme. That, however, does not mean that the jury will not hear evidence and/or be instructed that Restore's EndoWrist "repair" services did not have—and likely (or definitely) needed—510(k) clearance in relation to the issues of causation and damages. Ultimately, it will be up to the jury to decide what weight, if any, to give to the fact that Restore's EndoWrist

---

[9] The court explained with respect to the pre-injunction period that:

> There exists some likelihood that the statute was designed to prohibit plaintiff's particular activity, and yet through all of the period of his activities no effort was ever made to prosecute him under the criminal part of the Act and, indeed, the injunctive sanction was employed only after he had operated for a number of years. Thus, there was basis for plaintiff to question whether the statute applied to his activities, and until such time as the judgment in State Court was obtained there existed a question generally as to whether the statute was capable of functioning as a bar to antitrust litigation (assuming that a statute can of itself serve this purpose).

*Semke*, 456 F.2d at 1368. The same could be potentially be said about Restore's EndoWrist "repair" business, although there is also evidence from which the jury could find that Restore was on notice much sooner than the FDA's recent email that its EndoWrist "repair" services required 510(k) clearance. It will be up to the jury to decide how much weight to give that evidence when considering causation and the temporal extent of any damages.

"repair" business was unlawful (or likely so) without 510(k) clearance when considering the parties' competing expert opinions on the issue of damages.[10]

## Conclusion

In sum, for the reasons stated above, the Court finds that the "new evidence" submitted by Intuitive does not warrant reconsideration of the Court's ruling on Intuitive's motion for summary judgment. Accordingly, it is

**ORDERED** that Intuitive's motion for reconsideration (Doc. 160) is **DENIED**.

**DONE and ORDERED** this 31st day of May, 2022.

*T. Kent Wetherell, II*
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court remains skeptical that Restore will be able to persuade the jury that the damages related to the loss of its EndoWrist "repair" business are anything remotely close to what its expert estimated. *See* Doc. 170-1. However, upon further review and reflection, the potential shortcomings in the expert's opinion that the Court mentioned at the telephonic case management conference (and Intuitive referenced in its reply, Doc. 170 at 5-6) go to the weight of her opinions, rather than their admissibility. Thus, there is no basis for the Court to enter summary judgment on the issue of damages with respect Restore's EndoWrist "repair" claims.