## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC,<br>RESTORE ROBOTICS REPAIRS LLC,<br>and CLIF PARKER ROBOTICS LLC,<br><br>                Plaintiffs,<br><br>   v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>                Defendant. | Civil Case No. 5:19-cv-55-TKW-MJF |
| INTUITIVE SURGICAL, INC.,<br><br>                Counterclaimant,<br><br>   v.<br><br>RESTORE ROBOTICS LLC and<br>RESTORE ROBOTICS REPAIRS LLC,<br><br>                Counterclaim Defendants. | |

### INTUITIVE SURGICAL, INC.'S MOTION
### FOR LIMITED REOPENING OF DISCOVERY

Pursuant to Rules 16(b)(4) and 6(b)(1)(B) of the Federal Rules of Civil

Procedure, Defendant/Counterclaim Plaintiff Intuitive Surgical, Inc. ("Intuitive")

respectfully submits this motion for a limited reopening of discovery regarding the

efforts of Plaintiffs/Counterclaim-Defendants Restore Robotics LLC and Restore

Robotics Repairs LLC (collectively, "Restore") to obtain FDA clearance relating to

their EndoWrist "repair" business.

Intuitive has met and conferred at length with Restore about this issue, and the parties have been unable to reach agreement.  Intuitive therefore brings this motion seeking relief from the Court.

## MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

From the time it filed this action, Restore has contended that its EndoWrist "repair" business does not require 510(k) clearance from FDA.  Indeed, Restore's expert, Professor DePasquale, assumed in her damages calculations that Restore's EndoWrist "repair" business does not require 510(k) clearance.

After the close of discovery, in opposition to Intuitive's motion for summary judgment, Restore for the first time offered a new theory:  that but for Intuitive's alleged misconduct, it would have obtained 510(k) clearance for a new EndoWrist "repair" technology never disclosed in its Complaint.  Indeed, although Restore obtained leave to file an amended complaint on March 29, 2021, it never included any allegations about the EndoWrist "repair" technology it had purportedly developed by June 2020 or the 510(k) application relating to that technology, which was submitted on February 15, 2021 by Restore's agent, ███████ ███████████████████████████.

It is undisputed that ███████ "510(k) request is still under consideration"

by FDA.  (Ex. 1 at 2, email from Restore counsel to Intuitive counsel (July 28, 2022).)  While Intuitive served a subpoena on ▊▊▊▊ in April 2021 and received documents from ▊▊▊▊, the record on this critical issue is still developing—and has continued to develop—since ▊▊▊▊ responded to the subpoena and since fact discovery closed in this case on June 11, 2021.

Restore now has made it clear that it intends to *selectively produce*—and rely on—new documents and information (post-dating the close of discovery) to support its new theory, including documents that—according to Restore— purportedly show that it will obtain clearance in the near future.  These documents include recent, post-discovery exchanges between ▊▊▊▊ and FDA that Restore produced, but that are facially incomplete—as they are missing referenced attachments.  While Restore produced portions of ▊▊▊▊ post-discovery correspondence with FDA, it has refused to produce other previously unproduced documents relating to its ongoing efforts to obtain 510(k) clearance, including the attachments to the recently produced FDA correspondence, other correspondence between ▊▊▊▊ and FDA, internal ▊▊▊▊ documents, internal Restore documents or communications between ▊▊▊▊ and Restore.

Intuitive files this motion seeking a limited reopening of discovery that is necessary to defend against Restore's new theory.  Intuitive's requested relief is

proper under either Rule 16(b)(4) or Rule 6(b)(1)(B) of the Federal Rules of Civil

Procedure, each of which provides an independent basis to reopen discovery.

*First*, under Rule 16, "good cause" exists to reopen discovery because

Intuitive, despite its diligence, could not have obtained the documents and

information it now seeks during fact discovery.  Indeed, Intuitive only seeks

materials that *post-date* the agreed-upon cutoff dates for document production

during fact discovery—which closed in June 2021.  Moreover, reopening

discovery will facilitate the presentation to the jury of a full and accurate

description of the facts regarding Restore's attempts to obtain FDA clearance,

rather than just the information that Restore chooses to present.

