# Exhibit 1

| | |
|---|---|
| **From:** | Jeffrey Berhold |
| **To:** | "Menitove, Michael H" |
| **Cc:** | Folger, Michael W |
| **Subject:** | RE: Restore v. Intuitive |
| **Date:** | Thursday, July 28, 2022 11:35:50 PM |

Mike:

This case includes X/Xi EndoWrist instruments. The complaint alleged relevant aftermarkets for "EndoWrist instrument repair and replacement." FAC ¶ 36. The Court did not narrow those allegations in ruling on the motion to dismiss the complaint. And at no time did either party exclude X/Xi EndoWrist instruments from the scope of discovery. Nor did the Court exclude the X/Xi EndoWrist instruments in ruling on the motion for summary judgment or the motion for reconsideration.

In fact, Professor DePasquale concluded that "[t]here is a U.S. S/Si EndoWrist Aftermarket and a U.S. X/Xi EndoWrist Aftermarket." DePasquale Rep. at 4 n.2. She concluded that Intuitive had monopoly power in both aftermarkets. Id. at 3. Professor DePasquale calculated lost profit damages for Restore in the S/Si EndoWrist Aftermarket. Id. at 4. She also noted that "Restore is currently developing technology for the repair of X/Xi EndoWrist instruments" and indicated that she would supplement her report "[i]f Restore is able to enter the U.S. X/Xi EndoWrist Aftermarket during this litigation. Id. at 4 n.2. (Contrary to your email, Professor DePasquale will not supplement her report to offer estimates of damages for the Xi EndoWrist **unless** Restore is able to enter the U.S. X/Xi EndoWrist Aftermarket, and I have never said otherwise.)

In opposing summary judgment, Restore noted that it "has invested in the development of its own technology for repairing the Si **and Xi EndoWrists**." Response in Opposition at 13. In support of that fact, Restore filed a declaration from Restore CEO Clif Parker that "Restore has funded the development of technology through ▇▇▇▇▇▇▇▇ to reset the usage counter on Si **and Xi EndoWrist** instruments" and "Restore is continuing to fund the development of technology to reset the usage counter on the **Xi EndoWrists**." Parker Dec. ¶¶ 2, 5.

Accordingly, Restore has reasonably requested Intuitive to supplement responses to requests for production regarding the Si **and Xi EndoWrists** under Rule 26(e) through targeted search and production where the responses appear to be incomplete in some material respect because of the availability of new information. In fact, Restore has already produced its running dialogue with the FDA regarding the 510(k), even though it does not materially change the fact that there is a 510(k) pending with the FDA.

Yet Intuitive – which actively controls 99% of the robot market, the service aftermarket, and the instrument aftermarkets in this multibillion dollar industry – has produced none of the new information requested below by Restore. Intuitive only "remains willing" to produce some new information for the Si EndoWrists. Intuitive will not produce **additional X/Xi EndoWrist sales data** to supplement the earlier X/Xi EndoWrist sales data. In fact, Intuitive refuses to produce any new information for the Xi EndoWrists. And Intuitive will not produce new information about communications between Intuitive and the FDA regarding **the need for FDA clearance for its own**

***refurbishment or remanufacturing programs***.  Intuitive will not produce new documents relating to any plans for technology to block ***resetting EndoWrist usage limits*** (i.e., resetting the usage counter) as part of the servicing of EndoWrists.

Since the close of discovery, Intuitive has dedicated hundreds of millions of dollars to developing technology and selling products and communicating with the FDA about their products and their competitors' products.  Rule 26(e) requires Intuitive to supplement its responses to requests for production if they are incomplete ***in some material respect*** because of the availability of new information.  Intuitive should do so without delay for the Si EndoWrist and Xi EndoWrist aftermarkets at issue in this case.  There is no basis for excluding the Xi EndoWrist from the scope of any necessary supplementation.

While resisting supplementation of its own production as provided under Rule 26(e), Intuitive wants to create a ***new discovery period***, which would include ***new party and third party document requests and party and third party depositions***, solely for the purpose of imposing new discovery on Restore on the single issue of Restore's pending 510(k) request.  The Restore 510(k) was submitted during fact discovery.  Intuitive already conducted extensive party and third party document and deposition discovery on the Restore 510(k) request and the reasons for it during the discovery period before summary judgment.  Moreover, the 510(k) request is still under consideration and does not merit a second discovery period after summary judgment.  Intuitive has already litigated the issue on summary judgment – and on its motion for reconsideration of the order on summary judgment.  Restore is not aware of any new information that would materially change when Restore submitted the 510(k) or how much earlier Restore would have submitted the 510(k) but for the anticompetitive actions of Intuitive.

