# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, and CLIF PARKER ROBOTICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. <br><br> INTUITIVE SURGICAL, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

**PLAINTIFFS RESTORE ROBOTICS LLC AND RESTORE ROBOTICS REPAIRS LLC'S RESPONSE IN OPPOSITION TO DEFENDANT <u>INTUITIVE SURGICAL, INC.'S MOTION TO REOPEN DISCOVERY</u>**

Jeffrey L. Berhold  
JEFFREY L. BERHOLD, P.C.  
1230 Peachtree Street, Suite 1050  
Atlanta, Georgia 30309  

William G. Harrison  
HARRISON RIVARD DUNCAN & BUZZETT  
101 Harrison Avenue  
Panama City, FL 32401

Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC ("Restore") hereby file this response in opposition to the motion to reopen discovery filed by Plaintiff Intuitive Surgical, Inc. ("Intuitive"). Intuitive asks for a second round of fact and expert discovery after summary judgment on the "new theory" that Restore would be able to use the Iconocare technology to repair Si EndoWrists with 510(k) clearance from the FDA if clearance was required. Mot. at 2.

Of course, there is no new theory. 510(k) clearance goes hand in hand with the ability to market and sell the medical device in the 510(k) application. Intuitive does not dispute that the Iconocare application was filed in February 2021 and was the subject of extensive discovery. Nor does it dispute that Restore already argued at summary judgment that it would have sought 510(k) clearance earlier but for the conduct of Intuitive. Moreover, there is no basis for Restore (or Intuitive) to supplement its expert disclosure on damages because Restore has not received clearance to establish a start date for damages based on 510(k) clearance.

In reality, Intuitive was not diligent in the first place. Their safety expert did not offer any opinions whatsoever on the Iconocare technology. See Dkt. 145-18. It explains the effort to manufacture a story of a "new theory." But Intuitive is not entitled to backfill expert opinions on the Iconocare technology. It was already the subject of extensive fact discovery more than a year ago. And the Iconocare technology did not change after the filing of the 510(k) application.

1

Background

After Rebotix terminated its distribution agreement with Restore to repair EndoWrists with the Rebotix technology in October 2019, Restore hired Alliance to oversee the research and development of new technology for repairing EndoWrist instruments for use with the da Vinci Surgical System. The technology was the basis for the Iconocare 510(k) application K210478 for marketing and selling Si EndoWrists as the remanufacturer of record, which was submitted to the FDA by Alliance through Iconocare in February 2021. During discovery, Restore and Alliance produced more than 100 emails discussing the efforts to develop the Iconocare technology and submit a 510(k) for it. They also produced the Iconocare 510(k) application – and more than 150 documents that refer expressly to K210478.[1]

---

[1] Contrary to the representations in the Motion (Mot. 16 n.6), Restore has always taken the position that Restore also wants to enter the U.S. X/Xi EndoWrist Aftermarket if it is able to develop or obtain technology to reset the usage count during repair service of EndoWrist instruments for the da Vinci X and Xi robot systems.

The complaint referenced those efforts: "Restore has been unable *so far* to develop or obtain technology to reset the usage count during repair service of EndoWrist instruments for the da Vinci X and Xi robot systems. Dkt. 14 ¶ 74 and Dkt. 77 ¶ 86 (emphasis added).

During discovery, Restore and Alliance produced documents relating to their work on technology for reading and resetting the usage limits on the Xi EndoWrists going back to the initial statement of work.

During the review process, there has been no change to the Iconocare technology. Ex. 1 (Declaration of Clif Parker) ¶ 3.

Intuitive took three depositions on the Iconocare repair technology and the Iconocare 510(k) application for marketing and selling EndoWrists as the

---

In his deposition, Clif Parker testified that Restore would have an increase in potential business for the Xi EndoWrists as hospitals converted from the Si to the Xi.  Ex. 2 (Parker Dep.) at 183:4-183:15.

> Q. And do you believe that a -- a decline in the number of Ss and SIs in service, that decline fuels your business, potential business in a good way?
>
> A. Well, from a percentage standpoint, as Intuitive stops supporting certain Si instruments, a greater percentage of people are going to want to use our services. Obviously, if there's fewer robots in the hospitals, then that, you know, the -- the number physical robots will go down, but the percentage of adoption will go up with the Si. *Now Xi is a different story.*

Ex. 2 (Parker Dep.) at 183:4-183:15 (emphasis added).

