# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC, RESTORE ROBOTICS REPAIRS LLC, and CLIF PARKER ROBOTICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. <br><br> INTUITIVE SURGICAL, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br> Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF <br><br> TO BE FILED UNDER SEAL |

**PLAINTIFFS RESTORE ROBOTICS LLC AND
RESTORE ROBOTICS REPAIRS LLC'S MOTION
<u>FOR AN ORDER COMPELLING DISCOVERY</u>**

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309

William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
101 Harrison Avenue
Panama City, FL 32401

COUNSEL FOR PLAINTIFFS

Pursuant to Fed. R. Civ. Proc. 26, 34, and 37, Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC ("Restore") hereby file this motion for an order compelling Defendant Intuitive Surgical, Inc. ("Intuitive") to supplement its responses to certain requests for production regarding the X/Xi instruments because they are incomplete in material respects.  A party must supplement its response to a request for production if the response is incomplete in "some material respect" – or "as ordered by the court."  Fed. R. Civ. Proc 26(e)(1).

Restore has asked Intuitive to supplement production under Rule 26(e) for blocking technology and sales data relating to the S/Si instruments and X/Xi instruments.  Intuitive has only agreed to respond for the S/Si instruments.  While Restore has already developed the technology to repair S/Si instruments <u>and</u> received clearance from the FDA to remanufacture them (K210478),[1] the X/Xi instruments were also part of the complaint and were the subject of discovery by both sides.

The X/Xi blocking technology is highly material to competition in the X/Xi <u>and</u> S/Si instrument aftermarkets.  Restore has alleged that Intuitive is engaged in a pincer action to prevent competition from ISOs in the S/Si and X/Xi instrument aftermarkets by blocking the use of repaired instruments for the Si while pushing customers to the Xi by prematurely withdrawing support for the Si.  To the extent

---

[1] The FDA completed its review and granted clearance on September 30, 2022.

that Intuitive is implementing changes to the X/Xi blocking technology as part of that pincer action, they are highly relevant and very material to anticompetitive conduct, monopolistic intent, and lost sales in the S/Si instrument aftermarket.

With the knowledge that it may be futile to deploy any repair technology before resolution of the current litigation, Restore continues to take affirmative steps to enter the X/Xi instrument aftermarket upon resolution of the case. For that reason, any changes in blocking technology are highly relevant and very material to the issues of entry barriers, monopolistic conduct, and monopolistic intent for the X/Xi instrument aftermarket as well. In addition, the updated sales data is highly relevant and very material because Professor DePasquale indicated in her disclosures that she would supplement her analysis under Rule 26(e) with an estimate of damages for X/Xi instruments if Restore has the ability to enter that market.

## I.   BACKGROUND

The issue of blocking technology lies at the heart of the monopolization allegations in this case about blocking third parties from repairing the robot instruments for additional use:

> Intuitive installs a programmed memory chip inside each EndoWrist instrument to prevent the instrument from being used for more than a certain number of procedures regardless of whether the instrument is maintained at, or returned to, its original safety and effectiveness through service. . . . Intuitive has designed the memory chip to deny access by third parties (including customers and ISOs) to reset the usage counter to zero for additional uses. . . .

> . . . Restore has been unable so far to develop or obtain technology to reset the usage count during repair service of EndoWrist instruments for the da Vinci X and Xi robot systems. For that reason, Intuitive has intentionally withdrawn its support for certain S and Si instruments and announced its intention in writing to discontinue production of all S and Si instruments and technical support for the da Vinci S and Si in 2023 to force customers to switch to the da Vinci X and Xi robot systems.

Dkt. 77 ¶¶85-86 (Second Amended Complaint).[2]

In sum, Intuitive is engaged in a pincer action to prevent competition in the S/Si and X/Xi instrument aftermarkets by blocking the use of repaired instruments for the Si while pushing customers to the Xi by prematurely withdrawing support for the Si. To the extent that Intuitive is implementing changes to the X/Xi blocking technology as part of that pincer action, they are material to the X/Xi instrument aftermarket – <u>and</u> anticompetitive conduct, monopolistic intent, and lost sales in the S/Si instrument aftermarket.

