EXHIBIT 1

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 2

Page 1

ATTORNEYS' EYES ONLY

1

1         IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF FLORIDA
2               PANAMA CITY DIVISION
3
4    RESTORE ROBOTICS LLC and
     RESTORE ROBOTICS REPAIRS
5    LLC,
                              CIVIL ACTION FILE
6          Plaintiffs,
                              NO. 5:19-cv-55-TKW-MJF
7         vs.
8    INTUITIVE SURGICAL, INC.,
9          Defendant.
     ~~~~~~~~~~~~~~~~~~~~~~~~~
10
11
          REMOTE VIDEO 30(b)(6) DEPOSITION OF
12              RESTORE ROBOTICS LLC
                       and
13          RESTORE ROBOTICS REPAIRS LLC
                     THROUGH
14          CLIFTON "CLIF" EARL PARKER
                       AND
15     CLIFTON "CLIF" EARL PARKER, INDIVIDUALLY
16
17
                  May 4, 2021
18
                  9:59 a.m.
19
20
               7506 Holly Circle
21          Panama City Beach, Florida
22
23
24        S. Julie Friedman, CCR-B-1476
25

AEO 30(b)(6) Clifton Earl Parker                     May 4, 2021
Restore Robotics LLC v Intuitive Surgical

Page 183

1    the number of S and Si robots in hospitals is

2    generally going up or going down these days?

3         A.    It's going down.

4         Q.    And do you believe that a -- a decline in

5    the number of Ss and SIs in service, that decline

6    fuels your business, potential business in a good

7    way?

8         A.    Well, from a percentage standpoint, as

9    Intuitive stops supporting certain Si instruments, a

10   greater percentage of people are going to want to use

11   our services.  Obviously, if there's fewer robots in

12   the hospitals, then that, you know, the -- the number

13   of physical robots will go down, but the percentage

14   of adoption will go up with the Si.

15              Now Xi is a different story.

16        Q.    Did there come a time when you severed all

17   business connection with Rebotix?

18        A.    Not permanently.  We --  We chose

19   collectively not to renew the agreement for the

20   exclusivity being the repair facility, but elected to

21   go our own way, do our own thing, but still continue

22   to utilize Rebotix from a contract standpoint, if you

23   will, where we could still send them instruments; and

24   they would do the repairs and -- and go from there.

25              But it became a moot point as Intuitive

# EXHIBIT 3

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 4

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 5

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

EXHIBIT 6

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 7

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 8

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

# EXHIBIT 9

# DOCUMENT FILED UNDER SEAL BY ORDER OF COURT

EXHIBIT 10

DOCUMENT FILED
UNDER SEAL BY
ORDER OF COURT

# EXHIBIT 11

# SALES, LICENSE, AND SERVICE AGREEMENT

Agreement No.: MA-296-2017

This Sales, License, and Service Agreement ("Agreement") is dated September 15, 2017 (the "Effective Date") and is between Intuitive Surgical, Inc., a Delaware corporation ("Intuitive"), located at 1266 Kifer Road, Sunnyvale, California 94086, and Panama City Surgery Center, LLC located at 1800 Jenks Avenue, Panama City, FL, (collectively "Customer").

The parties agree as follows:

1.   **Introduction**

   Customer agrees to purchase the Hardware and license the Software and Documentation from Intuitive, and Intuitive agrees to respectively sell and license the same to Customer, as well as provide Service for the System all according to the terms and conditions of this Agreement.

2.   **Definitions**

   2.1   **"Acceptance"** means Customer's acceptance of the System as specified in Exhibit A.

   2.2   **"Delivery Date"** means the estimated scheduled date for delivery of the System to Customer specified in Exhibit A.

   2.3   **"Instruments and Accessories"** means those instruments or accessories made or approved by Intuitive for use with the System.

   2.4   **"Proctoring"** means the assistance, coaching, or surgical training provided by a surgeon (the "Proctor") who is familiar with the System to another surgeon (the "Proctee") on how to perform a particular surgical procedure (or procedures) using the System.

   2.5   **"Services"** means the support and maintenance of the System described in Section 5 for the Service fees designated in Exhibit A.

   2.6   **"System"** means the items comprising the da Vinci® Surgical System specified in Exhibit A consisting of certain hardware components ("Hardware"), software program elements ("Software") and related manuals, labeling, instructions for use, notifications or other documentation ("Documentation"), that Customer may receive, purchase and license under this Agreement. If Customer purchases multiple Systems under this Agreement, all references to "System" or "System(s)" apply to each System sold and licensed. Each System purchased is a separate transaction to be delivered, accepted, and paid for separately.

   2.7   **"Taxes"** means any taxes, levies, or similar governmental charges, now in force or enacted in the future, and however designated, including related penalties and interest, imposed by any governmental authority on, or measured by, the activities described.

