# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

RESTORE ROBOTICS LLC,
RESTORE ROBOTICS REPAIRS LLC,
and CLIF PARKER ROBOTICS LLC,

                Plaintiffs,

    v.

INTUITIVE SURGICAL, INC.,

                Defendant.

INTUITIVE SURGICAL, INC.,

                Counterclaimant,

    v.

RESTORE ROBOTICS LLC and
RESTORE ROBOTICS REPAIRS LLC,

                Counterclaim Defendants.

Civil Case No. 5:19-cv-55-TKW-MJF

## INTUITIVE SURGICAL, INC.'S OPPOSITION TO
## MOTION FOR AN ORDER COMPELLING DISCOVERY

Defendant/Counterclaim Plaintiff Intuitive Surgical, Inc. ("Intuitive")

respectfully submits this opposition to the motion for an order compelling

discovery (the "Motion" or "Mot.") filed by Plaintiffs/Counterclaim-Defendants

Restore Robotics LLC and Restore Robotics Repairs LLC (collectively,

"Restore").

## **PRELIMINARY STATEMENT**

Restore's Motion is a last-ditch effort to improperly inject a brand-new theory into this case, even though discovery has been closed for a year and trial is soon approaching in February 2023. Specifically, Restore seeks to assert a theory alleging harm to its contemplated (but currently non-existent) business of extending uses for X/Xi EndoWrists beyond their FDA-cleared limits, even though Restore admittedly lacks the technological capability to circumvent the X/Xi use counter—a prerequisite for extending EndoWrist use limits.

Just last month, this Court stated that Restore's intention to assert a theory relating to X/Xi EndoWrists "needs to be nipped in the bud," explaining:

> I don't see how you can take to a jury the speculative idea that you really want to be in that business and you're really trying to get in that business and either (a) you haven't figured out a way to do it yet or (b) [Restore] figured out a way to do it a month before trial and nobody has had an opportunity to evaluate that technology.

(Ex. 1, Sept. 9, 2022 Hr'g Tr. at 31:4-6, 34:19-25.) Undeterred, Restore filed this Motion to compel Intuitive to produce discovery relating to Restore's as-of-yet unasserted X/Xi claims. The Motion should be denied for three independent reasons.

**_First_**, as the Court already recognized, Restore has not raised a triable issue regarding any alleged harm to its non-existent business in the purported aftermarket for X/Xi EndoWrists. Restore concedes that it still lacks— ███████

2

████████████████████████████—technology to circumvent the X/Xi use counter.  Even if Restore were to develop that technology before trial (which is scheduled to begin just over three months from now), it would be too late to litigate any claim based on such new technology because—as the Court recognized—that would require "an extensive amount of discovery about what that technology is, how it works, how safe it is, and . . . whether it needs FDA approval."  (*Id.* at 31:19-21.)  While Restore contends that Intuitive already had the opportunity to pursue discovery regarding its efforts to circumvent the X/Xi use counter, that argument is disingenuous ████████████████████

████████████████████████████████

████████████████████████████

████████████████████████

████████████████████ Such conduct merely illustrates the validity of the Court's concerns regarding Restore belatedly asserting an X/Xi theory. Thus, because Restore should not be allowed to inject any X/Xi claim into this case, it has no basis to seek an order compelling Intuitive to produce discovery relating to such a claim.

**Second**, Restore cannot properly invoke Rule 26(e) to pursue "supplemental discovery" regarding Restore's newly asserted, wholly speculative theory that Intuitive may deploy new "blocking technology" to prevent Restore from

3

circumventing the X/Xi EndoWrist use counter.  Restore never served any

discovery request calling for production of documents relating to such purported

"blocking technology" for EndoWrist instruments.  The document request that

Restore cites relates to "servicing the da Vinci Surgical System," not EndoWrists.

In any event, Restore has no basis to seek to compel discovery regarding this new

theory because it is outside the scope of its claims.

     ***Third***, Restore wrongly contends that it has standing to assert its X/Xi

claims, arguing that it has taken sufficient steps to meet its burden to establish

"intention" and "preparedness" to enter the purported aftermarket for X/Xi

EndoWrists.  Restore ignores that Article III and antitrust standing are analyzed ***as***

***of the time an action is filed***.  Because ***all*** the activities that Restore cites as

evidence of its alleged standing occurred ***after*** this action was filed, Restore cannot

establish standing to bring its X/Xi claims.  And because Restore lacks standing to

pursue those X/Xi claims, the Court should deny its Motion for an order

compelling Intuitive to produce discovery concerning those claims.

