# Exhibit 1

1                   **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF FLORIDA**
2                      **PANAMA CITY DIVISION**

3
    RESTORE ROBOTICS, LLC,            )
4   RESTORE ROBOTICS REPAIRS, LLC,    )
    and CLIF PARKER ROBOTICS, LLC,    )
5                                     )
                 Plaintiffs,          )
6                                     )
        vs.                           )
7                                     )
    INTUITIVE SURGICAL, INC,          )
8                                     ) Case No. 5:19-CV-0055/TKW
                 Defendant,           )
9   _____ ) Pensacola, Florida
                                      ) September 9, 2022
10  INTUITIVE SURGICAL, INC,          )
                                      ) 1:01 p.m.
11               Counterclaimant,     )
                                      )
12      vs.                           )
                                      )
13  RESTORE ROBOTICS, LLC,            )
    RESTORE ROBOTICS REPAIRS, LLC,    )
14                                    )
                 Counterdefendants.   )
15  _____ )

16

17

18              **TRANSCRIPT OF TELEPHONIC MOTION HEARING**
            **BEFORE THE HONORABLE T. KENT WETHERELL, II**
19                **UNITED STATES DISTRICT JUDGE**
                    **(Pages 1 through 37)**
20

21

22

23

24              *Julie A. Wycoff, RMR, CRR*
            *Official United States Court Reporter*
25          *(850) 470-8196 * julieawycoff@gmail.com*

1    APPEARANCES:

2

3    For the Plaintiffs:        Jeffrey L. Berhold, PC
                                by:  **JEFFREY L. BERHOLD**
                                1230 Peachtree Street
4                               Suite 1050
                                Atlanta, Georgia 30309
5                               (404) 872-3800
                                *jeff@berhold.com*
6

7

8    For the Defendant:         Skadden Arps Slate Meagher & Flom, LLP
                                by:  **KAREN M. LENT**
                                     **MICHAEL H. MENITOVE**
9                               One Manhatten West
                                New York, New York 10001
10                              (212) 735-3000
                                *karen.lent@skadden.com*
11                              *michael.menitove@skadden.com*

12
                                Covington & Burling, LLP
13                              by:  **JOHN F. KENDRICK**
                                     **SONYA D. WINNER**
14                              One City Center
                                850 Tenth Street NW
15                              Washington, DC 20001
                                (202) 662-5638
16                              *jkendrick@cov.com*
                                *swinner@cov.com*
17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE COURT:  All right.  Good afternoon.  This is Case |
| 3 | Number 5:19cv55, Restore Robotics versus Intuitive Surgical. |
| 4 | Who do we have on the line? |
| 5 | MR. BERHOLD:  Good afternoon, Your Honor.  Jeff |
| 6 | Berhold for plaintiffs, Restore Robotics and Restore Robotics |
| 7 | Repairs. |
| 8 | MS. LENT:  Good afternoon, Your Honor.  Karen Lent |
| 9 | from Skadden Arps for Intuitive. |
| 10 | MS. WINNER:  Hello, Your Honor.  Sonya Winner from |
| 11 | Covington & Burling for Intuitive. |
| 12 | MR. MENITOVE:  Good afternoon, Your Honor.  This is |
| 13 | Mike Menitove from Skadden for Intuitive. |
| 14 | MR. KENDRICK:  Good afternoon, Your Honor.  This is |
| 15 | John Kendrick of Covington & Burling for Intuitive. |
| 16 | THE COURT:  All right.  Are we waiting for anyone |
| 17 | else? |
| 18 | MS. LENT:  Your Honor, this is Karen Lent.  We had |
| 19 | expected our colleague, Allen Ruby, to join.  And we've reached |
| 20 | out to him; but if you'd like to begin, we can go ahead. |
| 21 | THE COURT:  All right.  Ms. Lent, are you going to be |
| 22 | primarily handing this for Intuitive? |
| 23 | MS. LENT:  Yes, I will. |
| 24 | THE COURT:  All right.  The purpose of the hearing |
| 25 | today is to address Intuitive's motion to reopen discovery for a |

Timestamps (left margin): 01:01:12, 01:01:13, 01:01:20, 01:01:23, 01:01:24, 01:01:29, 01:01:31, 01:01:33, 01:01:39, 01:01:43, 01:01:47, 01:01:48, 01:01:57, 01:01:58, 01:02:04, 01:02:05, 01:02:09, 01:02:11, 01:02:15, 01:02:21, 01:02:26, 01:02:29, 01:02:30, 01:02:32

01:02:41  1   limited purpose.  The plaintiff has responded in opposition to

01:02:45  2   that.  I've read the motion, read the response, reviewed the

01:02:50  3   attachments to it.  The reason I wanted to get everyone on the

01:02:54  4   phone is I'm just not entirely clear what -- where things are

01:03:00  5   and what's being asked for here and why it's being asked for,

01:03:03  6   and so I wanted to get a little clarity of that.

01:03:06  7        But before I do that, I understand that the Middle

01:03:11  8   District, Judge Covington I believe in the Middle District has

01:03:17  9   entered a summary judgment order and set that case for trial in

01:03:22  10  December.  Is that -- one, I guess is that correct; and, two, is

01:03:28  11  that something that's expected to go forward in December?

01:03:34  12        Ms. Lent, I guess that's -- Intuitive's the common

01:03:37  13  party there, so I guess I'll focus that on you.

01:03:40  14        MS. LENT:  Yes, Your Honor.  Thank you.

01:03:42  15        You are correct that Judge Covington set the trial

01:03:48  16  with Rebotix in the Middle District to the December term which

01:03:54  17  we understand starts December 5th.  We have no reason to think

01:03:57  18  that it won't go forward at that time; although, I don't think

01:04:01  19  our civil trial would have priority in that term, and the Case

01:04:08  20  Management Order states that we are looking at 14 trial days.

01:04:15  21  So that may be difficult to get in in that period of time, but

01:04:18  22  otherwise, we do expect the case to move forward in the December

01:04:22  23  trial term.

01:04:24  24        THE COURT:  And that was one of the points that I was

01:04:28  25  interested in knowing about.  It seemed like Judge Covington in

| | |
|---|---|
| 01:04:35 | 1 |

that case just simply picked a date and gave you a certain

number of days.  Is it your understanding -- or do you

understand how that works down there?  Is that something that at

the pretrial conference that that time may expand, or is that

something you're just expected to fit your case into one way or

the other?

MS. LENT:  We expect to discuss that with Judge

Covington at the pretrial conference, but our understanding,

based on her past practice, is that it's unlikely she'll expand

that by much, if at all.

THE COURT:  All right.  Anything else about that case

you think I need to know about at this point from Intuitive's

perspective?

MS. LENT:  I don't believe so.

THE COURT:  And, Mr. Berhold, I know your client is

not a party to that case, but I'm sure you're following it

closely.  Is there anything from your perspective that I need to

know about that case?

MR. BERHOLD:  Nothing in particular, Your Honor.  I do

understand that the Court there has made similar findings and

rulings on the summary judgment there consistent with the

rulings here.  Otherwise, I don't have anything to add.