*Second*, the Rule 6 factors for "excusable neglect" are satisfied because

Intuitive has not been "neglectful" at all, and reopening discovery poses no risk of

prejudice to Restore and will not delay this case.  As reflected in the Proposed

Order accompanying this motion, Intuitive proposes to complete the limited

additional discovery by November 22, in advance of the December 2022 deadlines

for the parties' pretrial submissions and well before trial is scheduled to begin on

February 6, 2023.  Moreover, Intuitive has clearly acted in good faith, and it only

brings this motion to obtain equal access to—and establish an orderly process for

the disclosure of—the full set of documents and information that Restore has

indicated that it will selectively rely on at trial.

# BACKGROUND

## I.    RESTORE'S COMPLAINT AND THE DISCOVERY RECORD

In its operative Complaint, filed in March 2021, Restore alleges that it licensed (from Rebotix Repair LLC) "technology to reset the usage count on EndoWrist instruments for the da Vinci Si robot systems."  (ECF 77, Second Am. Compl. ("SAC") ¶ 87.)  Restore further alleges that its business of extending uses for EndoWrists does not require FDA clearance.  (*See id.* ¶ 89.)  Notably, Restore never alleged in any complaint that it had its own technology to circumvent EndoWrist use limits, or that it was seeking (or intended to seek) FDA clearance for any such technology.

During fact discovery, Intuitive propounded requests for all documents relating to Restore's communications with FDA and any application for FDA clearance.  (Ex. 2 at 7, Intuitive Second Set of Requests for Production to Restore, Nos. 51-52.)  Pursuant to those requests, Intuitive learned that:  (i) Restore purportedly developed its own technology to circumvent use limits for S/Si EndoWrists; and (ii) in February 2021, ▓▓▓▓▓ (acting on Restore's behalf) filed a 510(k) application seeking FDA clearance relating to that technology, under the name of Iconocare Health Solutions ("Iconocare")—▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓ ▓▓▓▓▓.

As a result, Intuitive subpoenaed ▓▓▓▓▓ on April 1, 2021 and obtained

documents relating to the 510(k) application, including ██████ correspondence

with FDA.  Intuitive also deposed two ██████ employees, including the person

responsible for the 510(k) application.



 (Ex. 3

at ████████.) ████████████████████████████████████

████████████████████████████, given the June 2021 fact discovery

deadline in this case and the fact that ██████ only produced documents through

the April 1, 2021 date of Intuitive's subpoena.

It is undisputed that ██████ has continued to prosecute the 510(k)

application since the close of fact discovery 14 months ago (and since its document

production cutoff 16 months ago), including by communicating with and

submitting materials to FDA.

## II.    RESTORE'S NEWLY ASSERTED THEORY AND INTENT TO RELY ON NEW EVIDENCE

In opposition to Intuitive's motion for summary judgment, Restore argued—

for the first time in this case—that it "would likely have requested clearance much

earlier and received it but for its exclusion from the market for the last two years

by Intuitive."  (ECF 117, Restore Opp. to Mot. for Summ. J. at 19.)  Then, in

opposition to Intuitive's motion for reconsideration of the summary judgment

order, Restore represented that "[s]ince [February 2020], there has been no

communication whatsoever, much less an adjudication, between the FDA and

Restore whether clearance would ever be required for the Iconocare repair

technology." (ECF 165, Restore Opp. to Mot. for Reconsideration at 5.)



(Ex. 3 at

.)[1]

Because Restore's arguments implicate its post-discovery efforts to obtain

FDA clearance, Intuitive met and conferred with Restore to discuss additional

discovery limited to those efforts. During the meet-and-confer process, Restore

repeatedly indicated that it intends to *selectively produce*—and rely on—new

documents and information post-dating discovery. For example, on July 15, 2022,

during the course of the parties' meet-and-confer process, Restore produced an

email chain—ranging from October 1, 2021 to June 30, 2022—between

Restore also has

_____

[1]

represented that if it obtains 510(k) clearance, it will submit a supplemental expert

report from Professor DePasquale, who will articulate a new but-for world in

which Restore would have obtained clearance earlier and revise Restore's claimed

damages.  (*See* Ex. 1 at 4, 6, emails between Restore counsel and Intuitive counsel

(July 18-21, 2022).)

Despite its stated intention to rely on a new theory supported by new

documents and information, Restore has steadfastly refused to provide Intuitive

with plainly relevant discovery necessary to probe Restore's theory.  Specifically,

Restore has refused to produce any new (i.e., previously unproduced) internal

████████ or Restore documents regarding the 510(k) application, or new

communications between ████████ and Restore.[2]  Notably, Restore has not disputed

that these documents are highly relevant.