Restore has reason to believe that Intuitive is taking these tactics in bad faith to harass Restore and its vendors and delay trial in this case.  In addition to demands for a new discovery period to impose new discovery on Restore and its vendors regarding the Restore 510(k), and only the Restore 510(k), in this case, Intuitive is using third-party discovery in the hospital class action to harass Restore and vendors that are assisting Restore in its 510(k) by ***asking for additional rounds of discovery even if though they are able to use discovery from Restore and Rebotix***.

Intuitive is also well aware that the 510(k) process is ex parte.  Intuitive is well aware that the clearance process involves highly competitive sensitive information.  There is no basis for Intuitive to be injecting itself into the process or learning trade secrets about the Restore remanufacturing process from Restore or its vendors or imposing unnecessary and burdensome discovery on them.  And Intuitive appears to be communicating with the FDA about Restore's 510(k) request.

The FDA will make its determination and publish clearance on the public docket.  If the FDA decides not to grant clearance, Restore will produce any document from the FDA explaining the decision on clearance.  In the meantime, Restore will not consent to a new discovery period (as opposed to supplementation of document responses and expert disclosures if needed under Rule 26(e)).

Thanks.

Jeff.

**From:** Menitove, Michael H <Michael.Menitove@skadden.com>
**Sent:** Tuesday, July 26, 2022 11:40 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** Folger, Michael W <Michael.Folger@skadden.com>
**Subject:** RE: Restore v. Intuitive

Jeff,

Yes, Intuitive still plans to move to reopen discovery, and your message illustrates why it is necessary to do so. Your message confirms that Restore intends to selectively produce—and rely on—new documents and information (post-dating discovery) to support its theory that it would have obtained FDA clearance earlier in the but-for world. Yet, you continue to deny Intuitive the basic discovery it needs to vet this theory, even as you expand the scope of your requests for additional discovery from Intuitive.

We believe the parties have reached impasse. Please let us know by the end of the day tomorrow (July 27) whether Restore will change its position and allow Intuitive discovery regarding Restore's (and/or its agents') efforts to obtain 510(k) clearance, including by: producing the entirety of ▓▓▓▓▓/Restore's correspondence with FDA (including testing data submitted with the Iconocare 510(k) application), internal Restore and/or ▓▓▓▓▓ documents, and communications between Restore and ▓▓▓▓▓ agreeing to the limited additional deposition testimony described in the proposal I sent you previously; and adopting the schedule for this discovery and limited additional expert disclosures also set out in that proposal. Otherwise, Intuitive will proceed to file a motion seeking this relief.

Despite your refusal to provide this necessary discovery to Intuitive, consistent with my prior email, Intuitive remains willing to produce to Restore: (i) S/Si EndoWrist sales data through Q2 2022; (ii) any previously unproduced communications between Intuitive and FDA regarding efforts by Restore or other third parties to obtain 510(k) clearance, or to determine whether they need FDA clearance, relating to their EndoWrist "repair" businesses; and (iii) updated communications between Intuitive and FDA regarding the need for 510(k) clearance for Intuitive's own extended lives program. In addition, augmenting my email below in light of your response, while the documents you seek could not reasonably be considered responsive to Restore's Document Request No. 24, I can confirm that there is no new proposed Intuitive technology to block Restore (or anyone else) from "repairing," remanufacturing, or **resetting EndoWrist usage limits** for S/Si instruments—i.e., the only instruments that Restore alleged throughout discovery that it had the ability to "repair" and the only instruments for which Professor DePasquale asserted damages.

Finally, you have now for the first time represented that "Restore is . . . completing preparations to deploy the X/Xi technology" and indicate that Professor DePasquale will seek to revise her opinions to include—for the first time—damages to Restore's X/Xi EndoWrist "repair" business. This new position is contrary to the record evidence, which established that Restore never had the

technological capability to circumvent the use counter for X/Xi instruments and never attempted to sell that capability to customers (and therefore could not possibly have been blocked from making such sales by anything Intuitive did), and is contrary to your representation just last month that Restore still lacked that capability.