In her expert report, Professor DePasquale expressly noted that she *would* supplement her analysis with an estimate of damages in the U.S. X/Xi EndoWrist Aftermarket *if* Restore was able to enter the U.S. X/Xi EndoWrist Aftermarket. Restore is currently developing technology for the repair of X/Xi EndoWrist instruments. "*If* Restore is able to enter the U.S. X/Xi EndoWrist Aftermarket during this litigation, I will supplement my analysis with an estimate of damages in the U.S. X/Xi EndoWrist Aftermarket." Dkt. 136-1 (DePasquale Rep. at 4 n.2) (emphasis added).

In opposing summary judgment, Restore discussed its investments in the development of its own technology for repairing Xi EndoWrists. Dkt. 117 at 13, Dkt. 117-1 (Parker Dec. ¶¶ 2, 5).

3

remanufacturer of record: Ferreira, Chudzik, and May II. Moreover, Clif Parker and Kevin May explained the differences between being hired by a hospital to provide repair services for the hospital's reusable medical devices without a 510(k) and selling your own medical devices to hospitals as the remanufacturer of record with a 510(k).[2] Ex. 2 (Parker Dep.) at 212:14-213:3, Ex. 3 (May Dep.) 195:10-196:16. And Intuitive could have asked Restore whether it would have sought the 510(k) earlier to capture those benefits – or would have undertaken any other sales, marketing, research, production, or other business efforts – in the absence of the monopolistic conduct by Intuitive and the lost sales for Restore.[3]

Restore has provided an update on the status of the application and will continue to do so even though it does not materially change the fact that there is a 510(k) pending with the FDA.[4] See Mot. Ex. 4. Again, the technology has not

---

[2] Consistent with that testimony, the FDA boilerplate language only refers to whether the applicant may "market the device" to hospitals. Mot. at 7. That language says nothing about whether Restore may repair the hospital's own EndoWrist using the Iconocare repair technology.

[3] Contrary to the motion, "potential deficiencies in data submitted with the application and the need to remedy those deficiencies" is not relevant to the issue of whether Restore would have submitted the 510(k) earlier in the first place.

[4] Not surprisingly, Parker and May are quite familiar with the status of the Iconocare 510(k) application. "Restore has actively monitored the status of the Iconocare 510(k) application with the FDA with great interest." Ex. 1 (Parker Dec.) ¶ 2. Contrary to the motion, Parker and May never "consistently testified that they were unfamiliar with the status of the Iconocare 510(k) application." Mot. n. 5. The cited testimony does not support that conclusion. In fact, *Restore* produced Mot. Ex. 4,

changed. Ex. 1 ¶ 3. Based on communications with the FDA, Restore understands that the FDA has completed its review of testing and labeling information and is not seeking more data. See, e.g., Mot. Ex. 4 at 1 (Restore-00086093). A decision on clearance is expected shortly. Ex. 1 ¶ 2; see also Mot. Ex. 4 at 1 (Restore-00086093). So the only live issue is the decision from the FDA. The data is not relevant if it meets the requirements for clearance by the FDA. And clearance puts the question of clearance to rest.

In her expert report, Professor DePasquale assumed that Restore and Rebotix would be in the market but for the monopolistic conduct. Dkt. 136-1 (DePasquale Rep. at 4, 22). Dr. DePasquale testified that she assumed that clearance was not necessary. Ex. 4 (DePasquale Dep.) at 82:3-83:11. She said she assumed clearance was not the driver of demand but would increase demand. Id. at 87:2-87:10. So if Restore obtained clearance, it only means that customer demand may increase and that some or all of the sales and profits shift from Rebotix to Restore. But there is no point in making those calculations *with or without a delay in filing the 510(k)* until you know when clearance has been obtained. If there is clearance, the parties can make arrangements for the exchange of supplemental expert disclosures and depositions based on the date of clearance.

---

which contains the email string with the FDA tracking the status of the Iconocare 510(k) application.