In the course of term searches for electronic discovery, Restore collected and produced documents relating to the development of technology for repairing the X/Xi instruments going back to its initial investigation of the feasibility of doing so. See, e.g., Ex. 1 (Restore-00073909) (invoice to engineering firm for down payment

---

[2] While the complaint alleged a relevant market for the instruments generally, Dkt. 77 ¶ 78, Professor DePasquale defined relevant markets for the S/Si instruments and the X/Xi instruments and expressly noted that she would supplement her S/Si instrument damages analysis with an estimate of damages in the X/Xi instrument aftermarket if Restore has the ability to enter that market. Dkt. 136-1 at 6 n.2 (DePasquale Rep. at 4 n.2).

3

on extended Xi investigation). In addition, Clif Parker testified that Restore would have an increase in potential business for the Xi instruments as hospitals converted from the Si to the Xi. Ex. 2 (Parker Dep. at 183:4-183:15). In opposing and prevailing on summary judgment, Restore discussed its continuing investments in the development of its own technology for repairing X/Xi instruments. Dkt. 117 at 13, Dkt. 117-1 (Parker Dec. ¶¶ 2, 5) (filed under seal).

Restore has continued to take affirmative steps to enter the X/Xi instrument aftermarket – even though Intuitive has successfully prevented Restore from generating sales and profits from the S/Si instrument aftermarket to fund its expansion into the X/Xi instrument aftermarket. The X/Xi instruments are based on the S/Si instruments. They are both controlled mechanically through a system of pulleys and cables. The X/Xi instruments and the S/Si instruments both have a usage counter. Restore has already developed the technology to reset the usage counter on the S/Si instruments. Restore has also developed and sold a handheld RFID reader to determine the remaining lives on an X/Xi instrument without connecting the instrument to the robot arm and expending one life. Ex. 3 (Restore-00094938) at p. 9.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

███████████████████████████████     ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

The repair process itself is virtually identical. So is the process verification and validation for clearance. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█

## II.     REQUESTS FOR PRODUCTION

**A.     <u>Blocking Technology</u>**

Plaintiffs' First Request for Documents asked for information relating to blocking technology:

> 24.     <u>Blocking Technology</u>. All documents identifying or discussing technology (e.g., encryption, passwords) installed by Intuitive that blocks third parties from accessing or servicing the da Vinci Surgical System (including the testing of robot parts, entry of replacement part numbers, and removal of error, warning, or reminder messages).

The da Vinci Surgical System includes the surgeon console, the robot arms, and the surgical instruments. Intuitive sought and received clearance from the FDA to market and sell the "da Vinci Surgical System, Model IS4000" (or Xi), which includes the endoscope, instruments, and accessories. Second Amended Complaint Ex. 4 (Dkt. 77-4) (also available online from the FDA searchable database at https://www.accessdata.fda.gov/cdrh_docs/pdf13/K131861.pdf). In its contracts with customers, Intuitive also defines the "da Vinci Surgical System" to include the various robot parts, instruments, and accessories. Ex. 11 (PANAMACITY000035 and 43 (Section 2.6 and Exhibit A of the SLSA)). According to an email from the FDA on May 31, 2022, a "future software update to the da Vinci system may potentially detect and disable remanufactured instruments." Dkt. 180 Ex. 4 at Restore-00086100 (filed under seal). For that reason, Restore has requested supplementation of its request for production under Rule 26(e).

If Intuitive is deploying new technology to block third parties from repairing X/Xi instruments, that information is highly relevant and very material to the issues of entry barriers, anticompetitive conduct, monopolistic intent, and lost sales in the X/Xi instruments and anticompetitive conduct, monopolistic intent, and lost sales in the S/Si instruments. The jury would certainly want to know whether Intuitive is withdrawing support for the Si while ramping up blocking technology on the Xi as part of a pincer action against ISOs trying to enter the instrument aftermarkets.