   2.8   **"Customer's Access Requirements"** means any reasonably applicable requirements designated by Customer that Intuitive personnel must meet to gain access to Customer's facility. Such requirements may include, but are not limited to, compliance with Customer's site policies and vendor credentialing requirements, such as vaccination, immunization, background investigation, training, hospital orientation, and liability insurance coverage.

   2.9   **"Reprocess"** or **"Reprocessing"** means Customer's process for cleaning, disinfection, and sterilization of Instruments and Accessories, including testing to validate cleaning, disinfection and sterilization process as may be required by applicable law and/or regulation.

3.   **System Delivery, Use, Disposal**

   3.1   **Delivery and Installation.** Subject to credit approval of Customer by Intuitive, Intuitive will use commercially reasonable efforts to deliver the System on or before the Delivery Date. Each party will provide the other party with thirty (30) days notice, or if this Agreement is executed within thirty (30) days before the Delivery Date, a reasonable advance notice of any change in the Delivery Date. Customer will fully cooperate with Intuitive to permit Intuitive to install the System. Intuitive will use commercially reasonable efforts to install the System in an efficient and expeditious manner. Customer will also provide Intuitive with information, consultation, and advice reasonably necessary to permit installation.

   3.2   **Delivery Terms.** Intuitive will deliver the System to Customer's designated location noted as the "Ship-to" in Exhibit A using a carrier selected by Intuitive. Fees for shipping the System are specified in Exhibit A. Risk of loss or damage to the System passes to the Customer upon delivery of the System to Customer. Title to the System passes to the Customer upon Acceptance.

PANAMACITY000035

3.3    **On-Site Support.** At no charge to Customer, Intuitive will provide periodic on-site support to Customer's designated personnel on the proper operation and upkeep of the System in order for Customer to operate the System as further described in Section 3.4. To clarify, this support includes, but is not necessarily limited to, training on draping the System for use in surgery, proper attachment of Instruments and Accessories, cleaning of parts of the System, the Instruments and Accessories and discussing opportunities to improve cost efficiencies. The cleaning to be performed regularly by Customer is described in the Documentation.

3.4    **Use of System.** Customer will ensure the proper use of the System consistent with the Documentation, and Customer will ensure the proper management and supervision of the System. Customer will not, nor will Customer permit any third party to, modify, disassemble, reverse engineer, alter, or misuse the System or Instruments and Accessories. Prohibited actions include, but are not limited to: (1) adding or subtracting any Customer or third party equipment, hardware, firmware, or software to or from the System, or (2) reconfiguring any of the Intuitive equipment, Hardware, firmware, or Software as originally provided to Customer as part of the System without Intuitive's express written permission. Customer will ensure that the System is moved and operated only by trained personnel in accordance with the Documentation and Intuitive's instructions. If Customer fails to comply with the requirements of this Section 3.4, Intuitive may terminate this Agreement immediately upon written notice, and any warranties applicable to the System will become void.

3.5    **Reprocess and Disposal.** Customer is responsible for properly Reprocessing and/or disposing of all medical instruments, devices, and systems related to the operation and function of the System, including Instruments and Accessories, in accordance with the Documentation and the then current local environmental and safety laws and standards.

4.    **Software License and Restrictions**

Software embedded within the System is provided under license and is not sold to Customer. Subject to the terms and conditions of this Agreement, Intuitive grants to Customer a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the System in machine-executable object code form and solely in connection with the operation of the System as described in the Documentation. Customer must not use, copy, modify, or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Agreement. In addition, Customer must not reverse engineer, decompile, disassemble, attempt to derive the source code for, or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Customer must first request from Intuitive the information to be sought from the Software, and Intuitive may, in its discretion, provide information to Customer under good faith restrictions and impose reasonable conditions on use of the Software. The structure and organization of the Software are valuable trade secrets of Intuitive and Customer will protect the Software as Intuitive's Proprietary Information (as defined in Section 13). Intuitive reserves all rights to the Software not expressly granted to Customer.

5.    **Services**

5.1    **Services Included.** If Customer is current in payment to Intuitive of the Service fees specified in Exhibit A, Intuitive, directly or through one of its designated service providers, will provide Services to Customer as listed below. Intuitive will use parts sourced by Intuitive, which may, at Intuitive's discretion, include reconditioned parts, ("Equivalent to New" or "ETN"). ETN parts are components, assemblies, or partial products which have had prior usage, but have been inspected, reworked, and tested as required so that their function, performance, and appearance will be essentially equivalent to that of new parts. Regardless of whether parts are new or ETN, Intuitive's appropriate warranties under Section 10.1(A) apply.