**<u>BACKGROUND</u>**

     In its operative Complaint, filed in March 2021, Restore alleges that it

licensed (from Rebotix Repair LLC) "technology to reset the usage count on

EndoWrist instruments for the da Vinci Si robot systems."  (ECF 77, Second Am.

Compl. ("SAC") ¶ 87.)  Restore further alleges that it "has been unable so far to

4

develop or obtain technology to reset the usage count during repair service of EndoWrist instruments for the da Vinci X and Xi robot systems." (*Id.* ¶ 86.)

Restore never alleged in any complaint that it had developed, or was seeking to develop, its own technology to circumvent use limits for S/Si or X/Xi EndoWrists. While discovery revealed that Restore developed (with the support of ██████████) its own purported technology by June 2020 to circumvent the use counter for S/Si EndoWrists, the record confirmed that Restore has not developed that technology for X/Xi EndoWrists. Restore has never alleged that Intuitive prevented or delayed—including by implementing new "blocking technology"—Restore from developing technology to circumvent the use counter for either S/Si or X/Xi EndoWrists.

Fact discovery in this case closed on June 11, 2021, and expert discovery closed on October 21, 2021. (ECF 91.) In a report dated August 20, 2021, Restore's expert, Professor DePasquale, defined separate relevant antitrust aftermarkets for S/Si EndoWrists and X/Xi EndoWrists. Professor DePasquale calculated purported damages to Restore relating to S/Si EndoWrists, but did not calculate damages relating to X/Xi EndoWrists. (ECF 110-2, DePasquale Rep. at 4 n.2.) Nearly a year later (and long after the close of discovery), on July 21, 2022, Restore represented—for the first time—that it intended to seek damages relating to X/Xi EndoWrists. (*See* ECF 180-1 at 5, email from Restore counsel to Intuitive

counsel (July 21, 2022).)

## ARGUMENT

### I.   AS THIS COURT ALREADY RECOGNIZED, RESTORE HAS NOT RAISED A TRIABLE ISSUE REGARDING X/XI ENDOWRISTS

This Court previously recognized that "[t]his case . . . both from the pleadings [and] the evidence that I reviewed has always been about the Si because the plaintiff does not have the technological capability to get into the Xi." (Ex. 1, Sept. 9, 2022 Hr'g Tr. at 31:6-10.) It would be too speculative for Restore to assert a claim alleging harm to its currently non-existent X/Xi EndoWrist business— when it admittedly lacks the technology to circumvent X/Xi use limits. (*See id.* at 33:24-34:2 ("How do you expect to take to a jury this speculative venture on technology that, at least as of this moment, doesn't exist and then tell the jury you would have gotten this much more business servicing Xi [instruments]?").) And even if Restore were to develop that technology, the Court explained that it would be too late to inject X/Xi claims into this case given the extensive discovery that would be required to present those claims to a jury:

> [I]f tomorrow [Restore] come[s] up with a technology to hack into the X machine or the Xi machine, then I don't see how that can be part of this case without an extensive amount of discovery about what that technology is, how it works, how safe it is, and . . . whether it needs FDA approval. We've got a hole nother round of discovery that would be necessary on that for that to be part of this case, not to mention that there's been no damages assessment done of that because up until this moment, at least, Restore doesn't have the capacity to be in that business.

6

(*Id.* at 31:16-25.)

Restore's Motion wholly fails to address the Court's concerns.  To the contrary, the Motion highlights the validity of those concerns.

As an initial matter, Restore still has no basis to allege damage to its X/Xi EndoWrist business because it concedes that it still lacks the technology to circumvent the use counter for X/Xi EndoWrists.  While Restore suggests that Professor DePasquale will "calculate X/Xi instrument damages" (Mot. at 8), it does not—and cannot—provide any explanation as to how Intuitive could have caused any such damage.  Restore's inability to circumvent the X/Xi use counter (rather than alleged misconduct by Intuitive) has prevented Restore from extending use limits for X/Xi EndoWrists.