THE COURT:  Okay.  And, again, I'm -- every judge does

things a little bit differently.  Obviously, I scheduled the

case on a date that the parties had a lot of input to.  I know

| | |
|---|---|
| 01:06:06 | 1 |
| 01:06:10 | 2 |
| 01:06:15 | 3 |
| 01:06:20 | 4 |
| 01:06:25 | 5 |
| 01:06:31 | 6 |
| 01:06:33 | 7 |
| 01:06:37 | 8 |
| 01:06:44 | 9 |
| 01:06:47 | 10 |
| 01:06:52 | 11 |
| 01:06:57 | 12 |
| 01:07:03 | 13 |
| 01:07:09 | 14 |
| 01:07:15 | 15 |
| 01:07:19 | 16 |
| 01:07:24 | 17 |
| 01:07:28 | 18 |
| 01:07:30 | 19 |
| 01:07:33 | 20 |
| 01:07:38 | 21 |
| 01:07:43 | 22 |
| 01:07:44 | 23 |
| 01:07:46 | 24 |
| 01:07:47 | 25 |

1  it wasn't anybody's preferred date, but they certainly at least

2  had input on the date as well as the length of time.  But I will

3  be trying to track that case as closely as I can.  And if it

4  goes in December and Judge Covington holds you to 14 days, I may

5  think about whether the generosity that I provided in letting

6  y'all tell me how long you needed is something I need to

7  revisit.  Because it would seem to me that unless there's

8  something materially different about the two cases that I'm not

9  presently aware of, if those parties are able to try that case

10  in a shorter period of time than what we've got set aside, then

11  I might ratchet up the pressure to get y'all to figure out a way

12  to try the case that I have in a comparable amount of time,

13  primarily because the time that we have set aside is an

14  extraordinarily long time to inconvenience lay jurors to come

15  sit at.  And if I come to learn that this case can be tried --

16  because it has been tried -- in a shorter period of time, then

17  we may have a discussion about that at the pretrial conference.

18          So no decisions are made today on that and no

19  additional discussion is necessary, but I did want to put that

20  on your radar that I'm going to watch that closely and that

21  could be one of the consequences for this case.

22          MS. LENT:  Your Honor --

23          MR. BERHOLD:  Your Honor, may I --

24          MS. LENT:  -- Karen Lent.  I have a couple --

25          THE COURT:  Yes, ma'am.

01:07:47   1          MS. LENT:  -- to say about that.

01:07:49   2          There are a few differences between the Rebotix case

01:07:54   3   and this case.  One of them is that this case involves claims

01:07:57   4   regarding the servicing of the da Vinci robots.  Rebotix does

01:08:02   5   not have the capabilities or claim to have the capabilities to

01:08:06   6   do that, whereas Restore does.  And Restore has claims

01:08:08   7   predicated on servicing.

01:08:10   8          And then relevant to this hearing that we're having

01:08:16   9   today, Restore has filed, you know, through Alliance, a 510(k)

01:08:23  10   application for clearance.  Rebotix has not done that.  And so

01:08:28  11   that's a significant difference in the two cases as well.

01:08:30  12   Rebotix has claimed all along that it doesn't need 510(k)

01:08:35  13   clearance and has not filed an application, whereas Restore has.

01:08:40  14          THE COURT:  Gotcha.  Mr. Berhold.

01:08:42  15          MR. BERHOLD:  Thank you, Your Honor.  So the -- Judge

01:08:45  16   Covington and Rebotix actually estimated a trial length of 7 to

01:08:52  17   14 days.  And Restore believes that we can try this case in 7 to

01:09:02  18   14 days and encourages this Court to follow developments in the

01:09:06  19   Middle District of Florida.

01:09:08  20          THE COURT:  All right.  Like I said, we will talk

01:09:11  21   about that more at the pretrial conference, but I didn't want

01:09:16  22   either party to be surprised if we get to the pretrial

01:09:20  23   conference and a similar case has been tried in a shorter period

01:09:26  24   of time that we would not -- that I would not expect this case

01:09:30  25   to be tried in a shorter period of time as well, understanding,

01:09:34   1   as Ms. Lent said, maybe there's some differences.  But we can

01:09:39   2   cross that bridge when we get there.  I just wanted to at least

01:09:43   3   put that on everyone's radar.

01:09:46   4          But turning to the motion that we're set about,

01:09:49   5   Ms. Lent, I guess what I'm a little bit confused about is as I

01:09:52   6   read the motion, it seems to be suggesting that the plaintiff

01:09:56   7   has two separate new theories that you believe you are entitled

01:10:03   8   to discovery about.  One of them being the mere fact that

01:10:09   9   they're seeking clearance of a particular new technology, and

01:10:13   10  the other one is a statement that was made in the summary

01:10:16   11  judgment motion that they would have sought clearance sooner but

01:10:21   12  for some activity.

01:10:23   13         So I'm a little bit confused as to what trigger you

01:10:26   14  think gives you the ability to come in and ask for reopening

01:10:31   15  discovery.

01:10:33   16         MS. LENT:  Thank you, Your Honor.  It's really two

01:10:36   17  things.  And I think, you know, no one on this call will dispute

01:10:40   18  that Restore's repair process and FDA clearance of it is a

01:10:47   19  central issue.  Restore does not have FDA clearance.  Its

01:10:52   20  application was filed before the close of fact discovery.  We

01:10:55   21  know that.  We have discovery about that.  But it's been the

01:10:58   22  subject of significant back and forth with the FDA since the

01:11:01   23  close of fact discovery, and it's still pending.  Clearance has

01:11:05   24  not been granted or denied.  And trial is in less than five

01:11:10   25  months, and the factual record on this issue is incomplete and

01:11:13    1   in flux.

01:11:15    2           So there are two reasons why we filed this motion, and

01:11:18    3   the first is one that you suggested, which is to refute the new

01:11:24    4   theory that Restore first asserted in opposition to our motion

01:11:27    5   for summary judgment, which is that but for Intuitive's alleged

01:11:32    6   misconduct, Restore would have already obtained 510(k) clearance

01:11:36    7   from the FDA for its EndoWrist repair technology.

01:11:41    8           THE COURT:  Well, hold on.  Let me ask you something

01:11:43    9   about that --

01:11:44   10           MS. LENT:  Yeah.

01:11:44   11           THE COURT:  -- because that actually is almost a

01:11:47   12   different point that they would have already got the approval.

01:11:55   13   I mean, to me there seems like a question of whether -- I

01:11:59   14   thought it was undisputed -- that they didn't -- what triggered

01:12:04   15   them to go get this new company to go in and apply for 510

01:12:09   16   clearance was when they lost the license from Rebotix, that that

01:12:14   17   was what triggered them to do it.  I didn't have any evidence,

01:12:16   18   or don't recall any evidence, that they ever had any intention

01:12:19   19   of doing it before then.  And so that's the point at which they

01:12:23   20   decided we're going to get our own clearance.

01:12:27   21           And so I guess I'm confused if what your argument

01:12:31   22   is -- it almost sounds like their argument, that once we decided

01:12:35   23   to go get it, we would have had it sooner had Intuitive not

01:12:39   24   interfered with the FDA process.  And so I guess, again, I'm

01:12:44   25   just confused as to what you think the relevance of all this

01:12:48  1    might be.

01:12:49  2         MS. LENT:  Well, Your Honor, I understand that it's

01:12:53  3    confusing, and it's confusing for us as well because the

01:12:56  4    theories keep shifting in our view.  The original complaint in

01:12:59  5    this matter was filed claiming that -- you know, that it

01:13:07  6    licensed -- Restore licensed Rebotix's technology to get around

01:13:09  7    the EndoWrist use limits, and it didn't need FDA clearance to

01:13:14  8    pursue that.