Restore also has refused to provide Intuitive with the entirety of the

correspondence with FDA, including correspondence between April 1 and October

1, 2021 and attachments that are referenced in (but were not provided with) the

email chain that Restore recently produced.  (*See, e.g.*, Ex. 4 at Restore-00086116

---

[2]  It is undisputed that Restore has "possession, custody or control" of ████████
documents relating to the 510(k) application—which Restore is funding—because
it has "the legal right, authority *or* practical ability" to obtain those documents.
*Meraki Solar, LLC v. Rosenbalm*, No. 3:21-cv-405-MCR-HTC, 2021 WL
5114869, at *5 (N.D. Fla. Nov. 3, 2021) (citation omitted).  Indeed, it was **Restore**
that produced the recent excerpts of ████████ correspondence with FDA, and
both Restore and ████████████████████

(referencing ███████████████████████████████████████

████████████████████████████████████████████

███████) ██████████████████████████████

████████████████████████████.)  In this regard, Restore has

argued that it will not produce new testing data submitted with the 510(k)

application because it claims Intuitive (apparently in violation of the Protective

Order in this case) has used previously produced data to "interfere in the ex parte

510(k) process."  (Ex. 1 at 4, email from Restore counsel to Intuitive counsel (July

21, 2022).)  But Restore has provided no explanation—let alone evidence—as to

how Intuitive purportedly exploited its confidential data.[3]

Restore also has suggested that the testing data submitted with the 510(k)

application will only be relevant if the application is denied.  (*See id.*)  Restore is

wrong.  The data is highly relevant regardless of the application's ultimate

disposition.  For example, potential deficiencies in data submitted with the

application and the need to remedy those deficiencies, rather than alleged

misconduct by Intuitive, may account for the purportedly delayed timing of the

510(k).  The data may also be relevant to other important questions, including

whether Restore's "repaired" EndoWrists are actually as safe as the EndoWrists

that Intuitive sells (as Restore has alleged (SAC ¶ 80)), or if their safety is subject

---

[3]  To be clear, Intuitive flatly denies this unsupported allegation.

to important constraints that would affect their usefulness and the competitive impact of their availability in the marketplace.

## III.   INTUITIVE'S PROPOSED RELIEF

As reflected in the accompanying Proposed Order, Intuitive has proposed a schedule for the limited discovery it seeks.  This proposed schedule is intended to provide an orderly process that ensures the timely disclosure of the facts regarding Restore's ongoing efforts to obtain FDA clearance, as well as any new expert opinions (and rebuttals to those opinions) arising from those facts.  Specifically, Intuitive proposes the following deadlines:

- **On or before September 2**, Restore will produce all previously unproduced documents relating to any FDA application for its EndoWrist business, including documents that Restore has the ability to obtain from its agents, such as ▮▮▮▮▮, involved in any 510(k) application.[4]

- **On or before September 23**, Intuitive may take a Rule 30(b)(6) deposition—limited to the subject matter of the newly produced documents—of Restore and/or its agents involved in seeking FDA clearance.[5]

---

[4] Because Restore's efforts to obtain 510(k) clearance are ongoing, the Proposed Order would require Restore to supplement its production promptly if it generates and/or receives additional responsive documents and to certify 30 days before trial that all required supplementation is, to the best of its knowledge, complete.

[5] Intuitive believes it likely will be necessary to depose Restore's agents, particularly ▮▮▮▮▮, because during discovery, Restore's witnesses consistently testified that they were unfamiliar with the status of the Iconocare 510(k) application and instead deferred to ▮▮▮▮▮. (*See, e.g.*, Ex. 5, Parker Tr. 217:6-19 (testifying that Mr. Parker had not seen FDA's response to the 510(k) application, but learned about it from ▮▮▮▮▮▮▮▮▮); Ex. 6, May Tr. 95:6-13

*(cont'd)*

- **On or before October 14**, each party may provide supplemental expert reports from any of its previously disclosed experts from whom it wishes to offer supplemental opinions based on new information that has become available since the parties' original expert reports were served.

- **On or before November 4**, each party may serve rebuttal reports from any of its previously disclosed experts that respond to any supplemental reports served by the opposing party.

- **On or before November 22**, each party may depose any expert who has submitted a supplemental report. The scope of the deposition shall be limited to the subject matter of the expert's supplemental report.