At this late juncture in the case, we do not believe that Restore can assert a new theory—apparently predicated on a newly (or not yet) devised technology that was never disclosed in Restore's complaints or in discovery. Before you assert such a new theory in a supplemental expert report or otherwise, we believe you have an obligation to meet and confer before acting unilaterally. Kindly advise us of several alternative dates and times when you would like to begin discussions.

Thanks,
Mike

**Michael H. Menitove**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | NY | 10001
T: +1.212.735.3517 | F: +1.917.777.3517
michael.menitove@skadden.com

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, July 21, 2022 9:28 PM
**To:** Menitove, Michael H (NYC) <Michael.Menitove@skadden.com>
**Cc:** Folger, Michael W (NYC) <Michael.Folger@skadden.com>
**Subject:** [Ext] RE: Restore v. Intuitive

Mike:

Thanks for the email. As a preliminary matter, please clarify whether Intuitive is still planning to move to reopen discovery. I explained in our call that Restore is willing to discuss supplementation under Rule 26(e). Consistent with my comments, you are now referring to "targeted supplementation."

To that end, Restore has produced the running dialogue between ▮▮▮▮ and the FDA regarding the pending 510(k). On June 30, the FDA team indicated it is "weeks" from completing its review. If the FDA grants clearance, the testing is not relevant. Intuitive does not dispute that it has not published performance specifications, and there will be no dispute that Restore meets the safety requirements of the FDA. (Nor would Restore want the burden or inconvenience of piecemeal production before a decision or take the risk of its discovery being used by Intuitive to interfere in the ex parte 510(k) process.) Restore is willing to supplement its production with any new testing summaries provided to the FDA if the FDA declines to grant clearance.

As a final note regarding supplementation by Restore, I did not say that Restore expects to have Professor DePasquale supplement her report to fulfill any duty under Rule 26(e). I only offered it as a possibility if there were material changes in the facts, such as Restore launching its Xi technology, to explain to you that Rule 26(e), rather than a motion to reopen discovery, provides the appropriate discovery procedure here. Intuitive will also have to determine whether its expert witnesses have

any duty under Rule 26(e).

Restore has also identified certain areas where Intuitive may have additional information. Restore requests that Intuitive update its production of relevant EndoWrist transaction data through Q2 2022 to address the dispute between the experts regarding lost profits. While Intuitive now agrees to produce S/Si EndoWrist sales data through Q2 2022, Restore also requests **X/Xi EndoWrist sales data** because Restore is also completing preparations to deploy the X/Xi technology and Professor DePasquale indicated in our report that she would supplement her analysis with an estimate of damages in the U.S. X/Xi EndoWrist Aftermarket if Restore was able to enter the U.S. X/Xi EndoWrist Aftermarket. It is also relevant to consider any possible trends in conversion from Si to Xi when controlling for any continuing effects of Covid on the market. Please confirm that Intuitive will be producing all such documents.

Restore also requests an update of documentation of communications between Intuitive and the FDA regarding efforts by Restore or other third parties to obtain FDA clearance relating to their EndoWrist business or determine whether they need FDA clearance. Evidence of interference with the ex parte 510(k) process is highly relevant and should not impose an undue burden on Intuitive. While Intuitive now agrees to produce "any previously unproduced communications between Intuitive and FDA regarding efforts by Restore or other third parties to obtain 510(k) clearance relating to their EndoWrist 'repair' businesses," Restore wants all documentation of communications between Intuitive and the FDA (**including emails and other documents summarizing or referring to oral communications between Intuitive and the FDA**) – and all such documents relating to efforts by Restore or other third parties to obtain clearance relating to their EndoWrist business or **determine whether they need FDA clearance**. Please confirm that Intuitive will be producing all such documents.

Similarly, Restore requests an update on documentation of communications between Intuitive and the FDA regarding **the need for FDA clearance for its own extended use programs and refurbishment or remanufacturing programs**. These documents are highly relevant to the defenses that extended uses and instrument refurbishment are not safe. If Intuitive has new documents, they should be produced under Rule 26(e). Please confirm that Intuitive will be producing all such documents.

Restore also requests an update on documentation of any new technology that is being tested or used on the da Vinci Surgical System to block repairing or remanufacturing of EndoWrists or resetting their usage limits. Restore Document Request No. 24 asked for "[a]ll documents identifying or discussing technology . . . installed by Intuitive that blocks third parties from accessing or servicing the da Vinci Surgical System . . ." The instruments are part of the system: Intuitive itself defines the da Vinci Surgical System as the hardware, software, and documentation that the customer may "receive, obtain, and license" under the SLSA. Moreover, Restore-00086100 gives rise to the inference that Intuitive has informed the FDA that a "future software update to the da Vinci system may potentially detect and disable remanufactured instruments." If Intuitive has been or is testing or deploying such technology on the da Vinci Surgical System, such documents should be produced under Rule 26(e).