Intuitive has already communicated with the FDA regarding Restore. Intuitive does not dispute that there have been communications. Intuitive simply denies that it has "exploited Restore's confidential data." Mot. at 9. But Restore has reason to believe that Intuitive is communicating with the FDA about the Iconocare 510(k) application. See Mot. Ex. 4 (Paragraph No. 2 in the middle of Restore-00086100). Intuitive should not be communicating with the FDA during the internal 510(k) review process. And Restore should not be dependent on how Intuitive defines the use of Restore's confidential data.

Intuitive contacted Restore for the first time to raise the issue of reopening discovery on July 8, 2022. Mot. Ex. 1 at 10. Restore has explained that it is willing to work with Intuitive if a need arises for supplementation of document responses and expert disclosures under Rule 26(e)).[5] For example, Restore has asked for supplementation of sales data and documents relating to blocking technology and FDA communications.[6] Intuitive has agreed to produce written communications

---

[5] See, e.g., Mot. Ex. 1 at 9 ("Restore does believe that it may be appropriate for both parties to seasonably amend discovery responses in a reasonable fashion.") and 3 ("Restore will not consent to a new discovery period (as opposed to supplementation of document responses and expert disclosures if needed under Rule 26(e)").

[6] Contrary to the implication of the motion (Mot. at 15), Restore initiated discussions with Intuitive about the need for Intuitive to supplement its own production. Mot. Ex. 1 at 8 ("As I indicated on our call, Restore does believe that it may be appropriate for both parties to seasonably amend discovery responses in a reasonable fashion."). For example, "Restore has reasonably requested Intuitive to supplement responses to requests for production regarding the Si and Xi EndoWrists under Rule 26(e)

6

with the FDA regarding Restore but refused to produce documents relating to its oral communications with the FDA regarding Restore.[7] Intuitive has agreed to produce additional Si EndoWrist sales data but refused to produce additional Xi EndoWrist sales data. Mot. Ex. 1 at 1. Intuitive has also refused to produce additional documents relating to any technology to block the use of repaired instruments.[8] And Restore has already produced the email string with the FDA updating the status of the 510(k) application. Mot. Ex. 4.

---

through targeted search and production where the responses appear to be incomplete in some material respect because of the availability of new information." Mot. Ex. 1 at 1.

[7] "While Intuitive now agrees to produce "any previously unproduced communications between Intuitive and FDA regarding efforts by Restore or other third parties to obtain 510(k) clearance relating to their EndoWrist 'repair' businesses," Restore wants all documentation of communications between Intuitive and the FDA (*including emails and other documents summarizing or referring to oral communications between Intuitive and the FDA*) – and all such documents relating to efforts by Restore or other third parties to obtain clearance relating to their EndoWrist business or *determine whether they need FDA clearance*." Mot. Ex. 1 at 6 (emphasis in original).

[8] "Restore also requests an update on documentation of any new technology that is being tested or used on the da Vinci Surgical System to block repairing or remanufacturing of EndoWrists or resetting their usage limits. Restore Document Request No. 24 asked for '[a]ll documents identifying or discussing technology . . . installed by Intuitive that blocks third parties from accessing or servicing the da Vinci Surgical System . . .' The instruments are part of the system: Intuitive itself defines the da Vinci Surgical System as the hardware, software, and documentation that the customer may 'receive, obtain, and license' under the SLSA." Mot. Ex. 1 at 5.

In those conferrals, Restore has also expressed its concerns about the misuse of information from this case in other litigation – or the FDA's internal Iconocare 510(k) review. Restore has referred specifically to the email from the FDA appearing to show communication between Intuitive and the FDA regarding the Iconocare 510(k) application. In addition, Restore has taken the position that a second discovery period – especially a one-sided discovery period that does not address possible interference in the 510(k) process – is neither appropriate nor timely. Mot. Ex. 1.

In fact, Intuitive concedes that Alliance produced documents regarding the Iconocare technology and 510(k) created through April 1, 2021 and that Intuitive had notice from the Alliance document production that Alliance may have provided additional information to the FDA after April 1, 2021. Mot. at 6 (citing Ex. 3 at AHP000528.) Intuitive concedes that it did not pursue the issue before the close of fact discovery on June 11, 2021. Intuitive concedes that it did not pursue the issue before the close of expert discovery on October 21, 2021. Intuitive did not pursue the issue before the order on summary judgment on April 11, 2022. Intuitive did not pursue the issue before the order on its motion for reconsideration on May 31, 2022.[9]

---

[9] The FDA has since explained that the email at issue in the motion for reconsideration merely conveyed a "preliminary informal assessment" rather than a "official regulatory determination." Ex. 5.