And it would explain additional time required to develop technology to reset the usage counter on the X/Xi instruments. While Intuitive has represented through counsel that "there is no new proposed Intuitive technology to block Restore (or anyone else) from 'repairing' or remanufacturing S/Si instruments," Intuitive refuses to produce documents regarding any new technology to block third parties from repairing or remanufacturing X/Xi instruments.

**B.     Sales Data**

Plaintiffs' Second Request for Documents asked for customer transaction data:

> 1.     <u>Transaction Data</u>. Electronically stored information to be produced in xls format for your customer transactions, including any transaction number, transaction type, invoice number, order date, shipping date, delivery date, customer name, customer id, facility name, facility id, billing address, delivery address, order code, item code, product code, part number, product name, product description, unit cost, unit price, and product quantity.

Intuitive produced that data for the S/Si instruments <u>and</u> the X/Xi instruments through First Quarter 2021. See Intuitive-00595428. Since trial does not start until February 6, 2023, Restore has requested supplementation of that sales data through Second Quarter 2022. Intuitive has agreed to supplement its production for the S/Si instruments but refused to supplement its production for the X/Xi instruments. The X/Xi instrument data is highly relevant and very material to any damages analysis.

7

Professor DePasquale indicated that she would calculate X/Xi instrument damages if Restore has the ability to enter that market. Supra at 2 n.1.

### III.   ANALYSIS

#### A.   Blocking Allegations

Restore alleged broad claims of monopolization based on contractual and technological restrictions imposed by Intuitive on the repair of the robot instruments. The complaint alleged that Intuitive imposed barriers to entry and maintained monopoly power through blocking technology. Restore requested documents relating to any blocking technology that blocks third parties from servicing the robot or instruments. Nevertheless, Intuitive argues that the complaint did not specifically allege that Intuitive would turn to implementation of blocking technology on the robot itself to prevent the repair of the instruments by third parties. In other words, Restore purportedly failed to put Intuitive on notice that *Intuitive* would implement new forms of blocking technology after discovery that would be relevant to the claims of monopolization. But the complaint is not required to anticipate every possible implementation of entry barriers generally or blocking technology specifically that may be used to acquire or maintain monopoly power.

Moreover, the use of blocking technology was raised in the complaint and document requests and is highly relevant and very material to the claims of monopolization. If Intuitive is deploying new technology to block third parties from

repairing X/Xi instruments, that information is highly relevant and very material to the issues of entry barriers, anticompetitive conduct, monopolistic intent, and lost sales relating to the X/Xi instruments <u>and</u> anticompetitive conduct, monopolistic intent, and lost sales in the S/Si instruments. The jury would certainly want to know whether Intuitive is withdrawing support for the Si while ramping up blocking technology on the Xi as part of a pincer action against ISOs.

It would also explain additional time required to develop technology to reset the usage counter on the X/Xi instruments. And even if Intuitive has no duty to deal with third parties in the first instance, such design modifications can be a basis for liability under Section 2 of the Sherman Act. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1379, 1382–83 (Fed. Cir. 1998) (affirming jury verdict for plaintiff on monopolization claim based on modification of mechanical biopsy gun to prevent use of competing replacement needles).

### B.     Antitrust Standing

In addition, the monopolization claims already survived summary judgment. Nevertheless, Intuitive insists that Restore does not have antitrust standing for claims relating to the X/Xi instruments and refuses to supplement production of documents relating to the X/Xi instruments. But any changes in the X/Xi blocking technology are highly material to competition in the S/Si instrument aftermarket as well. They

are part of the pincer action to eliminate competition from ISOs in both the S/Si and X/Xi aftermarkets.

In any event, the Court already addressed the argument – not once but twice – that Restore has not received clearance or deployed its own technology to repair the instruments generally. Dkt. 171, Dkt. 158 at 7-10 (noting "a jury could find that any further preparatory steps by Restore would have been futile in light of the anticompetitive restrictions"). Intuitive did not raise any argument on summary judgment that Restore lacks antitrust standing with respect to the X/Xi instruments specifically.