Intuitive will provide Services under the *EY Essential Care Plan*, with benefits and limitations as follows:

    (A)    Adjust parts on the System from time to time;

    (B)    Replace defective or malfunctioning System parts (excludes Instruments and Accessories; and any items contained in the Instrument Starter Kit, Camera Starter Kit, and Training Instrument Kit set forth in Exhibit A);

    (C)    Repair System operational malfunctions;

    (D)    Replace and install Software, Hardware, and mechanical equipment for safety and reliability;

    (E)    Provide twenty four (24) hours per day, seven (7) days per week (24 x 7) telephone support by qualified service personnel;

    (F)    50% discount (of then current time and material rates) on Software updates to improve system reliability and performance. Software upgrades and Service with respect to additional equipment not included on Exhibit A may be subject to separate terms to be agreed upon by the parties;

    (G)    Respond to Customer's request for Services described in Section 5.1(B)-(C) by phone, e-mail, or an on premise visit, during normal business hours (excluding Intuitive holidays) promptly as is reasonable after Intuitive's receipt of Customer's request, but not later than twenty-four (24) hours after Intuitive's receipt. Normal business hours are Monday through Friday, 8:00 a.m.- 5:00 p.m. Customer's local time. Billable rates are applicable for service outside of normal business hours, and for reasons defined below in Section 5.2 (Limitations of Service).

    (H)    Provide a 50% discount (of then current time and material rates) on System maintenance inspections as necessary to maintain factory specifications.

5.2    **Limitations on Services.**

    (A)    **General.** Intuitive does not have an obligation to provide Services (1) on any System where installation, repair, or adjustments have been made by an individual other than an Intuitive technician or an individual approved by Intuitive

PANAMACITY000036

or (2) which are either necessary or desired as a direct or indirect result, in whole or in part, of unauthorized repair, modification, disassembly, alteration, addition to, subtraction from, reconfiguration, or misuse of the System, or negligence or recklessness on the part of Customer.

(B)     Cleaning. Regular daily cleaning of the System as described in the Documentation is not included in the Services.

(C)     Additional Equipment. Intuitive's Services obligations do not include the provision to Customer of any hardware developed by Intuitive that is not contained in the initial System obtained by Customer, and which Intuitive offers as a separate product or for an additional fee.

(D)     Time and Materials. If the System needs repair or maintenance services due to any of the circumstances described in Section 5.2(A)-(B) above, Intuitive may, at its sole election, provide repair services at Customer's expense and at Intuitive's then current time and material rates. Intuitive is not obligated to provide Services on any System for which any applicable warranty has been voided, or for which the performance of Services is otherwise excused by the terms of this Agreement.

(E)     Unauthorized Instruments and Accessories. The System is designed for use only with the Instruments and Accessories. If Customer uses the System with any surgical instrument or accessory not made or approved by Intuitive, Intuitive may discontinue Services, and any warranties applicable to any Services provided prior to any discontinuance will be void.

5.3     **Customer's Obligations.**

(A)     Notice, Access, and Cooperation. Customer will notify Intuitive or Intuitive's designated service provider of any requests for Services. Customer will fully cooperate with and assist Intuitive in the provision of Services.

(B)     Clinical Liaison. Customer will designate one of its employees, agents, or representatives as a "Clinical Liaison." The Clinical Liaison will be the point of contact with Intuitive for installation, Services, use of the System, and other related issues. Nothing in this Section 5.3 authorizes Customer or the Clinical Liaison to perform Services or to perform any act otherwise prohibited by this Agreement.

**6.**     **Training**

Intuitive offers training to surgical personnel on the use and operation of the System. At Customer's request, at mutually agreed times and at mutually agreed locations, Intuitive will provide training in the use of the System to Customer's surgical personnel in accordance with the terms specified in Exhibit A.

**7.**     **Proctoring**

At Customer's request, and upon Customer's issuance of a purchase order, Intuitive will arrange for Proctoring at Customer's location in accordance with the terms specified in Exhibit A. Each Proctor is an independent contractor, is not an agent or employee of Intuitive, and is not authorized to act on behalf of, or legally bind, Intuitive. Intuitive is not responsible for Proctoring services provided by Proctors. The decision to utilize a Proctor is solely that of the Customer. Customer is responsible for ensuring that each Proctor meets Customer's credentialing requirements.

**8.**     **Instruments and Accessories**

Instruments and Accessories will be made available to Customer from Intuitive pursuant to separate orders placed by Customer to Intuitive from time to time in accordance with the terms and conditions contained in the then current Instrument and Accessory Catalog. Instruments and Accessories are subject to a limited license to use those Instruments and Accessories with, and prepare those Instruments and Accessories for use with, the System. Customer is responsible for Reprocessing Instruments in accordance with the Documentation. Any other use is prohibited, whether before or after the Instrument or Accessory's license expiration, including repair, refurbishment, or reconditioning not approved by Intuitive, and cleaning or sterilization inconsistent with the Documentation. This license expires once an Instrument or Accessory is used up to its maximum number of uses, as is specified in the Documentation accompanying the Instrument or Accessory. Customer may purchase Instruments and Accessories for the purpose of Customer's Reprocessing requirements. The cost of Instruments and Accessories used in Customer's Reprocessing, including Instruments and Accessories used or involved in destructive testing, will be the responsibility of the Customer. Customer may contact Intuitive's Customer Support Department if, during the Reprocessing, Customer experiences results unacceptable under applicable law and/or regulation. Intuitive will provide commercially reasonable assistance in such investigations and remediation efforts but shall not be obligated to conduct or pay for such studies or provide materials at no cost or reduced cost as a condition of purchase or continued use.