The notion that Restore will someday develop technology to circumvent the X/Xi use counter remains untenably speculative—just as it was last month when the Court expressed its concerns.  ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████  Tellingly, Restore provides no response to the questions the Court raised as to how Restore could possibly present a case to a jury predicated on non-existent technology that it hopes to develop and launch at an unknown future date.

7

Even if Restore were to develop technology to circumvent X/Xi use limits, Restore fails to address the Court's concerns regarding the extensive fact and expert discovery that would be necessary to litigate any X/Xi claim. Instead, Restore merely argues that "a second round of discovery is neither necessary nor appropriate" because "Intuitive had the opportunity to examine witnesses from Restore about their development of technology to reset the X/Xi instruments." (*Id.* at 13.) Restore's argument strains credibility. ███████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████   In sum, Restore's ongoing efforts to develop technology to circumvent the X/Xi use counter represent a moving target, and Intuitive cannot take the necessary discovery regarding that technology until it actually exists.

████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

For these reasons, Restore cannot pursue any X/Xi claim predicated on its as-of-yet undeveloped technology.  As a result, there is no basis for Restore to seek to compel Intuitive to produce discovery relating to any such claim.

## II.   RESTORE NEVER SOUGHT DISCOVERY RELATING TO ENDOWRIST "BLOCKING TECHNOLOGY," AND THIS BASELESS THEORY IS OUTSIDE THE SCOPE OF ITS CLAIMS

Restore asserts that Intuitive must produce documents regarding Restore's speculative theory that Intuitive *may be* "deploying new technology to block third parties from repairing X/Xi instruments."  (Mot. at 6.)  Because Restore never

served any discovery request relating to "blocking technology" for EndoWrists, Intuitive cannot owe any obligation to "supplement" discovery on that subject. Restore's motion also is baseless because its new "blocking technology" theory was not pleaded in any complaint and is outside the scope of its claims.

Restore wrongly contends that its document request regarding "blocking technology" encompasses EndoWrists. (*Id.* at 5-6.) In reality, that request only covers technology "'that blocks third parties from accessing or servicing ***the da Vinci Surgical System***.'" (*Id.* at 5 (quoting RFP No. 24) (emphasis added).)

While Restore now asserts that "[t]he da Vinci Surgical System includes . . . surgical instruments" (*id.* at 6), that argument is contrary to Restore's theory of the case. (*See* ECF 136, Restore Opp. to Mot. for Summ. J. at 23-24 (arguing that the da Vinci system and EndoWrist instruments constitute "separate products" because Intuitive "provide[s] the instruments separately from the robots," and "the da Vinci has never been bundled with the instruments").) In addition, Restore's discovery requests plainly distinguish between the da Vinci Surgical System and EndoWrist instruments. (*Compare* Ex. 2, Restore's First Requests for Documents RFP No. 24 ("blocking technology" request relating to "accessing or servicing the da Vinci Surgical System") *with* RFP No. 27 (requesting "studies and analyses calculating or reporting failure rates for your EndoWrist instruments").)

In any event, Restore has no basis to seek to compel discovery regarding this speculative theory because it is outside the scope of its claims.  Indeed, Restore **concedes** that it never alleged in any complaint that Intuitive is developing new "blocking technology" to prevent Restore or any other third party from circumventing use limits for X/Xi EndoWrists.  (*See* Mot. at 8 (arguing that "the complaint is not required to anticipate every possible implementation of . . . blocking technology specifically").)  While Restore contends that "the use of blocking technology was raised in the complaint" (*id.*), Restore fails to acknowledge that those allegations were raised in the context of refusal to deal claims demanding access to Intuitive's proprietary technology.  (*See* SAC ¶¶ 56, 85.)  The Court dismissed those claims because "the refusal to deal allegations" did not state a viable claim.  (ECF 31, Order on Mot. to Dismiss at 16.)[1]

## III.   RESTORE LACKS STANDING TO PURSUE X/XI CLAIMS

Restore argues that it has demonstrated the requisite "intention" and "preparedness" to establish standing to pursue X/Xi claims because "Restore has

---

[1]  Restore's theory also lacks factual support.  The only purported evidence that Restore cites is an FDA email referencing a possible "'software update to the da Vinci system [that] may potentially detect and disable remanufactured instruments.'"  (Mot. at 6 (quoting ECF 180, Ex. 4 at Restore-00086100).)  That email exchange occurred in the context of the Iconocare 510(k) application seeking clearance to remanufacture an S/Si EndoWrist.  Restore provides no explanation as to how the FDA's inquiry in the context of S/Si EndoWrists applies to Restore's contemplated remanufacturing of X/Xi EndoWrists—using a technology that Restore has not developed.

planned to expand into the X/Xi instrument aftermarket" and "has taken affirmative steps to do so." (Mot. at 11 (citation omitted).) But Restore's argument fundamentally misapprehends both Article III and antitrust standing.