01:13:16  9         We learned through discovery that they had decided at

01:13:18  10   some point to try to come up with their own technology to reset

01:13:25  11   and so-called "repair" EndoWrist instruments.  But never -- you

01:13:31  12   know, they never pled that they would have done that sooner but

01:13:38  13   for Intuitive's alleged misconduct.  And we only learned that in

01:13:42  14   their opposition to our summary judgment motion.

01:13:45  15        THE COURT:  Right, but there was no evidence

01:13:47  16   presented, that I recall, and even -- I went back and read that

01:13:52  17   portion of the summary judgment motion.  There's no evidence

01:13:56  18   cited for that proposition.  So I guess I'm confused as to what

01:13:59  19   significance the timing of them -- that they would have sought

01:14:03  20   it earlier.  I don't even know what significance that has to

01:14:06  21   anything.

01:14:09  22        The question is whether they get it at some point and

01:14:12  23   how that might impact the damage expert's assessment of things.

01:14:19  24   But again -- and I'll ask Mr. Berhold this question at the

01:14:22  25   appropriate time -- I just don't think there was any evidence to

1 support an idea that they would have asked for it sooner.  And

2 so I'm confused as to why that provides you a hook to go in and

3 get this additional discovery.

4         MS. LENT:  Well, Your Honor, Restore has told us that

5 they would have sought it sooner and that they intend to

6 supplement their expert reports with evidence of that if they

7 actually do, in fact, get clearance.  I mean, this is all

8 generated from what Restore has been saying.

9         We asked them for discovery on this open issue of

10 what's been going on with the FDA.  Because here we are a year

11 and a half later, this application is still being prosecuted

12 with no result.  They're telling us, Well, if we get clearance,

13 we plan to use it and we plan to argue we would have gotten that

14 clearance sooner, and therefore our damages should be even

15 greater.

16         THE COURT:  Okay.  Well, let me -- go ahead.  You can

17 finish your thought, but then I'll explore with Mr. Berhold.

18 Because again, I didn't see that -- that would be new to me.

19 And I didn't see that as part of their argument, part of their

20 damages.  The facts are what they are.  They filed it when they

21 filed it, and they'll get it or not when they get it or not.

22 And that seems to be the point at which we would need to

23 consider whether any additional discovery, any additional expert

24 reports need to be done.  Because at this point, nothing is

25 different than where we were when discovery closed, except

01:16:01  1   there's been some back and forth with the FDA that it looks like

01:16:06  2   you've got at least part of those communications.  And if

01:16:09  3   there's anything responsive to a discovery request that is

01:16:13  4   within those communications that you haven't gotten that you

01:16:16  5   should have, that's a Rule 26(e) issue, rather than a new

01:16:19  6   discovery issue.

01:16:22  7        MS. LENT:  Well, Your Honor, on that point, Restore

01:16:25  8   has refused to give us those documents.  I mean, this is a

01:16:30  9   central issue in the case, and we don't have any information

01:16:33  10  except that back and forth which clearly is missing attachments.

01:16:37  11  And they've told us there have been other -- you know, other

01:16:41  12  documents and records created that relate to the FDA issue.

01:16:46  13       So regardless of whether there's this new issue that

01:16:49  14  they raise that they would have gotten FDA clearance sooner, I

01:16:54  15  think it's absolutely necessary for us and for the Court when

01:17:00  16  this case is tried to have all of the relevant information about

01:17:04  17  FDA clearance and not just selectively, Well, if they get it,

01:17:08  18  then they get to argue, Great, we got it.  You know, there could

01:17:12  19  be lots of things going on right now that are relevant to this

01:17:14  20  case, and it's not something that Intuitive just, you know,

01:17:19  21  forgot to ask for or neglected to ask for.  It's a record that

01:17:24  22  because of what's -- the subject matter of this litigation is

01:17:27  23  continuing to be developed, and we can't ignore it.

01:17:30  24       THE COURT:  Okay.  All right.  Let me -- and we'll

01:17:32  25  come back to you.  It will be a free-form discussion.  But let

| | |
|---|---|
| 01:17:36 | 1 |
| 01:17:42 | 2 |
| 01:17:47 | 3 |
| 01:17:51 | 4 |
| 01:18:00 | 5 |
| 01:18:05 | 6 |
| 01:18:12 | 7 |
| 01:18:21 | 8 |
| 01:18:25 | 9 |
| 01:18:32 | 10 |
| 01:18:40 | 11 |
| 01:18:46 | 12 |
| 01:18:56 | 13 |
| 01:19:01 | 14 |
| 01:19:06 | 15 |
| 01:19:10 | 16 |
| 01:19:22 | 17 |
| 01:19:28 | 18 |
| 01:19:34 | 19 |
| 01:19:38 | 20 |
| 01:19:42 | 21 |
| 01:19:47 | 22 |
| 01:19:52 | 23 |
| 01:19:57 | 24 |
| 01:20:03 | 25 |

1    me explore with Mr. Berhold this idea -- again, Mr. Berhold, as

2    I understood the evidence at the summary judgment stage, I don't

3    recall any evidence suggesting that your client would have asked

4    for FDA approval sooner than it did.  What am I missing?

5         MR. BERHOLD:  So we agree with you that interfee --

6    two things about interference.  Right?  So the issue is -- two

7    issues:  Would Restore have asked for a clearance sooner but for

8    interference with the FDA?  Well, that's not -- that doesn't

9    even make sense.  Second, would clearance have gone faster but

10   for interference by Intuitive with the FDA clearance process?

11   At this point, we only have suspicions in that respect.  We're

12   not in a -- we're not in a position to amend expert reports or

13   anything else.  We're in the process of getting supplemental

14   production from Intuitive to explore that issue.

15        So I agree with you that the proper vehicle is

16   Rule 26(e).  There's not a new theory relating to the possible

17   evidence of interference with the 510(k) process.  And, you

18   know, the issues are three things:  one, scope; two, timing;

19   and, three, confidentiality.  And they're all related to

20   Rule 26(e) supplementation.  And we tried to confer with

21   Intuitive and will continue to do so regarding the 510(k)

22   submission:  What makes sense in terms of the scope of what is

23   produced, when it will be produced, should it be done piecemeal,

24   and also whether it will be done under a different tier of

25   confidentiality.

01:20:04  1          To its credit, Intuitive did just yesterday agree in

01:20:08  2   the class action in principle of the idea of creating a new tier

01:20:13  3   of confidentiality for certain discovery that will not be

01:20:16  4   accessible to in-house counsel.  So --

01:20:19  5          THE COURT:  All right.  Let me stop you again --

01:20:22  6          MR. BERHOLD:  Okay.

01:20:22  7          THE COURT:  -- because I'm losing you.

01:20:29  8          As I understood what triggered Ms. Lent to say we need

01:20:32  9   additional discovery is Restore taking the position that it

01:20:36  10  would have asked for FDA clearance sooner than it did but for

01:20:41  11  the anticompetitive conduct that Intuitive is undertaking.  And

01:20:49  12  my question was to her -- and it really probably is better to

01:20:53  13  you -- is I didn't understand that ever being part of the case,

01:20:59  14  nor was -- when that statement was made in the summary judgment

01:21:03  15  response was there any evidence cited to support that.

01:21:07  16          Am I missing something that Restore would have gone

01:21:10  17  and asked for FDA clearance sooner than it actually did but for

01:21:16  18  something?

01:21:20  19          MR. BERHOLD:  No.  We have not made that allegation.