## ARGUMENT

Under Rule 16 of the Federal Rules of Civil Procedure, a scheduling order can be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In addition, Federal Rule of Civil Procedure 6 provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

A party seeking to reopen discovery must establish good cause under Rule 16 or excusable neglect under Rule 6. *See, e.g.*, *HGR Constr., Inc. v. Hanover Ins. Co.*, No. 6:18-cv-1406-Orl-40LRH, 2020 WL 12604700, at *5 (M.D. Fla. July 13, 2020) (party moving to reopen discovery "must establish that it was diligent [under Rule 16] *or* show that the [excusable neglect] factors favor reopening discovery"

---

(testifying that Mr. May was the only Restore employee to see the application, and he only "perused it").)

under Rule 6 (emphasis added)); *Gilbert v. Morgan*, No. 3:08-cv-51-RV/MD, 2009 WL 3230335, at *1 (N.D. Fla. Sept. 25, 2009) (granting motion to reopen discovery because defendants established "excusable neglect" under Rule 6).

As further explained below, Intuitive has satisfied the standards under both Rule 16 and Rule 6, each of which provides an independent basis to grant this motion.

## I.   THERE IS GOOD CAUSE TO REOPEN DISCOVERY

To establish good cause under Rule 16, "a party must show that 'the schedule cannot be met despite the diligence of the party seeking the extension.'" *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2022 WL 1665446, at *2 (M.D. Fla. May 25, 2022) (citation omitted).  When analyzing whether there is good cause to reopen discovery, courts have recognized that "[t]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-cv-962-J-39JBT, 2014 WL 12616965, at *2 (M.D. Fla. May 30, 2014) (alteration in original) (citation omitted).

There is good cause to reopen discovery because Intuitive clearly has been diligent, but could not have obtained the limited documents and information it now

seeks—as those materials **post-date** the agreed-upon cutoff dates for document production during fact discovery.  Indeed, those materials likely continue to be generated to this day.  During fact discovery, Intuitive requested all documents from Restore and ███████ relating to their efforts to obtain FDA clearance to circumvent EndoWrist use limits and deposed personnel from both companies regarding those efforts.  But fact discovery closed on June 11, 2021, and pursuant to agreements between the parties, the cutoff for ███████ review and production of documents was April 1, 2021 (and Restore's was earlier).  As a result, despite Intuitive's diligence, it could not have obtained the highly relevant documents and information regarding Restore's efforts to obtain FDA clearance since April 1, 2021—documents that likely continue to be created, as the review of the application is pending.  These include materials that would allow Intuitive to probe Restore's claims that it is on the verge of obtaining clearance and would have obtained clearance already in the but-for world, as well as representations (and the bases for such representations) that have been made to FDA about the nature, safety, quality, benefits and risks of the technology for which clearance is sought.

Moreover, "good cause exists to re-open discovery . . . so that 'the ultimate resolution of disputed issues . . . may be based on a full and accurate understanding of the true facts.'"  *Abruscato*, 2014 WL 12616965, at *3 (second alteration in original) (citation omitted).  Restore intends to **selectively produce**—and rely on—

new documents and information relating to the status of the Iconocare 510(k) application.  Reopening discovery would facilitate the development of a complete record regarding the status of that application and, therefore, enable the disputed issues in this case to be resolved based on a more fulsome and accurate understanding of the record.

## II.    THE STANDARD UNDER RULE 6 IS ALSO SATISFIED

In analyzing excusable neglect under Rule 6, courts consider: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."  *Abruscato*, 2014 WL 12616965, at *2 (citation omitted).

Each of these factors weighs in favor of reopening discovery, which is unsurprising because Intuitive could not have been "neglectful" in failing to obtain discovery that post-dates the June 2021 close of fact discovery in this case.  As an initial matter, Restore will not suffer any prejudice if discovery is reopened to allow Intuitive to probe the bases for ***Restore's newly asserted theory*** that it would have obtained FDA clearance earlier in the but-for world.  In contrast, Intuitive would suffer significant prejudice if it were denied discovery to vet Restore's theory, particularly if Restore is allowed to rely on documents and information post-dating the close of discovery.

14

In addition, Intuitive's requested relief will not cause any delay in this case. As reflected in the accompanying Proposed Order, Intuitive has proposed a schedule for the limited discovery to be completed by November 22—in advance of the December 2022 deadlines for the parties' pretrial submissions and well before trial is scheduled to begin on February 6, 2023.