Via your email, you assure that there is no new proposed Intuitive technology to block Restore (or anyone else) from "repairing" or remanufacturing S/Si instruments. Such assurances have no evidentiary value. Moreover, Restore did not limit its request to the S/Si systems or instruments. In addition, such assurances do not address the question of whether Intuitive has any new additional documents relating to technology to block **resetting EndoWrist usage limits** (i.e., resetting the usage counter) as part of the servicing of EndoWrists. If Intuitive has new documents, they should be produced under Rule 26(e). Please confirm that Intuitive will be producing all such documents.

Let me know if you have any questions.

Thanks.

Jeff.


**From:** Menitove, Michael H <Michael.Menitove@skadden.com>
**Sent:** Monday, July 18, 2022 11:40 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** Folger, Michael W <Michael.Folger@skadden.com>
**Subject:** RE: Restore v. Intuitive

Jeff,

Thanks for your message.

We agree that the parties have engaged in extensive discovery and should be spending their time conferring about trial preparation. We consider our proposal to be fully consistent with—indeed, vital to, that goal. We propose only a targeted supplementation of discovery to address subsequent events that both parties agree are relevant to the issues to be tried. You have suggested that you wish in return to receive certain additional discovery from Intuitive. While we could appropriately contest Restore's right to request that material at this late date, Intuitive is prepared to provide it, as described below, as a compromise in exchange for the limited FDA-related discovery we have requested.

The relevance of communications with FDA about the 510(k) application submitted by Iconocare (but which we understand Restore intends to claim at trial is made for its benefit) cannot seriously be questioned. Significantly, you have not suggested that Restore intends to refrain from referring at trial to events or evidence that post-date the close of discovery. To the contrary, you indicated during our call that Restore intends to selectively produce—and rely on—information post-dating discovery in this case, including certain email communications with FDA that you offered to produce in part, as well as additional information that may be available in the future (e.g., if FDA clearance is obtained). You also indicated that you expect to have Professor DePasquale submit a supplemental expert report with a revised damages model based on this new material, even though the scheduling order in the case includes no provision allowing any testimony outside the four corners of Professor DePasquale's original reports.

Since our call, you have made your promised "production" of a single email chain of communications with FDA, but that production is clearly incomplete, lacking, among other things, the attachments containing much of the substantive content of several important emails in the chain, as well as other communications with FDA, including those occurring before the first email in this particular chain. And despite Restore's intention to rely on this additional material at trial, you have indicated that Restore will oppose producing any related documents and information, including communications between Restore and its agents (like ▮▮▮▮▮▮) and the critical attachments to the FDA emails, including testing data submitted in support of the 510(k) application. This position, in essence, assumes that Restore should be free to make use of previously unproduced documents and information that it believes support its claims without providing even the most minimal discovery that would allow Intuitive to complete the record and test Restore's contentions. This position is untenable and unfairly prejudicial to Intuitive. The discovery we seek is highly targeted and would not be burdensome to produce; it seems clear that Restore's rationale for resisting full production is the concern that this evidence will *not* support its claims.

If Restore is unwilling to provide this limited discovery, we will seek relief from the Court. Contrary to your argument that the proposed discovery will "unnecessarily delay trial preparations," Intuitive has proposed a schedule for the limited discovery it seeks that will not require *any* change to the pretrial or trial schedule. What it *will* do is provide for an appropriate supplementation of the record on post-discovery events, while benefiting both sides in establishing clear deadlines for that supplementation so that we can all fairly and efficiently prepare for trial.

With regard to your argument that "the proposed discovery is one sided," you have not identified any additional discovery for which Restore has a corresponding need. That said, in compromise, Intuitive is willing to provide most of the discovery you identified during our call, so long as it is understood that this will be the full extent of Restore's demands. Specifically, Intuitive is willing to produce: (i) S/Si EndoWrist sales data through Q2 2022; (ii) any previously unproduced communications between Intuitive and FDA regarding efforts by Restore or other third parties to obtain 510(k) clearance relating to their EndoWrist "repair" businesses (which should put to rest Restore's frivolous and unsupported speculation that Intuitive has somehow "interfered" with the Iconocare application); and (iii) updated communications between Intuitive and FDA regarding the need for 510(k) clearance for Intuitive's own extended lives program.