8

In fact, Intuitive did not pursue the issue until July 8, 2022 – more than 400 days after receiving the 510(k) documents from Alliance.

## Analysis

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." Dkt. 101 at 3.

> The court considers three factors when deciding whether a party has been diligent in following a scheduling order, including (1) whether the party neglected to determine facts before filing pleadings or within discovery; (2) whether the subject matter of the motion for extension was readily available to the party, and (3) whether the party delayed filing the motion.

*Williams v. Blue Cross & Blue Shield of Fla., Inc.*, 2010 WL 3419720, at *2 (N.D. Fla. Aug. 26, 2010).

Here, Intuitive neglected to pursue any additional materials provided by Alliance to the FDA within the discovery period – or even within a year of the close of discovery. The Iconocare technology and the 510(k) were readily available to Intuitive. Yet Intuitive delayed filing the motion for more than a year after the close of discovery. The Court has previously ruled that Plaintiffs failed to exercise due diligence by taking 52 days after the receipt of six expert reports to give notice to take the depositions of some of those experts. Dkt. 101.

There is also significant risk of prejudice to Restore. A second discovery period unnecessarily complicates pretrial proceedings. Instead of asking for the FDA submissions themselves, Intuitive broadly demands "all unproduced documents relating to any FDA application for its EndoWrist business" even though Intuitive itself is not even producing information beyond its actual FDA submissions in this case or the class action beyond May 2021. In any event, we should have a simple answer of yes or no from the FDA shortly. At that point, the parties can discuss any need to supplement expert reports and depositions regarding damages under Rule 26(e).

A second discovery period also allows for further potential for mischief in the FDA's internal review. Tellingly, Intuitive has refused to produce documents relating to its oral communications with the FDA regarding Restore or the 510(k). Mot. at 15. Intuitive has also refused to discuss any compromise on its original proposal of a second round of discovery on the issue of its choosing. For example, Intuitive has not been willing to discuss any resolution through supplementation under Rule 26(e). See, e.g., Mot. Ex. 1 at 9 ("As I indicated on our call, Restore does believe that it may be appropriate for both parties to seasonably amend discovery responses in a reasonable fashion.").

For the foregoing reasons, the motion to reopen discovery should be denied.

Respectfully submitted on August 26, 2022.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 (telephone)
jeff@berhold.com

/s William G. Harrison, Jr.
William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
FL. Bar No. 0765058
101 Harrison Avenue
Panama City, FL 32401
850-769-1414 (telephone)
wharrison@harrisonrivard.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 7.1(F), the memorandum contains 2,687 words.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC,<br><br>Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I served the **PLAINTIFFS RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, AND CLIF PARKER ROBOTICS LLC'S RESPONSE IN OPPOSITION TO DEFENDANT INTUITIVE SURGICAL, INC.'S MOTION TO REOPEN DISCOVERY** to the following counsel of record via email:

| | |
|---|---|
| ALLEN J RUBY | allen@allenruby.com |
| ANDREW DAVID LAZEROW | alazerow@cov.com |
| ABRAHAM M ANDRADE, III | abraham.andrade@skadden.com |
| KAREN MARY LENT | karen.lent@skadden.com |
| LANCE A ETCHEVERRY | lance.etcheverry@skadden.com |

12

| | |
|---|---|
| MICHAEL H MENITOVE | michael.menitove@skadden.com |
| MICHAEL SCOTT BAILEY | michael.bailey@skadden.com |
| MICHAEL WILLIAM FOLGER | michael.folger@skadden.com |
| JORDAN ADAM FEIRMAN | jordan.feirman@skadden.com |
| SONYA DIANE WINNER | swinner@cov.com |
| DAVID LEE MCGEE | dlm@beggslane.com |

/s/ Jeff Berhold
Jeffrey L. Berhold
COUNSEL FOR PLAINTIFFS