More recently, Intuitive did raise and lose that issue though in *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, 2022 WL 3272538 at *9-*10 (M.D. Fl. 2022 dated August 10, 2022). Rebotix has not completed the development of the technology for repairing the X/Xi instruments "because expending the resources to do so would be futile in light of Intuitive's ongoing anticompetitive conduct." Id. at *9. But Rebotix was funding the development of such technology and had the staff to repair the instruments. Id. at *10. Therefore, the Court denied summary judgment. Id.

Here as well, Restore is funding the development of technology to repair X/Xi instruments. Supra at 3-4; see also Dkt. 117 at 13, Dkt. 117-1 (Parker Dec. ¶¶ 2, 5) (filed under seal). Restore has access to qualified facilities and technicians for repairing the instruments. *See, e.g.*, Dkt. 117 at 13, Dkt. 117-1 (Parker Dec. ¶ 4)

(filed under seal).   And it is quite reasonable for "a jury to find that any further preparatory steps by Restore would have been futile in light of the anticompetitive restrictions." Dkt. 158 at 9-10 (Order on Summary Judgment).  Therefore, Intuitive has no legal or factual basis for refusing to supplement production based on antitrust standing even if it were timely to raise the argument now after rulings on summary judgment.

In order to recover for an antitrust injury in the X/Xi aftermarket, Restore must show "(1) an intention to enter the business, and (2) a showing of preparedness to enter the business." *Cable Holdings of Georgia, Inc. v. Home Video, Inc.*, 825 F.2d 1559, 1562 (11th Cir. 1987).  There is no dispute that Restore has planned to expand into the X/Xi instrument aftermarket in the absence of the anticompetitive conduct in this case and has taken affirmative steps to do so.  *See, e.g.*, *Lucasys Inc. v. PowerPlan, Inc.*, 576 F. Supp. 3d 1331, 1346 (N.D. Ga. 2021) (denying motion to dismiss on allegations of similar facts).

Restore has the background and experience to expand into X/Xi instrument aftermarket from their dealings in the S/Si instrument aftermarket.  They have made extensive preparations to reset the usage counter and obtain clearance from the FDA to remanufacture the X/Xi instruments under their own label for an additional cycle of uses.   Restore has received numerous inquiries from hospitals about remanufacturing the X/Xi instruments for an additional cycle of uses.  Restore had

11

a natural expectation of being able to finance their expansion into the X/Xi instrument market through their sales and profits in the S/Si instrument market if they were not being blocked by Intuitive from entering those markets.

"[N]ascent competitors need not pay a courtroom entrance fee in the form of an expenditure of substantial resources in a clearly futile competitive gesture." *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 740 (5th Cir. 2015) (quotation marks omitted). "The degree to which a business must take affirmative steps is mitigated by the impact of the antitrust violation, which we assume to have occurred when analyzing standing." *Id.* Intuitive has demonstrated that it will ruthlessly punish any hospital that seeks to use Restore to repair the instruments. Without access to customers, it would be futile to spend significant sums far in advance of knowing that Intuitive is changing its ways. In the meantime, we know that Restore intends to enter the market at that time and has taken affirmative steps to do so.

### C.     Additional Discovery

Finally, Intuitive claims that it would need to conduct a second round of discovery regarding the X/Xi instruments. Of course, Intuitive already had the opportunity to conduct discovery regarding the X/Xi instruments during the discovery period. Again, the X/Xi instruments were part of the complaint and were the subject of discovery by both sides. Restore has supplemented its document

production with an update on its preparations to enter the X/Xi instrument aftermarket.

During discovery, Intuitive had the opportunity to examine the witnesses from Restore about their development of technology to reset the X/Xi instruments. In fact, Intuitive is taking the depositions of Clif Parker and Kevin May of Restore and Rick Ferreira of Alliance <u>again</u> in the N.D. Ca. litigation and will have the opportunity to ask those questions for use in this litigation.