**9.**     **Pricing and Payment Terms**

9.1     System.

PANAMACITY000037

(A)   Price. Customer will pay to Intuitive the price specified in Exhibit A for the System acquired under this Agreement according to the payment terms in Section 9.1(B). The issuance of a purchase order by Customer is for the convenience of the Customer solely; therefore, whether or not Customer issues a purchase order does not affect Customer's commitment to acquire and pay for the System under this Agreement.

(B)   Payment Terms. Upon Acceptance, Intuitive will deliver an invoice to Customer for amounts due under this Agreement for the System. Customer agrees and acknowledges payment for the System shall not be excused by any contingencies including, but not limited to, Customer's internal practices, policies, or any state approvals. Customer will pay the invoiced amount not later than thirty (30) days after the date of invoice. Interest will accrue from the date on which payment is due, at an annual rate of twelve percent (12%) or the maximum rate permitted by applicable law, whichever is lower.

(C)   Security Interest. Intuitive will retain a security interest in the System until payment of the full System purchase price has been received by Intuitive. Customer will perform all acts Intuitive reasonably determines are necessary or appropriate to perfect and maintain the security interest. If Customer defaults in its payments for the System, Intuitive has the right, without liability to Customer, to reclaim the System.

9.2   Services.

(A)   Price. Customer will pay for the Services at the price specified in Exhibit A. The issuance of a purchase order by Customer is for the convenience of the Customer solely; therefore, whether or not Customer issues a purchase order does not affect Customer's commitment to pay for Services under this Agreement during the Initial Term (as defined in Section 14).

(B)   Payment Terms. Intuitive will deliver to Customer an invoice for the annual Services fee thirty (30) days prior to the first anniversary of Acceptance and each subsequent anniversary of Acceptance throughout the Initial Term of the Agreement. Customer will pay the invoice for Services not later than thirty (30) days after the date of invoice. Interest will accrue from the date on which payment is due, at an annual rate of twelve percent (12%) or the maximum rate permitted by applicable law, whichever is lower. After the Initial Term of the Agreement, and subject to mutual written agreement, annual Services may be renewed at Intuitive's then current list price.

9.3   Funding Entity.

A funding entity ("Funding Entity") may provide the funding for Customer to purchase the System defined herein, provided however, Customer remains responsible for payment in full according to the terms of this Agreement if Funding Entity fails to pay. A Funding Entity will have no rights or obligations whatsoever under this Agreement, except as specified in this Agreement. Customer acknowledges and agrees that once Acceptance has occurred and title of the System has passed to the Customer, if Customer subsequently enters into an arrangement with a Funding Entity, then Customer will enter into an agreement (such as a sale and lease-back agreement) directly with the Funding Entity that does not involve Intuitive. Intuitive will not reverse the sale of the System to Customer in order to sell it to another entity, including but not limited to a Funding Entity.

9.4   Taxes.

Customer will pay any Taxes in addition to the prices invoiced. Customer will pay, or reimburse Intuitive for the payment of all Taxes, including related penalties and interest, except Taxes for which Customer has provided a certificate of exemption acceptable to both Intuitive and the appropriate taxing authority prior to delivery of the System. Customer will also pay, or reimburse Intuitive for, all Taxes, related penalties, or interest resulting from Customer's use of a Funding Entity.

10.   Warranty and Disclaimer.

10.1   System Warranty.

(A)   Intuitive warrants to Customer that:

(1)   the System as delivered will be free and clear of all liens and encumbrances (except as otherwise specified in this Agreement), and

(2)   for the period specified in Exhibit A, will be free from defects in material and workmanship and will conform in all material respects to the Documentation when used in accordance with the Documentation and Intuitive's instructions.

(B)   Intuitive's obligations under this Section 10.1 are limited to the repair (as further described in Section 5.1(B)-(C)) or, at Intuitive's option, replacement of all or part of the System.

PANAMACITY000038

    (C)    This warranty is void with respect to any claims:

        (1)    due to any installation, repair, adjustment, modification, disassembly, alteration, reconfiguration, addition to, subtraction from, or misuse of the System by Customer or any third party without the express written permission of Intuitive; or

        (2)    to the extent Customer has not operated, repaired, or maintained the System in accordance with the Documentation or any reasonable handling, maintenance, or operating instructions supplied by Intuitive; or

        (3)    to the extent Customer has used the System with surgical instruments or accessories that are not Instruments or Accessories; or

        (4)    to the extent Customer or Customer's employee, agent, or contractor has subjected the System to unusual physical or electric stress, misuse, abuse, negligence, or accident.

    (D)    The foregoing expresses Customer's sole and exclusive remedy, and Intuitive's sole and exclusive liability, for any breach of warranty with respect to the System by Intuitive.