"Importantly, Article III standing must be determined *as of the time that the plaintiff's complaint is filed*" and cannot be cured "retroactively." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1217, 1219 (11th Cir. 2020) (emphasis added) (citation omitted). Antitrust standing similarly must exist "on the date when [plaintiff] files its Complaint," and "the standing requirements in the antitrust context are more rigorous than [under Article III]." *KPH Healthcare Servs., Inc. v. Mylan N.V.*, No. 20-2065-DDC-TJJ, 2021 WL 3144711, at *10 (D. Kan. July 26, 2021) (citation omitted). Accordingly, "[t]he party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *In re Ditropan XL Antitrust Litig.*, No. M:06-cv-01761-JSW, 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007) (citation omitted).

Restore clearly lacks both Article III and antitrust standing to pursue any X/Xi claim because *all* the steps it allegedly has taken to enter the purported X/Xi instrument aftermarket occurred *after* it filed suit in February 2019— ████████ ████████████████████████████████████. (*See supra* pp. 8-9.) Indeed, Restore does not allege—let alone provide evidence—that it had taken

***any affirmative step*** to enter the purported X/Xi instrument aftermarket as of the time it filed this action.[2]

Thus, because Restore cannot meet its burden to establish standing to pursue any X/Xi claim, it has no basis to move to compel discovery regarding any such claim.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Intuitive respectfully requests that the Court deny Restore's Motion in its entirety.

---

[2] Restore misplaces reliance (Mot. at 11) on *Lucasys Inc. v. PowerPlan, Inc.*, 576 F. Supp. 3d 1331 (N.D. Ga. 2021).  In that case, unlike here, "the allegations in the Complaint establish[ed] that . . . [plaintiff] had already taken affirmative steps to enter the market by developing relevant software and tools."  *Id.* at 1346.

Dated:  October 20, 2022                    Respectfully submitted,

                                            /s/ Karen Lent

KAREN HOFFMAN LENT (*Pro Hac Vice*)         DAVID L. McGEE
MICHAEL H. MENITOVE (*Pro Hac Vice*)        Fla. Bar No. 220000
SKADDEN, ARPS, SLATE,                       BEGGS & LANE, RLLP
  MEAGHER & FLOM LLP                        501 Commendencia Street
One Manhattan West                          Pensacola, FL 32502
New York, NY 10001                          Telephone: (850) 432-2451
Tel: (212) 735-3000                         dlm@beggslane.com
karen.lent@skadden.com
michael.menitove@skadden.com

ALLEN RUBY (*Pro Hac Vice*)                 SONYA D. WINNER (*Pro Hac Vice*)
Attorney at Law                             COVINGTON & BURLING LLP
15559 Union Ave. #138                       Salesforce Tower
Los Gatos, CA 95032                         415 Mission Street, Suite 5400
Tel: (408) 477-9690                         San Francisco, CA 94105
allen@allenruby.com                         swinner@cov.com

                                            ANDREW D. LAZEROW (*Pro Hac Vice*)
                                            COVINGTON & BURLING LLP
                                            One CityCenter
                                            850 Tenth Street, NW
                                            Washington, DC 20001-4956
                                            alazerow@cov.com

                    *Counsel for Intuitive Surgical, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Intuitive certifies this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because it contains 2,807 words, excluding the parts exempted by said Local Rule.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2022, I caused **INTUITIVE**

**SURGICAL, INC.'S OPPOSITION TO MOTION FOR AN ORDER**

**COMPELLING DISCOVERY** to be served on the following counsel of record

by email:

| William Gerald Harrison, Jr. | wharrison@harrisonrivard.com |
|---|---|
| Jeffrey Berhold | jeff@berhold.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com