01:21:25  20  And I don't think that the timing -- yeah, no, we have not made

01:21:31  21  that allegation.  We would have asked -- we would have asked

01:21:35  22  sooner --

01:21:37  23          THE COURT:  And it --

01:21:38  24          MR. BERHOLD:  -- for clearance.

01:21:40  25          THE COURT:  And at least but thus far, as I'm aware of

01:21:44  1  evidence, there's been no allegation that you would have gotten

01:21:49  2  FDA clearance sooner but for Intuitive's -- I'm using quotes --

01:21:57  3  "interference" with the FDA's review process, correct.

01:22:05  4          MR. BERHOLD:  It's not an allegation.  It's been a

01:22:07  5  concern, and that's why we would like more confidentiality.  But

01:22:12  6  we don't have -- we have not made that allegation.

01:22:17  7          THE COURT:  Right.  And at this point, there's no

01:22:19  8  evidence in the record that I have that would suggest that.  I

01:22:24  9  mean, the reality of it is -- and I think one of those cases

01:22:29  10  that was cited in the rehearing motion, it was the auto

01:22:36  11  dealers -- or the reconsideration order, it was the auto dealers

01:22:40  12  case, talked about the idea that petitioning the government

01:22:44  13  isn't anticompetitive conduct.  And so even if they're out

01:22:48  14  there, which I'm -- I would suspect, given the business

01:22:55  15  environment, any good business would be out there advocating

01:22:58  16  that the government not do something that would hurt its

01:23:01  17  interests.  But that's not anticompetitive conduct.  That's not

01:23:05  18  in this case.

01:23:06  19          And I guess what I'm struggling to understand here is

01:23:09  20  this:  You're either going to get FDA approval of this or not.

01:23:14  21  If you get it, then it's my understanding that your expert may

01:23:17  22  come back in and do some recalculations and recalibrations of

01:23:21  23  her numbers.  Because part of the reason she thought you weren't

01:23:26  24  getting enough -- all the business you wanted is this FDA issue,

01:23:29  25  and that would then at least prospectively take that off the

01:23:32   1   table.  Is that where this is going?

01:23:36   2           MR. BERHOLD:  I mean, that's -- she -- in her

01:23:42   3   testimony, she assumed that clearance was not necessary but that

01:23:46   4   it's possible that there would be additional -- an incremental

01:23:50   5   increase in sales and profits if they were able to market to

01:23:54   6   hospitals with the clearance.  And she would -- I expect that

01:23:59   7   she would amend accordingly if there was clearance and she had a

01:24:03   8   date certain for it.

01:24:04   9           THE COURT:  And so that would be prospective, from

01:24:06   10  that date forward, her numbers might change.

01:24:11   11          MR. BERHOLD:  Yes.

01:24:14   12          THE COURT:  And you talk also about -- I guess from

01:24:18   13  the Rule 26(e) perspective, I would suspect that there's a

01:24:24   14  discovery request that Intuitive has served that would encompass

01:24:28   15  the entirety of the communication between Restore and the FDA

01:24:38   16  about this Iconoclast -- or whatever their name is, Alliance I

01:24:43   17  guess is the name we're using now -- the Alliance submittal.  Is

01:24:47   18  that a fair assumption or not a fair assumption?

01:24:54   19          MR. BERHOLD:  I'm going to defer to Intuitive, Your

01:24:57   20  Honor, on that.  I know there was at least one request relating

01:25:02   21  to seeking regulatory approval.

01:25:05   22          THE COURT:  Okay.

01:25:06   23          MR. BERHOLD:  Offhand, I don't recall the language.  I

01:25:07   24  did look at it yesterday.

01:25:09   25          THE COURT:  Okay.  Well, I'll ask Ms. Lent that here

01:25:12  1   in a minute.  But assuming there is a request that the entirety

01:25:15  2   of the back and forth would be responsive to, why isn't that a

01:25:23  3   Rule 26 production that just needs to occur either -- at some

01:25:30  4   point as a matter of course?  I know you expressed some concern

01:25:36  5   about how that might be used, but, again, that's subject to a

01:25:40  6   protective order.  I've got no allegations in front of me or

01:25:45  7   indication that they're violating the Protective Order.  So --

01:25:47  8   y'all have exchanged equally as sensitive information before.

01:25:51  9   So I'm struggling to understand that if this entirety of the

01:25:55  10  back and forth is responsive, why it isn't being produced under

01:26:00  11  Rule 26(e).

01:26:05  12        MR. BERHOLD:  Well, we -- so, one, we only think that

01:26:13  13  the submissions themselves from the FDA, not internal

01:26:17  14  discussions and so forth are -- need -- would be under

01:26:27  15  discoverable -- the supplementation.  We would produce the

01:26:31  16  submission, we would produce the back and forth directly with

01:26:35  17  the FDA, and we would -- I've gone -- I've thought long and hard

01:26:44  18  about the problems of doing it piecemeal, especially when it's

01:26:49  19  so close to final clearance.  But obviously we have to do

01:26:52  20  something at some point.

01:26:53  21        So my thought was that Restore would produce all of

01:27:01  22  its submissions to the FDA, including the email communications

01:27:08  23  to the FDA, by September 30th, three weeks from today.  Ideally,

01:27:16  24  it would be done with this additional tier of confidentiality.

01:27:19  25  It's already been offered, and it's going to be implemented

01:27:20  1   hopefully in the class action, and I hope we can have it here.

01:27:25  2   But that was my thinking and my client's thinking in terms of

01:27:29  3   handling this dispute.

01:27:31  4         THE COURT:  Okay.  All right, Ms. Lent, back to you.

01:27:36  5         In view of what Mr. Berhold said, that they're not

01:27:39  6   arguing or taking the position that they would have sought 510

01:27:45  7   clearance sooner, that -- I don't see how that's a new theory

01:27:49  8   that can reopen discovery.  And so I guess the question that I

01:27:54  9   left -- or that I raised with Mr. Berhold that he deferred to

01:27:59  10  you:  Was there a discovery request that all of the FDA

01:28:04  11  communications and back and forth would be responsive to?

01:28:08  12        MS. LENT:  Yes, absolutely.  RFP 52 was for all

01:28:14  13  documents and communications with any regulatory agency

01:28:17  14  including the FDA related to Restore's servicing of EndoWrist

01:28:22  15  instruments and RFP 51 covers all documents and communications

01:28:27  16  related to Restore's application for 510(k) clearance.

01:28:33  17        So clearly these documents are covered.  Mr. Berhold

01:28:36  18  just said to you something we've never heard, which is that they

01:28:39  19  are actually willing to produce something along these lines, but

01:28:44  20  I can't -- I couldn't tell from what he said what the scope of

01:28:48  21  that is and whether it is, in fact, supplement -- fully

01:28:53  22  supplementing a response to these RFPs or whether he's narrowing

01:28:58  23  that.  It also sounded like he was conditioning it on an

01:29:01  24  additional amendment to the protective order, which we hadn't

01:29:05  25  heard about before.  So I do -- I do worry about that, and I'm

01:29:09  1   not sure what he's saying he would do.

01:29:12  2            And then the other issue we have, Your Honor, is that

01:29:18  3   Restore has done this work through Alliance.  We subpoenaed

01:29:20  4   Alliance and received documents from them last spring.  But, you

01:29:30  5   know, we've been -- we've been down this road with Restore that

01:29:34  6   they claim not to have control over the Alliance documents and

01:29:38  7   are going to tell us we have to go subpoena Alliance again.

01:29:42  8   These are -- these should be produced as Restore's documents.