Finally, it is clear that Intuitive is acting in good faith.  Intuitive brings this motion simply to obtain equal access to—and to establish an orderly process for the disclosure of—the full set of documents and information that Restore has indicated that it will selectively rely on at trial.  Intuitive's good faith is further evidenced by its willingness to produce additional documents requested by Restore that relate to its pending claims, despite Restore's refusal to provide necessary discovery to Intuitive.  Specifically, Intuitive—recognizing the temporal gap between the June 2021 close of fact discovery and the trial scheduled for February 2023—has agreed to produce:  (i) updated S/Si EndoWrist sales data through the second quarter of 2022; (ii) updated communications, if any, between Intuitive (or persons representing Intuitive) and FDA regarding efforts by Restore or other third parties to obtain 510(k) clearance, or to determine whether they need FDA clearance, relating to their EndoWrist "repair" businesses; and (iii) updated communications, if any, between Intuitive (or persons representing Intuitive) and FDA regarding the need for 510(k) clearance for Intuitive's own extended lives

15

program or any Intuitive refurbishment or remanufacturing program for

EndoWrists.

## **CONCLUSION**

For the foregoing reasons, Intuitive respectfully requests that the Court grant

its motion for a limited reopening of discovery and enter the schedule reflected in

the accompanying Proposed Order.[6]

---

[6] Restore's assertion of new theories—based on selective disclosure of post-discovery information—appears likely to raise recurring issues.  On July 21, 2022, Restore represented—for the very first time—that it intends to seek damages relating to X/Xi EndoWrists.  (*See* Ex. 1 at 5, email from Restore counsel to Intuitive counsel (July 21, 2022).)  Until that representation, Restore's asserted damages were limited to S/Si EndoWrists, as the discovery record established—and Restore's Complaint conceded (SAC ¶ 86)—that Restore never had the technological capability to circumvent the use counter for X/Xi instruments and, therefore, never offered that service.  But Restore just days ago represented to Intuitive for the first time that it is "completing preparations to deploy the X/Xi technology" and its expert, Professor DePasquale, will submit a supplemental report "with an estimate of damages in the U.S. X/Xi EndoWrist Aftermarket." (*See* Ex. 1 at 5, email from Restore counsel to Intuitive counsel (July 21, 2022).) Restore's latest effort to belatedly assert a new theory (based on purportedly new facts) may be the subject of a future motion, but the issue is not ripe because the parties have not yet completed the meet-and-confer process.

Dated:  August 12, 2022                    Respectfully submitted,

                                           /s/ Karen Lent


KAREN HOFFMAN LENT (*Pro Hac Vice*)        DAVID L. McGEE
MICHAEL H. MENITOVE (*Pro Hac Vice*)       Fla. Bar No. 220000
SKADDEN, ARPS, SLATE,                      BEGGS & LANE, RLLP
 MEAGHER & FLOM LLP                        501 Commendencia Street
One Manhattan West                         Pensacola, FL 32502
New York, NY 10001                         Telephone: (850) 432-2451
Tel: (212) 735-3000                        dlm@beggslane.com
karen.lent@skadden.com
michael.menitove@skadden.com
ALLEN RUBY (*Pro Hac Vice*)                SONYA D. WINNER (*Pro Hac Vice*)
Attorney at Law                            COVINGTON & BURLING LLP
15559 Union Ave. #138                      Salesforce Tower
Los Gatos, CA 95032                        415 Mission Street, Suite 5400
Tel: (408) 477-9690                        San Francisco, CA 94105
allen@allenruby.com                        swinner@cov.com

                                           ANDREW D. LAZEROW (*Pro Hac Vice*)
                                           COVINGTON & BURLING LLP
                                           One CityCenter
                                           850 Tenth Street, NW
                                           Washington, DC 20001-4956
                                           alazerow@cov.com


*Counsel for Intuitive Surgical, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Intuitive certifies that its counsel conferred by telephone with Restore's counsel regarding this motion on July 12, 2022 and by email on July 8, 12, 18, 21 26 and 28.  The conference and communications did not resolve the issues raised in the motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Intuitive certifies this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because it contains 3,908 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, I caused **INTUITIVE SURGICAL, INC.'S MOTION FOR LIMITED REOPENING OF DISCOVERY** to be served on the following counsel of record by email:

| William Gerald Harrison, Jr. | wharrison@harrisonrivard.com |
|---|---|
| Jeffrey Berhold | jeff@berhold.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com