As for your request for "an update on documentation of any new proposed technology to block the repairing or remanufacturing of EndoWrists or resetting their usage limits," this request is untethered to any theory that Restore has asserted and outside the scope of any request for production that it has previously propounded. Regardless, in the spirit of compromise and (again) to assuage your concern that Intuitive is adopting new measures to interfere with Restore's S/Si instrument remanufacturing efforts, we can inform you that there is no new proposed Intuitive technology to block Restore (or anyone else) from "repairing" or remanufacturing S/Si instruments.

In light of the above, please let us know by Thursday whether Restore intends to maintain its positions. In that event, Intuitive intends to seek appropriate relief from the Court.

We can be available to meet and confer if you would like to discuss.

Thanks,
Mike

**Michael H. Menitove**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | NY | 10001
T: +1.212.735.3517 | F: +1.917.777.3517
michael.menitove@skadden.com

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Tuesday, July 12, 2022 6:21 PM
**To:** Menitove, Michael H (NYC) <Michael.Menitove@skadden.com>
**Cc:** Folger, Michael W (NYC) <Michael.Folger@skadden.com>
**Subject:** [Ext] RE: Restore v. Intuitive

Mike and Mike:

Confirming our telephone conversation today, Restore opposes the proposed motion to reopen discovery. The parties had a very lengthy discovery period before summary judgment and should be conferring about trial preparations rather than engaging in new discovery. We already have roughly 1 million pages of documents and several hundred hours of deposition testimony from dozens of industry fact witnesses. Intuitive alone has already offered 6 experts with more than 500 pages of disclosures. The proposed discovery would impose an undue burden and expense on Restore and would needlessly increase the cost of the litigation and unnecessarily delay trial preparations.

In addition, the proposed discovery is one sided. If the Court is inclined to reopen discovery, Restore would ask for reciprocity on reopening discovery from Intuitive as well regarding (1) Restore's efforts (including the efforts of any third party working on Restore's behalf) to obtain FDA clearance relating to its EndoWrist business, (2) Intuitive's efforts to obtain FDA clearance, or determine the need for FDA clearance, relating to its EndoWrist business (*e.g.*, any extended use program or remanufacturing program), and (3) Intuitive's efforts to develop or install new technology to prevent the remanufacturing of EndoWrists.

As I indicated on our call, Restore does believe that it may be appropriate for both parties to seasonably amend discovery responses in a reasonable fashion. For example, the FDA has not completed its review of the Restore 510(k) so Restore will produce the email string documenting communications from October 1, 2021 to June 30, 2022 between ▓▓▓▓ and the FDA regarding the status of the pending 510(k) submission.

Along those lines, Restore requests that Intuitive update its production of relevant EndoWrist transaction data through Q2 2022 to address the dispute between the experts regarding lost profits. Restore also requests an update of documentation of communications between Intuitive and the FDA regarding efforts by Restore or other third parties to obtain FDA clearance relating to their EndoWrist business or determine whether they need FDA clearance. Evidence of interference with the ex parte 510(k) process is highly relevant and should not impose an undue burden on Intuitive.

Similarly, Restore requests an update on documentation of communications between Intuitive and the FDA regarding the need for FDA clearance for its own extended use programs and refurbishment or remanufacturing programs. Restore also requests an update on documentation of any new proposed technology to block the repairing or remanufacturing of EndoWrists or resetting their usage limits.

Thanks.

Jeff.

**From:** Menitove, Michael H <Michael.Menitove@skadden.com>
**Sent:** Friday, July 8, 2022 10:31 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** Folger, Michael W <Michael.Folger@skadden.com>
**Subject:** Restore v. Intuitive

Hi Jeff,

We'd like to meet and confer to discuss a motion to reopen discovery regarding Restore's efforts (including the efforts of any third party working on Restore's behalf) to obtain FDA clearance relating to its EndoWrist business.

To help facilitate discussion, attached is a proposed order setting forth a framework for the limited reopening of discovery that we're contemplating.

Could you please let us know your availability to meet and confer on Monday or Tuesday of next week?

Thanks,
Mike

**Michael H. Menitove**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | NY | 10001
**T: +1.212.735.3517** | **F: +1.917.777.3517**
michael.menitove@skadden.com

------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================
===========

---

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================
===========

---

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================
===========