In addition, Intuitive could have examined Professor DePasquale about market demand in the X/Xi instrument aftermarket. And Intuitive will have the opportunity to examine her by deposition regarding estimates of X/Xi damages if she supplements her report.

But a second round of discovery is neither necessary nor appropriate. Intuitive should not be allowed to unduly delay or complicate this case by engaging in more anticompetitive conduct (*i.e.*, changes in blocking technology) – and refusing to produce relevant documents about it on the one hand and insisting on a second round of discovery in the alternative.

Rule 26(e) is the proper vehicle for any discovery at this point in the case. The parties – like litigants in any case – can address any developments in the facts of the case between the close of discovery and the testimony at trial during

examination of the fact witnesses at trial. In the meantime, Intuitive has a clear obligation to produce the requested documents under Rule 26(e).

## IV.    CONCLUSION

For the foregoing reasons, the motion should be granted.

Respectfully submitted on October 6, 2022.

/s Jeff Berhold
Jeffrey L. Berhold*
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 (telephone)
jeff@berhold.com

/s William G. Harrison, Jr.
William G. Harrison
HARRISON RIVARD DUNCAN & BUZZETT
FL. Bar No. 0765058
101 Harrison Avenue
Panama City, FL 32401
850-769-1414 (telephone)
wharrison@harrisonrivard.com

**COUNSEL FOR PLAINTIFFS**

*Admitted Pro Hac Vice

Pursuant to Local Rule 7.1(F), the memorandum contains 3,071 words.

## LOCAL RULE 7.1(C) CERTIFICATE

Pursuant to Local Rule 7.1(C), Restore hereby confirms that it complied with the attorney-conference requirement of Local Rule 7.1(B) and that the parties agreed that they had reached an impasse regarding the need for Intuitive to supplement its responses on blocking technology and sales data for the X/Xi instruments.

                                                s/ Jeff Berhold
                                                Jeffrey L. Berhold
                                                COUNSEL FOR PLAINTIFFS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

| | |
|---|---|
| RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br>Plaintiffs, <br><br>v. <br><br>INTUITIVE SURGICAL, INC., <br><br>Defendant. <br><br>INTUITIVE SURGICAL, INC., <br><br>Counterclaimant, <br><br>v. <br><br>RESTORE ROBOTICS LLC and RESTORE ROBOTICS REPAIRS LLC, <br><br>Counterclaim Defendants. | Civil Case No. 5:19-cv-55-TKW-MJF |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2022, I served the **PLAINTIFFS RESTORE ROBOTICS LLC AND RESTORE ROBOTICS REPAIRS LLC'S MOTION FOR AN ORDER COMPELLING DISCOVERY** to the following counsel of record via email:

| | |
|---|---|
| ALLEN J RUBY | allen@allenruby.com |
| ABRAHAM M ANDRADE, III | abraham.andrade@skadden.com |
| KAREN MARY LENT | karen.lent@skadden.com |
| LANCE A ETCHEVERRY | lance.etcheverry@skadden.com |
| MICHAEL H MENITOVE | michael.menitove@skadden.com |
| MICHAEL SCOTT BAILEY | michael.bailey@skadden.com |

| | |
|---|---|
| MICHAEL WILLIAM FOLGER | michael.folger@skadden.com |
| JORDAN ADAM FEIRMAN | jordan.feirman@skadden.com |
| DAVID LEE MCGEE | dlm@beggslane.com |
| JORDAN ADAM FEIRMAN | jordan.feirman@skadden.com |
| ANDREW DAVID LAZEROW | alazerow@cov.com |
| SONYA DIANE WINNER | swinner@cov.com |
| JOHN FOSTER KENDRICK | jkendrick@cov.com |

                                              s/ Jeff Berhold
                                              Jeffrey L. Berhold
                                              COUNSEL FOR PLAINTIFFS