10.2    **Services Warranty.**  Intuitive warrants that the Services will be performed consistent with generally accepted industry standards. If Intuitive breaches this warranty, Customer's sole and exclusive remedy will be to require Intuitive to re-perform the Services.

10.3    **No Other Warranties.** INTUITIVE MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, IN CONNECTION WITH THE SYSTEM OR SERVICES PROVIDED HEREUNDER AND THIS TRANSACTION, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND NON-INFRINGEMENT.  SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF IMPLIED WARRANTIES; THEREFORE, THE ABOVE LIMITATION WILL APPLY ONLY TO THE EXTENT PERMITTED BY APPLICABLE LAW.

11.    **Indemnification**

11.1    **Intuitive's Indemnification Obligations.**

    (A)    **Intellectual Property Indemnification.**  Intuitive will indemnify Customer against all liabilities, expenses, or damages in connection with any third party claim that the System infringes any third party patent, trade secret, or copyright.  If Customer is enjoined from the use of the System due to any such third party claim, Intuitive will promptly, at its option and expense, either (1) substitute the System or any part thereof with non-infringing material that will perform substantially in accordance with the Documentation; or (2) obtain the right of Customer to continue to use the System; or (3) remove the System and refund to Customer the purchase price of the System less reasonable depreciation.

    (B)    **Indemnification Limitations.**  Intuitive has no obligation under this Section 11.1 to the extent any claim of infringement is based upon or arises out of: (1) any modification to the System if the modification was not made directly by Intuitive or through its designated service provider; or (2) the use or combination of the System with any hardware, software, products, data or other materials not specified, provided or approved by Intuitive.

    (C)    THE PROVISIONS OF THIS SECTION 11 STATE THE SOLE AND EXCLUSIVE OBLIGATIONS OF INTUITIVE FOR ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT.

11.2    **Customer's Indemnification Obligations.**  Intuitive will not be liable for, and Customer will indemnify and hold Intuitive harmless from and against, any claims or damages caused by Customer's failure to comply with the requirements of Sections 3.4 (Use of the System) or 3.5 (Disposal).

11.3    **Claim Notification Requirement.**  A party's indemnification obligations under this Section 11 will not apply unless the indemnified party promptly notifies the indemnifying party of the claim as soon as the indemnified party became aware of it. The indemnifying party will have the right to control the defense or settlement of any claim at its cost and with its choice of counsel.  The indemnified party will provide all reasonable cooperation to assist the indemnifying party in the defense or settlement of the claim.

12.    **Limitation of Liability**

Except for a breach of the obligations in Sections 3.4 (Use of System), 4 (Software License and Restrictions), 8 (Instruments and Accessories), 9 (Pricing and Payment Terms), the indemnification obligations of Section 11, 13 (Proprietary Information), to the extent

PANAMACITY000039

permitted by applicable law, each party's aggregate liability to the other for claims relating to this Agreement, whether for breach in contract or tort (including negligence), is limited to an amount equal to the sum of amounts paid by Customer under this Agreement for the activity (such as procurement of the System, Service, or training) giving rise to the claim. Except for a breach of the obligations in Sections 3.4, 4, 8, or 13, neither party will be liable for any indirect, punitive, special, incidental, or consequential damages in connection with or arising out of this Agreement (including loss of business, revenue, profits, use, data, or other economic advantage), even if that party has been advised of the possibility of damages. Some jurisdictions do not allow the limitation of liability for incidental or consequential damages; therefore in those jurisdictions, the foregoing limitation of liability applies only to the extent permitted by law.

13. **Proprietary Information**

"Proprietary Information" includes, but is not limited to, all non-public information (i) of the disclosing party ("Disclosing Party") that relates to past, present, or future research, development, or business activities or the results of those activities and (ii) that the Disclosing Party has received from others and is obligated to treat as confidential and proprietary. In addition, Intuitive's Proprietary Information includes the terms and conditions of this Agreement and all information derivable from the System, but excluding information that can be learned through observation of the System and its operation. Proprietary Information does not include information previously known by the receiving party ("Receiving Party") as demonstrated by the Receiving Party's contemporaneous written records, or information publicly disclosed without breach of an obligation of confidentiality, either before or after the Receiving Party's receipt of the information. The Receiving Party will hold all Proprietary Information of the Disclosing Party in strict confidence and must not use for any purpose, or disclose to any third party, any Proprietary Information, except (1) as expressly authorized in this Agreement or in writing by the Disclosing Party, and (2) as required by law or by court order. If the Receiving Party is compelled by law to disclose the Proprietary Information of the Disclosing Party, then (1) the Receiving Party must give prior notice to the Disclosing Party so as to permit the Disclosing Party to try to protect its Proprietary Information including attempting to obtain a protective order requiring that the Proprietary Information so disclosed be used only for the purposes for which the order was issued or for other legal requirement and (2) the Receiving Party must cooperate with the Disclosing Party in such efforts. The Receiving Party will use the same degree of care to protect the Proprietary Information as Receiving Party uses to protect its own information of like kind, but not less than all reasonable steps to maintain the confidentiality of the Proprietary Information.