01:29:46  9   And, you know, I don't think it would be fair for us to have to

01:29:49  10  go and subpoena Alliance again to get documents related to the

01:29:53  11  work that Alliance is doing for Restore on this critical issue.

01:29:58  12            THE COURT:  And we'll talk about that maybe a little

01:30:00  13  bit further.  But I guess the other question I have is -- I

01:30:04  14  mean, at the end of the day, the FDA is either going to say you

01:30:10  15  have the approval or you don't have the approval.  And if --

01:30:17  16  before we get to trial maybe.  I don't think how long that

01:30:20  17  bureaucratic process takes.  It seems to be dragging on for an

01:30:24  18  inordinate amount of time.  But if they ultimately say you get

01:30:28  19  the approval, then that would seem to take a number of issues

01:30:33  20  off the table about whether it's a safe process, the efficacy of

01:30:38  21  the repaired instrument.  I mean, some of those things would

01:30:42  22  implicitly have been determined by the FDA.  In the event that

01:30:48  23  they don't give the approval, my concern is that all of this new

01:30:54  24  information is somehow going to be fed to the experts to do some

01:30:58  25  sort of new analysis.  And it seems to me that that's not where

01:31:02  1  we need to be going, except possibly for the issue of damages in

01:31:08  2  the event that a circumstance changes, which is they get the

01:31:12  3  approval.

01:31:14  4         And so while I'm perfectly happy trying to facilitate

01:31:17  5  the parties getting what they're entitled to get from this

01:31:20  6  evolving process, I don't see that entitling the parties to then

01:31:26  7  go redo their cases.  And that's my concern here is that the one

01:31:33  8  issue that this could potentially affect if they get the

01:31:37  9  approval is the damage calculation.  And, again, I think a lot

01:31:43  10 of this damage calculation, I put it in an order saying I think

01:31:47  11 it's a lot of smoke and mirrors on both sides here.

01:31:52  12        But in any event, the parties are welcome to present

01:31:57  13 whatever they want to present to the jury in damages and let

01:31:59  14 them sort it out, but can you give me some sort of assurance,

01:32:03  15 Ms. Lent, that we're not going to take this pile of information

01:32:07  16 and I'm not going to start seeing supplemental expert reports

01:32:10  17 and things like that that we revert back into discovery?

01:32:15  18        MS. LENT:  Well, Your Honor, I think that safety would

01:32:18  19 still be an issue, potentially, even if clearance is granted for

01:32:24  20 this 510(k) application.  We have no idea what has occurred in

01:32:30  21 between, you know, the major deficiency letter that Alliance got

01:32:36  22 and the information that has been submitted since then.  We

01:32:38  23 don't know if it's as safe as Intuitive's instruments are.  And

01:32:43  24 so I don't think it's fair to say that safety would be taken off

01:32:48  25 the table, and that's an issue that we'd be entitled to explore.

01:32:53　1　I don't think that 510(k) clearance, you know, just sweeps the

01:32:56　2　issue under the rug.

01:32:58　3　　　　So there may be some limited supplementation of expert

01:33:01　4　reports along the lines of what, you know, Mr. Berhold is

01:33:06　5　already saying, that they would supplement their expert report.

01:33:10　6　We have an FDA expert who might have something to say about what

01:33:14　7　she sees in these documents and what's happened.

01:33:18　8　　　　THE COURT:  Right.  But how is that -- I mean, I guess

01:33:20　9　we can deal with that at the pretrial in motion in limine.  But

01:33:23　10　it seems to me that if the FDA, even if they've been lied to by

01:33:30　11　Restore, which I think is kind of what you're getting at there,

01:33:33　12　that they weren't presented good information, but if the FDA

01:33:37　13　within the scope of their authority takes action, I'm very

01:33:43　14　concerned about the idea that you would want to come back in and

01:33:46　15　say, Well, they've got this approval going forward, but it

01:33:51　16　really isn't worth the paper it's printed in because garbage in,

01:33:56　17　garbage out.

01:33:57　18　　　　MS. LENT:  No --

01:33:57　19　　　　THE COURT:  And if that's where you're trying to go,

01:34:00　20　then I'm very concerned about that.

01:34:01　21　　　　MS. LENT:  No, no, Your Honor.  That's not where I'm

01:34:04　22　trying to go.  What I'm saying is that the FDA may approve based

01:34:10　23　on genuine information that it receives from Restore or

01:34:14　24　Alliance, and that -- those safety -- the safety of that

01:34:19　25　instrument may not be the same as the safety of an Intuitive

01:34:24  1    instrument.  Not because -- not because the FDA's been lied to

01:34:28  2    but because the FDA has been shown something and it approved

01:34:32  3    something with a more lax standard than what the internal

01:34:35  4    control standards are at Intuitive.

01:34:37  5         In a business environment, as you said, you know, a

01:34:41  6    company is going to do what it can to compete, and it would be

01:34:46  7    perfectly lawful for Intuitive to point out that its instruments

01:34:50  8    are safer.

01:34:52  9         THE COURT:  But didn't you have that opportunity,

01:34:54  10   though, already?  Mr. Berhold said the technology that

01:34:58  11   they're -- Alliance is seeking approval of hasn't changed.  Your

01:35:05  12   safety expert, for example, had an opportunity to evaluate that

01:35:09  13   and opine on that.  Is it your anticipation that he will now be

01:35:15  14   opining anew based upon other information he's presented?

01:35:20  15        MS. LENT:  Well, I understand that Mr. Berhold has

01:35:22  16   said the technology hasn't changed, but going through the FDA

01:35:26  17   process requires a back and forth with testing submissions and

01:35:30  18   validating data and demonstrating that the product is safe.  We

01:35:36  19   haven't seen that back and forth.  We haven't seen what else

01:35:38  20   Alliance has done to try to demonstrate the safety of this

01:35:42  21   product.  So it's possible that our expert would have something

01:35:45  22   to say about that.  I don't think it's something anew.  I think

01:35:48  23   it's something that would be learned through this process of

01:35:51  24   back and forth that Alliance and Restore through Alliance are

01:35:55  25   going through with FDA.

01:35:58    1          THE COURT:  All right.

01:35:59    2          MS. LENT:  Can I just address one other point, Your

01:36:01    3   Honor?

01:36:01    4          THE COURT:  Sure.

01:36:02    5          MS. LENT:  Because I hear you saying that you haven't

01:36:03    6   seen any evidence from -- you know, that Restore is arguing that

01:36:11    7   it would have sought FDA clearance sooner.  I want to make sure

01:36:19    8   that we're also including the word "obtained" here.  Sought and

01:36:23    9   obtained FDA clearance sooner.  Because that was one of the

01:36:27   10   things that we heard in our meet-and-confers.

01:36:31   11          And I also want to just point to -- this is on page 8

01:36:35   12   of the opinion on the motion for reconsideration where Your

01:36:39   13   Honor says "there is evidence from which a jury could find that

01:36:44   14   Restore was prepared (or was preparing) to compete in the

01:36:48   15   EndoWrist 'repair' market with different technology that would

01:36:54   16   have obtained FDA clearance were it not for Intuitive's

01:36:58   17   anticompetitive conduct."  That -- if that language is not meant

01:37:03   18   to mean that there is evidence from which a jury could find that

01:37:09   19   Restore would have sought or obtained FDA clearance sooner but

01:37:12   20   for the alleged anticompetitive conduct, then that's fine.  I

01:37:17   21   just -- I think there's -- you know, I'm a little unclear on

01:37:23   22   what the Court thinks there is evidence from and what Restore is

01:37:28   23   arguing that it hasn't said.