14. **Term**

14.1    **Initial Term.** The Initial Term is specified in Exhibit A.

14.2    **Termination and Survival.** Either party may terminate this Agreement if the other party breaches a material term or condition of this Agreement and fails to cure the breach following thirty (30) days' written notice from the non-breaching party. Sections 3.4, 3.5, 4, 9.1, 9.3, 11, 12, 13, 14.2, 15, and any other provision which by its nature will survive, will remain in effect notwithstanding the expiration or termination of this Agreement.

15. **Miscellaneous**

15.1    **Assignment.** This Agreement will be binding upon the permitted successors and assigns of the parties. Neither party may assign this Agreement without the prior written consent of the other party, except pursuant to a transfer of all or substantially all of a party's assets and business relating to the subject of this Agreement, whether by merger, re-organization, sale of assets, sale of stock, or otherwise. Customer may not assign or transfer the Software license granted to it under this Agreement to any third party without Intuitive's prior written consent. Any attempt by either party to assign this Agreement or any rights or duties hereunder contrary to the foregoing provision is void. Intuitive consents to Customer's assignment of this Agreement to a Funding Entity as part of Customer's financing arrangement with the Funding Entity. If Customer assigns this Agreement to a Funding Entity, Customer retains its right to all benefits under this Agreement, including without limitation all warranties, representations, and indemnification provided by Intuitive, and may independently enforce any obligation, warranty, or representation, including without limitation Intuitive's obligations under Section 5 (Services).

15.2    **Costs.** Except as otherwise specifically provided herein, each party will bear its own costs and expenses incurred in connection with the performance of its obligations hereunder.

15.3    **Debarment.** Intuitive warrants and represents that individuals of its organization involved in providing Services under this Agreement have not been convicted of any criminal offense relating to health care and are not debarred, excluded, or otherwise ineligible for participation in any federal or state health care program. If at any time before completion of this Agreement, Intuitive or any individual in its organization involved in providing Services under this Agreement is so convicted or is debarred, excluded or otherwise determined to be ineligible, Intuitive will notify Customer in writing, the individual will immediately cease providing Services under this Agreement, and Intuitive will replace the individual with a replacement employee reasonably suitable to Customer, and, if it is Intuitive, this breach will be considered a material breach by Intuitive.

15.4    **Federal Audit.** Until the expiration of four (4) years after furnishing Services under this Agreement, Intuitive will make available upon written request of the Secretary of the Department of Health and Human Services (the "Secretary") or upon request of the U.S. Comptroller General, or any of their duly authorized representatives, this Agreement and the books, documents, and records of Intuitive that are necessary to certify the nature and extent of costs for which Customer may properly seek reimbursement. If Intuitive carries out any of the duties of this Agreement through a subcontract with a value or cost of

PANAMACITY000040

ten thousand dollars ($10,000) or more over a twelve (12) month period, the subcontract will contain a clause to the effect that until the expiration of four (4) years after furnishing of services under the subcontract, the subcontracting party will make available, upon written request of the Secretary, or upon request of the U.S. Comptroller General or any of their duly authorized representatives, the subcontract, and the books, documents, and records of the organization that are necessary to verify the nature and extent of the costs. Intuitive will promptly notify Customer of any requests for information made under this provision.

15.5    **Force Majeure.** Neither party will be liable for any loss, damage, detention, delay, or failure to perform in whole or in part resulting from causes beyond that party's control including, but not limited to, acts of terrorism, fire, flood, earthquake, war, riots, labor disputes, shortage of components, or any governmental law, order, regulation, or ordinance.

15.6    **Insurance.** Intuitive has obtained, and will maintain throughout the term of the Agreement, (i) Commercial General Liability Insurance including coverage for contractual liability, product liability, personal injury and bodily injury in an amount not less than $1,000,000 per occurrence/$3,000,000 aggregate (or as may be aggregated by the excess liability policy on the General Liability policy); or (ii) a self-insurance program of equivalent protection. Intuitive will furnish the Customer with a certificate of insurance evidencing the coverage as outlined above, or comparable evidence of self-insurance, on Customer's request. Intuitive carries, and will continue to carry, Workers' Compensation Insurance as required by law.

15.7    **Interpretation.** Headings used in this Agreement are provided for convenience only and do not in any way affect the meaning or interpretation hereof. The terms "sale", "purchase", "acquire", "procure" and variations of such terms, as used in this Agreement with respect to the System, do not imply that the Software and Documentation aspect of the System are sold or purchased; the Software and Documentation are licensed under this Agreement and only the Hardware is sold. Neither party is the drafter of this Agreement. Accordingly, the language of this Agreement will not be construed for or against either Party.