01:37:30   24          THE COURT:  Okay.  Give me a second.

01:37:45   25          I'll have to go back and remember what I was saying

01:37:48  1   there.  The point was -- and that's the other thing about this

01:37:52  2   whole new theory, that all of this came up in the context of

01:37:57  3   whether Restore had antitrust standing, whether it was a proper

01:38:02  4   plaintiff here because it was a potential competitor.  And

01:38:08  5   that's where this new technology came in, was that -- at least I

01:38:13  6   thought the evidence was sufficient to show that it had taken

01:38:17  7   the preparatory steps -- reasonable preparatory steps necessary

01:38:21  8   to show that it had this necessary standing.  That's what this

01:38:25  9   is all about, more so than whether it had this alternative

01:38:30  10  technology.  Because at the time, it didn't.  It currently still

01:38:34  11  doesn't, but it may at some point in the future.

01:38:38  12       So to the extent I've confused things, I apologize,

01:38:43  13  but I haven't heard -- Restore's told us today they're not

01:38:48  14  arguing that they would have tried to get FDA clearance sooner,

01:38:52  15  applied for it sooner.  They've also told us today that as we

01:38:55  16  currently sit here, there's no evidence that they would have

01:38:58  17  gotten it sooner but for Intuitive's meddling in the process.

01:39:04  18  And beyond that, I'm not sure what else would be -- I mean, to

01:39:12  19  me, again, this isn't a discovery issue.  This is:  You've made

01:39:15  20  a discovery request, things are evolving, you're entitled to --

01:39:18  21  or they're obligated to supplement their discovery responses

01:39:21  22  with responsive information, and that's what they've offered to

01:39:25  23  do.  And so why isn't that the end of our discussion on the

01:39:29  24  motion to reopen discovery?

01:39:33  25       Mr. Berhold.

01:39:36  1    MR. BERHOLD:  So, yes, I agree.

01:39:37  2    At the risk of muddying the waters a little bit, so

01:39:43  3  there's a separate question of whether -- there's S/Si

01:39:47  4  instruments, and then there are the X/Xi instruments.  All of

01:39:51  5  this discussion today has been about the S/Si instruments.

01:39:55  6  Although, the Complaint does allege a broader market for the

01:39:59  7  instruments, and discovery was taken on the S/Si instruments and

01:40:05  8  the X/Xi instruments.  Our focus today has been on the S/Si

01:40:10  9  instruments.  I do want to clarify that, like in the Rebotix

01:40:17  10  case, Restore does take the position that it would be moving

01:40:20  11  faster to develop technology, maintain clearance separately on

01:40:30  12  the X/Xi instruments.  Those have not been part of the

01:40:35  13  discussion today, but I don't want to --

01:40:37  14    THE COURT:  Right.  And I do want to -- I want to

01:40:39  15  focus on what we're focusing on, but I do have some thoughts on

01:40:44  16  that.  And you're probably not going to like to hear them, but I

01:40:47  17  do have some that's on the Xi that I do want to -- because I

01:40:51  18  know that isn't ripe yet, but I do have some thoughts that

01:40:55  19  hopefully will move that in the direction that I think it needs

01:40:58  20  to go.

01:40:58  21    But to close out the thoughts on the discovery motion,

01:41:01  22  my question was in light of the representations that have been

01:41:05  23  made about what is in the case, what theories are being pursued,

01:41:11  24  why isn't this request for additional information not just

01:41:16  25  covered by your 26(e) obligations?

01:41:23  1        MR. BERHOLD:  So, first of all, there's a request --
01:41:25  2   we didn't agree to produce all responsive documents for that
01:41:30  3   request or a lot of the requests.  We did go through a
01:41:35  4   meet-and-confer process and a negotiation process to produce
01:41:39  5   originally, and then standard under Rule 26(e) is to produce
01:41:43  6   where the prior response has been complete in a material
01:41:49  7   respect.  And so it's our belief that our obligation is to
01:41:55  8   seasonably amend in a timely fashion with our submissions to the
01:42:00  9   FDA.  And rather than trying to do it piecemeal, my thought is
01:42:12  10  to do it by September 30th, whether or not the FDA finally
01:42:17  11  grants clearance.  And that's how I read the obligations under
01:42:23  12  Rule 26(e).
01:42:26  13        THE COURT:  All right.  Ms. Lent, why doesn't that
01:42:29  14  resolve the motion to reopen discovery?
01:42:33  15        MS. LENT:  Well, Your Honor, it sounded like
01:42:38  16  Mr. Berhold just said that they would produce submissions to the
01:42:41  17  FDA, and that's all.  That's not what we've asked to be
01:42:47  18  produced, and that's not consistent with his obligations about
01:42:53  19  supplementing internal communications about this as well.  I
01:42:56  20  think we're entitled to the documents responsive to the two
01:43:01  21  requests that I noted earlier, and I don't think it's fair for
01:43:06  22  Mr. Berhold to just limit that to submissions to the FDA.
01:43:10  23  There's been -- I am sure there's been discussion about what's
01:43:13  24  going on and why and what's being asked to be submitted, and
01:43:19  25  we're entitled to those.

01:43:26  1          THE COURT:  All right.  Mr. Berhold, why are they not

01:43:27  2    entitled to those?

01:43:29  3          MR. BERHOLD:  For a number of reasons.  One, I don't

01:43:31  4    think that's the requirement of Rule 26(e); and, two, it's going

01:43:36  5    to be burdensome, especially as we're getting ready for trial,

01:43:38  6    to be trying to chase down probably hundreds if not thousands of

01:43:46  7    emails when there's a communication with the FDA and then

01:43:52  8    there's -- if Restore or Alliance is going to run a new test or

01:44:00  9    arrange for a third party to run a new test, that's a whole lot

01:44:05  10   of email traffic, and that's a significant burden.

01:44:08  11          And the question here, if the test -- if the question

01:44:11  12   is -- so there's two questions.  One, the Court has identified

01:44:16  13   it's a yes or no question:  clearance or not.  And implicit in

01:44:21  14   that clearance has been decisions by the FDA on things like

01:44:24  15   safety and efficacy.

01:44:26  16          Intuitive's arguing for something more.  They want --

01:44:30  17   based on -- not on published considerations but based on

01:44:36  18   their -- some sort of internal requirements.  They want to

01:44:41  19   analyze the safety.  Well, they can see all the safety data that

01:44:47  20   is provided to the FDA when they see the FDA submissions.  We

01:44:56  21   are -- we provide the data that's requested by the FDA.  That's

01:45:02  22   part of the submissions.  And if -- those submissions alone are

01:45:06  23   literally thousands of pages, and I don't want to have the

01:45:09  24   additional burden of chasing down hundreds and hundreds of

01:45:13  25   emails back and forth as -- FDA says, We want the ABC test, and

01:45:23  1  then there are -- there's back and forth with -- between Restore

01:45:32  2  and Alliance and Alliance and the testing companies about

01:45:38  3  arranging the tests:  What day are we going to start?  When are

01:45:42  4  you bringing the robot?  Do they -- does the FDA want it at

01:45:48  5  40 degrees temperature or 50 degrees temperature?  All of that.