15.8    **Notices.** Any notices given under this Agreement must be in writing and will be deemed given and received five (5) days after the date of mailing, one (1) day after dispatch by overnight courier service or electronic mail, or upon receipt if by hand delivery, or upon completion of confirmed transmission if by facsimile. Any notices under this Agreement must be sent to Intuitive or the Customer at the address shown in the preamble above, in both cases to the Contracts Dept/General Counsel's office. Each party may change its address for receipt of notices by giving the other party notice of the new address.

15.9    **Relationship of the Parties.** The parties' relationship is one of contract, and they are not, and will not be construed as partners, joint venturers, or agent and principal. Neither party is authorized to act for, or on behalf of, the other party.

15.10   **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, then that provision will not affect the validity of the remaining provisions of the Agreement, and the parties will substitute a valid provision for the invalid provision that most closely approximates the intent and economic effect of the invalid provision.

15.11   **Access to Customer's Facilities.** Intuitive agrees that any Intuitive personnel who routinely provide Services at Customer's facilities will use commercially reasonable efforts to comply with Customer's Access Requirements, provided that Customer provides Customer's Access Requirements in writing prior to execution of this Agreement. Customer's need for Service may be unplanned and urgent with patient safety at stake. Therefore, if Customer denies access to its facilities to any Intuitive personnel for performance of Services (Section 5) or warranty (Section 10) obligations in connection with a surgical procedure because such personnel have not met Customer's Access Requirements, Intuitive's Services and warranty obligations in this Agreement will be suspended during such denial of access, provided that Intuitive uses commercially reasonable efforts to find replacement Intuitive personnel who comply with Customer's Access Requirements. Customer will indemnify and hold harmless Intuitive from any losses, claims, liabilities or causes of action arising from such denial of access.

15.12   **Data Use.** Customer agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products ("Data"). In some instances Data may be communicated via data gathering or transmission technology to Intuitive. In other instances, Intuitive may require Customer and Customer agrees to provide Data to Intuitive. Such Data may be used for a variety of purposes, including, but not limited to (1) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, and (4) providing a general resource for Intuitive's research and business development. Intuitive does not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time. In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third parties without the entity's or individual's consent, unless required by law or regulatory authorities.

15.13   **Waivers.** No waiver of any right by either party under this Agreement will be of any effect unless the waiver is in writing and signed by the waiving party. Any purported waiver not consistent with the foregoing is void.

15.14   **Counterparts.** This Agreement may be executed by facsimile or in multiple copies, each of which is an original, and all of which taken together will constitute one single agreement.

PANAMACITY000041

15.15   **Entire Agreement; Amendment.**  This Agreement is the entire agreement between Intuitive and Customer and supersedes any prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter herein, pricing, and the applicable terms.  Any terms or conditions in Customer's (or as applicable, Funding Entity's) purchase order that are different from, inconsistent with, or in addition to, the terms and conditions of this Agreement will be void and of no effect, unless otherwise mutually agreed to in writing by the parties.  This Agreement may be amended only in writing, signed by both parties.  Any purported oral modification intended to amend the terms and conditions of this Agreement is void.

**BOTH PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE EFFECTIVE DATE.**

**IF THIS AGREEMENT IS NOT SIGNED BY BOTH PARTIES AND RETURNED TO INTUITIVE ON OR BEFORE SEPTEMBER 15, 2017, THE TERMS WILL BE SUBJECT TO CHANGE.**

ACCEPTED BY:                                ACCEPTED BY:

Intuitive Surgical, Inc.                    Panama City Surgery Center, LLC

By: _____                         By: _____

Name: _____                         Name: _Michael Madeane II_

Title: _____                        Title: _Administrator_

Date: _____                         e-mail: _mike@pcsurgery.org_

                                            Phone: _850-265-3797_

                                            Date: _9-15-2017_

# EXHIBIT A
## Deliverables, Price and Delivery

**1. Intuitive will deliver to Customer the following:**
Intuitive will provide Customer with the following: Certified Pre-owned da Vinci® S ™ Surgical System upgraded to a da Vinci® Si ™ HD Surgical System (with single console). "Certified Pre-Owned" means that the System has undergone operational evaluation and maintenance review as necessary to validate that the System, which has been pre-owned, is in good working condition.

**System Surgeon Console including:**
One (1) Surgeon Console
One (1) High Resolution Stereo Display
One (1) Left Master Controller
One (1) Right Master Controller
One (1) Foot Switch Panel
One (1) Surgeon Console to Vision Cart Cable
      Warranty period: One (1) year from the Acceptance date.

**System Patient Cart including:**
One (1) Patient Cart
One (1) Instrument Arm One
One (1) Instrument Arm Two
One (1) Instrument Arm Three
One (1) Camera Arm
One (1) Patient Cart to Vision Cart Cable
      Warranty period: One (1) year from the Acceptance date.