01:45:54  6  Can you -- you know, your testing columns, you're missing a

01:45:58  7  column in the data.  You're going to need to have to throw that

01:46:01  8  out.  I don't want to throw all that stuff out.  The --

01:46:06  9          THE COURT:  Hold on a second.  Whether you want to or

01:46:09  10  not isn't the test under Rule 26(e).  The test is if you learn

01:46:16  11  that a response that you made to a discovery request is

01:46:20  12  incomplete -- and that's what we're talking about here rather

01:46:23  13  than incorrect -- is incomplete in a material respect, you have

01:46:29  14  an obligation to make that production.  And if -- and it sounds

01:46:34  15  like there is a discovery request that sought the information

01:46:38  16  you're describing.  Why they want it, what they're going to do

01:46:43  17  it -- why they want it, I don't know.  What they're going to do

01:46:45  18  with it I have concerns about, but that's a different test -- or

01:46:49  19  different question as well as to whether you have an obligation

01:46:51  20  to produce it.  And so I --

01:46:56  21          MR. BERHOLD:  Well --

01:46:56  22          THE COURT:  Go ahead.

01:46:57  23          MR. BERHOLD:  Sorry, Your Honor.

01:46:59  24          There's two things.  Rule 26 always asks the question

01:47:02  25  of proportionality and burden.  So let me address your point.

01:47:06  1    One, 26(e), it's material respect.  I don't think

01:47:08  2  those emails render the response incomplete in a material

01:47:14  3  respect under Rule 26(e).  Number two, I don't think the

01:47:19  4  internally -- I think those internal emails are not proportional

01:47:24  5  to the needs of the case, especially after the completion of

01:47:27  6  discovery.

01:47:28  7    Those are my two objections.  One, not -- does not

01:47:33  8  render the response incomplete in a material respect under

01:47:38  9  Rule 26(e); and, two, is not proportional to the needs of case

01:47:43  10  under Rule 26.

01:47:44  11    THE COURT:  All right.  I think we're getting into the

01:47:47  12  weeds here.  I've got in front of me a motion for the limited

01:47:51  13  reopening of discovery.  I haven't heard a basis to reopen

01:47:57  14  discovery for any purpose, even a limited purpose.  However, it

01:48:02  15  is clear and obvious to me that there are things continuing to

01:48:08  16  happen, information continuing to be developed that is

01:48:12  17  responsive to a discovery request.  And so the plaintiff then,

01:48:18  18  as does the defendant in things that are evolving with it, has

01:48:22  19  an obligation under Rule 26 to produce that.

01:48:28  20    If there is particular objections to particular

01:48:31  21  things, that's a motion for protective order or motion to compel

01:48:36  22  that is not currently before me and is not something that y'all

01:48:39  23  have tried to work out and work through, best I can tell.  I did

01:48:45  24  read all of this back and forth and these long emails to each

01:48:48  25  other, but those didn't have the guidance that I've just

01:48:52  1    provided.

01:48:53  2         So it seems to me that I'm not going to resolve today

01:48:58  3    how many of those emails you have to produce, which ones are

01:49:01  4    unduly burdensome.  That's not before me right now.  But I think

01:49:06  5    I can resolve the motion that's before me with the finding that

01:49:10  6    we're not reopening discovery in the way that the defendant has

01:49:16  7    asked for.  However, they are entitled to receive rule --

01:49:23  8    additional disclosures or additional production pursuant to

01:49:28  9    Rule 26(e).  And if the parties can't agree about what in

01:49:32  10   particular of this big pile of stuff needs to be produced,

01:49:37  11   there's tons of lawyers on this call that can figure out how to

01:49:42  12   file a motion to compel or a motion for protective order.  But

01:49:45  13   I'm also confident with the tons of lawyers on the call can

01:49:49  14   figure out what they really need, particularly given the grave

01:49:53  15   concerns I have that if we start allowing the experts,

01:49:59  16   particularly for the defendant here, to become the FDA, we're

01:50:05  17   getting very far afield from what should be done between the

01:50:09  18   close of discovery and trial, rather than before the close of

01:50:14  19   discovery.

01:50:15  20        So with that guidance and ruling on the motion to

01:50:19  21   compel, is there anything we need to talk about on Si's?

01:50:24  22        Mr. Berhold?

01:50:25  23        MR. BERHOLD:  No, Your Honor.

01:50:26  24        THE COURT:  Ms. Lent?

01:50:29  25        MS. LENT:  No, Your Honor.  Thank you.

01:50:31  1          THE COURT:  All right.  And I'll get an order

01:50:33  2   memorializing that ruling with hopefully some simple and concise

01:50:42  3   direction.

01:50:42  4          On the Xi -- and, again, I understand that this --

01:50:45  5   there's nothing currently pending before me on that, but it

01:50:49  6   seems to me that needs to be nipped in the bud.  This case, at

01:50:55  7   least as far as I've understood, both from the pleadings, the

01:51:01  8   evidence that I reviewed has always been about the Si because

01:51:05  9   the plaintiff does not the have the technological capability to

01:51:09  10  get into the Xi.  And when I say "Xi," I mean the X and Xi, just

01:51:15  11  like I meant S and Si when I was talking about the other one.

01:51:19  12         And so the concern I have, I know the -- I read the

01:51:23  13  deposition excerpts that Mr. Parker, I think, or Mr. May or

01:51:29  14  maybe both of them, said they really want to be in that

01:51:32  15  business.  I'm sure they really do want to be in that business,

01:51:34  16  but the fact remains they're not.  And if tomorrow they come up

01:51:40  17  with a technology to hack into the X machine or the Xi machine,

01:51:46  18  then I don't see how that can be part of this case without an

01:51:52  19  extensive amount of discovery about what that technology is, how

01:51:56  20  it works, how safe is it, and we've got a whole nother round --

01:52:00  21  whether it needs FDA approval.  We've got a whole nother round

01:52:04  22  of discovery that would be necessary on that for that to be part

01:52:06  23  of this case, not to mention that there's been no damages

01:52:11  24  assessment done of that because up until this moment, at least,

01:52:18  25  Restore doesn't have the capacity to be in that business.

01:52:22  1      So in my view -- and, Mr. Berhold, I'll give you a

01:52:24  2  chance to convince me otherwise, and I know there's nothing

01:52:27  3  before me to specifically rule on; but in my view, this case has

01:52:30  4  nothing to do with the Xi except for the fact, as your damage

01:52:36  5  expert talked about, Well, with the Xi coming online, that may

01:52:40  6  actually increase our business because people will want to not

01:52:43  7  have to buy that and they'll want to get their Si restored.

01:52:48  8  Kind of the new-car/used-car type situation that we have in the

01:52:51  9  world today that you can't get a new car, nobody wants to get a

01:52:55 10  new car, so the repair shops are doing really well.

01:52:59 11      So that's how I see this case, but I'll give you an

01:53:02 12  opportunity to convince me I'm wrong or at least to reserve

01:53:05 13  judgment until you file some sort of motion.

01:53:11 14      MR. BERHOLD:  All right.  So the Complaint did allege

01:53:15 15  that there was a broad market for the instrument repairs.  And

01:53:19 16  there was fact discovery on the Xi.  The discovery was not

01:53:26 17  limited to the Si, either the documents or the depositions.  And

01:53:31 18  the documents included the initial -- Restore's initial

01:53:38 19  investments in investigating how to reset the usage limits on

01:53:41 20  the Xi.  They've continued those investments.  That was part of

01:53:47 21  the -- and that continued through summary judgment, they

01:53:52 22  continue through today.  They have reached a fairly high

01:53:59 23  confidence level that they can reset the usage limits.