**System Vision Cart**
      Warranty period: One (1) year from the Acceptance date.

**System Documentation including:**
User's Manual For System
      Warranty period: Not Applicable.

**System Software**
      Warranty period: One (1) year from the Acceptance date.

**Instrument and Accessory:**
Reusable Accessory Starter Kit (Starter Kit contents subject to change without notice)
One (1): 3 Arm Drape Kit, 5 pack
One (1): 4 Arm Drape Kit, 5 pack
Twenty (20): Instrument Arm Drapes
Twenty (20): Camera Head Drapes
Twenty (20): Camera Arm Drapes
One (1): Box of 10: 8mm Cannula Seals
Three (3): 88mm Cannula
One (1): Cannula Gage Pin
One (1): Blunt Obturator
One (1) Box of 24: Bladeless Obturator
One (1): Blade Protector
One (1): Allen Wrench
      Warranty period: Ninety (90) days from the Acceptance date

**Instrument and Accessory:**
Camera Starter Kit: (Starter Kit contents subject to change without notice)
One (1): 3D-HD Camera Head with Light Guide
One (1): Camera Cable
One (1): 0 degree Endoscope
One (1): 30 degree Endoscope
One (1): Alignment Target
One (1): Spare Lamp Module
      Warranty period: One (1) year from the Acceptance date.

PANAMACITY000043

**Instrument and Accessory:**
Training Instrument Starter Kit (Starter Kit contents subject to change without notice)
One (1): Large Needle Driver
One (1): ProGrasp™ Forceps
One (1): Maryland Bipolar Forceps
One (1): Curved Scissors
One (1): Tenaculum Forceps
One (1): Suture Cut Needle Driver
     Warranty period: One (1) year from the Acceptance date.

(equipment list rev 11/2015)

PANAMACITY000044

## EXHIBIT A (con't)

2.      **Pricing.**  All amounts are shown in US Dollars

| Description | Quantity | Delivery Date° | Price | Delivery Charge | Annual Service Fees |
|---|---|---|---|---|---|
| System Type: da Vinci® Si™ Certified pre-owned System (single console) | 1 | September 30, 2017° | $583,500 | $10,000 | Service plan selection (see Section 5): dVEssential Care Plan<br><br>First Year of Initial Term: Included<br><br>Subsequent Years (2-5) of the Initial Term: $100,000 per year |
| Other: da Vinci® Si™ Vessel Sealer and Stapler Vision Cart Upgrade | 1 | See Below** | $16,500 | Pre-pay and add | N/A |

Intuitive makes no representation with regard to Certificate of Need requirements for this purchase. It is Customer's responsibility to determine whether this purchase complies with Customer's State Certificate of Need law and what Certificate of Need filing, if any, needs to be made with regard to this purchase.

°The Delivery Date is an estimated "on or before" delivery date to Customer's designated location (see "Ship-to" below).

**Subject to availability, Instruments and Accessories listed above are subject to the Terms of the da Vinci EndoWrist Instrument & Accessory Catalog as if such Terms were contained in this Agreement.  Shipment of Instruments and Accessories listed above will be FOB origin.  Some Instruments and Accessories listed above may require Customer's completion of the advanced instrument training verification prior to shipment.

3.      **Acceptance.**  The System is deemed accepted by Customer upon delivery to Customer's designated location ("Acceptance").

4.      **The "Ship-To" information for Customer is:**

Panama City Surgery Center
1800 Jenks Avenue
Panama City, FL 32405

5.      **The "Bill-To" information for Customer is:**

↑ SAME ↑

6.      **Taxes.**  Customer represents that Customer is or is not exempt from sales and use tax by checking the appropriate box below.  If no box is checked, Customer will be deemed to not be exempt from sales and use tax and appropriate sales and use tax will be charged to Customer.  If exempt, Customer is requested to send or fax a copy of Customer's exemption certificate to: Attn: Tax Department, Intuitive Surgical, Inc, 1266 Kifer Road, Sunnyvale, CA 94086; fax number: 408-523-1390.

☑  Taxable
☐  Exempt: Charitable (501)(c)/nonprofit
☐  Exempt: Direct Pay Permit #
☐  Exempt: Other _____

7.      **Term.**  The Initial term of this Agreement will commence as of the Effective Date and will continue until the fifth (5th) anniversary of Acceptance ("Initial Term") unless earlier terminated as provided in this Agreement.  Thereafter, this Agreement may be renewed for successive one (1) year terms ("Renewal Term(s)") upon mutual written agreement of the parties.

PANAMACITY000045

8.  **Training.** As of the Effective Date, the price for training (based on a porcine model) is three thousand dollars ($3,000) per surgeon or physician's assistant. The payment terms for training are net thirty (30) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, training will be made available to Customer at Intuitive's then current list price for training.

9.  **Proctoring.** As of the Effective Date, the rate for Proctor's services is three thousand dollars ($3,000) per day. The payment terms for Proctoring are net thirty (30) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, Proctoring will be made available to Customer at Intuitive's then current list price for Proctoring.

PANAMACITY000046