01:54:03 24      They are -- they have prepared a presubmission to the

01:54:07 25  FDA to get a 510(k) for the Xi instruments, and the staffing and

01:54:17  1   processes for doing the other aspects of the repair of the X/Xi

01:54:27  2   instruments are similar to the ones for the S/Si instruments.

01:54:30  3   They have the -- they have the staffing and facilities to do

01:54:35  4   either the S/Si instruments or the X/Xi instruments.

01:54:41  5        Now, has -- it has been -- the question is whether

01:54:48  6   there is an element of futility to investing hundreds of

01:54:54  7   thousands of dollars or millions of dollars in the resetting

01:55:00  8   technology before there's some sort of resolution of whether

01:55:08  9   they're going to actually be able to sell to customers without

01:55:13  10  the pressure from Intuitive.  So the only thing that's been

01:55:22  11  slowing them down has been there's no point in accelerating and

01:55:29  12  throwing money into it.  But they are -- they are preparing.

01:55:36  13  They're preparing -- they've been preparing on a time line that

01:55:40  14  they will be able to deploy by the time that this case is

01:55:45  15  resolved.  But it's an expensive proposition, and right now

01:55:51  16  they're -- they're running up against a brick wall.  No hospital

01:55:58  17  is going to use -- repair S/Si instruments or X/Xi instruments

01:56:07  18  for one or two attempts when they learn they're not going to be

01:56:10  19  able to service the robots, they're not going to be able to get

01:56:13  20  accessories for the robots, even the drapes.  So that's -- those

01:56:18  21  are -- so Restore --

01:56:21  22        THE COURT:  How do you expect to --

01:56:24  23        MR. BERHOLD:  -- (Inaudible) --

01:56:25  24        THE COURT:  How do you expect to take to a jury this

01:56:28  25  speculative venture on technology that, at least as of this

01:56:35  1    moment, doesn't exist and then tell the jury you would have

01:56:40  2    gotten this much more business servicing Xi's?  I don't see

01:56:46  3    how -- if you want this case to go to trial, how in any way

01:56:51  4    possible can that be part of this case?

01:56:53  5          Because I think if you come to me tomorrow through a

01:56:55  6    motion and say -- or through a supplemental disclosure that says

01:57:01  7    we now have this technology and this person's going to testify

01:57:05  8    about it, this person's going to testify as how it's just as

01:57:10  9    good as Intuitive's technology and just as safe and here's what

01:57:14  10   our damages expert is going to say, the defendant has a right to

01:57:19  11   discover about that and call -- present it to their experts and

01:57:25  12   do all this, we're back into discovery at that point.

01:57:28  13         So, again, I'm not -- I don't have anything in front

01:57:31  14   of me to resolve at this point, but that footnote that was

01:57:34  15   dropped in the motion or the response, or whatever it was,

01:57:36  16   caused enough concern in my mind that I thought it was

01:57:41  17   important, and your comments are just emphasizing the importance

01:57:45  18   of nipping that in the bud.  And, again, I'll keep an open mind

01:57:49  19   in the event that they come up with some technology, but I don't

01:57:53  20   see how you can take to a jury the speculative idea that you

01:57:57  21   really want to be in that business and you're really trying to

01:58:01  22   get in that business and either (a) you haven't figured out a

01:58:05  23   way to do it yet or (b) we figured out a way to do it a month

01:58:08  24   before trial and nobody has had an opportunity to evaluate that

01:58:13  25   technology.

01:58:15  1            Am I missing something, Mr. Berhold?

01:58:22  2            MR. BERHOLD:  Well, the problem is that you're

01:58:33  3   asking -- well, that would be asking Restore to invest all of

01:58:47  4   that money when it is futile, even -- it may believe and it may

01:58:53  5   have a basis for knowing it can deploy the technology but on the

01:59:01  6   same -- under the same framework as the Si -- simply install a

01:59:07  7   new circuit board that's been validated with electrical

01:59:13  8   testing -- but they are being prevented from, frankly, entering

01:59:22  9   the market or claiming damages until they put money into

01:59:31  10  something that, frankly, is futile at this time until they know

01:59:34  11  they can enter the market.

01:59:37  12           THE COURT:  All right.  Again, I don't have anything

01:59:38  13  in front of me; and in the event they figure it out, then I'm

01:59:42  14  sure you'll file something.

01:59:44  15           Ms. Lent, do you want to weigh in on that?

01:59:46  16           MS. LENT:  Your Honor, thank you.  I think you've got

01:59:48  17  it exactly right.  That would involve a whole new round of

01:59:54  18  discovery and literally a new case because there were no

01:59:56  19  allegations that Intuitive delayed Restore from developing X or

02:00:01  20  Xi technology.  They don't have the technology yet.  You know,

02:00:04  21  it's -- there's so much that would need to be known that it

02:00:10  22  can't possibly be inserted into this case at this point.  But I

02:00:14  23  think you've got it.

02:00:16  24           THE COURT:  All right.  Well, I will leave that to the

02:00:17  25  parties in the event that, Mr. Berhold, your client doesn't

02:00:20  1  understand what I'm saying and they want to push forward with

02:00:24  2  that, then I'm sure you will figure out a way to file an

02:00:29  3  appropriate something or another to frame that issue up, and

02:00:33  4  Ms. Lent will have an opportunity to respond to it.  But I've

02:00:37  5  been as clear as I think I can be at this point based upon what

02:00:42  6  I understand and what I thought this case was about that you'll

02:00:50  7  do what you're going to do.  But that's kind of where we are at

02:00:52  8  this point.  So take that for what it's worth.

02:00:57  9          All right.  Anything else we need to --

02:00:58  10         MR. BERHOLD:  Thank you, Your Honor.

02:00:59  11         THE COURT:  You're welcome.  Anything --

02:01:00  12         MR. BERHOLD:  Thank you for -- sorry.

02:01:03  13         Your Honor, may I just say thank you --

02:01:04  14         THE COURT:  Yes, sir.

02:01:04  15         MR. BERHOLD:  -- for sharing the views of the Court.

02:01:08  16  That is -- I'm always in favor of dialogue, and that was very

02:01:14  17  helpful.

02:01:15  18         THE COURT:  Anything else from the plaintiff's

02:01:16  19  perspective we need to talk about today?

02:01:18  20         MR. BERHOLD:  No, Your Honor.

02:01:19  21         THE COURT:  Ms. Lent, anything from the defendant's

02:01:21  22  perspective we need to talk about?

02:01:22  23         MS. LENT:  No.  Thank you, Your Honor.

02:01:23  24         THE COURT:  All right.  Well, thank you all for your

02:01:24  25  time.  Have a good weekend.  We'll get that order out

02:01:28   1   memorializing the disposition of the motion to reopen discovery

02:01:34   2   either later this afternoon or first thing Monday morning.

02:01:38   3            So y'all have a good weekend.  We'll talk to you soon.

02:01:41   4   Bye-bye.

02:01:42   5            MR. BERHOLD:  Thank you, Your Honor.

02:01:43   6       *(Proceedings adjourned at 2:01 p.m.)*

           7                       * * * * * * * *

           8       I hereby certify that the foregoing is a true and correct
              transcript of the stenographically reported proceedings held in
           9   the above-entitled matter, pursuant to the provisions of Section
              753, Title 28, United States Code.

          10

          11                                          9/16/22

          12   _____    _____
              Julie A. Wycoff, RMR, CRR              Date
          13   Official U.S. Court Reporter

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25