**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | |
|---|---|
| RESTORE ROBOTICS LLC, et al., | |
| Plaintiffs, | |
| v. | Civil Case No. 5:19-cv-55-TKW-MJF |
| INTUITIVE SURGICAL, INC., | |
| Defendant. | |

**JOINT [PROPOSED] JURY INSTRUCTIONS**

Pursuant to the Court's December 16, 2022 Order, ECF No. 211, Plaintiffs Restore Robotics LLC and Restore Robotics Repairs LLC ("Restore") and Defendant Intuitive Surgical, Inc. ("Intuitive") (collectively, the "Parties") hereby submit these proposed jury instructions reflecting areas of disagreement and the Parties' respective positions.

**TABLE OF CONTENTS**

Page

**PRELIMINARY INSTRUCTIONS** ................................................................1

JURY INSTRUCTION NO. __:  General Preliminary Instruction ...............1

    A.    Duty of the Jury...........................................................................1

    B.    What is Evidence .........................................................................1

    C.    What is Not Evidence ..................................................................2

    D.    Credibility of Witnesses .............................................................3

    E.    Description of the Case — The Parties.......................................4

    F.    Burden of Proof...........................................................................4

    G.    Conduct of the Jury .....................................................................5

    H.    Taking Notes ...............................................................................7

    I.    Course of the Trial ......................................................................8

JURY INSTRUCTION NO. __:  Jury Questions.........................................9

**TRIAL INSTRUCTIONS** ...........................................................................11

JURY INSTRUCTION NO. __:  Stipulations ...........................................11

JURY INSTRUCTION NO. __:  Use of Depositions.................................12

JURY INSTRUCTION NO. __:  Use of Recorded Conversations and Transcripts ...............................................................................................13

JURY INSTRUCTION NO. __:  Judicial Notice .......................................14

JURY INSTRUCTION NO. __:  Use of Interrogatories ............................15

JURY INSTRUCTION NO. __:  In-Trial Instructions on News Coverage.....................................................................................................17

**BASIC INSTRUCTIONS** ...........................................................................18

JURY INSTRUCTION NO. __:  Introduction............................................18

JURY INSTRUCTION NO. __:  The Duty to Follow Instructions – Corporate Party Involved ..........................................................................19

i

JURY INSTRUCTION NO. __:  Consideration of Direct and
Circumstantial Evidence; Argument of Counsel; Comments by
the Court ..........................................................................................20

JURY INSTRUCTION NO. __:  Credibility of Witnesses...........................21

JURY INSTRUCTION NO. __:  Impeachment of Witnesses Because
of Inconsistent Statements...............................................................22

JURY INSTRUCTION NO. __:  Expert Witness ........................................23

JURY INSTRUCTION NO. __:  Responsibility for Proof – Restore's
Claims and Intuitive's Counterclaims — Preponderance of the
Evidence ..........................................................................................24

JURY INSTRUCTION NO. __:  Responsibility for Proof –
Affirmative Defense — Preponderance of the Evidence...................26

JURY INSTRUCTION NO. __:  Duty to Deliberate...................................27

JURY INSTRUCTION NO. __:  Election of Foreperson; Explanation
of Verdict Forms .............................................................................28

**FINAL INSTRUCTIONS — RESTORE'S CLAIMS....................................30**

JURY INSTRUCTION NO. __:  Purpose of Sherman Act .........................30

JURY INSTRUCTION NO. __:  Monopolization – Elements....................32

JURY INSTRUCTION NO. __:  Relevant Market – General ....................34

JURY INSTRUCTION NO. __:  Relevant Product Market ........................36

JURY INSTRUCTION NO.     :  Determining Whether an
Aftermarket Exists...........................................................................39

JURY INSTRUCTION NO. __:  Aftermarket Disclosure...........................42

JURY INSTRUCTION NO. __:  Monopoly Power Defined........................44

JURY INSTRUCTION NO. __:  Existence of Monopoly Power –
Indirect Proof..................................................................................45

JURY INSTRUCTION NO. __:  Existence of Monopoly Power –
Direct Proof ....................................................................................49

JURY INSTRUCTION NO. __:  Willful Acquisition or Maintenance
of Monopoly Power..........................................................................52

JURY INSTRUCTION NO. __:  Monopolization – Refusal to Deal..........57

JURY INSTRUCTION NO. __:  Monopolization — Business
Justification ....................................................................................58

ii

JURY INSTRUCTION NO. __: Monopolization — Business
Justification – Duty to Protect.........................................................61

JURY INSTRUCTION NO. __: Monopolization — Whether
Business Justification is Pretextual ...................................62

JURY INSTRUCTION NO. __: Sherman Act – Section 1 .......................64

JURY INSTRUCTION NO. __: Rule of Reason — Overview ..................65

JURY INSTRUCTION NO. __: Rule of Reason – Proof of
Competitive Harm .........................................................................66

JURY INSTRUCTION NO. __: Rule of Reason – Evidence of
Competitive Benefits; Assessing the Competitive Effects ...............69

JURY INSTRUCTION NO. __: Elements of Exclusive Dealing...............71

JURY INSTRUCTION NO. __: Exclusive Dealing – Substantial
Adverse Effect on Competition.....................................................73

JURY INSTRUCTION NO. __: Tying Arrangements – Definition...........77

JURY INSTRUCTION NO. __: Per Se Unlawful Tying ...........................78

JURY INSTRUCTION NO. __: Elements — Unlawful Tying Under
Rule Of Reason ............................................................................80

JURY INSTRUCTION NO. __: Tying Arrangements – Presence of
Two Products................................................................................83

JURY INSTRUCTION NO. __: Tying Arrangements – Proof of
Conditioning ................................................................................85

JURY INSTRUCTION NO. __: Tying Arrangements – Existence of
Market Power with Respect to the Tying Product ...........................87

JURY INSTRUCTION NO. __: Tying Arrangements – Foreclosure
of a Substantial Volume of Commerce ...........................................89

JURY INSTRUCTION NO. __: Tying — Substantial Adverse Effect
on Competition .............................................................................91

JURY INSTRUCTION NO. __: Tying — Rule of Reason .......................93

JURY INSTRUCTION NO. __: Injury and Causation ..............................94

JURY INSTRUCTION NO.__: Antitrust Injury for Illegal Business .........97

JURY INSTRUCTION NO. __: FDA Clearance.......................................99

JURY INSTRUCTION NO. __: Business or Property .............................101

iii

JURY INSTRUCTION NO. __:  Antitrust Damages – Introduction and Purpose ........................................................................................102

JURY INSTRUCTION NO. __:  Basis for Calculating Damages.............103

JURY INSTRUCTION NO. __:  Causation and Disaggregation ...............104

JURY INSTRUCTION NO. __:  No Double Recovery for the Same Injury ..................................................................................................107

JURY INSTRUCTION NO. __:  Damages for Competitors – Lost Profits ..................................................................................................108

JURY INSTRUCTION NO. __:  Damages for Competitors – Future Lost Profits ...........................................................................................109

**FINAL INSTRUCTIONS – INTUITIVE'S CLAIMS....................................112**

JURY INSTRUCTION NO. __: Summary of Intuitive's Claims..............112

JURY INSTRUCTION NO. __: Counterclaim 1: False Advertising – Lanham Act, 15 U.S.C. § 1125(a)(1) ....................................................113

    A.    False or Misleading ...............................................................113

    B.    Deception ..............................................................................114

    C.    Materiality .............................................................................115

    D.    Defense of Fair Use...............................................................115

    E.    Likelihood of Injury .............................................................116

    F.    Verdict...................................................................................117

JURY INSTRUCTION NO. __:  Willfulness for False Advertising..........118

JURY INSTRUCTION NO. __:  Counterclaim 2: Unfair Competition .....119

    A.    Competition for a Common Pool of Customers ....................119

    B.    Fraudulent or Deceptive Conduct .........................................120

    C.    Likely to Cause Confusion....................................................120

    D.    Verdict...................................................................................121

JURY INSTRUCTION NO. __:  Counterclaim 3: Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. §§ 501.201 to 501.213 ...............................................................................................122

    A.    Deceptive or Unfair Act or Practice .....................................122

    B.    Legal Cause...........................................................................123

iv

C.      Verdict.................................................................123

D.      Federal Claims: Remedies .................................123

JURY INSTRUCTION NO. __:  Damages for False Advertising,
     Unfair Competition, and Deceptive and Unfair Trade Practices
     Counterclaims (Counterclaims 1, 2, and 3)........................124

A.      Intuitive's Actual Damages................................124

B.      Defendant's Profits and Calculation of Profits ......125

C.      Nominal Damages..............................................126

D.      State Claims: Remedies .......................................127

E.      Restore's Profits................................................127

F.      Nominal Damages..............................................128

JURY INSTRUCTION NO. __:  Counterclaim 4: Tortious
     Interference With Contract.............................................129

A.      Intentional and Unjustifiable Interference ............129

B.      Legal Cause .......................................................130

C.      Defenses to Tortious Interference .......................130

D.      Verdict...............................................................131

JURY INSTRUCTION NO. __:  Damages for Tortious Interference
     (Counterclaim 4)...........................................................132

A.      Lost Profits........................................................132

B.      Restore's Profits................................................133

C.      Punitive Damages ..............................................134

v

## PRELIMINARY INSTRUCTIONS

JURY INSTRUCTION NO. __:  **General Preliminary Instruction**[1]

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

### A.    Duty of the Jury

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

### B.    What is Evidence

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally

---

[1] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 1.1 (2020).

1

---

**Commented [ISI1]:** Intuitive has included footnotes throughout the instructions citing reference material and legal authorities for purposes of the discussions with the parties and the Court. The parties agree that the version of the jury instructions given to the jury should not include source citations, in footnotes or otherwise.

**Commented [RST2R1]:** Restore asks the Court to follow the pattern, model, and standard jury instructions because they are accurate and balanced statements of the law. Therefore, Restore has provided citations to the pattern, model, and standard jury instructions at the bottom of each instruction rather than footnotes.

Intuitive proposes substantive changes to the pattern, model, and standard jury instructions and has provided footnotes to support those changes.

**Commented [ISI3R1]:** Intuitive's changes to pattern, model, and standard jury instructions are intended to fit the instructions to the facts and needs of the case. Model instructions, "while a valuable resource, are not binding law." *United States v. Carter*, 776 F.3d 1309, 1324 (11th Cir. 2015); *see also United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir. 2014). Jury instructions must "instruct the jury clearly regarding the law to be applied," *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995), and "focus [the jury's] attention on the essential issues in the case." *United States v. Ribaste*, 905 F.2d 1140, 1143 (8th Cir. 1990). That is why model instructions—including the ABA Model Instructions favored by Restore—caution that the court "in every instance" must match the instructions given with the "fact questions raised by the evidence." *ABA Model Antitrust Jury Instructions*, Preface; *see also* Eleventh Circuit Pattern Jury Instructions at iii (cautioning that instructions require "case-by-case review").

**Commented [ISI4]:** Due to technical issues, some comment bubbles appear with the names "Jeff Berhold" and "Author." Comment bubbles with the name "Jeff Berhold" are from Restore; comment bubbles with the name "Author" are from Intuitive.

see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

**C.    What is Not Evidence**

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the

2

opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

### D.   <u>Credibility of Witnesses</u>

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

3

- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a

witness's credibility.

### E.   Description of the Case — The Parties

This is a civil case. To help you follow the evidence, I'll summarize the

parties' positions. The Plaintiffs, Restore Robotics LLC and Restore Robotics

Repairs LLC, – or collectively, Restore – claims the Defendant, Intuitive Surgical,

had a monopoly in surgical ~~robots~~robot systems and used it to prevent competition

in the sales of the robotic instruments and robot service to hospitals that own or

lease Intuitive's da Vinci Surgical System.  Intuitive denies both that it has a

monopoly and that it prevented competition and contends that Restore has

misrepresented its services to hospitals and otherwise acted improperly in offering

its services.  Restore denies these counterclaims.

### F.   Burden of Proof

Restore has the burden of proving its case by what the law calls a

"preponderance of the evidence." That means Restore must prove that, in light of

all the evidence, what it claims is more likely true than not. So, if you could put the

evidence favoring Restore and the evidence favoring Intuitive on opposite sides of

4

balancing scales, Restore needs to make the scales tip to its side. If Restore fails to meet this burden, you must find in favor of Intuitive.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Intuitive has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Intuitive must prove for any affirmative defense. After considering all the evidence, if you decide that Intuitive has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Intuitive has also brought claims for relief against Restore called counterclaims. On these claims, Intuitive has the same burden of proof that Restore has for its claims and Restore has the same burden for its affirmative defenses as Intuitive has for its affirmative defenses.

### G.   **Conduct of the Jury**

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them

information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this

6

case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

H.      **Taking Notes**

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

7

**I.**    **<u>Course of the Trial</u>**

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Restore will present its witnesses and ask them questions. After Restore questions the witness, Intuitive may ask the witness questions – this is called "cross-examining" the witness. Then Intuitive will present its witnesses, and Restore may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

Source: Eleventh Circuit Pattern Jury Instructions 1.1.

8

JURY INSTRUCTION NO. __:  **Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

9

Here are several important things to keep in mind about your questions for

the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.
- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

Finally, because you should remain neutral and open-minded throughout the

trial, you should phrase your questions in a way that doesn't express an opinion

about the case or a witness. You must keep an open mind until you've heard all the

evidence, the closing arguments, and my final instructions on the law.

Source: Eleventh Circuit Pattern Jury Instructions 1.4.

**TRIAL INSTRUCTIONS**

JURY INSTRUCTION NO. __:  **Stipulations**

     Sometimes the parties have agreed that certain facts are true. This agreement

is called a stipulation. You must treat these facts as proved for this case.

     Source: Eleventh Circuit Pattern Jury Instructions 2.1.

JURY INSTRUCTION NO. __:  **Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of certain witnesses will be presented to you by a video. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Source: Eleventh Circuit Pattern Jury Instructions 2.2.

JURY INSTRUCTION NO. __:  **Use of Recorded Conversations and**
   **Transcripts**

[*Include only if applicable*] Now you're going to hear a recorded
conversation. This is proper evidence for you to consider. Please listen to it very
carefully. I'm going to allow you to have a transcript of the recording to help you
identify speakers and guide you through the recording. But remember that it is the
recording that is evidence – not the transcript. If you believe at any point that the
transcript says something different from what you hear on the recording, disregard
that portion of the transcript and rely instead on what you hear.

Source: Eleventh Circuit Pattern Jury Instructions 2.3.

13

JURY INSTRUCTION NO. __:  **Judicial Notice**

[*Include only if applicable*] The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

Source: Eleventh Circuit Pattern Jury Instructions 2.5.

14

JURY INSTRUCTION NO. __:  **Use of Interrogatories**

[*Include only if applicable*] [You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

Source: Eleventh Circuit Pattern Jury Instructions 2.6.

**Commented [RST5]:** The parties agree on the use of 3 Fed. Jury Prac. & Instr. § 101:46.  Restore objects to the additional language from 103:32 because it is not applicable or necessary.

15

JURY INSTRUCTION NO. __:  **Admissions in Pleadings**

Before the trial began, the parties filed written statements with the court describing their claims and defenses. These statements are known as pleadings. In their pleadings, the parties have admitted certain facts as follows:

[Read admissions.]

You will take these admitted facts to be true for purposes of this case.  A party is bound by the admissions in its pleadings.  Thus, [other party] may use [pleading party]'s statements in its pleading as though [pleading party] admitted those facts on the witness stand.  However, the reverse is not true:  [pleading party] may not rely on statements in its own pleadings evidence; instead, it is for you to decide whether [pleading party's] statements have been established by the evidence.[2]

_____

[2] Adapted from 3 Fed. Jury Prac. & Instr. §§ 101.46 (Admissions in Pleadings) 103:32 (Instruction if pleadings read to or given to jury) (6th ed.); *see also Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983); *Mills v. Innovative Energy Glob., Ltd.*, 2011 WL 1299938 (N.D. Fla. Mar. 31, 2011).

16

Commented [ISI6R5]: Intuitive's proposed instruction, which adapts both 3 Fed. Jury Prac. & Instr. §§ 101.46 and 103:32  will clarify for the jury how admissions in pleadings are to be considered. The language that Intuitive has offered is consistent with *Mills* and supported by *Best Canvas*.

JURY INSTRUCTION NO. __:  **In-Trial Instructions on News Coverage**

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

Source: Eleventh Circuit Pattern Jury Instructions 2.7.

**BASIC INSTRUCTIONS**

JURY INSTRUCTION NO. __:  **Introduction**

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

Source: Eleventh Circuit Pattern Jury Instructions 3.1.

18

JURY INSTRUCTION NO. __:  **The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Source: Eleventh Circuit Pattern Jury Instructions 3.2.2.

19

JURY INSTRUCTION NO. ___:  **Consideration of Direct and Circumstantial**
**Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

Source: Eleventh Circuit Pattern Jury Instructions 3.3.

20

JURY INSTRUCTION NO. __:  **Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Source: Eleventh Circuit Pattern Jury Instructions 3.4.

21

JURY INSTRUCTION NO. ___:  **Impeachment of Witnesses Because of**
   **Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Source: Eleventh Circuit Pattern Jury Instructions 3.5.1.

22

JURY INSTRUCTION NO. __:  **Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

Source: Eleventh Circuit Pattern Jury Instructions 3.6.1.

JURY INSTRUCTION NO. __:  **Responsibility for Proof – Restore's Claims and Intuitive's Counterclaims — Preponderance of the Evidence**

In this case, it is the responsibility of the party bringing any claim or counterclaim to prove every essential part of its claim or counterclaim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Restore's claim or Intuitive's counterclaim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a party's claims by a preponderance of the evidence, you should find for the opposing party as to that claim.

24

Source: Eleventh Circuit Pattern Jury Instructions 3.7.1.

JURY INSTRUCTION NO. __:  **Responsibility for Proof – Affirmative Defense**
**— Preponderance of the Evidence**

In this case, Intuitive asserts affirmative defenses to Restore's claims, and Restore asserts affirmative defenses to Intuitive's counterclaims.  If either party proves an affirmative defense by a preponderance of the evidence, then it prevails against the claims at issue.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that neither Intuitive nor Restore has to disprove the other party's claims or counterclaims, but if either Intuitive or Restore raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence

Source: Eleventh Circuit Pattern Jury Instructions 3.7.2.

26

JURY INSTRUCTION NO. ___:  **Duty to Deliberate**[3]

Of course, the fact that I have given you instructions concerning the issues of Restore's and Intuitive's damages should not be interpreted in any way as an indication that I believe that either party should, or should not, prevail in this case.

> **Commented [RST7]:** Restore objects that this language is not part of the pattern jury instruction and is unnecessary.

> **Commented [ISI8R7]:** Intuitive asks that the Court include this language, as it is part of the Eleventh Circuit Pattern Jury Instruction § 3.8.1 (Duty to Deliberate When Only the Plaintiff Claims Damages), which is otherwise the same as § 3.8.1 (Duty to Deliberate When Both Plaintiff and Defendant Claim Damages or When Damages are not an Issue). It is helpful and clarifying language to the jurors regarding the Court's instructions on damages.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Source: Eleventh Circuit Pattern Jury Instructions 3.8.2.

---

[3] Eleventh Circuit Pattern Instructions (Civil Cases) § 3.8.1, 3.82 (2020).

JURY INSTRUCTION NO. __:  **Election of Foreperson; Explanation of Verdict Forms**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

You will be given a written copy of the jury instructions I am reading to you right now.

Verdict forms have been prepared for your convenience.

[Explain verdict]

Take the verdict forms with you to the jury room. When you have all agreed on the verdicts, your foreperson must fill in the forms, sign them and date them. Then you'll return them to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

28

**Commented [RST9]:** The parties ask the Court to provide separate verdict forms for the claims and counterclaims because separate forms will be easier for the jury to understand and use.

Source: Eleventh Circuit Pattern Jury Instructions 3.9.

29

**FINAL INSTRUCTIONS — RESTORE'S CLAIMS**

JURY INSTRUCTION NO. __:  **Purpose of Sherman Act**[4]

Restore alleges that Intuitive monopolized certain aftermarkets in violation of Section 2 of the Sherman Act, and that Intuitive engaged in unlawful exclusive dealing and tying arrangements in violation of Section 1 of the Sherman Act.

The purpose of the Sherman Act is to preserve free and ~~unfettered~~ open competition in the marketplace, the most important part of our private enterprise system. The Sherman Act rests on the central premise that free competition ~~produces~~ results in the best allocation of our economic resources, ~~the lowest prices, the highest quality, and the greatest material progress.~~ However, the law does not guarantee success to all of those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business, or even go out of business, while others gain and prosper.[5] Accordingly, the antitrust laws are designed to protect competition, not competitors.[6]  Acts become unlawful, therefore, only when they constitute an unreasonable restraint on interstate commerce.

---

[4] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Instruction 1 (Purpose).
[5]   3A Fed. Jury Prac. & Instr. § 150:20 (6th ed.).
[6]   3A Fed. Jury Prac. & Instr. § 150:1 (6th ed.); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws, however, were enacted for 'the protection of competition not competitors.'" (citation omitted)).

30

**Commented [RST10]:** Restore asks the Court to use ABA Model Jury Instruction No. A.1.A.  The extensive substantive changes are not an accurate and complete statement of the law.

If the Court prefers a longer statement than ABA Model Jury Instruction No. A.1.A, Restore does not object to use of the full statement explaining the purpose of prohibiting unreasonable restraints under Section 1 from the Notes in 3A Fed. Jury Prac. & Instr. § 150:20 (6th ed.):

The purpose of the antitrust laws is to preserve our system of free and open competition, the most important part of our private enterprise system. The law promotes the concept that free competition results in the best allocation of our economic resources; but, the law does not guarantee success to those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business, or even go out of business, while others gain and prosper. Acts become unlawful, therefore, only when they constitute an unreasonable restraint on interstate commerce.

**Commented [ISI11R10]:** This is an accurate, complete, and unbiased statement of the law, and Intuitive asks the Court to accept this instruction. Both 3A Fed. Jury Prac. & Instr. § 150:1 and 3A Fed. Jury Prac. & Instr. § 150:20 (6th ed.) (2022) accurately describe the purpose of the Sherman Act, and Intuitive has adapted both instructions and the ABA Model Antitrust Instructions to fit the facts of this case. Furthermore, the jury should be clearly instructed that mere harm to a competitor is not a ground for relief under the antitrust laws.  *See Juneau Square Corp. v. First Wisconsin Nat'l Bank*, 624 F.2d 798, 810 (7th Cir.), *cert. denied*, 449 U.S. 1013, 101 S. Ct. 571, 66 L.Ed.2d 472 (1980).

I will now explain what Restore must establish by a preponderance of the evidence for each of its claims against Intuitive.

Source: ABA Model Jury Instructions in Civil Antitrust Cases No. 1.A.1

**Commented [RST12]:** This addition is unnecessary.

**Commented [ISI13R12]:** Intuitive disagrees that this language is unnecessary. It is transitional language intended to guide the jury.

JURY INSTRUCTION NO. __:  **Monopolization – Elements**[7]

Restore alleges that it was injured by Intuitive's unlawful monopolization of two alleged relevant aftermarkets: (1) a relevant aftermarket for S/Si EndoWrist repair and replacement and (2) a relevant aftermarket for da Vinci Service. To prevail on either of its claims of monopolization of these two alleged relevant aftermarkets, Restore must prove each of the following elements by a preponderance of the evidence:

1. That there is a relevant antitrust market that is limited to surgical robots for minimally invasive soft tissue surgery and that Intuitive has monopoly power in that market *or* that Intuitive failed to adequately disclose its alleged aftermarket restrictions to its customers before they purchased the da Vinci surgical robot;

~~1.~~2.   That ~~its alleged market is a~~ relevant aftermarkets existed as ~~valid antitrust market~~markets distinct from its alleged relevant antitrust market of surgical robots for minimally invasive soft tissue surgery;

~~2.~~3.   That Intuitive possessed monopoly power in ~~its alleged~~ aftermarkets;

---

[7] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 1 (Elements).  Removed "interstate commerce" element because it is uncontested.

32

**Commented [RST14]:** Restore does not have to prove a relevant market for surgical robots or monopoly power in surgical robots for monopolization of EndoWrist instruments or da Vinci service.  It is enough that the alleged market (instruments or service) is a relevant market and that Intuitive has monopoly power in that market.  Intuitive may offer evidence that competition in the equipment market prevents Intuitive from exercising monopoly power in the aftermarket.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 481 (1992).

**Commented [ISI15R14]:** In order to prove monopolization, Restore has the burden to prove possession of monopoly power in the relevant market. Restore has alleged that the relevant markets are aftermarkets for instruments and service and must prove that those markets exist.  *See* ECF No. 31, at 13 ("[T]he crux of the entire amended complaint is that the vertically integrated Defendant has used its monopoly power in the primary market for surgical robots to eliminate competition in the related aftermarkets."); ECF No. 158, at 4 ("Restore and CPR claim that Intuitive uses its monopoly power in the surgical robot market along with tying and exclusive dealing agreements with its customers (such as the SLSA) to monopolize (1) the da Vinci and EndoWrist service aftermarkets and (2) the EndoWrist repair and replacement aftermarkets."). Intuitive does not have an affirmative burden to disprove Restore's alleged relevant aftermarkets, and Restore cites no case law to support that proposition. Intuitive further explains its position on the aftermarket instructions in its comment on the jury instruction on Relevant Product Market.

**Commented [RST16]:** Restore objects to the changes in this paragraph: "the alleged market is valid antitrust market" is the requirement.

**Commented [ISI17R16]:** As explained in Intuitive's comment directly above, Intuitive further explains its position on the aftermarket instructions in its comment on the jury instruction on Relevant Product Market.

**Commented [RST18]:** Restore objects to the change in language from "that market"

**Commented [ISI19R18]:** Intuitive has changed the singular language "that market" to "its alleged aftermarkets" to make clear for the jury that there are two aftermarkets at issue that must be considered for each claim.

~~3.~~4.       ~~T~~hat Intuitive willfully acquired or maintained monopoly power

in ~~that market~~its alleged aftermarkets by engaging in anticompetitive

conduct;

~~4.~~5.       If Restore proves anticompetitive conduct, then Intuitive must

prove by a preponderance of the evidence that it had procompetitive

justifications for that conduct.

~~5.~~6.       If Intuitive proves by a preponderance of the evidence that it

had procompetitive justifications for that conduct, then Restore must

prove that the procompetitive justifications were pretextual; and

~~6.~~7.       Finally, Restore must prove that it was injured in its business or

property because of Intuitive's anticompetitive conduct.

If you find that Restore has failed to prove any of these elements as to either

of the two alleged aftermarkets, then you must find for Intuitive and against

Restore on its claim of monopolization of that aftermarket. If you find that Restore

has proved each of these elements by a preponderance of the evidence as to either

of the two alleged aftermarkets, then you must find for Restore and against

Intuitive on its claim of monopolization of that aftermarket.

~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 3.A.1.~~

**Commented [RST20]:** Restore objects to the change in language from "that market"

**Commented [ISI21R20]:** See Intuitive comment directly above.

**Commented [RST22]:** This is not an element of a monopolization claim. See, e.g, *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). ABA Model Jury Instruction No. 3.A.1 is correct regarding the elements of a monopolization claim.

In addition, ABA Model Instruction No. 3.A.9 provides complete and accurate explanation of anticompetitive conduct. Intuitive can offer a procompetitive justification to show that the conduct is not anticompetitive on balance in the first instance. But it is still a question whether Intuitive used monopoly power "to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 (1992); *see also McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015) ("has engaged in anti-competitive conduct that reasonably appears to be a significant contribution to maintaining monopoly power.")

Restore notes that anticompetitive conduct does not have to be pretextual -- although Restore can rebut a proferred justification because it is pretextual. Ultimately, it is a question of "whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane*, 783 F.3d at 833.

*Morris* was an earlier circuit decision on a unilateral refusal to deal. The Court already dismissed Restore's allegations of unilateral refusal to deal because they are analyzed very differently under Section 2. Dkt. No. 31 at 16-19.

**Commented [ISI23R22]:** Intuitive asks that the Court accept this instruction. It is well-settled that if a plaintiff meets its burden to prove by a preponderance of the evidence that the defendant engaged in anticompetitive conduct, then the defendant may rebut by showing it had a procompetitive justification for its conduct. *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001); *Morris Comm'cns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 364 F.3d at 1295-98 (11th Cir. 2004) (describing the burden-shifting framework); *Behrend v. Comcast Corp.*, 2012 WL 1231794, at *19 & n. 31 (E. D. Pa. Apr. 12, 2012) (same); *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657, 670 (8th Cir. 2002). Restore's case law does not suggest otherwise. *See also McWane, Inc. v. Fed. Trade Comm'n*, 783 F.3d 814, 833 ("If the [plaintiff] succeeds in demonstrating this anticompetitive harm, the burden then shifts to the defendant to present procompetitive justifications for the exclusive conduct, which the [plaintiff] can refute."); *Eastman Kodak*, 504 U.S. at 484 (evaluating defendant's procompetitive justifications and whether there was evidence that those justifications were pretextual).

Once Intuitive shows a procompetitive justification, the burden shifts back to Restore to show that the proffered justification   … [1]

**Commented [RST24]:** This is not an element of a monopolization claim. See, e.g, *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). Again, ABA Model Jury Instruction No. 3.A.1 is correct regarding the elements of a monopolization claim.

Moreover, ABA Model Jury Instruction No. 3.A.9 explains at great length how to determine "whether defendant's conduct was anticompetitive or whether it was legitimate business conduct." 3.A.9 is consistent with circuit precedent: It is a question of "whether the conduct's procompetitive effects outweigh its   … [2]

**Commented [ISI25R24]:** As explained in the Intuitive comment immediately above, Intuitive's proposed instruction is an accurate and correct statement of the law regarding monopolization under the Sherman Act.

33

JURY INSTRUCTION NO. ___:  **Relevant Market – General**[8]

To succeed on any of its claims, Restore must first prove by a preponderance of the evidence that ~~there is a relevant market.~~  its alleged aftermarkets exist.  Restore may do so by proving either that ~~defendant~~Intuitive had monopoly power in ~~a~~Restore's alleged relevant market limited to surgical robots for minimally invasive soft tissue surgery or that Intuitive failed to adequately disclose its alleged aftermarket restrictions to its customers before they purchased the da Vinci surgical robot.  Defining the relevant market is essential because you are required to make a judgment about whether Intuitive had monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrained Intuitive's freedom to set prices for, or to restrict the production level of, the products or services in question.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that acted or likely could have acted as restraints on Intuitive's power to set prices as it pleased because customers could have switched to them if Intuitive set its own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

---

[8] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 3 (Relevant Market—General), Instruction 6 (Relevant Geographic Market).

34

> **Commented [ISI26]:** Intuitive has proposed "its alleged aftermarkets exist" because the law requires inclusion of the phrase. As explained in the Intuitive comment in the instruction on Relevant Product Market, Restore has chosen to plead this case as an aftermarkets case, and thus Intuitive has proposed language that reflects the law around aftermarkets.

> **Commented [RST27]:** Restore is only required to prove the relevant markets.  ABA Model Instruction 3.A.4 below has the explanation for defining the product market.  For that instruction, Restore does not oppose the addition of language from Note 5 of the instruction to address allegations of a single-brand product market:
>
> "Plaintiff may allege that a single product or class of purchasers may constitute the relevant product market.  However, plaintiff must prove by a preponderance of the evidence that the 'commercial realities faced by consumers' justify such a narrow market definition."
>
> For further discussion, see *Kodak*:
>
> "The relevant market for antitrust purposes is determined by the choices available to Kodak equipment owners. . . The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers."  *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 481–82 (1992).

> **Commented [ISI28R27]:** See Intuitive's comment on the instruction on Relevant Product Market.

There are two aspects you must consider in determining whether Restore has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market.  The parties disagree on the relevant product market. The second is the relevant geographic market.  The parties agree that the relevant geographic market is the United States regardless of the product market definition.

As the plaintiff, Restore has the burden to prove the relevant product market by a preponderance of the evidence.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 3.A.3

**Commented [RST29]:** It is not necessary to add the language about burden of proof to add emphasis or weight to the other instructions on burden of proof.  The instructions are long enough.

**Commented [ISI30R29]:** Intuitive has proposed this language to help guide the jury through the instructions and remind the jury of the burden of proof, given that the burden of proof instruction appears much earlier.

35

JURY INSTRUCTION NO. __:  Relevant Product Market[9]

RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to

---

[9] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 4 (Relevant Product Market).

alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 to 10 percent increase in price not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of Intuitive and Restore regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

37

In this case, ~~plaintiff contends that there are two relevant product markets: (1) the~~<u>Restore contends that the relevant product market consisted only of surgical robots for minimally invasive soft tissue surgery. Intuitive contends that Restore's definition of the relevant primary market for surgical robots for minimally invasive soft tissue surgery is too narrow, and that the relevant product market in which Intuitive's da Vinci Surgical Systems competed included all types (or modalities) of surgery available to doctors to treat the conditions treated by the da Vinci Surgical System, such as, for example laparoscopic surgery or open surgery.</u> ~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 4.A.4.~~

38

**JURY INSTRUCTION NO. ___:  Determining ~~w~~Whether an Aftermarket Exists**[10]

Restore alleges that Intuitive unlawfully monopolized alleged aftermarkets for S/Si EndoWrist ~~Aftermarket and (2) the~~repair and replacement and da Vinci Service ~~Aftermarket.  By contrast, defendant contends that plaintiff has failed to allege the proper relevant product market. Defendant contends there are no relevant aftermarkets for the parts, services, instruments, or accessories that are~~It must prove that these alleged aftermarkets existed as distinct relevant markets, separate and apart from ~~the da Vinci Surgical System.  If you find that plaintiff has proven a relevant product market, then you should continue to evaluate the remainder of plaintiff's claim. However, if you find that plaintiff has failed to prove such a market, then you must find in defendant's favor on this claim.~~ its

Commented [ISI31]: See Intuitive comment directly above on the instruction on Relevant Product Market.

Commented [RST32R31]: Please see Restore comments above.  3.A.4 plus Note 5 is a full and accurate statement of the law for defining product markets.

---

[10] *Avaya Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 404 (3d Cir. 2016) ("a plaintiff pursuing a *Kodak*-style claim must present evidence to support a plausible economic explanation that competition in the primary market is dissociated ... from conditions in the aftermarket." (quotations omitted)); *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, (11th Cir. 2002); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) (Easterbrook, J.); *Datel v. Microsoft Corp*, 712 F.Supp.2d 974, 986 (N.D. Cal. 2010) ("In general, single brand markets do not constitute a relevant market . . . [but] there is an exception where aftermarket restrictions are not disclosed or agreed to by the customers at the time of purchase of a product or service from the primary market." (citing *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992))); *Epic Games, Inc. v. Apple, Inc.*, --- F.3d ---, 2021 WL 4128925, at *89 (N.D. Cal. Sept. 10, 2021) ("[A] plaintiff must show evidence to rebut the economic presumption that [defendant's] consumers make a knowing choice to restrict their aftermarket options when they decide in the initial (competitive) market to purchase in the foremarket." (internal quotation marks omitted)); *Newcal Indus. Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1048-49 (9th Cir. 2008).

39

alleged relevant market for surgical robots for minimally invasive soft tissue surgery.

"Aftermarkets" exist only as a result of a market for another product or service. An aftermarket consists of goods or replacement components or services that must be used for the proper functioning of some primary good. These products are called "after" markets because they are typically purchased in a later transaction than the purchase of the underlying primary good. Here, the primary goods are da Vinci Surgical systems. The key question in determining whether an aftermarket existed is whether competition in the primary market prevented Intuitive from exploiting purchasers of aftermarket products, even though other participants in the primary market did not compete with Intuitive in the aftermarket.

To prove that its alleged aftermarkets existed, Restore must prove that competition in the alleged relevant market for surgical systems for minimally invasive soft tissue surgery did not prevent Intuitive from exploiting the purchasers of S/Si EndoWrists and da Vinci Service. Restore can make that showing by proving (1) that Intuitive had monopoly power in its alleged relevant market of robots for minimally invasive soft tissue surgery (which first requires defining that primary market) ~~and~~or (2) that Intuitive failed to adequately disclose its aftermarket restrictions to its customers before they purchased da Vinci systems.

40

If you conclude that Restore has not proven the existence of its alleged market for surgical robots for minimally invasive soft tissue surgery, or that Intuitive had monopoly power in such a market, or that Intuitive failed to adequately disclose its aftermarket restrictions to customers before they purchased da Vincis, then Restore has not proven the existence of its alleged distinct aftermarkets, and you must find for Intuitive on Restore's monopolization claim.

41

JURY INSTRUCTION NO. __:  Aftermarket Disclosure

In general, a single brand market does not constitute a relevant market, but there is an exception where aftermarket restrictions are not disclosed or agreed to by the customers at the time of purchase of the primary product or service in the single brand market.[11]

If you find that Restore has proven by a preponderance of the evidence that Intuitive failed to disclose its aftermarket restrictions to hospital customers or hospital customers were not aware of these restrictions at the time they purchased da Vinci surgical systems, then this may be evidence of a relevant antitrust aftermarket limited to a single brand.  On the other hand, if you find that Intuitive appropriately disclosed these restrictions at the time hospital customers purchased

---

[11] *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992); *Datel v. Microsoft Corp*, 712 F.Supp.2d 974, 986 (N.D. Cal. 2010) ("In general, single brand markets do not constitute a relevant market . . . [but] there is an exception where aftermarket restrictions are not disclosed or agreed to by the customers at the time of purchase of a product or service from the primary market." (citing *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992))); *Epic Games, Inc. v. Apple, Inc.*, --- F.3d ---, 2021 WL 4128925, at *89 (N.D. Cal. Sept. 10, 2021) ("[A] plaintiff must show evidence to rebut the economic presumption that [defendant's] consumers make a knowing choice to restrict their aftermarket options when they decide in the initial (competitive) market to purchase in the foremarket." (internal quotation marks omitted)); *Newcal Indus. Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1048-49 (9th Cir. 2008) ("First, the law permits an antitrust claimant to restrict the relevant market to a single brand of the product at issue (as in *Eastman Kodak* ). Second, the law prohibits an antitrust claimant from resting on market power that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendant (as in *Queen City Pizza* and *Forsyth*). Third, in determining whether the defendant's market power falls in the *Queen City Pizza* category of contractually created market  power or in the *Eastman Kodak* category of economic market power, the law permits an inquiry into whether a consumer's selection of a particular brand in the competitive market is the functional equivalent of a contractual commitment, giving that brand upon right to monopolize its consumers in an aftermarket. The law permits an inquiry into whether consumers entered into such 'contracts' knowing that they were agreeing to such a commitment.").

42

**Commented [ISI33]:** See Intuitive's comment above on the instruction on Relevant Product Market.

**Commented [RST34R33]:** Please see Restore comments above regarding 3.A.4.

da Vincis and that hospital customers knowingly agreed to these restrictions at the time of purchase, then Restore has failed to prove the existence of relevant aftermarkets for S/Si EndoWrist repair and replacement and da Vinci service.

**Commented [RST35]:** ABA Model Instruction 3.A.4 is correct. Restore does not oppose the addition of language from Note 5 of the instruction to address allegations of a single-brand product market:

"Plaintiff may allege that a single product or class of purchasers may constitute the relevant product market. However, plaintiff must prove by a preponderance of the evidence that the 'commercial realities faced by consumers' justify such a narrow market definition."

For further discussion, see Kodak:

"The relevant market for antitrust purposes is determined by the choices available to Kodak equipment owners. . . The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 481–82 (1992).

**Commented [ISI36R35]:** Restore's entire lawsuit concerns alleged aftermarkets, yet Restore refuses to provide any instruction on what an aftermarket is. That approach both ignores antitrust law and will confuse the jury. Thus, Intuitive proposes separate instructions on "Determining Whether an Aftermarket Exists" and "Aftermarket Disclosure" to explain these complex concepts and the applicable law. There are no model instructions on these subjects (further exemplifying the shortcomings in Restore's copy-and-paste approach). But Intuitive's proposal is grounded in ample case law, which Restore has not even attempted to distinguish.

"Many firms supply unique and/or proprietary aftermarket parts and services for their primary market products. As a result, they can be expected to have a very high percentage share of the relevant aftermarket. But high aftermarket share is not necessarily indicative of monopoly power—i.e., the power to charge and maintain a supracompetitive price—because aftermarket behavior generally is disciplined by competition in the primary product market. If the primary market is competitive, a firm exploiting its aftermarket customers ordinarily is engaged in a short-run game—for when buyers evaluate the lifecycle cost of the product, the cost of the product over its full service life, they will shop elsewhere. Eventually, the aftermarket monopolist lacks customers to exploit." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381–82 (3d Cir. 2005) (quotation marks omitted).

*Kodak* teaches that this logic does not apply only "where 'significant information and switching costs' sever the usual link between the primary market and the aftermarket." *Id.* at 382 (quoting *Kodak*, 504 U.S. at 473). But "*Kodak* does not transform every firm with a dominant share of the relevant aftermarket into a monopolist." *Id.* at 383. Rather, the plaintiff "must produce 'hard evidence dissociating the competitive situation in the aftermarket from activities occurring in the primary market.'" *Id.* (quoting *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 17 (1st Cir. 1999)); *see also Avaya Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 404 (3d Cir. 2016) ("a plaintiff pursuing a Kodak-style claim must present evidence to support a plausible economic explanation that competition in the primary market is dissociated . . . from conditions in the aftermarket."); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 762–63 (7th Cir. 1996) (Easterbrook, J.).

A plaintiff can make such a showing – that competition in the primary market did not prevent the defendant from exploiting aftermarket customers – by proving either (1) that the defendant had monopoly power in the primary market, which first requires defining that primary market, or (2) that the defendant failed to adequately disclose its aftermarket restrictions to its customers before they purchased the primary product. *Avaya*, 838 F.3d at 405 (holding that "no antitrust liability for a *Kodak*-style attempted monopolization claim could lie" after customers were informed of the aftermarket restrictions because "the defendant's power stems not from th… [3]

JURY INSTRUCTION NO. __:  **Monopoly Power Defined**[12]

To prove its monopolization claim, Restore must prove that Intuitive had monopoly power in a relevant antitrust market.  Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Restore has met its burden of proving monopoly power in a relevant market.

---

[12] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 2 (Monopoly Power Defined).

44

JURY INSTRUCTION NO. __:   **Existence of Monopoly Power – Indirect Proof**

If you find that Restore has proven a relevant aftermarket, then you should determine whether Intuitive has monopoly power in that aftermarket.  As I just instructed, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  Restore has introduced what it considers indirect evidence of the structure of the market proof to show that Intuitive had monopoly power in the alleged aftermarkets.

The evidence presented by the parties included evidence of Intuitive's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If You may consider this evidence establishes that defendant has in considering whether Intuitive had the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that defendant has monopoly power in the market.

**Market Share**

The first factor that you should consider is Intuitive's share of the relevant market. Based on the evidence that you have heard about Intuitive's market share, you should determine Intuitive's market share as a percentage of total sales in the relevant market.  Intuitive must have had a significant share of the market in order to possess monopoly power.

**Commented [RST37]:** This change to the model instruction is not necessary.

**Commented [ISI38R37]:** Because Restore apparently intends to offer both indirect and direct proof, this addition to the instruction is necessary. The ABA Model Antitrust Jury Instructions do not anticipate both instructions being given and therefore they do not have any language distinguishing the two instructions. *See ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 7 (Existence of Monopoly Power—Indirect Proof) n.1; Instruction 8 (Existence of Monopoly Power–Direct Proof), Notes. Intuitive has added this language to clarify for the jury.

**Commented [RST39]:** Intuitive has changed the meaning of the sentence from 3.A.7.

**Commented [ISI40R39]:** Intuitive's edits to this language do not change the meaning of the sentence but rather clarify for the jury. And as explained above in Intuitive's comment on the General Preliminary Instruction, the model instructions are not binding and should be adapted to fit the needs of the case.

45

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry (that is, how difficult was it for other producers to enter the market and begin competing with Intuitive for sales), the entry and exit by other companies, and the number and size of competitors. Along with Intuitive's market share, these factors should inform you as to whether Intuitive had monopoly power.  The higher the company's share, the higher the likelihood that a company has monopoly power.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that Intuitive did, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Intuitive had monopoly power.

**Market Share Trends**

The trend in Intuitive's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

46

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), the large financial investment required to build a plant or satisfy governmental regulations, specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that Intuitive did not have monopoly power, regardless of Intuitive's market share, because new competitors could have entered easily if Intuitive attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that Intuitive had monopoly power.

**Entry and Exit by Other Companies**

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that Intuitive lacked monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins were relatively high, may support an inference that Intuitive had monopoly power.

47

**Number and Size of Competitors**

You may consider whether Intuitive's competitors were capable of effectively competing. In other words, you should consider whether the financial strength, market shares, and number of competitors acted as a check on Intuitive's ability to price its products. If Intuitive's competitors were vigorous or had large or increasing market shares this may be evidence that Intuitive lacked monopoly power. On the other hand, if you determine that Intuitive's competitors were weak or had small or declining market shares, this may support an inference that Intuitive had monopoly power.

**Conclusion**

If you find that Intuitive had monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Intuitive did not have monopoly power, then you must find for Intuitive and against Restore on this claim.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 3.A.7.

48

JURY INSTRUCTION NO. __:  **Existence of Monopoly Power – Direct Proof**

As I just explained, ~~I~~if you find that Restore has proven a relevant market, then you should determine whether Intuitive had monopoly power in that market. ~~As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a~~ A firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time. Restore has introduced what it considers direct proof to show that Intuitive had monopoly power in the alleged aftermarkets.

Restore has the burden of proving that Intuitive had the ability to raise or maintain the prices that it charged for goods or services in the relevant aftermarkets above competitive levels. Restore must prove that defendant had the power to do so by itself—that is, without the assistance of, and despite competition from, any existing or potential competitors.

Restore must also prove that Intuitive had the power to maintain prices above a competitive level for a significant period of time. If Intuitive attempted to maintain prices above competitive levels, but would have lost so much business to other competitors that the price increase would have become unprofitable and would have had to be withdrawn, then Intuitive did not have monopoly power.

49

Similarly, Restore must prove that defendant had the ability to exclude competition. For example, if Intuitive attempted to maintain prices above competitive levels, but new competitors could have entered the relevant market or existing competitors could have expanded their sales and taken so much business that the price increase would have become unprofitable and would have had to be withdrawn, then Intuitive did not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that Intuitive had monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, or superior advertising or marketing. In analyzing whether supracompetitive pricing was present, you may also consider Intuitive's total fixed costs, including research and development.[13] However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that Intuitive

---

[13] *In re Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d 675, 681 n.10 (D.N.J. 2005) ("[W]ithout evidence that sheds light on material factors such as [defendant's] price relative to its total costs (marginal and fixed) … , monopoly power cannot be found as a matter of law."); *United States v. Eastman Kodak Co.*, 63 F.3d 95, 109 (2d Cir. 1995) ("Certain deviations between marginal cost and price, such as those resulting from high fixed costs, are not evidence of market power."); 2B Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶516g (4th ed. 2014 & Supp. 2021) ("No matter how accurately measured, of course, a substantial excess of price over marginal cost does not necessarily bring excess returns on investment. A firm generates excess profit only if price exceeds its average total cost, including its cost of capital.").

50

**Commented [RST41]:** Restore asks the Court to follow 3.A.8. The instruction repeatedly talks about comparing prices and margins to competitors. It is not limited to a comparison of gross or net margins. It is an accurate statement of the law and allows Intuitive to offer evidence and make argument.

There is no basis or context for saying that the jury must consider total fixed costs for Intuitive specifically.

**Commented [ISI42R41]:** As explained above in Intuitive's comment on the General Preliminary Instruction, the model instructions are not binding and should be adapted to fit the facts and issues of the present case.

The cases Intuitive has cited in footnote 16 support the inclusion of this language. As a matter of law, evidence that sheds light on defendant's price relative to its total costs should be considered in order to determine whether a defendant had monopoly power. The jury should therefore be instructed on this part of the law. Restore cites no case law suggesting otherwise.

would have lost a substantial amount of sales if it raised prices substantially, or that Intuitive's profit margins were low compared to its competitors, or that Intuitive's margins went up and down or were steadily decreasing, might be evidence that Intuitive did not have monopoly power.

If you find that Intuitive had monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Intuitive did not have monopoly power, then you must find for Intuitive and against Restore on this claim.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 3.A.8.

51

JURY INSTRUCTION NO. __:  **Willful Acquisition or Maintenance of
Monopoly Power[14]**

The next element Restore must prove is that Intuitive willfully acquired or
maintained monopoly power through anticompetitive acts or practices.
Anticompetitive acts are acts, other than competition on the merits, that have the
effect of preventing or excluding competition or frustrating the efforts of other
companies to compete for customers within the relevant market. Harm to
competition is to be distinguished from harm to a single competitor or group of
competitors, which does not necessarily constitute harm to competition. Some
examples of harm to competition include increased prices, decreased production
levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate
the antitrust laws. The acquisition or maintenance of monopoly power by
supplying better products or services, technical innovation, possessing superior
business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws,
and a monopolist may charge monopoly prices without violating the antitrust laws.

**Commented [RST43]:** Better products and services already includes technical innovation.

**Commented [IS144R43]:** Intuitive disagrees that "better products and services" necessarily includes technical innovation and asks the Court to accept Intuitive's proposed language, which accurately reflects the law.  *See United States v. Microsoft Corp.*, 147 F.3d 935, 948 (D.C. Cir. 1998) ("[A]ny dampening of technological innovation would be at cross-purposes with antitrust law."); *Allied Orthopedic Appliances, Inc.v. Tyco Health Care Grp. LP*, 592 F.3d 991, __ (9th Cir. 2010) (same); *Telex Corp. v. Int'l Bus. Machs. Corp.*, 510 F.2d 894, 927 (10th Cir. 1975) (technical innovations "were not intended to be inhibited or penalized by a construction of section 2 of the Sherman Act).

---

[14] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 9 (Willful Acquisition or Maintenance of Monopoly Power).

52

In fact, the opportunity to obtain monopoly power—and charge monopoly prices—induces the risk-taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power—or the attempt to obtain it—is not unlawful unless it is accompanied by anticompetitive conduct.[15] A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Intuitive's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct was consistent with competition on the merits, whether the conduct provided benefits to

> **Commented [RST45]:** ABA Model Jury Instruction No. 3.A.9 already explains at length that monopolization is only illegal if it is based on anticompetitive conduct and provides the appropriate balance.

> **Commented [ISI46R45]:** Intuitive asks that the Court accept its proposed instruction on innovation. Restore has placed Intuitive's innovative technology at issue, and therefore the jury should be instructed clearly on the law regarding the possession of monopoly power as a result of innovation. As explained above in Intuitive's comment on the General Preliminary Instruction, the model instructions are not binding, and the jury instructions should match the facts of the case and explain to the jury all of the applicable law. *Trinko* remains good law.

---

[15] *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system. The opportunity to charge monopoly prices—at least for a short period—is what attracts 'business acumen' in the first place; it induces risk taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*.").

consumers, and whether the conduct would have made business sense apart from any effect it had on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will

54

~~be able to enter that market. Suppose also that Firm C altered its computers in such~~

~~a way that only Firm C's printers would work with its computers, and that the~~

~~alteration does not improve the design of Firm C's computers or provide any~~

~~benefits to competition or consumers. The only effect of the alteration is to exclude~~

~~competing printer makers from the marketplace. It would be unlawful for Firm C~~

~~to achieve monopoly power in the printer market in this way.~~

~~As these examples show~~

To be anticompetitive, the acts or practices that result in the acquisition or

maintenance of monopoly power must represent something more than the conduct

of business that is part of the normal competitive process or commercial success.

They must represent conduct that has made it very difficult or impossible for

competitors to compete and that was taken for no legitimate business reason. You

may not find that Intuitive willfully acquired or maintained monopoly power

through anticompetitive means if it acquired or maintained that power solely

through the exercise of superior foresight and skill; or because of economic or

technological efficiency, including efficiency resulting from scientific research; or

by obtaining a lawful patent; or because changes in cost or consumer preference

drove out all but one supplier.

If you determine that Restore has met its burden to prove by a

preponderance of the evidence that Intuitive engaged in anticompetitive acts or

**Commented [RST47]:** There is no reason to exclude these illustrative examples of anticompetitive conduct in ABA Model Jury Instruction No. 3.A.9.

**Commented [ISI48R47]:** The examples from the model instructions will not contribute to the jury's understanding, given that the proposed instruction adequately explains the law on willful acquisition and maintenance. Rather, the inclusion of these examples only serves to confuse the jury on the issues in this case, while excluding them keeps the jury focused and avoids unnecessary, lengthy instructions. As explained above in Intuitive's comment on the General Preliminary Instruction, model instructions are not binding and should be adapted to fit the needs of each case.

55

practices, the burden then shifts to Intuitive to prove by a preponderance of the

evidence that it had procompetitive justifications for such acts or practices.  If

Intuitive proves procompetitive justifications, Restore must then prove by a

preponderance of the evidence that the justifications were pretextual.[16]  I will

provide additional instructions on these issues later.

If you find that Restore has proven by a preponderance of the evidence that

Intuitive willfully acquired or maintained monopoly power through

anticompetitive acts for which the procompetitive justification were pretextual,

then you must consider whether Restore has proved the remaining elements of this

claim. If, however, you find that Restore did not prove this element by a

preponderance of the evidence, then you must find for Intuitive and against Restore

on this claim.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 3.A.9.

> **Commented [RST49]:** Restore asks the Court to follow ABA Model Instruction No. 3.A.9, which provides a complete explanation of anticompetitive conduct under Section 2. Intuitive can offer a procompetitive justification to show that the conduct is not anticompetitive on balance in the first instance.
>
> But Restore is not required to prove it was pretextual. It is ultimately a question of "whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).
>
> It is still a question whether Intuitive used monopoly power "to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 (1992).  In other words, Restore must establish Intuitive "has engaged in anti-competitive conduct that reasonably appears to be a significant contribution to maintaining monopoly power." *McWane*, 783 F.3d at 833.

> **Commented [ISI50R49]:** As explained above in Intuitive's first comment on the Monopolization - Elements instruction, this is an accurate statement of the law as it stands today.  *See Morris*, 364 F.3d at 1295-98 (describing the burden-shifting framework); *Comcast*, 2012 WL 1231794, at *19 & n. 31 (same); *Act*, 296 F.3d at 670; *Microsoft*, 253 F.3d at 59. The 11th Cir. in *McWane* explained that, in evaluating whether a defendant had "engaged in anti-competitive conduct that reasonably appears to be a significant contribution to maintaining monopoly power," it would adopt the D.C. circuit "rule of reason-style approach to monopolization cases" which instructs, "If the [plaintiff] succeeds in demonstrating this anticompetitive harm, the burden then shifts to the defendant to present procompetitive justifications for the exclusive conduct, which the [plaintiff] can refute." 783 F.3d at 833 (citing *Eastman Kodak*, 504. U.S. at 482-84)).

> **Commented [RST51]:** See comment immediately above.

> **Commented [ISI52R51]:** See Intuitive comment immediately above.

---

[16] *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657 (8th Cir. 2002); *Behrend v. Comcast Corp.*, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012).

JURY INSTRUCTION NO. __: **Monopolization – Refusal to Deal**

Intuitive's refusal to deal with Restore was *not* anticompetitive conduct. Namely, it was not anticompetitive conduct for Intuitive to incorporate a use counter in the design of its EndoWrists.  Nor was it anticompetitive conduct for Intuitive to refuse access to the tools necessary to provide da Vinci service, such as robot parts and a laptop computer with Intuitive's proprietary software.  Nor was it anticompetitive conduct for Intuitive to phase out the da Vinci S/Si systems in favor of new models, or to not provide Restore with EndoWrist and da Vinci specifications.   A company like Intuitive may generally refuse to deal with whomever it pleases.  Even a company with monopoly power in a relevant market has no general duty to cooperate with its business rivals and ordinarily may refuse to deal with them.  Intuitive thus had no duty to re-design its products in a way that made it easier for Restore to provide its services.[17]

**Commented [RST53]:** This is not an accurate statement of the law or the orders of the Court.  It is also unnecessary.  Restore does not object to addition of the following language to the previous instruction 3.A.9 using the prior order of the Court on summary judgment at Dkt. No. 158 at 10 n.5:

Intuitive has no obligation to share its proprietary technology with Restore (or anyone else), and its failure to do so cannot serve as a basis for Restore's antitrust claim.  You must determine whether Intuitive has engaged in anticompetitive conduct through its restrictions on customers to acquire or maintain monopoly power.

**Commented [ISI54R53]:** Intuitive asks the Court to accept this proposed instruction, adapted from the ABA Model, because it is an accurate statement of the law and of the Court's orders.  At the motion to dismiss stage, this Court held that Restore alleged no prior course of dealing with Intuitive, and neither the essential facility doctrine nor the *Otter Tail* doctrine applies here.  Therefore, Restore may not allege that Intuitive's refusal to deal with Restore is anticompetitive conduct that forms the basis of an antitrust claim. Dkt. 31 at 16–19 (citing *Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004); *Covad Commc'ns. Co. v. BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004); *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973)).  This Court reiterated the same at summary judgment:  "Intuitive has no obligation to share its proprietary technology [the usage counter and distributors' toolkit] with Restore (or anyone else) and that its failure to do so cannot serve as a basis for Restore's antitrust claim." Dkt. 158 at 10 n.5.

This instruction is necessary because Intuitive has reason to believe Restore will proffer evidence that Intuitive took actions to avoid working with Restore or prevent Restore from building its business around Intuitive's products, and therefore engaged in anticompetitive conduct, and the jury will need to understand that Intuitive's refusal to deal with Restore cannot form the basis of a finding of anticompetitive conduct in this case.

---

[17] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Section 2 of the Sherman Act-Monopolization-Refusal to Deal and Leveraging, Instruction 2 (excerpted); Order on Motion to Dismiss, Dkt. 31 at 16–19; Order on Summary Judgment, Dkt. 158 at 10 n.5.

57

JURY INSTRUCTION NO. __:  **Monopolization — Business Justification**[18]

If you find Restore has shown that, more likely than not, Intuitive's conduct was anticompetitive, then you must consider whether Intuitive's conduct also had a legitimate, procompetitive business justification.  If you find that Intuitive's conduct had a legitimate procompetitive business justification, then you can find for Restore on its claims only if Restore proves by a preponderance of the evidence that the justification was pretextual.

A procompetitive business justification is one that benefits competition such as by promoting efficiency or quality or offering a better product or service.  A defendant's conduct benefits competition if undertaken to enhance the quality or attractiveness of a product, to increase efficiency by reducing costs, or to otherwise benefit consumers.  For example, a defendant may assert that its desire to profit from its intellectual property rights justifies its conduct, and the jury should presume that this justification is legitimately procompetitive.[19]  Here, Intuitive alleges, among other things, that its conduct—expressing its concerns relating to unauthorized third parties resetting S/Si EndoWrists without FDA 510(k) clearance or declining to service da Vinci Systems that had been serviced by unauthorized

---

[18]  Adapted from: 3A Fed. Jury Prac. & Instr. § 150: 34 (6th ed.) (Sherman Act Anticompetitive Conduct) with streamlining edits; *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657 (2002); *Behrend v. Comcast Corp.*, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012).

[19] *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219, 1220 n.12 (9th Cir. 1997).

58

**Commented [RST55]:** This is not an accurate statement of the law on monopolistic conduct.

(1) If Restore shows Intuitive's conduct had an anticompetitive effect, the burden of persuasion shifts to Intuitive to show valid, i.e., not pretextual, procompetitive justifications.  *McWane, Inc. v. F.T.C., 783 F.3d 814, 833 (11th Cir. 2015).*

*(2)* "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects."  *McWane, Inc. v. F.T.C., 783 F.3d 814, 833 (11th Cir. 2015).*

**Commented [ISI56R55]:** As explained above in Intuitive's first comment on the Monopolization - Elements instruction, this is an accurate statement of the law on business or procompetitive justifications.

third parties—was designed to protect and ensure patient safety and reduce liability for adverse events caused by Intuitive products that had been adulterated by third parties.  If you find that this is true, these can be procompetitive justifications. Also procompetitive is adopting a different business model that spurs competitive innovations, in turn increasing output, and improving the quality of services.[20]

Procompetitive benefits may include:

1.  Ensuring patient safety;[21]

2.  Maintaining or improving the quality of the product;[22]

3.  Preventing free-riding;[23]

4.  Lowering costs to customers;[24]

5.  Protecting trade secrets or proprietary information;[25] and

6.  Reducing potential legal exposure.[26]

---

[20] *Ohio v. American Express Co.*, 138 S.Ct. 2274, 2282 (2018).
[21] *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 55 n.23 (1977); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 774 (8th Cir. 2004).
[22] *Cal. Comp.*, 613 F.2d at 744; *Data Gen. v. Grumman Sys. Support*, 36 F.3d 1147, 1183 (1st Cir. 1994); *Image Tech. Servs.*, 125 F.3d at 1220 n.12; *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 550 (8th Cir. 2007).
[23] *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 55, 97 (1977) (stating that prevention of "free-riding" by competitors is a legitimate business purpose); *Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1559 (11th Cir. 1983) (concluding that defendant "had a legitimate interest in protecting from opportunistic appropriation its investment in acquiring the information necessary to carry on its business"); *Morris Comm'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1298 (11th Cir. 2004) ("The prevention of free-riding … is an inherently economic motivation.").
[24] *Cal. Computer Products, Inc. v. Int'l Business Machines Corp.*, 613 F.2D 727, 744 (9th Cir. 1979); *Image Tech. Servs.*, 125 F.3d at 1220 n.12.
[25] *Technical Resources Ser. v. Dornier Med. Sys.* 134 F.3d 1458, 1467 (11th Cir. 1998).
[26] *Technical Resource Ser.*, 134 F.3d at 1467.

59

**Commented [RST57]:** This is not an accurate and balanced statement of the law on procompetitive justifications.  ABA Model Jury Instruction 3.A.9 already includes a discussion of procompetitive justifications.  Intuitive has deleted that language from that instruction without explanation.  Restore does not object to the use in full of 3A Fed. Jury Prac. & Instr. § 150:34.

If Intuitive wants an instruction to offer its procompetitive justifications, the instruction should be balanced by offering how the justifications may not be valid:
(1) clearance may be a pretext because Intuitive did not believe that clearance was necessary to extend the usage limits
(2) clearance, safety, quality, and liability may be pretexts because the SLSA does not restrict customers from using the robot or instruments off label
(3) safety, quality, and liability may be pretexts because Intuitive has had the same 10 use limits for 20 years
(4) safety, quality, and liability may be pretexts because Intuitive has never tested the instruments to failure to determine their useful life
(5) safety, quality, and liability may be pretexts because Intuitive only inspects a small fraction of instruments at the manufacturing facility
(6) safety, quality, and liability may be pretexts because Intuitive does not disclose performance specifications to surgeons to assess the safety of the instrument before each use
(7) safety, quality, and liability may be pretexts because there have never been adverse events with repaired instruments
(8) liability may be a pretext because the hospitals can determine whether an incident is associated with an instrument repaired by a third party
(9) safety and liability may be pretexts because Intuitive undertook multiple studies on whether to refurbish the instruments themselves
(10) safety and quality may be pretexts because Intuitive saw that customers prefer the ability to repair instruments
(11) clearance, safety, quality, and liability may be pretexts because Intuitive wants to protect a business model of recurring revenue

**Commented [ISI58R57]:** Intuitive asks that the Court accept this instruction. It is an accurate statement of the law supported by the cited cases that Restore does not distinguish.  It is also tailored to fit the needs of the case. Again, Restore urges that the Court accept the model instructions without regard to the facts or needs of this case. Intuitive removed the language regarding procompetitive justification from the model instruction on willful acquisition or maintenance of monopoly power and created a separate instruction in an effort to provide clarity and avoid confusing the jury. Given the importance of procompetitive justifications in the evaluation of a monopoly claim, it is important for the jury to have a fuller explanation of the applicable law.

If you find Intuitive presented evidence of a business justification, Restore may rebut that showing by demonstrating that the justification Intuitive offered was not the true reason for its conduct or that the justification does not on balance have procompetitive benefits. To be legitimate, the justification must not be pretextual.

**Commented [RST59]:** This language is not necessary. The model instructions adequately and completely explain how to determine whether conduct is anticompetitive in the appropriate context with the right balance.

**Commented [ISI60R59]:** As explained above in Intuitive's first comment on the Monopolization - Elements instruction, this is an accurate statement of the law on procompetitive justifications. Restore has cited no reason why the jury should not be instructed in accordance therewith.

JURY INSTRUCTION NO. \_\_\_:  **Monopolization — Business Justification – Duty to Protect**

As I explained, Intuitive may present evidence of procompetitive benefits for the alleged anticompetitive conduct, which you must consider in determining whether Intuitive's conduct had a legitimate, procompetitive business justification. Among the procompetitive benefits that you may consider is whether Intuitive had a legal duty to take reasonable precautions to minimize the harm that may result from misuse or abuse of their product.  The law requires manufacturers like Intuitive to foresee some degree of misuse and abuse of their products, either by the users themselves or by third parties, and to take reasonable precautions to minimize the harm that may result from misuse and abuse.  If you find that Intuitive's conduct was part of an effort to satisfy this legal duty, you must find that Intuitive had a legitimate business justification for its conduct.[27]

---

[27] *Lewis v. Tallahassee*, 2006 WL 231291, at \*2 (N.D. Fla. Jan. 30, 2006); *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 89 (Fla. 1976); *Tampa Drug Co. v. Wait*, 103 So.2d 603, 607 (Fla. 1958).

61

> **Commented [RST61]:** Restore objects to this instruction.  The cited cases do not support a duty to prevent repairs by third parties.  They require a "fair and adequate warning" so that the "user by the exercise of reasonable care on his own part shall have a fair and adequate notice of the possible consequences of use or even misuse."
>
> Moreover, Intuitive has never pled or argued that it has a legal duty to prevent repairs by third parties.  Intuitive has never offered any evidence that it believed that it had such a legal duty to prevent repairs by third parties.  And its failure to plead and argue such a duty is evidence that the justification is a pretext.

> **Commented [ISI62R61]:** This instruction is not an affirmative defense that must be pled early in the case.  *See* Fed. R. Civ. P. 8(c).  Rather, this instruction simply reflects a factual theory of Intuitive's defense on an essential element of all Restore's claims - whether Intuitive had a legitimate business justification for its conduct.  "A defendant is entitled to have the court instruct the jury on the theory of the defense, as long as it has some basis in the evidence and has legal support." *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1195 (11th Cir. 1995) (reversing district court for failure to grant instruction on theory of defense, and ordering new trial); *see also Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160–61 (10th Cir. 1999) (finding defendant had not waived defense, and therefore reversing district court and ordering a new trial).
>
> Setting that aside, Restore has been on notice of this defense from the very beginning of this case.  Intuitive has always made clear that one of its core justifications is protecting patient safety, and this instruction is simply one aspect of that justification.  The point of the duty to protect is to "to take reasonable precautions to avoid reasonably *foreseeable injuries* to those who might use the commodity" - not just a duty to warn, as Restore asserts. *Tampa Drug*, 103 So.2d at 607 (emphasis added); *see also Lewis*, 2006 WL 231291, at \*2.  And indeed, the joint pre-trial statement explains Intuitive's patient safety justification at length, and notes that "Intuitive cannot vouch for the capabilities of such a third party [like Restore] and should not be obligated to fix a third party's mistakes." Dkt. 212 at 11.  That alone is more than enough to put Restore on notice. *See Smith*, 193 F.3d at 1158 (finding no waiver of defense based on language in pre-trial statement); *Pulliam v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1187 (11th Cir. 1999) (same).  If Restore thinks Intuitive's "failure to plead and argue such a duty is evidence that the justification is a pretext," it is welcome to present that argument to the jury.

JURY INSTRUCTION NO. __: **Monopolization — Whether Business Justification is Pretextual[28]**

If you determine Intuitive had a business justification for its conduct, Restore must then prove by a preponderance of the evidence that the justification was pretextual.29   You may consider whether less restrictive means were available to Intuitive to accomplish the alleged procompetitive benefit of its conduct, and whether those other means would have been less harmful to competition.  It is Restore's burden to show that there was a less restrictive means for Intuitive to accomplish the alleged procompetitive benefits.  However, antitrust law does not require businesses like Intuitive to use the least restrictive means of achieving a legitimate business purpose.  You should not second guess "degrees of reasonable necessity" such that the lawfulness of Intuitive's conduct turns upon your judgment of the degree of efficiency of the challenged restraint in creating the

---

[28] 3A Fed. Jury Prac. & Instr. § 150:34 (6th ed.) (Sherman Act Anticompetitive Conduct); Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Section 2 of the Sherman Act-Monopolization-Refusal to Deal and Leveraging, Instruction 2, Notes ("The two questions [to determining anticompetitive acts] should therefore be: (1) whether the alleged business purposes were in fact the purposes of defendant in refusing to deal or only "pretextual"; and (2) whether those business purposes are in fact legitimate.").  *See also Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295-96 (11th Cir. 2004) ("Once the defendant has met its burden to show its valid business justification, the burden shifts to the plaintiff to show that the proffered business justification is pretextual."); *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1258-59 & n.9 (9th Cir. 1990) (plaintiff bears the burden of proving defendant's "conduct [was not] redeemed by a legitimate business purpose"); *Image Tech Servs.*, 125 F.3d at 1212 (plaintiff "may rebut an asserted business justification by demonstrating either that the justification does not legitimately promote competition or that the justification is pretextual").

[29] *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657 (8th Cir. 2002); *Behrend v. Comcast Corp.*, 2012 WL 1231794 (E.D. Pa. Apr. 12, 2012).

procompetitive benefit.  Any alternative to the challenged conduct presented by Restore must have been a significantly—not marginally—less restrictive means for achieving the same procompetitive benefits.[30]  The alternative must have been virtually as effective in serving the procompetitive purposes as the challenged conduct without significantly increasing costs to Intuitive.[31]

If you find that Intuitive's business justifications were legitimate rather than pretextual, then you must find for Intuitive on the monopolization claim.

---

[30] *Comcast*, 2012 WL 1231794, at *3 ("[T]he fact that [defendant] could have achieved efficiencies differently is insufficient to show that [defendant's] efficiency justifications were a pretext); *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2161 (2021) ("To the contrary, courts should not second-guess 'degrees of reasonable necessity' so that 'the lawfulness of conduct turn[s] upon judgments of degrees of efficiency.'" (citation omitted)); *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) ([i]t is clear ... that the analysis under section 2 is similar to that under section 1 regardless whether the rule of reason label is applied"); *see also Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2021 WL 4128925, at *103-04 (N.D. Cal. Sept. 10, 2021).

[31] *Epic Games, Inc.*, at *104 (citing *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1260 (9th Cir. 2020), *aff'd* 141 S. Ct. at 2161.

63

**Commented [RST63]:** This an incorrect statement of the law for anticompetitive conduct under Section 2.  Restore is not required to prove that any proffered procompetitive justification is pretextual.  The prior instructions provide a complete and accurate discussion of anticompetitive conduct under Section 2.

(1) If Restore shows Intuitive's conduct had an anticompetitive effect, the burden of persuasion shifts to Intuitive to show valid, i.e., not pretextual, procompetitive justifications.  *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).

(2) "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects."  *McWane*, 783 F.3d 814, 833 (11th Cir. 2015).

The prior instructions are consistent with the relevant precedent from *McWane*.  *Morris* was an earlier circuit decision on a unilateral refusal to deal.  The Court already dismissed Restore's allegations of unilateral refusal to deal because they are analyzed very differently under Section 2. Dkt. No. 31 at 16-19.

Section 1 asks the same basic question under per se, quick look, or some form of rule of reason: "the essential inquiry remains the same—whether or not the challenged restraint enhances competition." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984).

"The whole point of the rule of reason is to furnish "an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint" to ensure that it unduly harms competition before a court declares it unlawful." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021).

There is no "rote checklist." *Id.*  "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.*  The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circu... [4]

**Commented [ISI64R63]:** As explained above in Intuitive's first comment on the Monopolization - Elements instruction, this is an accurate statement of the law.  Once Intuitive shows a procompetitive justification, the burden shifts back to Restore to show that the proffered justifications are pretextual.  *Morris*, 364 F.3d at 1296 ("Because [defendant] has met its burden of showing that its asserted business justification is valid, the burden shifts to [plaintiff] to allege facts that support an inference that the proffered justification is merely pretextual . . . .").  *McWane* did not overrule or even contradict *Morris* but rather cites it with approval for the rule that procompetitive justifications cannot be "merely pretextual." 783 F.3d at 841 (citing *Morris*, 364 F.3d at 1296).  Moreover, the "balancing" discussion in *McWane* was mere dictum because the defendant failed to present evidence of a legitimate procompetitive justification.  In contrast, in *Morris*, the defendant proffered evidence of legitimate procompetitive justifications, and the plaintiff's case then failed for lack of evidence that the justifications were pretextual.  364 F.3d at 1296–98.

While *Alston* is a Section 1 case, the Supreme Court discussed the rationale for applying the rule of reason and cited *Standard Oil* which suggests that the tests for Section 1 and Section 2 claims are both grounded in the rule of reason. *Alston*, 141 S.Ct. at 2151 (citing *Standard Oil Co. of N. J. v. United States*, 221 U.S. 1, 60–62, 31 S.Ct. 502, 55 L.Ed. 619 (1911) ("[W]hen the second section [of the Sherman Act] is thus harmonized with ... the first, it becomes obvious that the criteria to be resorted to in any given case for the purpose of ascertaining whether violations of the section have been committed, is the rule of reason guided by the established law . . . .")).

JURY INSTRUCTION NO. __:  **Sherman Act – Section 1**[32]

In addition to its claims that Intuitive violated Section 2 of the Sherman Act, Restore challenges Intuitive's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act, Restore must prove the following:

1. the existence of a contract, combination, or conspiracy between or among at least two separate entities;

2. that the contract, combination, or conspiracy unreasonably restrained trade;

3. that the restraint caused Restore to suffer an injury to its business or property.

Restore has two claims under Section 1:  one for exclusive dealing, and one for tying.  I will begin by explaining the "rule of reason" analysis that applies to all Section 1 claims.  Then I will explain the specific elements of exclusive dealing and tying.

---

[32] Adapted from: *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Instruction 2 (Sherman Act Section 1).  Removed "interstate commerce" element because it is uncontested.

64

**JURY INSTRUCTION NO. __: Rule of Reason — Overview**[33]

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the restraints challenged here —the restrictions in the SLSA— were unreasonable.  In making this determination, you must first determine whether Restore has proven that the challenged restraints resulted in a substantial harm to competition in a relevant market.  If you find that Restore has proven that the challenged restraints resulted in a substantial harm to competition in a relevant market, then you must consider whether the restraints produced countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm outweighs the competitive benefit. If you find that they did, then you must assess whether Restore has shown that those benefits could have been achieved through substantially less anticompetitive means.  The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that Restore has proven the procompetitive benefits could have been achieved through substantially less anticompetitive means.[34]

I will now review each step of the analysis in more detail.

---

[33] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3A (Rule of Reason—Overview).
[34] *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160, 2162 (2021).

65

**Commented [RST65]:** Restore asks the Court to follow the language in ABA Model Jury Instruction No. 1.C.3A because it is consistent with the balancing test for exclusive dealing described by the Eleventh Circuit in *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).  Section 1 asks the same basic question under per se, quick look, or some form of rule of reason: "the essential inquiry remains the same—whether or not the challenged restraint enhances competition." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984).

When Intuitive "moved" ABA Model Jury Instruction No. 1.C.3A, the highlighted language was not included.  The deleted language mirrors *McWane*.  If the plaintiff shows a harm to competition, the burden shifts to the defendant to present procompetitive justifications for the exclusive conduct, which can be refuted.  Id.  "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects." *Id.*  ABA Model Jury Instruction No. 1.C.3 uses the same balancing test.

There is no "rote checklist." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021).  "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.*  The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circuit precedent." *Id.*  Of course, every circuit, including the Eleventh Circuit, has created tests for assessing the reasonableness of tying arrangements and exclusive dealing arrangements.

In fact, Intuitive does not dispute that there is a separate test (*e.g.*, separate products) for determining the reasonableness of tying arrangements.  *Amey*.  And the Eleventh Circuit uses classic

[... 5]

**Commented [ISI66R65]:** Intuitive asks the Court to accept this instruction because it is an accurate statement of current antitrust law.  Restore urges the Court to adopt the ABA Model Antitrust Jury Instructions from 2016, but those do not reflect developments on the rule of reason analysis from the Supreme Court in 2018 and 2021.

To determine whether a restraint violates the rule of reason, a three-step, burden-shifting framework applies. *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021); *Ohio v. Amer. Express*, 138 S. Ct. 2274, 2284 (2018).  The Supreme Court's recent decisions in *Alston* and *American Express* provided important clarifications on this framework.  The Court held that if the defendant shows procompetitive benefits resulting from the challenged restraints, then the plaintiff can only succeed on its claim if it shows that those benefits could have been achieved through substantially less anticompetitive means. *Alston*, 141 S. Ct. at

[... 6]

**Commented [RST67]:** Restore objects to the additional language because it is not an accurate statement of the law for exclusive dealing or tying.

The Eleventh Circuit applies a balancing test to exclusive dealing claims asking whether the anticompetitive effects outweigh the procompetitive effects to determine whether the exclusive dealing is unreasonable. *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).  If the anticompetitive effects outweigh the procompetitive effects, the plaintiff is not required to show that the procompetitive effects could have been achieved through less restrictive means.  Id.

The Eleventh Circuit has five element test for determining whether a tying arrangement is an unreasonable restraint on trade: An illegal tying arrangement has five elements: (1) "a tying and a tied product"; (2) "evidence of actual coercion by the seller that it

[... 7]

**Commented [ISI68R67]:** See Intuitive comment directly above.

JURY INSTRUCTION NO. __:  **Rule of Reason – Proof of Competitive Harm**[35]

As I mentioned, to prove that the challenged restraint was unreasonable, Restore first must demonstrate that the restraint resulted in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Restore is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, Restore must show that the harm to competition occurred in a relevant aftermarket.  It is Restore's burden to prove the existence of a relevant aftermarket.  In discussing Restore's claim for monopolization, I instructed you earlier on how to make this assessment.   The same test applies for this claim.  [Include only in written version:  Please refer back to Section [X]].

If you find that Restore has proven the existence of a relevant market, then you must determine whether Restore also has proven that the challenged restraint had a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that resulted in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.  If the challenged conduct did not result in higher

---

[35] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3B (Rule of Reason—Proof of Competitive Harm).

prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether Intuitive possessed market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market

67

by all competitors.  Other relevant factors that you may consider in determining whether defendant has market power include: market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If Intuitive does not possess market power, it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.

68

JURY INSTRUCTION NO. __:  Rule of Reason – Evidence of Competitive Benefits; Assessing the Competitive Effects[36]

If you find that Restore has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefitted competition in other ways. In discussing Restore's claim for monopolization, I instructed you earlier on how to evaluate whether a justification is procompetitive.   The same test applies for this claim. [Include only in written version:  Please refer back to Section [X].

If you find that the challenged restraint produced procompetitive benefits, then you must assess whether Restore has shown that those benefits could have been achieved through substantially less anticompetitive means.  The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that Restore has proven the procompetitive benefits could have been achieved through substantially less anticompetitive means.

Antitrust law does not require businesses like Intuitive to use the least restrictive means of achieving a legitimate business purpose.  You should not second guess "degrees of reasonable necessity" such that the lawfulness of

---

[36] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3B (Balancing the Competitive Effects), Instruction 3C (Rule of Reason—Evidence of Competitive Benefits); *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 3: Section 2 of the Sherman Act, Monopolization—General, Instruction 9 (Willful Acquisition or Maintenance of Monopoly Power).

69

**Commented [RST69]:** Restore objects to the addition of this language because it is a misstatement of the law.   Section 1 asks the same basic question under per se, quick look, or some form of rule of reason: "the essential inquiry remains the same—whether or not the challenged restraint enhances competition." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984). The jury must decide "whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).

Restore would only have to show that the procompetitive effects could be achieved through substantially less restrictive means if the procompetitive effects outweigh the anticompetitive effects.

**Commented [ISI70R69]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, the ABA Model Antitrust Jury Instructions do not reflect recent developments in the law and therefore should not be blindly accepted.  Intuitive's proposed instruction is a correct statement of the law, supported by binding precedent in *Alston* and *American Express*.

Intuitive's conduct turns upon your judgment of the degree of efficiency of the challenged restraint in creating the procompetitive benefit.  Any alternative to the challenged conduct presented by Restore must be a significantly—not marginally—less restrictive means for achieving the same procompetitive benefits.[37]

**Commented [RST71]:** Restore asks the Court to follow ABA Model Jury Instruction No. 1.C.3, which is an accurate statement of the law.  When Intuitive "moved" 1.C.3, Intuitive made extensive revisions without showing them in the redline.  Restore provides the actual instruction in full at the bottom of this comment.

1.C.3 is a correct statement of the law that a procompetitive justification is only valid if it is reasonably necessary to achieve the benefits.  "[T]he record must support a finding that the restraint in fact is necessary to enhance competition."  *Graphic Prod. Distributors, Inc. v. ITEK Corp.*, 717 F.2d 1560, 1576 (11th Cir. 1983).  "[M]erely offering a rationale for a vertical restraint will not suffice.  *Id.*

The Model Instruction reads as follows:
If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.
If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Commented [ISI72R71]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, this is an accurate statement of the law.

Furthermore, none of Restore's claims require Intuitive to prove that its restrictions on usage limits or third-party repair service are "necessary."  In fact, the Supreme Court has been clear that "antitrust law does not require businesses to use anything like the least restrictive means of achieving legitimate business purposes."  *Alston*, 141 S. Ct. at 2161.  And "courts should not second-guess degrees of reasonable necessity so that the lawfulness of conduct turns upon judgments of degrees of efficiency."  *Id.*  Moreover, because a plaintiff may only seek damages for injuries caused by the antitrust violation, any less restrictive means that purport to establish such a violation must represent an alternative that would have avoided the plaintiff's alleged injury.

More importantly, Restore argued in its Motions in Limine, *see* ECF No. 203, that Intuitive had to prove that its procompetitive justifications were "necessary" to achieve the benefits, and the Court denied that motion.  *See* ECF No. 218.

---

[37] *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160, 2162 (2021).

70

**JURY INSTRUCTION NO. __:  Elements of Exclusive Dealing**[38]

Exclusive dealing arrangements require a buyer of a product or service to obtain that product or service exclusively from one supplier for a period of time. There are several forms of exclusive dealing arrangements. The arrangement may take the form of an agreement forbidding the buyer from purchasing the product or service from the supplier's competitors. Some practices may operate as partial exclusive dealing contracts by limiting the practical ability of the buyer to obtain the specific products or services from other suppliers. Exclusive dealing arrangements are analyzed under the rule of reason to determine if they result in a substantial and unreasonable harm to competition in a relevant market.  From the standpoint of either the buyer or the seller, exclusive dealing arrangements may have potential procompetitive effects that benefit consumers and that need to be weighed against the potential anticompetitive effects of foreclosing competing suppliers' access to the buyer and the buyer's access to competing suppliers' products and services considered under the rule of reason.

To establish that an exclusive dealing or partial exclusive dealing arrangement violates violated the Sherman Act, plaintiff Restore must establish each of the following elements by a preponderance of the evidence:

---

[38] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Vertical Restraints, Instruction 5 (Elements of Exclusive Dealing).

71

> **Commented [RST73]:** Restore objects to the deletion of this language from 2.D.5. It misstates the law and misleads the jury. There is not one rule for all types of Section 1 claims. There is no "rote checklist" for claims under Section 1. *Alston*, 141 S. Ct. at 2160. The Eleventh Circuit has established specific tests for determining the reasonableness of tying arrangements (*Amey*) and exclusive dealing (*McWane*). The model jury instruction is consistent with the balancing described in *McWane* for exclusive dealing agreements.

> **Commented [IS174R73]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, the language in the model instruction does not reflect the more recent statements of the rule of reason from the Supreme Court. The jury does not need to "weigh" anticompetitive effects against procompetitive benefits. Rather, if the defendant shows procompetitive benefits resulting from the challenged restraints, then the plaintiff can only succeed on its claim if it shows that those benefits could have been achieved through substantially less anticompetitive means. *Alston*, 141 S. Ct. at 2162; *Amer. Express*, 138 S. Ct. at 2284.

1. An agreement between ~~the buyers~~Intuitive and ~~the supplier~~its customers that totally or in substantial part foreclosed the customers from purchasing the product or service from competing suppliers;

> **Commented [RST75]:** The reversal of roles changes the meaning.

> **Commented [ISI76R75]:** Intuitive disagrees that the order of "Intuitive and its customers" changes the meaning of the language given that Intuitive has proposed removing the vague "buyer" and "supplier" language to aid in the jury's understanding.

2. That Intuitive had substantial market power in the S/Si EndoWrist repair and replacement aftermarket or the da Vinci Service aftermarket;

   a. In discussing proof of competitive harm, I instructed you earlier on how to assess market power.  The same test applies for this claim.  [*Include only in written version*:  Please refer back to Section [X].

3. That the agreement was an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in a relevant market without pro-competitive justifications;

4. That ~~plaintiff~~ Restore was injured in its business or property because of the agreement.

   If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Intuitive and against Restore on Restore's exclusive dealing claim. If you find that the evidence is sufficient to prove all elements, then you must find for Restore and against Intuitive on Restore's exclusive dealing claim.

   ~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.D.5.~~

> **Commented [RST77]:** Restore objects to the addition of this language to 2.D.5 because market power under Section 1 is different than monopoly power Section 2.  "Monopoly power under § 2 requires, of course, something greater than market power under § 1." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992).
>
> Furthermore, the next instruction 2.D.6 explains market power in the exclusive dealing context:
>
> "If plaintiff cannot show that defendant had the power to force buyers to enter into exclusive contracts they did not want, this would be an indication that defendant lacks market power."
>
> "If you determine that the buyers formally or informally put their exclusive contracts out for bid, and other competitors had an equal opportunity to compete for the exclusive contracts against defendant, this is also evidence that defendant does not have market power."

> **Commented [ISI78R77]:** Intuitive proposes that the Court include this cross-reference to the earlier market power instruction. Restore objects that monopoly power under §2 is different than market power under § 1, but that is irrelevant since Intuitive has suggested that the court refer jurors back to the instruction on market power under § 1.  On an exclusive dealing claim, Restore still must prove that Intuitive had substantial market power, and the jurors should be instructed on what substantial market power is. The next instruction deals with substantial adverse effect on competition, not market power.

> **Commented [RST79]:** This additional language is not a correct statement of the law for determining the reasonableness of exclusive dealing. The Eleventh Circuit has affirmed a burden shifting approach to exclusive dealing that does not end with the defendant meeting its burden of showing a procompetitive justification: "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).
>
> There is no "rote checklist." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021)." *Id.* "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.* The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circuit precedent." *Id.*  Of course, the Eleventh Circuit in *McWane* has adopted a test for assessing the reasonableness of exclusive dealing arrangements.

> **Commented [ISI80R79]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, Restore's proposed instruction does not reflect the recent developments that the Supreme Court has made on the rule of reason analysis.

72

JURY INSTRUCTION NO. __:  **Exclusive Dealing – Substantial Adverse Effect on Competition**[39]

In order to be successful on its claim for exclusive dealing, Restore must establish that Intuitive's agreements with their customers were an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in a relevant market. In determining whether Intuitive's exclusive dealing contracts had a substantially harmful effect on competition in the relevant market, you should consider the nature and history of the use of exclusive dealing contracts in the industry, whether buyers of the relevant product or service had independent reasons for entering into exclusive dealing contracts or were coerced into entering into them, whether other competing suppliers also offered exclusive dealing contracts, the extent of competition among competing suppliers for exclusive dealing contracts with buyers, Intuitive's position in the marketplace, the competitive alternatives to Intuitive's products or services, the reasons Intuitive and its customers entered into the exclusive dealing contracts at issue, and the effect of the use of exclusive dealing contracts had on the ability of new firms to enter the market and on price and other competition in the market.

> **Commented [RST81]:** Restore objects to the addition of this language to 2.D.6 because it is an unnecessary repetition of the same language in 2.D.5.

> **Commented [ISI82R81]:** Intuitive has proposed including this language as a helpful guide to the jury as the Court walks through the elements of the claim. Restore has not cited any reason not to include it.

---

[39] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Vertical Restraints, Instruction 6 (Exclusive Dealing — Additional Considerations).

73

You also should consider whether the buyers were the final end users of the product. If the buyers were the final end users, the exclusive dealing contract foreclosed competitors from that portion of the aftermarket represented by the buyers' purchases and made it more likely that competition may have been harmed if the buyers represented a substantial portion of the aftermarket. On the other hand, if the buyers were distributors or resellers, and there were other alternatives for competing sellers to market their products to end users, then an exclusive dealing agreement may have not foreclosed competitors' access to the market and, thus, not substantially harmed competition.  In determining the extent to which defendant's exclusive dealing contracts foreclose competition on the merits, it is relevant to consider the percentage of the market foreclosed and the length of the foreclosure. Where the exclusive dealing contracts foreclose less than 20 percent of the market, this indicates that the harm from the foreclosure of competition is not substantial because there are alternatives available.  Similarly, the shorter the duration of the contract, the less likely it is to harm competition.  The longer the contract's duration, the more likely that the harm to competition will be greater, unless it is clear that there was vigorous competition on the merits to win the longer contract or the buyer as a practical matter can terminate the agreement on short notice without cause and without significant penalty.  In such a case, the

74

stated length of the exclusive contract is not the period in which it has a competitive effect.

In determining if Intuitive's exclusive dealing contracts substantially harmed competition, you also should consider Intuitive's market power in the alleged relevant aftermarkets. If Intuitive did not possess market power, then there was not substantial harm to competition from an exclusive dealing contract, and you must find for Intuitive on this claim. If you decide that the buyers were sophisticated businesses themselves that had countervailing power in negotiating contracts, this may offset any market power Intuitive might otherwise have had. If Restore cannot show that Intuitive had the power to force buyers to enter into exclusive contracts they did not want, this would be an indication that Intuitive lacks market power.

Finally, you should consider whether the process in which defendant secured exclusive contracts itself involved competition. If you determine that the buyers formally or informally put their exclusive contracts out for bid, and other competitors had an equal opportunity to compete for the exclusive contracts against defendant, this is also evidence that defendant does not have market power.

By considering all of these factors, you should determine whether the exclusive dealing contracts adversely affected the price paid by buyers, output, or the quality of products offered in the relevant market. Where a restraint did not

75

**Commented [RST83]:** Restore objects to the deletion of this paragraph from ABA Model Jury Instruction No. 2.D.6. This language is highly relevant to the evidence in this case.

**Commented [ISI84R83]:** Intuitive has removed this language because it is not relevant to the facts of the case. Restore has proffered no evidence that hospitals put contracts out for bid or even considered doing so, and introducing this language in the jury instructions would only serve to confuse the jury.

adversely affect price, output, or product quality, it is unlikely to have substantially

harmed competition.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.D.6.

JURY INSTRUCTION NO. __:  **Tying Arrangements – Definition**[40]

~~Plaintiff claims~~ As I described earlier, Restore's second claim under Section 1 of the Sherman Act is that Intuitive engaged in unlawful tying arrangements. A tying arrangement is one in which the seller will sell one product (referred to as the tying product) only on the condition that buyers also purchase a different product (referred to as the tied product), or at least agree that they will not purchase the tied product from any other supplier. In this case, Restore claims that:  (1) Intuitive tied S/Si EndoWrist instrument replacement to its surgical robots and da Vinci service and (2) Intuitive tied da Vinci service to its surgical robots .

~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.1.~~

~~JURY INSTRUCTION NO.~~

~~TYING ARRANGEMENTS – RATIONALE FOR PROHIBITION~~

> **Commented [RST85]:** Restore objects to combining 2.E.1 and 2.E.2 because it is unnecessary and creates confusion for the parties and the Court.

> **Commented [ISI86R85]:** The two instructions are both very short, and there is no reason that they cannot be combined. It does not create confusion for the jury, for whom the instructions are intended.

Not all tying arrangements are unlawful. The essential characteristic of an unlawful tying arrangement is a seller's exploitation of its market power over the tying product—in this case, the da Vinci Surgical Systems or the da Vinci service—to force buyers to purchase a tied product like instruments or service that buyers either did not want at all or might have preferred to purchase elsewhere.

~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.2.~~

---

[40] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 1 (Definition), Instruction 2 (Rationale for Prohibition of Tying Arrangements).

JURY INSTRUCTION NO. __:  **Per Se Unlawful Tying**

~~TYING ARRANGEMENTS—ELEMENTS~~

~~PER SE UNLAWFUL TYING~~

~~To prevail on either of its two tying claims as per se unlawful, plaintiff  must prove each of the following elements by a preponderance of the evidence:~~

~~1.  the da Vinci Surgical System and the robot instruments, robot parts, and robot service are separate and distinct products;~~

~~2.  defendant will sell da Vinci Surgical System or robot service only on the condition that the buyer not purchase the instruments from any other supplier, or the defendant will sell da Vinci Surgical System or robot parts only on the condition that the buyer not purchase the service from any other supplier;~~

~~3.  defendant has sufficient market power with respect to the da Vinci Surgical System or robot service to enable it to restrain competition as to the instruments, or defendant has sufficient market power with respect to the da Vinci Surgical System or robot parts to enable it to restrain competition as to the service; the alleged tying arrangement has foreclosed a substantial volume of commerce as to the instruments or service;~~

~~4.  defendant has a financial interest in the relevant market for the instruments or service;~~

78

**Commented [RST87]:** Restore understands that the Court rejected Restore's argument for per se analysis of its tying claims. See Dkt. No. 158 (Order on Summary Judgment) at 12 n. 7.  Restore seeks to preserve its objection on appeal.

Restore notes ABA Model Jury Instruction No. 2.E.3 is an accurate statement of the law on the elements for per se analysis of a tying claim.  *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1574 (11th Cir. 1991).

**Commented [ISI88R87]:** Intuitive asks that the Court not accept Restore's instruction.  First, this Court has already ruled (twice) that the rule of reason, not the per se rule, applies to Restore's tying claims, and there is no dispute that the rule of reason applies to the exclusive dealing claims.  *See* Order on Summary Judgment, ECF 158 at 11–12 & n.7; Order on Motion to Dismiss, ECF 31 at 3 n.3 (citing *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42 (2006) and *Midwestern Waffles, Inc.*, 734 F.2d 705, 711 (11th Cir. 1984)).

Second, as discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, the ABA Model Antitrust Jury Instructions from 2016 do not accurately reflect the Supreme Court's more recent statements of the rule of reason analysis in *American Express* and *Alston*.  *See Amer. Express*, 138 S. Ct. at 2284; *Alston*, 141 S. Ct. at 2160.

5.  defendant's conduct occurred in or affected interstate commerce; and

6.  plaintiff was injured in its business or property because of the tying
arrangement.

7.  If you find that the evidence is sufficient to prove all seven of these elements
for the tying claim on the instruments or the tying claim on the service, then
you must find for plaintiff and against defendant on plaintiff's tying claim. If
you find that the evidence is insufficient to prove any one of these elements
for that claim, then you must find for defendant and against plaintiff on
plaintiff's tying claim.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.3.

79

JURY INSTRUCTION NO. __: **Elements — Unlawful Tying Under Rule Of Reason**[41]

JURY INSTRUCTION NO.

TYING ARRANGEMENTS—ELEMENTS

UNLAWFUL TYING UNDER RULE OF REASON

To prevail on either of its two tying claims under the rule of reason, ~~plaintiff~~ Restore must prove each of the following elements by a preponderance of the evidence:

---

[41] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 4 (Elements—Unlawful Tying Under Rule of Reason); *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3A (Rule of Reason—Overview).  Removed "interstate commerce" and "financial interest" elements because they are uncontested.  *See also* Order on Motions for Summary Judgment, at 12 n.7, *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-00055-TKW-MJF (ECF No. 158) ("The Court did not overlook Restore's argument that the per se rule applies to tying arrangements, but the Court finds that the rule of reason applies because the tying arrangements at issue involve patented products.") (citing *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42). *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Sherman Act-General, Instruction 3A (excerpted); *Texaco Inc. v. Dagher*, 547 U.S. 1, 8 (2006) (describing categories of conduct analyzed under per se framework as "narrow"); *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 894 (2007) (holding that rule of reason framework applies where arrangements "can have either procompetitive or anticompetitive effects"); *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 n.24 (1984) ("[T]ying may have procompetitive justifications."); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199-200 (9th Cir. 2012) ("Like other vertical restraints, tying arrangements may promote rather than injure competition."); P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1703g (4th ed. 2020 supp.) (recognizing "[m]ajor beneficial possibilities" of tying arrangements, including "protecting quality, lowering costs or increasing value, increasing price competition, aiding entry, or rewarding a valuable patent.").

1. That the da Vinci Surgical System ~~was a separate and distinct product from the~~ and the ~~robot~~ EndoWrist instruments and ~~robot~~ da Vinci service ~~are separate and distinct products~~;

2. That ~~defendant~~ Intuitive ~~will sell~~ sold the da Vinci Surgical System or ~~robot~~ da Vinci service only on the condition that the buyer not purchase the EndoWrist instruments from any other supplier, or ~~the~~ that ~~defendant~~ Intuitive ~~will sell~~ sold the da Vinci Surgical System only on the condition that the buyer not purchase ~~the~~ da Vinci service from any other supplier;

3. That ~~defendant~~ Intuitive ~~has~~ had sufficient market power with respect to the da Vinci Surgical System or ~~robot~~ da Vinci service to enable it to restrain competition as to the EndoWrist instruments, or that ~~defendant~~ Intuitive ~~has~~ had sufficient market power with respect to the da Vinci Surgical System to enable it to restrain competition as to ~~the~~ da Vinci service;

4. That the alleged tying arrangement has foreclosed a substantial volume of commerce as to the EndoWrist instruments or da Vinci service;

5. That the tying arrangement has unreasonably restrained trade in that it had a substantial adverse effect on competition as to the EndoWrist

81

instruments or ~~da Vinci~~ service ~~without procompetitive justifications~~;
~~and~~

~~6.   defendant has a financial interest as to the instruments or service;~~

~~7.~~6.         ~~plaintiff~~ That Restore was injured in its business or property
because of the tying arrangement.

If you find that the evidence is sufficient to prove all ~~eight~~ of these elements,
then you must find for ~~plaintiff~~ Restore and against ~~defendant~~ Intuitive on
~~plaintiff's~~ Restore's tying claim. If you find that the evidence is insufficient to
prove any one of these elements, then you must find for ~~defendant~~ Intuitive and
against ~~plaintiff~~ Restore on ~~plaintiff's~~ Restore's tying claim.

~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.4.~~

**Commented [RST89]:** Restore objects to the insertion of this language because 2.E.4 accurately summarizes the elements for determining whether tying arrangements are an unreasonable restraint of trade.

An illegal tying arrangement has five elements: (1) "a tying and a tied product"; (2) "evidence of actual coercion by the seller that in fact forced the buyer to [purchase] the tied product"; (3) that the seller have sufficient market power in the tying product market to force the buyer to accept the tied product; (4) "anticompetitive effects in the tied market"; and (5) "involvement of a 'not insubstantial' amount of interstate commerce in the tied product market." Dkt. No. 31 at 5 (Order on Motion to Dismiss) (quoting *Amey, Inc. v. Gulf Abstract & Title*, Inc., 758 F.2d 1486, 1502–03 (11th Cir. 1985)).

Every circuit, including the Eleventh Circuit, has created tests for assessing the reasonableness of tying arrangements. The Supreme Court did not overrule them: There is no "rote checklist." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021). The Supreme Court in *Alston* affirmed the judgment after bench trial assessing the actions of a rule-making authority where the "district court followed circuit precedent." *Id.*

**Commented [ISI90R89]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, Intuitive's proposed instruction is an accurate statement of the holdings from *Alston* and *American Express*. Restore's proposed instruction does not reflect the current state of the law.

**Commented [RST91]:** Restore asks the Court to use ABA Model Jury Instruction No. 2.E.4 for rule of reason analysis of a tying claim because 2.E.4 accurately summarizes the elements for determining whether a tying arrangement is an unreasonable restraint of trade:

An illegal tying arrangement has five elements: (1) "a tying and a tied product"; (2) "evidence of actual coercion by the seller that in fact forced the buyer to [purchase] the tied product"; (3) that the seller have sufficient market power in the tying product market to force the buyer to accept the tied product; (4) "anticompetitive effects in the tied market"; and (5) "involvement of a 'not insubstantial' amount of interstate commerce in the tied product market." Dkt. No. 31 at 5 (Order on Motion to Dismiss) (quoting *Amey, Inc. v. Gulf Abstract & Title*, Inc., 758 F.2d 1486, 1502–03 (11th Cir. 1985)).

**Commented [ISI92R91]:** Intuitive has proposed using the model instruction, –that Restore generally favors throughout– which correctly states the law and does not contradict *Amey*, and has proposed edits that adapt the model instruction to reflect the Supreme Court's recent statements on the rule of reason analysis in *Alston* and *American Express*, as discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction.

82

JURY INSTRUCTION NO. __:  **Tying Arrangements – Presence of Two**

   **Products**[42]

To determine whether the da Vinci Surgical System was a separate and distinct product from EndoWrist instruments and da Vinci service, you should consider whether there would have been demand for each of them if they were offered separately. If enough customers would have wanted to purchase the da Vinci Surgical System alone or the robot service alone and the instruments or service alone to induce sellers generally to provide the da Vinci Surgical System or the robot service alone and the instruments or service alone, then the da Vinci Surgical System is a separate and distinct product from instruments and service are separate products. If enough customers would want to purchase the da Vinci Surgical System alone or robot service alone and the instruments or service alone to induce sellers generally to provide the da Vinci Surgical System or the robot service alone and the instruments or service alone, then the da Vinci Surgical System and the instruments or service are separate products..  On the other hand, if there was very little demand for one of the products by itself, that is, without the other product, then the da Vinci Surgical System is a not a separate and distinct product from the EndoWrist instruments and da Vinci service for the purposes of the tying claim, even if they were sometimes sold separately.

---

[42] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 5 (Presence of Two Products).

Products may be separate products even if one of them is useless without the other. The relevant issue is whether there is sufficient demand from customers to induce sellers to provide them separately, even if the customer needs to obtain both products from one or more suppliers. Relevant evidence of whether there would be separate and distinct consumer demand includes the history of the products being, or not being, sold separately.[43]

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.5.

> **Commented [RST93]:** Restore objects to this addition to 2.E.5 because it is not the law of this circuit and not a balanced description of examples of evidence of separate products.

> **Commented [ISI94R93]:** Intuitive asks the Court to accept its proposed addition of this language because it accurately reflects the law, as supported by *Kaufman*, and will help the jury understand what evidence can be considered in determining whether products are separate.

---

[43] *Kaufman v. Time Warner*, 386 F.3d 137, 142 (2d Cir. 2016) ("Relevant evidence of separate and distinct consumer demand … is, inter alia, the history of the products being, or not being, sold separately … or the sale of the products separately in similar markets.").

84

JURY INSTRUCTION NO. __:  **Tying Arrangements – Proof of Conditioning**[44]

You may find that a tying arrangement existed between the da Vinci Surgical System and the instruments if Intuitive either refused to sell the da Vinci Surgical System unless purchasers also agreed not to buy the instruments from another supplier, or effectively coerced purchasers into buying the instruments in addition to the da Vinci Surgical System. You may find that a tying arrangement existed between the da Vinci Surgical System and the da Vinci service if Intuitive either refused to sell the da Vinci Surgical System unless purchasers also agreed not to buy the da Vinci service from another supplier, or effectively coerced purchasers into buying the da Vinci service in addition to the da Vinci Surgical System. To prove coercion, Restore must prove by a preponderance of the evidence that Intuitive exploited its control over the da Vinci Surgical System to force the purchaser into the purchase of the instruments or service, which the purchaser either did not want at all, or might have preferred to purchase elsewhere on different terms, and that any appearance of choice was illusory.  Mere sales pressure or persuasion is not coercion.

If Intuitive made the purchase of da Vinci Surgical Systems and instruments together the only viable economic option, you may find that Intuitive effectively tied da Vinci Surgical Systems to instruments.  If Intuitive made the purchase of da

---

[44] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases 2.E.7.

85

Vinci Surgical Systems and service, together the only viable economic option, you may find that defendant effectively tied da Vinci Surgical Systems to da Vinci service.  However, there is no coercion if the products were offered separately for sale and if the separate purchase was economically feasible.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.7.

JURY INSTRUCTION NO. __:  **Tying Arrangements – Existence of Market Power with Respect to the Tying Product**[45]

You may find that defendant Intuitive had market power with respect to the da Vinci Surgical System or da Vinci service if, by reason of some advantage, Intuitive had the power to raise its prices for the da Vinci Surgical System or da Vinci service without losing an appreciable amount of its business, or otherwise had the power to force a purchaser of the da Vinci Surgical System or da Vinci service to do something that the purchaser would not have done in a more competitive market.

Plaintiff Restore may prove power over price with respect to the da Vinci Surgical System or da Vinci service by establishing that the price of the tied package was higher than the price of components sold in competitive markets.

In the alternative, you may determine whether Intuitive had market power with respect to the da Vinci Surgical System or da Vinci service by considering whether Intuitive had a high share of that alleged market for the da Vinci Surgical System or da Vinci service such that purchasers did not have reasonably interchangeable substitutes readily available.  If Intuitive's market share of the alleged market for the da Vinci Surgical System or da Vinci service in the United States was below 30 percent, Intuitive did not have market power. But if

---

[45] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases 2.E.8.

Intuitive's market share of the alleged market for the da Vinci Surgical System or da Vinci service in the United States was above 30 percent, you may consider that in determining whether Intuitive had market power. Whether a high market share is an indicator of Intuitive's power to raise prices without loss of appreciable business is a function of numerous market conditions, including the uniqueness of the product, the ability of existing competitors to expand production, and the ease (or difficulty) with which new competitors could have entered the market and made a price increase unprofitable. If you find that purchasers of the da Vinci Surgical System or da Vinci service did not have readily available alternative sources of supply and were forced as a practical matter to buy the da Vinci Surgical System or da Vinci service, you may find that Intuitive had market power. You may also consider in your market power determination the presence of any unique features or costs associated with the da Vinci Surgical System or da Vinci service that effectively prevented others from offering a comparable product.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.8.

88

JURY INSTRUCTION NO. __:  **Tying Arrangements – Foreclosure of a
      Substantial Volume of Commerce**[46]

If you determine that the da Vinci Surgical System and the instruments or service were separate products that had been tied to one another ~~and~~, that ~~defendant has~~there was a market ~~power~~ for surgical robots for minimally invasive soft tissue surgery ~~in the United States~~, and that Intuitive had market power within that market, then you must determine whether Restore has proven that Intuitive foreclosed a substantial amount of interstate commerce with respect to tied products—the instruments or service.

In determining whether Intuitive foreclosed a substantial amount of commerce with respect to the U.S. S/Si EndoWrist repair and replacement aftermarket or the U.S. da Vinci Service aftermarket. you must first determine whether those aftermarkets existed at all, separate and apart from the alleged market for surgical robots for minimally invasive soft tissue surgery.  In discussing Restore's claim for monopolization, I instructed you earlier on how to make this assessment.  The same test applies for this claim.  [*Include only in written version*: Please refer back to Section [X].

> **Commented [RST95]:** Restore asks the Court to follow ABA Model Jury Instruction No. 2.E.9.  The additional clause is unnecessary.

> **Commented [ISI96R95]:** Intuitive has proposed including this language as a helpful guide to the jury as the Court walks through the elements of the claim. Restore has not cited any reason not to include it.

---

[46] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 9 (Foreclosure of a Substantial Volume of Commerce with Respect to the Tied Product).

If you determine that the aftermarkets existed, you should first then consider

the total dollar amount of Intuitive's sales of instruments or service in interstate

commerce achieved by the tying arrangement in absolute terms.

If the dollar amount of Intuitive's sales of instruments or service was

substantial, you should next consider whether there was a substantial adverse effect

on competition with respect to the U.S. S/Si EndoWrist repair and replacement

aftermarket or the U.S. da Vinci Service aftermarket due to the tying arrangement.

If there was not a substantial adverse effect on competition with respect to the U.S.

S/Si EndoWrist repair and replacement aftermarket or the U.S. da Vinci Service

aftermarket due to the tying arrangement, then you must find in favor of Intuitive

on that tying claim.

There is no substantial foreclosure if only a small percentage of sales in the

market for the instruments or service were affected by the tying arrangement.

There also is no substantial foreclosure if you find that, even without the tying

arrangement, purchasers still would not have bought the sought to purchase service

or instruments or service at all in the absence of that had been modified to

circumvent the use limits prescribed by Intuitive and cleared by the tying

arrangement FDA.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 2.E.9.

90

**Commented [RST97]:** Restore objects to the additional language to 2.E.9 because it is unnecessarily repetitive to the instruction on the presence of separate products immediately preceding it in 2.E.5.

**Commented [ISI98R97]:** Intuitive asks the Court to accept the instruction. Restore alleged that Intuitive had sufficient market power in the "surgical robot markets" and "da Vinci robot service markets" to coerce customers into purchasing the alleged tied products, and that such conduct had anticompetitive effects in the "aftermarkets for EndoWrist repair and replacement" and "da Vinci robot service markets." SAC ¶¶106-128. Restore necessarily must prove the existence of those markets in order to be successful on its tying claims.

As explained earlier in Intuitive's comment on Relevant Product Market the instruction, the instructions Intuitive has proposed on defining the relevant primary market and aftermarkets accurately reflect the law and Restore's burden.

**Commented [RST99]:** Restore objects to the addition of this instruction to 2.E.9 because it changes the meaning of the sentence. Restore also objects that it takes away the balance in the instruction; Restore has not asked to insert language about how purchasers would have sought to purchase repaired instruments because they want to pay lower prices or dislike dealing with a monopolist. Restore also objects that it is argumentative.  Restore disputes that the FDA clears the usage limits and has offered documents and testimony from Intuitive, Restore, and third parties on that point.

**Commented [ISI100R99]:** Intuitive asks the Court to accept this instruction as proposed by Intuitive. It is not argumentative and does not change the meaning of the model instruction. *First*, as explained above in Intuitive's comment on the General Preliminary Instruction, the model instructions are not binding and should be adapted to fit the needs of the case. *Second*, the language Intuitive has proposed adding only clarifies for the jury what is and is not substantial foreclosure. *Finally*, Restore has never argued that EndoWrists were not cleared with usage limits, and there is no evidence to support that.

JURY INSTRUCTION NO. __:  **Tying — Substantial Adverse Effect on Competition**[47]

In order to be successful on its claim for tying, Restore must establish that Intuitive's agreements with its customers were an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in a relevant aftermarket.  To do so, Restore must first demonstrate that the alleged tying arrangements resulted in a substantial harmful effect on competition in the alleged relevant aftermarkets for S/Si EndoWrist repair and replacement or da Vinci service.

As I explained earlier, a harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.  If the challenged conduct did not result in higher prices, decreased output, lower quality of EndoWrists or da Vinci service, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the alleged tying was not an unreasonable restraint of trade.

In order to prove substantial harm to competition resulting from the alleged tying arrangement, Restore has the burden of demonstrating by a preponderance of

> **Commented [RST101]:** Restore objects that this language is repetitive and unnecessary.

> **Commented [ISI102R101]:** Intuitive asks the Court to accept this proposed instruction. The language is necessary to help the jury understand the elements of the claim and is an accurate statement of the law.

---

[47] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 4 (Elements—Unlawful Tying Under Rule of Reason); *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3A (Rule of Reason—Overview).

the evidence that, in a world where the alleged tying arrangement did not exist,—also known as the "but-for" world—customers would have paid less for the combination of da Vinci Surgical Systems, EndoWrists, and da Vinci service.[48]

**Commented [RST103]:** Restore objects to this choice of language.

Restore has no objection to a statement that "Restore has the burden of showing the combined price for the tying and tied products was greater than if they had been sold independently."  Dkt. No. 31 at 6.

**Commented [ISI104R103]:** Intuitive asks the Court to accept this proposed instruction, as this language is included in accordance with the Court's finding that the plaintiff is required to show that "the combined price for the tying and tied products was greater than if they had been sold independently."  Dkt. 31, at 6 (citing *Metzler v. Bear Auto. Serv. Equip. Co., SPX*, 19 F. Supp. 2d 1345, 1361 (S.D. Fla. 1998) and *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285 (11th Cir. 1982)); *see also* Dkt. 158, at 12 (holding that the jury will evaluate, as part of their determination as to whether the alleged restraints have substantial anticompetitive effects that harm consumers, whether "the combined cost of the tied and tying products exceeded their combined fair market value").

---

[48] *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285 (11th Cir. 1982) ("[I]njury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceeded their combined fair market value. The rationale behind this requirement is apparent: A determination of the value of the tied products alone would not indicate whether the plaintiff indeed suffered any net economic harm, since a lower price might conceivably have been exacted by the franchisor for the tying product. Unless the fair market value of both the tied and tying products are determined and an overcharge in the complete price found, no injury can be claimed."); *Restore*, 2019 WL 8063989, at *3 ("'[T]he plaintiff is required to show that 'the combined price of the tying and tied products was greater than if they had been sold independently.'" (quoting *Metzler*)).

**JURY INSTRUCTION NO. \_\_:  Tying — Rule of Reason**[49]

As I explained earlier, under Section 1 of the Sherman Act, a restraint of trade, like a tying arrangement, is unlawful only if it is found to be unreasonable. You must determine, therefore, whether the alleged tying arrangements challenged here were unreasonable.  In summary, if you find that Restore has proven that the alleged tying arrangements resulted in a substantial harm to competition in the relevant aftermarkets, then you must consider whether those arrangements produced countervailing competitive benefits.  If you find that they did, then you must assess whether Restore has shown that those benefits could have been achieved through substantially less anticompetitive means.  The challenged restraints are unlawful under Section 1 of the Sherman Act only if you find that Restore has proven the procompetitive benefits could have been achieved through substantially less anticompetitive means.  In discussing the Rule of Reason, I instructed you earlier on how to make this assessment.  The same test applies for this claim.  [*Include only in written version*:  Please refer back to Section [X].]

> **Commented [RST105]:** This is not a correct statement of the law for tying claims.  As discussed above, *Amey* sets out the elements of a tying claim under rule of reason analysis.  *Alston* did not change them.

> **Commented [ISI106R105]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, this is an accurate statement of the rule of reason, as clarified by the Supreme Court in *Alston* and *American Express*. This Court has already held twice that the rule of reason applies to the tying arrangements in this case.

> **Commented [RST107]:** This is not a correct statement of the law.  As discussed above, *Amey* sets out the elements of a tying claim under rule of reason analysis.
>
> The Supreme Court in *Alston* was a joint venture case and did not overrule 100 years of precedent regarding the elements for determining whether tying arrangements or exclusive dealing is an unreasonable restraint of trade: "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances. The whole point of the rule of reason is to furnish an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint to ensure that it unduly harms competition before a court declares it unlawful."  *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021) (citation and quotation omitted).

> **Commented [ISI108R107]:** As discussed above in Intuitive's first comment on the Rule of Reason - Overview instruction, this is an accurate statement of the Supreme Court's formulation of the rule of reason in *Alston* and *American Express*.

---

[49] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 2: Section 1 of the Sherman Act, Tying Arrangements, Instruction 4 (Elements—Unlawful Tying Under Rule of Reason); *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 1: Sherman Act—General, Rule of Reason, Instruction 3A (Rule of Reason— Overview).  *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160, 2162 (2021).

93

JURY INSTRUCTION NO. ___:  **Injury and Causation**[50]

If you find that Intuitive has violated Section 1 or Section 2 of the Sherman Act, then you must decide if Restore is entitled to recover damages from Intuitive.

Restore is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

1. Restore was in fact injured as a result of Intuitive's alleged violation of the antitrust laws;

2. Intuitive's alleged illegal conduct was a material cause of Restore's injury; and

3. Restore's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Restore to establish that it is entitled to recover damages, it must prove that it was injured as a result of Intuitive's alleged violation of the antitrust laws. Proving the fact of damage does not require Restore to prove the dollar value of its injury. It requires only that Restore prove that it was in fact injured by Intuitive's alleged antitrust violation. If you find that Restore has established that it was in fact injured, you may then consider the amount of Restore's damages. It is important to understand, however, that injury and amount of damage are different

---

[50] Adapted from ABA Model Jury Instructions in Civil Antitrust Cases 6.A.1; A.2.

concepts and that you cannot consider the amount of damage unless and until you have concluded that Restore has established that it was in fact injured.

Restore must also offer evidence that establishes by a preponderance of the evidence that Intuitive's alleged illegal conduct was a material cause of Restore's injury.  This means that Restore must have proved that some damage occurred to it as a result of Intuitive's alleged antitrust violation, and not some other cause. Restore is not required to prove that Intuitive's alleged antitrust violation was the sole cause of its injury; nor need Restore eliminate all other possible causes of injury. It is enough if Restore has proved that the alleged antitrust violation was a material cause of its injury.

Finally, Restore must establish that its injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury." If Restore's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Restore's injuries were antitrust injuries. On the other hand, if Restore's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Restore's injuries were not antitrust injuries and Restore may not recover damages for those injuries under the antitrust laws.

95

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if Restore can establish that it was in fact injured by Intuitive's conduct, that Intuitive's conduct was a material cause of Restore's injury, and that Intuitive's injury was the type that the antitrust laws were intended to prevent, then Restore is entitled to recover damages for the injury to its business or property.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.A.1.

96

**JURY INSTRUCTION NO.___: Antitrust Injury for Illegal Business**[51]

Again, Restore must prove that its alleged injury is an antitrust injury, or the type of injury that the antitrust laws were intended to prevent. The antitrust laws were not intended to prevent injuries stemming from the inability to sell illegal products. Thus, in order to establish antitrust injury, Restore must prove by a preponderance of the evidence that its business was lawful. To establish that its business was lawful, Restore must prove that modifying EndoWrists to circumvent the use limits prescribed by Intuitive and cleared by the FDA did not require 510(k) clearance. I will separately instruct you on how to determine the need for 510(k) clearance.

If you find that Restore has proven that its business was lawful, then you may award damages for its claims if all other elements of those claims are met. However, if you find that Restore has failed to prove its business was lawful, then

---

[51] 3A Fed. Jury Prac. & Instr., Chapter 1: Introduction § 1.a (6th ed.); *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 711 F.3d 1264, 1271 n.16 (11th Cir. 2013) ("'Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful.' This requirement ensures that the plaintiff, although motivated by private interests, is seeking to vindicate the type of injury to the public that the antitrust laws were designed to prevent." (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977)); *see* Order Denying Motion to Dismiss, at 8, *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-00055-TKW-MJF (ECF No. 31) ("A plaintiff can recover only if its loss is directly attributable to the defendant's anticompetitive conduct.");; *see also PharmacyChecker.com v. Nat'l Assoc. of Bds. of Pharmacy*, No. 19-CV-7577 (KMK), 2022 WL 347669, at *3 (S.D.N.Y. Feb. 4, 2022) ("Plaintiff bears the burden of proving that its business is legal."); *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 163-65 (3d Cir. 2017) (noting that it is "beyond fair dispute" that "a regulatory or legislative bar can break the chain of causation in an antitrust case"); *id.* at 165-66 (Plaintiff "must point to evidence affirmatively showing" that it satisfied the legal requirements to engage in the business at issue).

you must find in Intuitive's favor on all of Restore's claims related to the alleged

S/Si EndoWrist repair and replacement aftermarket.

> **Commented [RST109]:** Restore objects to this instruction. This Court has rejected this defense as recently as the motion for reconsideration. Dkt. No. 171 at 6-8. So has the *Rebotix* court. *Rebotix Repair, LLC v. Intuitive Surgical, Inc., No. 8:20-CV-2274-VMC-TGW, 2022 WL 3272538, at *9 (M.D. Fla. Aug. 10, 2022).*

> **Commented [ISI110R109]:** Intuitive recognizes that this instruction is inconsistent with the Court's prior rulings on the subject, and understands the Court is unlikely to shift approaches now. However, Intuitive must propose the instruction—and have it rejected by the Court – in order to preserve the issue for appeal. *See* Fed. R. Civ. Proc. 51(c).

**JURY INSTRUCTION NO. __:  FDA Clearance**[52]

You have heard testimony in this case about FDA 510(k) clearance.  I will now instruct you on the law that applies to this subject.  Medical devices are regulated under the Food, Drug, and Cosmetic Act, which Congress enacted to protect consumers from harmful products.  The products at issue in this case are considered to be medical devices.  The FDA has identified these medical devices and the surgical instruments used with them as "computer-controlled surgical instrument systems."  All computer-controlled surgical instrument systems and the instruments used with them, including those that are remanufactured, are required to be approved or cleared by the FDA.  The FDA considers a device to be remanufactured when it has been subject to any act that results in a significant change to the device's performance, safety specifications, or intended use, as compared to the device that was originally approved or cleared by the FDA.  If you conclude that Restore's insertion ~~of its own~~a memory chip into an EndoWrist to change its usage limit is remanufacturing as defined by the FDA, you must find that Restore could not lawfully perform that operation on an instrument to be used

---

[52] 3A Fed. Jury Prac. & Instr., Chapter 1: Introduction § 1.a (6th ed.); *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 711 F.3d 1264, 1271 n.16 (11th Cir. 2013) ("'Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful.'  This requirement ensures that the plaintiff, although motivated by private interests, is seeking to vindicate the type of injury to the public that the antitrust laws were designed to prevent." (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977)).

for human surgery unless it obtained 510(k) clearance from FDA to perform that action on that particular EndoWrist.[53]

**Commented [RST111]:** Restore objects to this instruction. This Court has rejected this defense as recently as the motion for reconsideration. Dkt. No. 171 at 6-8. So has the *Rebotix* court. *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-CV-2274-VMC-TGW, 2022 WL 3272538, at *9 (M.D. Fla. Aug. 10, 2022). ABA Model Jury Instruction No. 6.A.1 already provides nearly 600 words on "injury and causation."

The proposed language misstates the law: it is a question of whether the loss of business in this case was caused by anticompetitive conduct taken by Intuitive or enforcement actions taken by the FDA. And there is no factual basis: the FDA has never taken enforcement action to stop Rebotix, Restore, or Intuitive from resetting or extending the usage limits without clearance.

The proposed language also misstates the facts: Restore replaces the memory chip to reset the usage limit for an additional cycle of use after service of the instrument.

**Commented [ISI112R111]:** This standalone FDA Clearance instruction does not rise and fall with the "Illegal Business" instruction. The Court has ruled that the issue of FDA clearance is relevant at least to causation and damages. Dkt No. 148 at 7-9; Dkt No. 171 at 8-11. FDA clearance is also relevant to whether Intuitive's patient safety business justification was pretextual: if Restore's business required clearance but did not have it, that is evidence Intuitive's concerns about safety were non-pretextual. Intuitive has reason to believe that Restore intends to offer testimony from a number of witnesses that its business did not require FDA clearance. Given the court's ruling on its motion-in-limine to exclude such testimony, Intuitive will offer rebuttal testimony. (See Dkt. Nos. 207, 218). The FDA Clearance instruction provides the law on when FDA clearance is required and thus assists the jury in its factual determinations around whether FDA clearance was a cause of Restore's business failure and whether Intuitive's safety concerns were pretextual.

---

[53] *Wyeth v. Levine*, 555 U.S. 555, 574 (2009); FDCA § 301(a)-(c), 21 U.S.C. § 331(a)-(c); FDCA § 510(k), 21 U.S.C. § 360(k); FDCA § 502(o), 21 U.S.C. 352(o); FDCA § 301(p), 21 U.S.C. § 331(p); 21 C.F.R. § 876.1500 (product code NAY); 21 C.F.R. § 807.81; 21 C.F.R. § 820.3(w) ("Remanufacturer means any person who processes, conditions, renovates, repackages, restores, or does any other act to a finished device that significantly changes the finished device's performance or safety specifications, or intended use.").

100

JURY INSTRUCTION NO. __:  **Business or Property**

~~BUSINESS OR PROPERTY~~

Plaintiff must establish that the injury it claims to have suffered was an injury to its business or property.  Only injuries to Restore Robotics, LLC and Restore Robotics Repairs, LLC  are relevant for this purpose; injuries suffered by any other individuals, affiliates, partners, or others are not relevant. The term "business" includes any commercial interest or venture. ~~Plaintiff~~Restore has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendant's alleged antitrust violation. The term property includes anything of value ~~plaintiff~~Restore owns, possesses, or in which ~~plaintiff~~Restore has a protectable legal interest. ~~Plaintiff~~Restore has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendant's alleged antitrust violation. ~~Plaintiff~~Restore has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of ~~defendant~~Intuitive's alleged antitrust violation.

~~Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.A.2.~~

**Commented [RST113]:** Restore objects that this is an unnecessary addition to 6.A.2.

**Commented [ISI114R113]:** This clarifying addition would be helpful to the jury, given that Restore conducted its business through a web of partners and affiliates, including Rebotix, Iconocare, Alliance, Medline Industries, and others.  Also, critically, one of the original plaintiffs – Clif Parker Robotics – has been dismissed from the case.  Dkt. 158 at 25.

JURY INSTRUCTION NO. __:  **Antitrust Damages – Introduction and**

**Purpose**

If you find that Intuitive violated the antitrust laws and that this violation

caused injury to Restore, then you must determine the amount of damages, if any,

Restore is entitled to recover. The fact that I am giving you instructions concerning

the issue of Restore's damages does not mean that I believe Restore should, or

should not, prevail in this case. If you reach a verdict for Intuitive on the issue of

liability, you should not consider the issue of damages, and you may disregard the

damages instruction that I am about to give.

The law provides that Restore should be fairly compensated for all damages

to its business or property that were a direct result or likely consequence of the

conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an

injured plaintiff as near as possible in the position in which it would have been had

the alleged antitrust violation not occurred. The law does not permit you to award

damages to punish a wrongdoer—what we sometimes refer to as punitive

damages—or to deter particular conduct in the future. Furthermore, you are not

permitted to award to Restore an amount for attorneys' fees or the costs of

maintaining this lawsuit.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.B.1.

JURY INSTRUCTION NO. __:  **Basis for Calculating Damages**

You are permitted to make just and reasonable estimates in calculating Restore's damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation.  Restore must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Restore has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Restore has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.B.3.

103

JURY INSTRUCTION NO. __:  **Causation and Disaggregation**[54]

If you find that Intuitive violated the antitrust laws, and that the violation was a material cause of injury to Restore, Restore is entitled to recover for such injury that was the direct and proximate result of any action of Intuitive that violated the antitrust law.  Restore is not entitled to recover for injuries that resulted from other causes.

Restore claims that it suffered injury because it lost sales and profits as a result of Intuitive's alleged violations of the antitrust laws.  Intuitive claims that any profits or sales lost by Restore occurred as a result of other factors that have nothing to do with the alleged antitrust violation.  These include:  Restore's failure to secure the necessary FDA clearance to market and sell EndoWrists with "reset" use counters; concerns by customers that Restore did not have the appropriate FDA clearance to engage in its business; Restore's lack of access to its own technology after Rebotix terminated their agreement; Restore's lack of access to the tools necessary to provide da Vinci service, such as a laptop computer with Intuitive's proprietary software, Restore's lack of preparedness to launch a business based on the Iconocare technology; and preference by customers for purchasing EndoWrists from the original manufacturer for patient safety, regulatory, and liability concerns.  Restore is not entitled to recover for lost profits that resulted solely from these or

---

[54] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 6: Causation and Damages, Damages, Instruction 4 (Causation and Disaggregation).

other causes arising from the normal course of business activity. Restore is not entitled to recover for damages caused by these factors. Restore only may recover for damages caused by the alleged antitrust violations.

Restore bears the burden of proving by a preponderance of the evidence that its injuries were caused by Intuitive's antitrust violation, as opposed to any other factors, such as those that I just described to you.

If you find that Restore's alleged injuries were caused by factors other than Intuitive's alleged antitrust violations, then you may not award damages against Intuitive for such injuries.

If you find that Restore's alleged injuries were caused in part by Intuitive's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Restore's alleged injuries that were caused by Intuitive's alleged antitrust violation.

Restore bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes.

If you find that Restore has not established a reasonable basis to apportion its alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

If you find that Restore was injured by Intuitive's alleged antitrust violation, and there is a reasonable basis to apportion Restore's alleged injury between lawful and unlawful causes, then you may award damages.

**Commented [RST115]:** Restore objects that the proposed language does not track 6.B.4 and materially alters its meaning. Below is the correct language with the insertion of the factors identified by Intuitive in its proposed instruction:

If you find that Intuitive violated the antitrust laws and that Restore was injured by that violation, plaintiff is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of defendant. Restore bears the burden of showing that its injuries were caused by Intuitive's antitrust violation, as opposed to any other factors. If you find that Restore's alleged injuries were caused in part by defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Restore's alleged injuries that was caused by Intuitive's alleged antitrust violation.

Restore claims that it suffered injury because it lost sales and profits as a result of Intuitive's alleged antitrust violations. Intuitive claims that any profits or sales lost by Restore occurred as a result of other factors that have nothing to do with the alleged antitrust violation. These include lack of clearance from the FDA to remanufacture EndoWrists; concerns by customers that Restore did not have the appropriate FDA clearance to engage in its business; Restore's lack of access to its own technology after Rebotix terminated their agreement; Restore's lack of access to the tools necessary to provide da Vinci service, such as a laptop computer with Intuitive's proprietary software; Restore's lack of preparedness to launch a business based on the Iconocare technology; and preference by customers for purchasing EndoWrists from the original manufacturer for patient safety, regulatory, and liability concerns. Restore is not entitled to recover for lost profits that resulted solely from these or other causes arising from the normal course of business activity. The presence of these factors does not mean Restore did not suffer antitrust injury, but Restore is not entitled to recovery for damages caused by them. Restore only may recover for damages caused by the alleged antitrust violation.

Restore bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that Restore was injured by Intuitive's alleged antitrust violation, and there is a reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, then you may award damages.

If you find that Restore's alleged injuries were caused by factors other than Intuitive's alleged antitrust violation, then you must return a verdict for Intuitive. If you find that there is no reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

**Commented [ISI116R115]:** Intuitive disagrees that the proposed instruction materially alters the meaning of the ABA Model Antitrust Instruction. Rather, Intuitive's instruction both situates the instruction within the context of the present facts and makes the instruction more digestible for the jury. Restore's "correct" language itself includes modifications to the model instruction. As explained above in Intuitive's comment on the General Preliminary Instruction, the model instructions are not binding and should be adapted to the needs of the case.

106

JURY INSTRUCTION NO. __: No Double Recovery for the Same Injury[55]

An injured party cannot recover compensation twice for the same injury. Thus, if you return a verdict for Restore, you must award them such sum of money as you believe will fairly and justly compensate them for any antitrust injury you believe they actually sustained as a direct result of Intuitive's conduct. In this action, Restore alleges a series of claims against Intuitive. If you find for Restore on any of those claims, you shall award Restore such damages as will reasonably compensate Restore for the losses suffered. In awarding damages, however, you must use care to award damages only once for each loss suffered. The mere fact that you may find that Intuitive is liable under more than one of the bases of liability does not permit you to award the measure of loss more than once.

---

**Commented [RST117]:** This instruction is unnecessary and confusing. The antitrust claims here - monopolization, tying, and exclusive dealing - are all based on the same conduct. Restore seeks the same amount of damages in lost profit on any of those claims. *See Heatransfer Corp. v. Volkswagenwerk, A. G.*, 553 F.2d 964, 971, 985 (5th Cir. 1977) (upholding aggregated damages verdict for plaintiff on various claims under Section 1 and 2 of the Sherman Act for "injury to its business or property that was directly and proximately caused by one or more of the violations").

Restore does not object to the *Sumotext* jury instruction referenced below by Intuitive:

All Claims: No Double Recovery for the Same Injury

Restore is not entitled to recover its damages more than once, i.e. Restore is not entitled to recover double damages for the same injury alleged. On the verdict form, you will be asked to determine damages if you find Intuitive liable for Claim 1, Claim 2, or Claim 3 regarding the instrument aftermarket. The amount of damages is the same for all three claims and is not increased if you find Intuitive liable for two or all three of those claims regarding the instrument aftermarket. [Repeat for the claims on the service aftermarket]

2020 WL 1650461

**Commented [ISI118R117]:** Intuitive disagrees with Restore's objection. This instruction is not unnecessary or confusing because, without it, the jury would not understand that a finding of liability on one claim would not result in a second recovery if there is a finding of liability on another claim for the same injury, regardless of whether the claims are based on the same conduct. *Heatransfer*, the case cited by Restore, is inapposite because the instructions concerned a finding of liability, not the award of damages for such liability. In *Heatransfer*, the jury was instructed to find the defendant liable if the injury to the plaintiff's "business or property" was "directly and proximately caused one of more of the violations," *Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 970 n.1 (5th Cir. 1977). Instead, the instructions in *Sumotext Corp.*, cited in footnote 55, directly addresses how a jury determines damages where there is a finding of liability on one or more claims. There, the jury was instructed, as Intuitive proposes here, that "Sumotext is not entitled to recover its damages more than once, i.e. Sumotext is not entitled to recover double damages for the same injury alleged. On the verdict form, you will be asked to determine damages if you find Defendants liable for Claim 1, or Claim 2, or both. The amount of damages is the same for both claims and is not increased if you find Defendants liable for both claims." 2020 WL 1650461 (Jury Instruction 50).

---

[55] Ronald W. Eades, Jury Instructions in Commercial Litigation § 17.14; Final Jury Instructions, *Sumotext Corp. v. Zoove, Inc.*, (N.D. Cal. Mar. 1, 2020).

JURY INSTRUCTION NO. __:  **Damages for Competitors – Lost Profits**[56]
~~DAMAGES FOR COMPETITORS—LOST PROFITS~~

~~Plaintiff~~ Restore claims that it was harmed because it lost profits as a result of Intuitive's alleged antitrust violation. If you find that Intuitive committed an antitrust violation and that this violation caused injury to Restore, you now must calculate the profits, if any, that Restore lost as a result of Intuitive's antitrust violation. To calculate lost profits, you must calculate net profit: the amount by which Restore's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

~~You may calculate the net profit by a market share approach contrasting plaintiff's market share in the affected market with its market share in unaffected markets to project plaintiff's profit margin on the expanded base of sales.  Plaintiff may also show lost profits based on the loss of specific business or customers or by showing an increase in plaintiff's cost of business by reason of the violation. Whatever method or theory is chosen to show the extent of damages, the only requirement is that the method chosen be reasonable.  So long as the evidence presented provides a reasonable basis upon which the jury may estimate the amount of damages, weakness or imperfections in the evidence are for the jury's consideration.Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.B.8.~~

> **Commented [RST119]:** There is no reason for deleting this language from 6.B.8.  The instruction provides illustrative examples and explains the legal requirements.

> **Commented [ISI120R119]:** The instruction is confusing and irrelevant, and accordingly, Intuitive has proposed to delete it.

---

[56] Adapted from *ABA Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chapter 6: Causation and Damages, Damages, Instruction 8 (Damages for Competitors — Lost Profits).

JURY INSTRUCTION NO. ___:  **Damages for Competitors – Future Lost Profits**

Restore also claims that it was harmed because, had it not been for Intuitive's alleged antitrust violation, Restore would have earned profits for at least 2 years into the future. If you find that Intuitive committed an antitrust violation and that this violation caused injury to Restore, you now must calculate the future profits, if any, that Restore lost as a result of Intuitive's antitrust violation.

To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that Restore would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation. In making this determination, you must consider the various factors that could affect the future success of Restore's business, such as general market or economic conditions, customers' concerns about Restore's FDA clearance (or lack thereof), changes in demand for Restore's services as the number of S/Si models in use decreased, lawful competition Restore would face in the future, Restore's management of business, changes in technology or other business conditions, and other factors affecting Restore's future performance.

Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative. If there is no evidence from which you can

109

**Commented [RST121]:** Restore objects to the insertion of the language to 6.B.9. It injects argument into a neutral list of factors. The instruction already addresses various examples in a neutral fashion, such as "changes in technology or other business conditions." Intuitive can point to that language if it is able to offer evidence that customers are concerned about clearance or evidence that Restore does not account for the changes in demand in calculation of damages. Restore has not inserted argumentative references, such as customer distaste for Intuitive, customer preference for being able to repair instruments, or the sunsetting of the Si in response to the entry of Restore.

**Commented [ISI122R121]:** Consistent with the ABA Model Antitrust Jury Instruction 6.B.9 (Damages For Competitors--Future Lost Profits), the court should "expand or contract" the list of factors that could affect the future success of plaintiff's business to account for those that are relevant to the case. The Court should overrule Restore's objection because the factors Intuitive has included are necessary for the jury to understand which factors they may consider during their deliberations, as these are issues that Restore has presented in the case as the basis for damages and injury. Restore's "argumentative references" are neither market nor economic conditions and would not be appropriate to include, which is likely why Restore has chosen not to propose them.

make a reasonable estimate of lost future profits, you may not award damages for future lost profits.

In calculating future lost profits, you must calculate net profit. In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues.

~~You may calculate the net profit by a market share approach contrasting plaintiff's market share in the affected market with its market share in unaffected markets to project plaintiff's profit margin on the expanded base of sales. Plaintiff may also show lost profits based on the loss of specific business or customers or by showing an increase in plaintiff's cost of business by reason of the violation. Whatever method or theory is chosen to show the extent of damages, the only requirement is that the method chosen be reasonable. So long as the evidence presented provides a reasonable basis upon which the jury may estimate the amount of damages, weakness or imperfections in the evidence are for the jury's consideration.~~

**Commented [RST123]:** There is no reason for deleting this language from 6.B.9. The instruction provides illustrative examples and explains the legal requirements.

**Commented [ISI124R123]:** The instruction is confusing and irrelevant, and accordingly, Intuitive has proposed to delete it.

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable. This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today— this is known as the time value of money. For example, if you had a choice to receive $1,000 today or a year from

110

now, you would be better off receiving the money today and earning interest on it for a year—you would then have something more than $1,000 in a year from now. Similarly, if you had a right to $1,000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year. This lower amount is known as an amount discounted to present value.

      Source: ABA Model Jury Instructions in Civil Antitrust Cases 6.B.9.

111

**FINAL INSTRUCTIONS – INTUITIVE'S CLAIMS**

JURY INSTRUCTION NO. __: **Summary of Intuitive's Claims**

In addition to these claims, Intuitive brings five claims against Restore. Because these claims are brought by the Defendant against the Plaintiffs, Intuitive's claims against Restore are called "counterclaims."

The first counterclaim is that Restore engaged in false advertising in violation of a statute called the Lanham Act.  The second counterclaim is that Restore engaged in unfair competition.  The third counterclaim is that Restore violated the Florida Deceptive and Unfair Trade Practices Act.  The fourth counterclaim is that Restore engaged in tortious interference with contract. Restore denies these claims.

112

JURY INSTRUCTION NO. __: **Counterclaim 1: False Advertising – Lanham Act, 15 U.S.C. § 1125(a)(1)**

Intuitive claims that Restore is liable for false advertising.  To prove its claim, Intuitive must prove the following facts by a preponderance of the evidence:

1.   Restore's advertisements were false or misleading;

2.   Restore's advertisements deceived, or had the capacity to deceive, customers;

~~3.   The deception had a material effect on purchasing decisions;~~

~~4.~~3.   The misrepresentation affected interstate commerce; and

4.   Intuitive has been or is likely to be injured as a result of the false or misleading advertising.[57]

**A.   False or Misleading**

There are two ways in which Restore's ~~advertisement~~advertising may be false or misleading: it may be literally false, or it may be literally true but misleading. ~~If an advertisement~~

Advertising is literally false, ~~then~~ if it ~~is~~communicates an unambiguous meaning that is simply not true.[58]  Even if no specific combination of words is expressly untrue, an advertisement may still be literally false if, considering the

---

[57] *See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.8.

[58] *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010).

113

**Commented [ISI125]:** The Court need not include this instruction on interstate commerce because it is undisputed that Restore's products and services were sold in interstate commerce. Restore admitted in its Answer to Intuitive's Counterclaims, ECF No. 51, that both Intuitive's and Restore's products and services are sold in interstate commerce throughout the United States.  *See* Def.'s First Am. Counterclaims, ECF No. 49, at ¶¶ 63, 68; Pls.' Answer to First Am. Counterclaims, ECF No. 51, at ¶¶ 63, 68.  Intuitive takes the position that, because this fact is not in dispute, Intuitive need not prove the fact to the jury, and a jury instruction on the element is inappropriate and unnecessary.

**Commented [ISI126]:** Intuitive has included footnotes throughout its counterclaims citing reference material and legal authorities.  The footnotes are to aid in the Court's review, and should not be included in the final instructions provided to the jury.

**Commented [ISI127]:** Intuitive asks that the Court approve its inclusion of organizational headings throughout these counterclaim instructions, which will facilitate the Court's navigation and the jury's understanding of its multi-element counterclaims.

**Commented [RST128R127]:** Restore asks the Court to use the Eleventh Circuit Pattern Jury Instructions and Florida Standard Jury Instructions wherever possible for the counterclaims.

Restore objects to creating entire new sections to the pattern jury instruction.  The pattern jury instruction is a correct statement of the law on false advertising.  See *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (setting out elements of claim and explaining that plaintiff does not need to prove deception if statement is literally false).  Intuitive is free to offer argument relying on the relevant language in the pattern jury instruction.

**Commented [ISI129R127]:** As in the context of the proposed instructions on Restore's antitrust claims, Intuitive maintains that pattern jury instructions are useful models, not the law itself. *See United States v. Carter,* 776 F.3d 1309, 1324 (11th Cir. 2015); *United States v. Gutierrez,* 745 F.3d 463, 471 (11th Cir. 2014).  Intuitive asks that the Court adopt Intuitive's accurate, concise, neutrally-phrased instructions.  The proposals are based on model instructions but provide accurate, helpful statements about settled law relevant to the facts and theories raised by this case.

Intuitive's proposed instructions for its false advertising counterclaim are in large part based on the Eleventh Circuit Pattern Instructions, but as detailed herein, the Pattern Instructions do not present a complete picture of current Lanham Act jurisprudence within the Eleventh Circuit and ... [8]

**Commented [ISI130]:** Intuitive claims that Restore's efforts to convince Intuitive's customers to buy Restore's products and services included numerous false or misleading statements in informal, oral, and emailed communications.  The Eleventh Circuit's model instruction uses the word "advertisement," but that word does not fit as well as Intuitive's proposed word ("advertising") to the facts and circumstances of this case, because it connotes one ... [9]

**Commented [RST131R130]:** Intuitive has only offered evidence of possible deception from a survey of perceptions to a single one-page marketing flyer from Restore. *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1261 (11th Cir. 2004).

**Commented [ISI132R130]:** Restore's comment above is both a mischaracterization of Intuitive's claims and an attempt to use these jury instructions to circumvent the Court's denial of Restore's motion for summary judgment.  As is clear from the pleadings, summary judgment papers, and other submissions, the false advertising challenged in this case is not limited to Restore's flyer (although the flyer is an exemplar of Restore advertising that contains false and misleading statement ... [10]

advertisement in its entirety, the audience would recognize the claim as readily as if the message had been explicitly stated.[59]

Misleading advertising may contain statements or messages that are literally true or susceptible to more than one reasonable interpretation, but nevertheless conveys a false impression to at least some recipients of the advertising.[60]

**B.    Deception**

If advertising or advertising statements are literally false, they are presumed to deceive, or ~~to~~ have the capacity to deceive, ~~consumers~~customers, and Intuitive need not prove ~~that~~the deception.[61]

If advertising or advertising statements are misleading, deception must be demonstrated in at least one of two ways.  Intuitive may prove either (1) that Restore intentionally set out to deceive the public and that Restore's deliberate conduct was egregious;[62] or (2) that a significant, meaningful, or appreciable number of customers were likely to be deceived by Restore's advertising.[63]  The

---

[59] *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (collecting cases); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1314 (M.D. Fla. 2012).

[60] *See Eleventh Circuit Pattern Jury Instructions (Civil Cases)* § 10.8; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004); *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1347 (M.D. Fla. 2006); *Osmose*, 612 F.3d at 1309; *Edmonson v. 2001 Live, Inc.*, No. 8:16-cv-03243-T-17AEP, 2019 WL 670201, at *5 (M.D. Fla. Jan. 15, 2019).

[61] *Eleventh Circuit Pattern Jury Instructions (Civil Cases)* § 10.8; *Osmose*, 612 F.3d at 1319; *see also Border Collie Rescue*, 418 F. Supp. 2d at 1347 ("When an advertisement is literally false, a court may grant relief irrespective of evidence of consumer reaction or confusion.").

[62] *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014) (internal quotations omitted).

[63] *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1105–08 (M.D. Fla. 2019) (describing "sufficient, significant, and meaningful" levels of deception among a target

114

---

**Commented [ISI133]:** Intuitive asks the Court to adopt in full the proposed redlined language for this "False or Misleading" element.  The Eleventh Circuit Pattern Instruction notes that a claim may be "literally false" or "literally true but misleading," but does not instruct jurors how to distinguish between these options.  *See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.8.  Intuitive has offered additional instructions explaining these concepts.  The instructions are neutral in tone and accurately reflect the law cited in the footnotes.

**Commented [RST134R133]:** This is not an accurate definition of false or misleading for the first element of false advertising under the Lanham Act.

First, false is "literally false."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004), *Ameritox, Ltd. v. Millennium Lab'ys, Inc., 889 F. Supp. 2d 1304, 1314 (M.D. Fla. 2012).*  The "false by necessary implication" doctrine has not been recognized by the Eleventh Circuit. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 889 F. Supp. 2d 1304, 1315 (M.D. Fla. 2012).  In any event, it would be a question of whether "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Id.  The proposed language takes the intended audience out of the question.

Second, misleading statements are "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004), *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 889 F. Supp. 2d 1304, 1314 (M.D. Fla. 2012).  Thus, it is not enough to convey a false impression to "at least some recipients of the advertising."  It is a question of the effect on the intended audience, which is the hospital as a purchasing entity.

**Commented [ISI135R133]:** Restore misstates the plain law of *Hickson Corp.*  That case makes clear that false advertising is not limited to advertising that is "literally false."  *Hickson Corp.* states:

> The first element of the Lanham Act test requires that the [claimant] show that the statements at issue were *either* (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.

357 F.3d at 1261 (internal quotation omitted) (emphasis added).

Intuitive's proposed instruction on "literally false" does not misstate the law.  The "false by necessary implication" doctrine "has not been *expressly* recognized by the Eleventh Circuit, but it has been recognized by other circuit courts, and the concept has been applied by district courts within this circuit." *Ameritox*, 889 F. Supp. 2d at 1315 (emphasis added).  This Court need not wait for the Eleventh Circuit to weigh in before instructing the jury on a basic and widely accepted feature of false advertising law.  Intuitive's remaining proposed instruction adopts language from *Ameritox* and adequately communicates that the jury must consider whether the advertising makes an implicit claim "as readily as if it had been expressly stated." *Id.*

Intuitive's proposed instruction on "misleading" advertising is also legally sound.  Restore's comment above conflates the first and second elements of the false advertising claim, muddling the law on the "false or misleading" element with the law on the "deceptive" element.  *See Hickson*, 357 F.3d at 1261.  Restore's misguided argument is precisely why Intuitive proposed an instruction that breaks the false advertising claim into its constituent parts and better explains each individual element of a false advertising claim.

number of customers likely to be deceived need not be a majority, and in fact can be much less than a majority.[63]

## C.   Materiality

~~Additionally, Intuitive must prove the materiality of Restore's advertising by showing~~

Intuitive must demonstrate that Restore's ~~deception is~~deceptive advertising was likely to influence ~~consumers~~customers' decisions to purchase the product or service advertised.[65]  Advertisements that misrepresent an inherent quality or characteristic of the product or service may be considered likely to influence customers' purchasing decisions.[66]

## ~~B.~~D.   Defense of Fair Use

~~Descriptive fair use is a defense to a claim of false advertising.  Restore is not liable for infringement if it proves by a preponderance of the evidence that its use of Intuitive's trademark is necessary to accurately describe a characteristic of~~

---

audience); 6 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:185 (5th ed. 2022) ("Likelihood of confusion is found by such a likelihood among a 'substantial' or 'appreciable' number of reasonably prudent customers.").

[64] *McCarthy on Trademarks* § 32:185; *see also Diamond Resorts*, 271 F. Supp. 3d at 1107 (citing sufficient and significant deception rates ranging from 7.5 percent to 20 percent); *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980) (finding "high possibility of confusion" where the rate of confusion among individuals surveyed was approximately 15 percent).

[65] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.8; *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008).

[66] *Diamond Resorts*, 371 F. Supp. 3d at 1108.

115

---

**Commented [ISI36]:** Intuitive asks the Court to adopt in full the proposed redlined language for this "Deception" element.  The Eleventh Circuit Pattern Instruction notes that a claimant need not separately prove deception if they prove that advertising is "literally false," but do not offer instructions for the element of deception if the claimant instead proves that advertising is "literally true but misleading."  *See supra* Proposed Instruction on False or Misleading Advertising.  Intuitive has offered additional instructions explaining the element, which are neutral in tone and accurately reflect the law cited in the footnotes.

**Commented [RST137R136]:** Restore objects to creating entire new sections to the pattern jury instruction.  The pattern jury instruction is a correct statement of the law on false advertising.  See *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (setting out elements of claim and explaining that plaintiff does not need to prove deception if statement is literally false).  Intuitive is free to offer evidence and argument that the advertising "had the capacity to deceive consumers."

**Commented [ISI38R136]:** Intuitive has provided ample and uncontroversial authority supporting its statement of the law on deception.  Once again, Restore does not dispute the accuracy of Intuitive's instruction; instead, Restore demands that the Court adhere to an incomplete articulation of the law as set forth in the Pattern Instructions and in the older *Hickson* decision.  The law is clear that, for "misleading" advertising claims (as opposed to "literally false" claims), Intuitive is required to prove deception.  Intuitive respectfully submits that the jury will benefit from clear and concise guidance as to *how* deception is proved.

**Commented [ISI39]:** Intuitive urges the Court to accept the disputed changes for this "Materiality" element.  The Eleventh Circuit Pattern Instruction explains that the claimant must show that the advertising is likely to influence customer's purchasing decisions.  *Diamond Resorts* and the authorities cited therein support Intuitive's position that the instruction should also make clear that the materiality requirement can be established "by proving that the [counter]defendants misrepresented an inherent quality or characteristic" of the product or good advertised.  *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1108 (M.D. Fla. 2019) (internal citation omitted); *see also* 2 Callmann on Unfair Comp., Tr. & Mono. § 5:35 (4th ed.) (collecting cases and noting that "[c]laims relating to the central characteristics of a product, including its purpose, safety, efficacy, and cost, are ... presumed to be material.  Some private litigation decisions have also said that, where a statemen ... [11]

**Commented [RST140R139]:** Restore objects to creating entire new sections to the pattern jury instruction.  The pattern jury instruction is a correct statement of the law on false advertising.  See *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (setting out elements of claim).  Intuitive can offer argument by pointing to evidence to show that the advertising was "likely to influence consumers purchasing decisions."

Restore also objects that the additional language presumes that this advertising is deceptive. ... [12]

**Commented [ISI141R139]:** Restore misstates the law.  The Eleventh Circuit has explicitly confirmed that "[a] plaintiff may establish [the] materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product.  *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (citations omitted).  *J-B Weld Co.*, cited by Restore, *confirms* the accuracy of Intuitive's instruction.  The *J-B Weld* court stated that the "inherent quality or characteristic formulation *adopted by this Circuit* does not replace the consumer-oriented nature of ... [13]

~~its goods.   To establish this defense, Intuitive must prove that Restore's trademark is used:~~

~~1. Other than as a trademark;~~

~~2. In a descriptive sense; and~~

~~3. Fairly and in good faith—that is, Restore did not intend to trade on the goodwill of Intuitive by creating confusion as to the source of Restore's goods.~~

~~Source: Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.3; Thoroughbred Legends, LLC v. The Walt Disney Co., No. 1:07-CV-1275-BBM, 2008 WL 616253, at *9 (N.D. Ga. Feb. 12, 2008) ("It is permitted for a defendant to use a term in its descriptive sense").~~

**E.      Likelihood of Injury**

Intuitive must demonstrate that it has been or likely was injured by false advertising.   Intuitive need not prove that it was actually injured to prove this element of its claim.   It is sufficient for Intuitive to demonstrate that injury was probable or likely.[67]   The injury to Intuitive might be loss of sales or damage to Intuitive's reputation or goodwill.[68]   The injury must flow from the deceptive

---

[67] *See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.8; 15 U.S.C. § 1125(a)(1).
[68] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) ("[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury[.]"); *Third Party Verification v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (requiring actual or likely injury "by casually related declining sales or loss of goodwill").

116

**Commented [ISI142]:** Intuitive asks the Court to reject (by accepting the tracked changes) Restore's proposed instruction on descriptive fair use.  Descriptive fair use is not a defense to false advertising, but to trademark infringement.  *See* 4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.).  The authorities cited by Restore do not suggest otherwise.  The Eleventh Circuit Pattern Instruction cited by Restore is for "Defenses to Claim of Infringement of a Trademark;" Restore simply swapped the words "false advertising" for "trademark infringement."  *See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.3.  The case cited by Restore, which is not binding on this Court, similarly does not suggest that a fair use defense is relevant to a claim of false advertising.  *See Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *9 (N.D. Ga. Feb. 12, 2008).

**Commented [RST143R142]:** Restore requests the pattern jury instruction for the defense of fair use for the false advertising claim.

**Commented [ISI144R142]:** The Eleventh Circuit Pattern Instruction that Restore requests reads: "Descriptive fair use is a defense to a claim of *trademark infringement*."  Eleventh Circuit Jury Instructions § 10.3 (emphasis added).  The instruction Restore requests is thus on its face inapplicable to this false advertising claim.

advertising,[69] but the deceptive advertising need not be the only cause, or even the predominant cause, of the injury.[70]

**F.    Verdict**

If you find that Intuitive has proved each element of its false advertising counterclaim by a preponderance of the evidence, you should enter a verdict in favor of Intuitive on this claim.  You should then calculate the amount of money to award to Intuitive as damages.  I will describe how to calculate damages for this counterclaim in a moment.

---

[69] *Lexmark Int'l*, 572 U.S. at 133; *Third Party Verification*, 492 F. Supp. 2d at 1324; *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017).
[70] *Diamond Resorts*, 371 F. Supp. 3d at 1110.

117

**Commented [ISI145]:** Intuitive asks the Court to adopt in full the proposed redlined language for this "Likelihood of Injury" element.  The Eleventh Circuit Pattern Instruction notes that the claimant must demonstrate a likelihood of injury but does not offer instructions on the issue.  Intuitive has offered instructions that explain the element in a neutral way that accurately reflect the law cited in the footnotes.

**Commented [RST146R145]:** Restore objects to creating entire new sections to the pattern jury instruction.  The pattern jury instruction is a correct statement of the law on false advertising.  See *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (setting out elements of claim).

Intuitive can offer argument by pointing to evidence to show that the advertising "has been, or is likely to be, injured as a result of the false advertising."  The pattern jury instruction does not limit injury to economic damages.

The Eleventh Circuit has always plainly stated without qualification that the plaintiff must show it "has been—or is likely to be—injured as a result of the false advertising."  See, e.g., *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010).

**Commented [ISI147R145]:** As with other instructions, Restore does not contest that Intuitive's proposed instruction accurately states the law in a neutral manner, and Restore does not explain why the Court should limit the instruction to the incomplete statements of law set forth in the (non-binding) Pattern Instruction and *Hickson Corp.*

**Commented [ISI148]:** Intuitive has included a verdict instruction for each counterclaim, instructing the jury in neutral language on how to proceed following its consideration of each element.  Intuitive asks that the Court adopt this "Verdict" instruction for each counterclaim.

**Commented [RST149R148]:** Restore objects to creating a verdict instruction to add to the pattern jury instruction for each counterclaim.  It is not necessary.  The jury will have the verdict form and will receive general instructions on using it.

The language is also worded to presume that Intuitive is entitled to some amount of damages on its claim.

JURY INSTRUCTION NO. __:  Willfulness for False Advertising

If you have determined that Restore engaged in false advertising, you should also indicate on the verdict form whether any such unlawful conduct was willful on the part of Restore.  Restore's actions may be considered willful if Restore knew that it was engaging in false advertising, or if it acted with indifference to Intuitive's rights.[71]  If you find that Restore's violation was willful, you should indicate this on the verdict form.

**Commented [ISI150]:** Intuitive asks the Court to accept the inclusion of this willfulness instruction for its Lanham Act counterclaims.  Although willfulness is not a precondition to Intuitive's recovery under the Lanham Act, the Lanham Act contemplates that attorneys' fees or an enhanced damages award may be warranted for willful violations of the law.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).  The proposed instruction is based on language approved in *TB Food USA*, No. 2:17-cv-9 (M.D. Fla.), ECF No. 456, at 43.

**Commented [RST151R150]:** Restore asks that Court follow the pattern jury instruction by including the willfulness instruction in the discussion of remedies.  It is not an element of the underlying claim.

Restore asks that the Court follow the language used in Eleventh Circuit Pattern Jury Instruction 10.1 and 10.2:

"A defendant commits a 'willful violation' of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff."

**Commented [ISI152R150]:** Restore has not explained why the instruction on willfulness should be included in the discussion of remedies rather than treated as the distinct and prefatory fact issue that it is. Restore's reliance on the Eleventh Circuit Pattern Instruction, which refers to "trademark" violations, is also a further apt example of why absolute adherence to model instructions is likely to confuse rather than clarify issues that the jury must decide.  False advertising does not concern "capitaliz[ing] on and appropriat[ing] for itself the goodwill" of a competitor.  Intuitive's proposed instruction is neutral, legally accurate and appropriately tailored to the actual theory of liability in Intuitive's counterclaims.

---

[71] *Id.* at 43.

118

JURY INSTRUCTION NO. __: Counterclaim 2: Unfair Competition

Intuitive also claims that Restore engaged in unlawful unfair competition.

To prevail on this defensecounterclaim, Intuitive must prove that Restore's trademark is used:

1. Other than as a trademark;

2. In a descriptive sense; and

3. Fairly and in good faith—that is, Restore did not intend to trade on the goodwill of Intuitive by creating confusion as to the source of Restore's goods.

Source: Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.3. three facts by a preponderance of the evidence:

1. That Restore competes with Intuitive for a common pool of customers;[72]

2. That Restore engaged in fraudulent or deceptive conduct; and

3. That the fraudulent or deceptive conduct caused or will likely cause customer confusion.[73]

A. Competition for a Common Pool of Customers

The first element of Intuitive's unfair competition counterclaim requires proof that Intuitive and Restore compete for a common pool of customers. That

**Commented [ISI153]:** Intuitive asks that the Court accept Intuitive's inclusion of a separate instruction on its common law unfair competition counterclaim, which is not fairly conflated with its Lanham Act claim or the law of trademark infringement. Intuitive's proposal is neutrally phrased and accurately reflects the law cited in the footnotes.

**Commented [RST154R153]:** Restore asks that the Court use Eleventh Circuit Pattern Jury Instruction 10.8. The three false advertising counterclaims under federal statute, common law, and state statute are all based on the Restore marketing flyer. Intuitive has not offered any evidence of deception relating to any other allegedly misleading statements.

"The parties agree that they are subject to the same legal standard for false and/or misleading statements." Dkt. No. 44 at 4. "The legal standards for Florida statutory and common law claims of . . . unfair competition . . . are the same as those for federal claims of . . . unfair competition." Id. (quoting *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009)).

"The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition under ... [FDUTPA] are the same as those for federal claims of trademark infringement and unfair competition." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1316 n.18 (11th Cir. 2020)(quoting *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009)).

"[T]he legal analysis is the same for . . . . violations of the Lanham Act, FDUPTA, and Florida state common law for infringement and unfair competition." *Suntree Techs., Inc. v. Ecosene Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012).

**Commented [ISI155R153]:** The Eleventh Circuit Pattern Instructions §§ 10.1 and 10.2 are for trademark infringement under the Lanham Act, not for a claim of unfair competition under Florida common law. Restore has provided no explanation for why federal trademark law should be used to instruct the jury on the Florida law of unfair competition.

**Commented [ISI156]:** Consistent with its prior comments, Intuitive asks that the Court reject this language, which relates to trademark infringement rather than common law unfair competition.

---

[72] *Third Party Verification*, 492 F. Supp. 2d at 1325.
[73] *Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020); *see also* Jury Instructions, *BPI Sports, LLC v. Thermolife Int'l, LLC*, No. 19-cv-60505 (S.D. Fla.), ECF No. 330, at 11.

means that Restore must have sought or actually engaged in business with real or potential customers of Intuitive.[74]

### B.   Fraudulent or Deceptive Conduct

The second element of Intuitive's unfair competition counterclaim requires proof that Restore engaged in fraudulent or deceptive conduct.  Although this element of the unfair competition counterclaim is distinct from the false advertising counterclaim Intuitive brought under the Lanham Act, your assessment of this element will require similar analysis.[75]  For that reason, you may use your assessment of Intuitive's false advertising counterclaim as a measuring stick as you decide whether Intuitive has proved that Restore engaged in fraudulent or deceptive conduct in violation of Florida law.[76]

### C.   Likely to Cause Confusion

The last element of the unfair competition counterclaim is that Restore's fraudulent or deceptive conduct caused or will likely cause customer

---

[74] *Home Design Servs., Inc. v. Park Square Enterprises, Inc.*, No. 6:02-cv-637, 2005 WL 1027370, at *14 (M.D. Fla. May 2, 2005).

[75] *See Regent Grand Mgmt. Ltd. v. Trust Hospitality LLC*, No. 18-cv-21445, 2018 WL 8334080, at *6 (S.D. Fla. 2018) (finding facts sufficient to support a Lanham Act unfair competition claim "for the same reasons" also supported a Florida common law unfair competition claim).

[76] *Id.* (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp. E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991), *cert. denied*, 502 U.S. 1005 (1991)).

confusion.[77]  Intuitive need not demonstrate actual confusion to satisfy this element; a likelihood of confusion is sufficient.[78]

### D.    Verdict

If you find that Intuitive has proved its unfair competition counterclaim by a preponderance of the evidence, you should enter a verdict in favor of Intuitive on this claim.  You should then calculate the amount of money to award to Intuitive as damages.  I will describe how to calculate damages for this counterclaim in a moment.

> **Commented [ISI157]:** Intuitive asks that the Court accept Intuitive's instruction on its common law unfair competition counterclaim, which is not fairly conflated with the law of trademark infringement under the Lanham Act.  Intuitive's proposal is neutrally phrased and accurately reflects the law cited in the footnotes.

> **Commented [RST158R157]:** As discussed above, Restore asks that the Court use Eleventh Circuit Pattern Jury Instruction 10.8 for the state common law claim for unfair competition.

> **Commented [ISI159R157]:** The Eleventh Circuit Pattern Instructions §§ 10.1 and 10.2 are for trademark infringement under the Lanham Act, not for a claim of unfair competition under Florida common law.  Restore has provided no explanation for why federal trademark law should be used to instruct the jury on the Florida law of unfair competition.

---

[77] *Webster*, 955 F.3d at 1277 (11th Cir. 2020).
[78] *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 382 (5th Cir. 1977).

121

JURY INSTRUCTION NO. __:  **Counterclaim 3: Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. §§ 501.201 to 501.213** [Alternative Instruction]

To ~~recover damages from Restore~~prove its counterclaim for deceptive or unfair trade practices, Intuitive must prove all of the following:

1. Restore engaged in a deceptive or unfair act or practice in the conduct of its trade or commerce; and

2. Restore's actions were the legal cause of actual damage sustained by Intuitive.[79]

**A.    Deceptive or Unfair Act or Practice**

An act or practice is "deceptive" if it is likely to mislead a person or company, acting reasonably in the circumstances, to the person or ~~entity~~company's detriment.

An act or practice is "unfair" if it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.  An "unfair" practice or act must satisfy three tests:

a. it must produce substantial injury to Intuitive;

b. the injury must not be outweighed by any countervailing benefits to customers or competition that the practice produces; and

---

[79] Florida Standard Jury Instructions § 416.50(a).

Commented [ISI160]: Restore proposed a consolidated instruction for Intuitive's passing off claim (which Intuitive has agreed to dismiss), unfair competition, and Florida Deceptive and Unfair Trade Practices Act (FDUTPA) counterclaims.  Restore also proposed this "alternative instruction" for the FDUTPA counterclaim.  Intuitive asks that the Court approved this "alternative" FDUTPA instruction as modified, because Intuitive's FDUTPA claim cannot be fairly conflated with the law on trademark infringement under the Lanham Act, and because the modifications are neutrally phrased and accurately reflect the law cited in the footnotes.

Commented [RES161R160]: As discussed above, Eleventh Circuit Pattern Jury Instruction 10.8 is the appropriate instruction for a FDUTPA claim based on false advertising.  E.g., Dkt. No. 44 at 4.

The claim has only been based on violations of the federal statutory and state common law of unfair competition.  See Fla. Stat. Ann. § 501.203(3)(c)

Commented [INT162R160]: The Eleventh Circuit Pattern Instructions §§ 10.1 and 10.2 are for trademark infringement under the Lanham Act, not violations of the FDUTPA. The FDUTPA, which is a Florida law, is far better captured by the Florida Standard Jury Instructions which form the basis of Intuitive's proposed instruction.

Restore also misstates Florida law.  The cited statute plainly states that FDUTPA claims may be based on violations of federal and state unfair competition as well as "[a]ny law, statute, rule, regulation, or ordinance which proscribes . . . unfair, deceptive, or unconscionable acts or practices." Fla. Stat. Ann. § 501.203(c)(3).

c.  the injury must not be one that Intuitive could have reasonably avoided.[80]

**B.    Legal Cause**

Engaging in a deceptive or unfair trade practice is a legal cause of injury if it directly and in natural and continuous sequence produces or contributes substantially to producing the damage, so that it can reasonably be said that, but for the deceptive or unfair action, the damage would not have occurred.  "Actual damage" is damage that has already come to pass—it cannot be merely speculative.[81]

**C.    Verdict**

If you find that Intuitive has proved the elements of its deceptive or unfair trade practices counterclaim by a preponderance of the evidence, you should enter a verdict in favor of Intuitive on this claim.  You should then calculate the amount of money to award to Intuitive as damages.  I will now describe how to calculate damages for this and other counterclaims.

~~C.~~D.   **Federal Claims: Remedies**

> **Commented [ISI63]:** As noted above, Intuitive has proposed neutral "verdict" instructions that organizationally separate each counterclaim and which signal the relationship between the various claims and the damages instructions that follow later.

> **Commented [RST164R163]:** Restore objects to creating a verdict instruction to add to the pattern jury instruction for each counterclaim.  It is not necessary.  The jury will have the verdict form and will receive general instructions on using it.
>
> The language is also worded to presume that Intuitive is entitled to some amount of damages on its claim.

---

[80] *See id.*
[81] Florida Standard Jury Instructions § 416.50(b).

123

JURY INSTRUCTION NO. __:  Damages for False Advertising, Unfair Competition, and Deceptive and Unfair Trade Practices Counterclaims (Counterclaims 1, 2, and 3)

If you find that Restore is liable for false advertising under Counterclaim 1, unfair competition under Counterclaim 2, or violations of the Florida Deceptive and Unfair Trade Practices Act under Counterclaim 3, you must determine whether, and to what extent, money damages should be awarded on those claims counterclaims.

### D.A.   Intuitive's Actual Monetary Damages

You may award actual damages Intuitive has sustained.  Intuitive may recover the economic injury to its business proximately resulting from caused by Restore's wrongful acts.  You are not required to calculate actual damages with absolute exactness – you may make reasonable approximations.  However, any award of actual damages to Intuitive must be just and reasonable, based on facts, and proved by Intuitive by a preponderance of the evidence.[82]

Lost Profits

One example of actual damages are profits that Intuitive may have lost due to Restore's wrongful conduct.  To be entitled to recover lost profits, Intuitive must prove both of the following:

1.   Restore's actions caused Intuitive to lose profits; and

---

[82] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.2.

**Commented [IS165]:** Restore proposed separate remedies instructions for (1) Intuitive's "federal claims," (2) two of its "state" claims, and, separately, for (3) Intuitive's state law tortious interference with contract claim.  Intuitive asks that the Court accept Intuitive's modified proposal, which combines the first two instructions and leaves intact the third.  This construction is clearer and more efficient for the jury, as several damages concepts can be fairly grouped together.

**Commented [RST166R165]:** The two federal statutory claims allow recovery of damages for lost profits and disgorgement.  15 U.S.C. 1117(a).  The federal claims also allow for nominal damages.  The Remedies Section of the Eleventh Circuit Pattern Jury Instruction 10.2 provides the correct statement of law.

The state common law unfair competition claim requires proof of damage and only allows damages for lost profits.  FDUTPA is also governed by Florida law on damages and does not provide for disgorgement or nominal damages either.  Florida Standard Jury Instruction 504.3 provides the correct statement of law on lost profits for the state claims.

Finally, Restore objects that past lost profits do not constitute actual damages under FDUTPA.  "The Court notes however that there is a split of authority regarding whether past lost profits constitute actual damages under FDUTPA."  *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018)

**Commented [IS167R165]:** The parties appear to agree that Intuitive's federal Lanham Act claim allows for damages in the form of compensatory damages, including lost profits; disgorgement; and nominal damages.

Intuitive's common law unfair competition claim also permits recovery of lost profits and disgorgement.  Restore acknowledges that the unfair competition claim permits damages for lost profits.  Lost profits are a form of compensatory damages.  *See* 17 Fla. Jur. 2d Damages § 1 (noting "there are two kinds of damages: actual or compensatory damages Intuitive may prove.  and exemplary or punitive damages [ … [14]

**Commented [IS168]:** Because the parties agree that Intuitive is also entitled to an instruction on money damages measured by Restore's profits, Intuitive asks that the Court accept this change, which may suggest to jurors that other damages are nonmonetary in nature.

**Commented [RST169R168]:** Restore asks to keep the language from the Standard Jury Instruction.

**Commented [IS170]:** Intuitive asks that the Court accept neutral clarifying changes offered throughout these instructions.

**Commented [RST171R170]:** Restore asks the Court to follow the phrasing in the pattern jury instruction.

**Commented [IS172]:** Intuitive asks that the Court accept this instruction on lost profits, which are a form of actual or compensatory damages Intuitive may prove.  Intuitive's proposed instructions integrate federal and state law damages instructions, which is proper in this case involving both.

**Commented [RST173R172]:** This addition is to the pattern jury instructions is unnecessary.  The damages instruction should not be integrated because the law on damages is different for the federal claims and state claims.

**Commented [RST174]:** Restore asks the Court to keep the language from the Standard Jury Instruction.  There is no need for the change.

**Commented [INT175R174]:** Intuitive has suggested this addition to consolidate the two actual damages instructions.

124

2.      Intuitive can establish the amount of its lost profits with reasonable certainty.

For Intuitive to establish the amount of its lost profits with reasonable certainty, itIntuitive must prove that a reasonable person would be satisfied that the amount of lost profits which Intuitive may be entitled to recover is not simply the result of speculation or guessing.  Instead, Intuitive must prove that there is some standard by which the amount of lost profits may be established.  Intuitive does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as it has shown there is a reasonable basis for determining the amount of the loss.[83]

**E.B.   Defendant's Profits and Calculation of Profits**

In addition to Intuitive's actual damages, you may also make an award based on an accounting of Restore's profits if you find that:

1. Restore's conduct was willful and deliberate;

2. Restore was unjustly enriched; or

3. An award of Restore's profits is necessary to deter Restore's future conduct.

> **Commented [RST176]:** Restore asks the Court to keep the language from the Standard Jury Instruction.  There is no need for the change.

---

[83] Florida Standard Jury Instructions § 504.3; *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, No. 3:11-CV-255-RV/EMT, 2011 WL 13117118, at *7 (N.D. Fla. Oct. 24, 2011) (past lost profits are damages under FDUPTA).

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates for itself the goodwill of a plaintiff.

"Unjust enrichment" occurs if Restore receives a benefit to which it is not entitled.

In determining Restore's profits, Intuitive only is required to prove Restore's gross sales. Restore may then prove the amount of sales made for reasons other than the infringement. Restore also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Restore proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to Intuitive.

### F.C.   Nominal Damages

If you find that Restore is liable for false advertising or trademark infringement, but you do not find that Intuitive sustained any actual damages or damages based on Restore's profits, you may return a verdict for Intuitive and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

Source: Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.2.

> **Commented [ISI177]:** Intuitive does not dispute that a jury instruction on Restore's Profits is appropriate.  The instruction appears disputed (in redline) due to an organizational dispute about where this instruction should appear.  Intuitive asks that the Court accept all changes to this document, which will include an instruction on Restore's profits in a more organizationally logical place.

> **Commented [ISI178]:** Intuitive does not dispute that a jury instruction on nominal damages is appropriate.  The instruction appears disputed (in redline) due to an organizational disagreement about where this instruction should appear. Intuitive asks that the Court accept all changes to this document, which will include an instruction on nominal damages in a more organizationally logical place.

**~~G.~~D.  State Claims: Remedies**

~~If you find that Restore is liable for violating the Florida common law of unfair competition or Florida Deceptive and Unfair Trade Practices Act, you must determine whether, and to what extent, money damages should be awarded on those claims.~~

**E.     Restore's Profits**

If you find that Restore is liable for false advertising under Counterclaim 1 or unfair competition under Counterclaim 2, in addition to Intuitive's actual damages, you may also make an award based on an accounting of Restore's profits if you find any of the following:

1.     Restore's conduct was willful and deliberate;

2.     Restore was unjustly enriched; or

3.     An award of Restore's profits is necessary to deter Restore's future conduct.

Restore's conduct was willful if it knew that its conduct was likely deceptive or it deliberately intended to deceive its target audience.

Unjust enrichment occurred if Restore received a benefit to which it was not entitled.

In determining Restore's profits, Intuitive is required to prove only Restore's gross sales.  Restore may then prove that some amount of sales were made for

127

**Commented [RST179]:** Florida Standard Jury Instruction 504.3 provides the correct statement of law on lost profits for the state claims.

**Commented [ISI180]:** As noted above, Restore proposed three separate remedies instructions.  Because actual damages and Restore's profits are proper remedies for both federal and state law counterclaims brought by Intuitive, Intuitive takes the position that the instructions should be combined.

**Commented [RST181R180]:** The law on damages is not the same for violations of the Lanham Act and Florida tort claims.

reasons other than the wrongful conduct.  Restore also may prove that it incurred costs or other deductions which it claims should be subtracted from the amount of its sales in order to determine its profits on such sales.  Any portion of sales that Restore proves by a preponderance of the evidence are not attributable to Restore's wrongful conduct, and any costs or deductions that Restore proves by a preponderance of the evidence, must be subtracted from Restore's gross sales, and the difference is the amount that may be awarded to Intuitive.[84]

### F.    Nominal Damages

If you find that Restore is liable for false advertising under Counterclaim 1, but you do not find that Intuitive sustained any actual damages or is not entitled to Restore's profits, you may return a verdict for Intuitive and award nominal damages.  By nominal I mean a small amount of damages that you, in your discretion, determine.[85]

**Commented [ISI182]:** As noted above, the parties do not dispute that an instruction on Restore's Profits is appropriate. Intuitive asks that the Court accept locating the instruction here, following the instruction on actual damages.

**Commented [RST183R182]:** As discussed above, the state claims only allow for lost profits damages.  So the instruction is not correct.

Also, this section illustrates the confusion of combining the damages instructions for the federal and state claims.

And Restore objects that FDUTPA does not allow for lost profit damages.

**Commented [ISI184R182]:** As explained above, disgorgement damages are available for Intuitive's state law unfair competition counterclaim.  *See Ameritox, Ltd.*, 2014 WL 1456347, at *12 ("[D]isgorgement of profits is an available remedy for . . . an unfair competition claim under Florida law").  Intuitive's proposed instruction includes language clarifying that disgorgement damages are not appropriate for the FDUTPA claim.  Notably, Restore's alternative proposal for the counterclaim damages instructions -- which involved (1) an instruction on federal damages, (2) a unified instruction for the Florida unfair competition and FDUTPA claims, and (3) a third instruction for Intuitive's state law tortious interference with contract claim -- is no clearer on the availability of disgorgement damages under the FDUTPA.

**Commented [ISI185]:** As noted above, the parties do not dispute that an instruction on nominal damages is appropriate. Intuitive asks that the Court accept locating the instruction here, following the instructions on actual damages and Restore's Profits.

**Commented [RST186R185]:** This section illustrates the confusion of combining the damages instructions for the federal and state claims because there are no nominal damages for the state claims.

---

[84] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.2.
[85] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.2.

JURY INSTRUCTION NO. __:  **Counterclaim 4: Tortious Interference With Contract**

Intuitive also claims that Restore intentionally and unjustifiably interfered with Intuitive's contracts with its customers which caused harm to Intuitive.  The issues for you to decide on Intuitive's counterclaim against Restore for tortious interference with contract are whether Restore intentionally and unjustifiably interfered with a contract between Intuitive and its customers; and, if so, whether such interference was a legal cause of damage to Intuitive.[86]

**A.    Intentional and Unjustifiable Interference**

To be liable for interfering with the contract between Intuitive and one of its customers, Restore must have acted intentionally to interfere with the contract. Restore interfered with a the contract between two [or more] other persons if he or she induces if it induced or otherwise causes one of them to caused Intuitive's customer to breach or refuse to perform under the contract. Therefore, Restore must have known of the existence of the , and it must have either intended to induce or otherwise cause the breach of the contractual relationship contract or acted knowing that its actions were likely to cause that result.

Restore must have also acted unjustifiably.  Intuitive must prove that Restore acted unjustifiably because Restore violated a statute or other law, or committed

---

[86] Florida Standard Jury Instructions § 408.5.

---

**Commented [ISI187R185]:** Intuitive's proposed instruction states that nominal damages are available only for its false advertising counterclaim.

**Commented [RST188]:** Restore asks the Court to follow Florida Pattern Jury Instruction 408.6 without adding language about inducing the breach:

A person interferes with a contract between two other persons if it induces or otherwise causes one of them to breach the contract. Therefore, Restore must have known of the existence of the contract, and it must have either intended to cause the breach of the relationship or acted knowing that its actions were likely to cause that result.

**Commented [ISI189R188]:** The Standard Jury Instruction includes the sentence "A person interferes with a contract between two [or more] other persons *if he or she induces* or otherwise causes one of them to breach or refuse to perform the contract."  Florida Standard Jury Instruction (Civil Cases) § 408.5 (emphasis added).  The modification from "induces" to "induced" is a grammatical change that does not alter the meaning of the instruction.

**Commented [ISI190]:** Intuitive asks that the Court accept these simplifying changes to the model instructions.  The changes are neutral in tone and will limit unnecessary complexity for the jury.

**Commented [RST191R190]:** See comments to specific language below.

**Commented [ISI192]:** Intuitive asks that the Court accept this addition, which is consistent with the Florida Standard Jury Instructions from which this instruction is drawn.  *See* Florida Standard Jury Instructions (Civil Cases) § 408.5.  The instructions refer to commission of a tort.  Because these instructions do not otherwise define "tort," a word with legal significance but limited common usage among laymen, Intuitive has proposed this neutral simplification.

**Commented [RST193R192]:** Restore asks the Court to follow the standard jury instruction.  This sentence is not in the standard jury instruction.  The standard jury already refers to misrepresentations in that paragraph.

**Commented [ISI194R192]:** Intuitive maintains that its modifications to the Florida Standard Jury Instruction for this counterclaim are neutral, accurately reflect the law, and appropriately tailor the instruction to the issues and theories in this case.  To aid in the Court's review of Intuitive's proposal and Restore's opaque objection, the unmodified language of Standard Jury Instruction § 408.5 is inserted below (with the section corresponding to Intuitive's proposed modification in bold):

(Defendant) must have acted unjustifiably. (Claimant) must prove that (defendant) acted unjustifiably because (defendant) [violated a statute]; **[committed a tort]**; or [committed other improper acts].

In a separate paragraph, the Standard Jury Instruction § 408.5 states:

**[O]ne who uses** [physical violence] **[misrepresentations]** [illegal conduct] [threats of illegal conduct] **[or]** [(identify **other improper conduct)]** has no privilege to use those methods, and interference using such methods is improper.

other improper acts. Improper acts include making misrepresentations. A person who interferes with another's contractual relationship using ordinary business methods of competition does not interfere improperly. But one who uses misrepresentations or illegal conduct has no privilege to use those methods, and interference using such methods is improper.[87]

### B.    Legal Cause

Interference with a contract is a cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the interference with a contract, the damage would not have occurred.[88]

If the greater weight of the evidence does not support Intuitive's claim tortious interference with contract counterclaim, then your verdict should be for Restore. However, if the greater weight of the evidence supports Intuitive's claim counterclaim, then you shall consider the defenses raised by Restore.[89]

### C.    Defenses to Tortious Interference

Restore has asserted that the contracts between Intuitive and its customers are unenforceable as illegal or contrary to public policy.  A contract is deemed

---

[87] Florida Standard Jury Instructions § 408.5; Jury Instructions, *Slip N' Slide Records, Inc., v. Tee Vee Toons, Inc.*, No. 05-cv-21113 (S.D. Fla.), ECF No. 427, at 5.
[88] Florida Standard Jury Instructions § 408.4.
[89] Florida Standard Jury Instructions § 408.5; *Slip N' Slide Records, Inc., v. Tee Vee Toons, Inc.*, No. 05-cv-21113 (S.D. Fla.), ECF No. 427, at 5.

Commented [RST195]: Restore asks the Court to follow the standard jury instruction.  This sentence is not in the standard jury instruction.  The standard jury already refers to misrepresentations in that paragraph.

Commented [ISI196R195]: As noted above, Standard Jury Instruction § 408.5 states "(Claimant) must prove that (defendant) acted unjustifiably because (defendant) [violated a statute]; [committed a tort]; or [committed other improper acts]. . . . [O]ne who uses . . . [misrepresentations] . . . [or] [(identify other improper conduct)] has no privilege to use those methods, and interference using such methods is improper." Intuitive's proposed instruction retains the first sentence, modified to replace "tort" with "other law" (see above), and clarifies in the second sentence that "misrepresentations" are a species of improper act.  This change is neutral, accurately reflects the law, and simplifies the instructions for the jury.

Commented [ISI197]: Intuitive also asks that the Court accept these additions, which are adapted from the Florida Standard Jury Instruction that "one who uses . . . misrepresentations . . . has no privilege to use those methods, and interference using such methods is improper." Florida Standard Jury Instructions (Civil Cases) § 408.5.

Commented [RST198R197]: As discussed above, Restore objects to the "adaptions" to the standard jury instruction.

Commented [ISI199R197]: Model instructions are meant to be adapted to the particulars of individual cases before the court.  As the Florida Supreme Court has recognized, "no approval of the forms by the Court could relieve the trial judge of his responsibility under the law properly and correctly to charge the jury in each case as it comes before him." *In re Standard Jury Instructions*, 198 So. 2d 319, 319 (Fla. 1967).

unenforceable as illegal or contrary to public policy if its primary purpose or object is contrary to a law or policy of the United States.[90]

Restore has also asserted that its conduct was justified as lawful competition. If you find that Restore's conduct related to competition between Restore and Intuitive, and Restore's conduct was motivated, at least in part, by such competition, and Restore did not use improper means to compete, then Restore's conduct was justified.[91]  Improper means of competition include misrepresentations and illegal conduct.[92]

**D.    Verdict**

If the greater weight of the evidence supports Restore's defense, your verdict should be for Restore.  However, if the greater weight of the evidence does not support the defense and does support Intuitive's ~~claim~~counterclaim, your verdict should be for Intuitive and against Restore.[93]

---

[90] *All Metals, Inc., of Atlanta v. Hinely Indus.*, Inc., 222 F.3d 895, 899 (11th Cir. 2000).
[91] Florida Standard Jury Instructions § 408.7.
[92] *Id.* n.3.
[93] Florida Standard Jury Instructions § 408.10.

131

---

**Comments:**

**Commented [ISI200]:** *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 899 (11th Cir. 2000) supports this addition, which Intuitive asks the Court to accept.

**Commented [RST201R200]:** Restore asks the Court to follow the language from *All. Metals.*  The Eleventh Circuit did not say "primary" purpose or object: "For a contract to be deemed unenforceable as illegal or contrary to public policy, its purpose or object must be contrary to a law or policy of the state." *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 899 (11th Cir. 2000)

**Commented [ISI202R200]:** *All. Metals* also states that "a bargain not to bid at an auction, or any public competition for a sale or contract, having as its *primary* object to stifle competition, is illegal." 222 F.3d at 899 (internal quotation omitted).

**Commented [RST203R200]:** Restore does not object to the addition of the following language based on All. Metals: "For example, a term in a contract, having as its primary object to stifle competition, is illegal."

**Commented [ISI204]:** Intuitive asks that the Court accept these additions, which mirror the Florida Standard Jury Instructions cited in the footnotes.

**Commented [RST205R204]:** The Florida Standard Jury Instructions do not include the last sentence because the interference instruction already says what means are improper.  Restore objects to placing undue emphasis on Intuitive's side of the case by repeating certain statements of law by adding them again and again at various points in the standard jury instructions.

**Commented [ISI206R204]:** The "supplemental language" in the first sentence to which Restore objects is the text of Florida Standard Jury Instruction § 408.7. Intuitive has agreed to omit the remaining Standard Instruction referencing unlawful restraints on trade.  Intuitive's proposed addition of the second sentence is also supported by the Florida Standard Jury Instruction, as cited in the footnote.

JURY INSTRUCTION NO. __:  **Damages for Tortious Interference (Counterclaim 4)**

If you find for Restore on this counterclaim, you will not consider the matter of damages for this counterclaim.  But if you find for Intuitive, you should award Intuitive an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Intuitive for such damage that the greater weight of the evidence shows was caused by Restore's interference with Intuitive's contractual relationships.[94]

If you find for Intuitive, you shall consider the following elements of damage:

Source: Florida Standard Jury Instructions 408.11.

E.A.   Lost Profits

To be entitled to recover damages in the form of lost profits, Intuitive must prove both of the following:

1.   Restore's actions caused Intuitive to lose profits; and

2.   Intuitive can establish the amount of its lost profits with reasonable certainty.

For Intuitive toTo establish the amount of its lost profits with reasonable certainty, itIntuitive must prove that a reasonable person would be satisfied that the

---

[94] Florida Standard Jury Instructions § 408.11.

---

**Commented [ISI207]:** Intuitive asks that the Court accept these streamlining changes, which create consistency between the damages instructions for Intuitive's first three counterclaims and the damages instructions for this final counterclaim.  The modification also makes clear that the elements that Intuitive must prove to recover lost profits (which are clearly stated in the following section) are not *also* prerequisites to the recovery of disgorgement or punitive damages, which have their own elements.

**Commented [RST208R207]:** Restore asks the Court to follow the standard jury instruction, including the last sentence so that the jury does not start with the impression that it must award the following categories of damages:

If you find for Intuitive, you shall consider the following elements of damage:

**Commented [ISI209]:** Intuitive asks that the Court accept these changes, which clarify that lost profits are only one form of damages Intuitive may recover if it prevails on its tortious interference counterclaim.

**Commented [RST210R209]:** Restore asks the Court to follow the standard jury instruction without deleting "to be entitled":

"To be entitled to recover lost profits . . ."
Florida Standard Jury Instruction 408.11.

The rewording suggests that the jury should give damages in some form.

amount of lost profits which ~~it~~Intuitive may be entitled to recover is not simply the result of speculation or guessing.  Instead, Intuitive must prove that there is some standard by which the amount of lost profits may be established.  Intuitive does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as it has shown there is a reasonable basis for determining the amount of the loss.[95]

~~There is an additional claim in this case that you must decide.~~

**B.     Restore's Profits**

In addition to Intuitive's lost profits, you may also make an award based on an accounting of Restore's profits if you find any of the following:

    1.     Restore's conduct was willful and deliberate;

    2.     Restore was unjustly enriched; or

    3.     An award of Restore's profits is necessary to deter Restore's future conduct.

    Restore's conduct was willful if it knew that its conduct was likely deceptive or it deliberately intended to deceive its target audience.

    Unjust enrichment occurred if Restore received a benefit to which it was not entitled.

---

[95] Florida Standard Jury Instructions § 504.3; *see also* Jury Instructions, *Slip N' Slide Records, Inc., v. Tee Vee Toons, Inc.*, No. 05-cv-21113 (S.D. Fla.), ECF No. 427, at 11–12.

---

**Commented [ISI211]:** Intuitive also asks that the Court accept these streamlining changes, which will help the jury determine which party bears the burden of proof on these issues.

**Commented [RST212R211]:** Restore asks the Court to follow the standard jury instruction.  Intuitive is slanting rather than streamlining the language:

For Intuitive to establish the amount of its lost profits with reasonable certainty, it must prove that a reasonable person would be satisfied that the amount of lost profits which it may be entitled to recover is not simply the result of speculation or guessing.

**Commented [ISI213R211]:** Intuitive respectfully submits that a sentence stating that "Intuitive must prove" a fact is not "slanting" the instruction in favor of Intuitive.  Here and throughout these instructions, Intuitive has strived to clarify confusing prose, including by using the parties' names in place of imprecise pronouns such as "it."

**Commented [RST214]:** Intuitive has not explained the deletion of the standard instruction regarding mitigation of damages.  There is evidence that Intuitive did not mitigate damages from tortious interference because Intuitive did not inform Restore of the details of its contracts with customers in its cease and desist letter to Restore.

**Commented [ISI215R214]:** Intuitive has explained its proposal below.  Intuitive had no duty to mitigate damages flowing from its customers' breaches of Intuitive's non-exclusive contracts.  *See Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. Dist. Ct. App. 1984).

**Commented [RST216R214]:** Restore expects to offer proof that Intuitive did not mitigate any damages with any one of the contracts with customers because Intuitive sent its cease-and-desist letter to Restore without any reference to the terms of the contracts with each of those customers.  In contrast with *Riviana*, Restore is not arguing that Intuitive could mitigate its damages by signing up other customers.  Restore is arguing that Intuitive did not mitigate damages on the existing contracts by informing Restore of the terms of its contracts with its existing customers.

**Commented [ISI217]:** Intuitive asks that the Court reject Restore's addition of an instruction on mitigation by approving this tracked change.  An instruction on mitigation is inappropriate because Intuitive's contracts with customers are non-exclusive.  *See Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. Dist. Ct. App. 1984).  Intuitive therefore had no duty to mitigate, and instruction suggesting otherwise is likely to confuse rather than assist the jury.

**Commented [RST218R217]:** The standard instruction on mitigation is appropriate here.  Restore expects to offer proof that Intuitive did not mitigate any damages with any one of the contracts with customers because Intuitive sent its cease-and-desist letter to Restore without any reference to the terms of the contracts with each of those customers.  In contrast with *Riviana*, Restore is not arguing that Intuitive could mitigate its damages by signing up other customers.  Restore is arguing that Intuitive did not mitigate damages on the existing contracts by informing Restore of the terms of its contracts with its existing customers.

In determining Restore's profits, Intuitive is required to prove only Restore's gross sales.  Restore may then prove that some amount of sales were made for reasons other than the wrongful conduct.  Restore also may prove that it incurred costs or other deductions which it claims should be subtracted from the amount of its sales in order to determine its profits on such sales.  Any portion of sales that Restore proves by a preponderance of the evidence are not attributable to Restore's wrongful conduct, and any costs or deductions that Restore proves by a preponderance of the evidence, must be subtracted from Restore's gross sales, and the difference is the amount that may be awarded to Intuitive. [96]

## C.   Punitive Damages

If you find for Intuitive and against Restore on the tortious interference claim, you must also decide whether, in addition to ~~compensatory damages~~Intuitive's lost profits and Restore's profits, punitive damages are warranted as punishment to Restore and as a deterrent to others.

Intuitive claims that punitive damages should be awarded against Restore for its conduct in tortiously interfering with the contracts between Intuitive and its customers.  Punitive damages are warranted against Restore if you find by clear

---

[96] Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 10.2; *see also Bailey v. St. Louis*, 196 So. 3d 375, 377-78 (Fla. Dist. Ct. App. 2016) (assessing trial court's disgorgement award in tortious interference case), *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 844, 845, 850-53 (11th Cir. 2017) (analyzing causal connection between tortious interference allegations and claimed entitlement to disgorgement damages).

134

**Commented [ISI219]:** *Bailey v. St. Louis*, 196 So. 3d 375, 377-78 (Fla. Dist. Ct. App. 2016), and *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 844, 845, 850-53 (11th Cir. 2017), support the inclusion of a disgorgement instruction for Intuitive's tortious interference counterclaim.  Intuitive asks that the Court accept this proposed instruction, which mirrors the instruction on Restore's Profits above.

**Commented [RST220R219]:** Florida Standard Jury Instruction 408.11 only provides for compensatory damages for tortious inference.  Neither the Florida Supreme Court nor the First District Court of Appeals has recognized disgorgement damages for tortious interference.

Intuitive must prove that it suffered a loss to prevail on its tortious interference claim.  Florida Standard Jury Instructions 408.2 and 408.5.

On the other hand, "[d]isgorgement is an equitable remedy intended to prevent unjust enrichment." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. Dist. Ct. App. 2018).

**Commented [ISI221R219]:** Intuitive respectfully refers the Court to *Bailey*, 196 So. 3d at 377-78, and *Advantor Sys.*, 678 F. App'x at 844-45, 850-53, which show that a tortious interference claim can support disgorgement damages.  Moreover, as noted above, standard jury instructions are a model to aid the Court, not the law itself. *Cf. Carter*, 776 F.3d at 1324; *Gutierrez*, 745 F.3d at 471.  "[T]he initial determination of applicable substantive law in every case should be made by the trial judge and . . . no approval of [standard jury instructions] by the [Florida Supreme] Court could relieve the trial judge of his responsibility under the law properly and correctly to charge the jury in each case as it comes before him." *In re Standard Jury Instructions*, 198 So. 2d at 319.

*Duty Free World* does not speak to whether disgorgement damages are available for a tortious interference claim.  The case holds that a claim of unjust enrichment is legal, not equitable, in nature, and so was not covered by an arbitration exception for "equitable relief." *Duty Free World*, 253 So. 3d at 697.  The quoted sentence reflects that court's determination that the equitable nature of the relief sought, including disgorgement damages, did not change the legal nature of the unjust enrichment claim. *Id.*  The case teaches nothing about the nature of or remedies available for a claim of tortious interference with contract. *See generally id.*

**Commented [ISI222]:** Intuitive asks that the Court accept this clarifying change, because these instructions do not elsewhere refer to the other damages available to Intuitive as "compensatory damages."

**Commented [RST223R222]:** Restore asks the Court to follow the pattern jury instruction: "compensatory damages." It is the correct statement of the law as discussed above.

**Commented [ISI224R222]:** The proposed instructions, including counterclaims instructions to which Restore has consented, do not elsewhere reference "compensatory damages." Intuitive submits it will be confusing rather than helpful to the jury to refer here to a concept not elsewhere introduced or explained to the jury.

and convincing evidence that Restore was guilty of intentional misconduct which was a substantial cause of damage to Intuitive.  Under those circumstances you may, in your discretion, award punitive damages against Restore.  If clear and convincing evidence does not show such conduct by Restore, punitive damages are not warranted against Restore.

"Intentional misconduct" means that Restore had actual knowledge of the wrongfulness of the conduct and that there was a high probability that injury or damage to Intuitive and, despite that knowledge, that Restore intentionally pursued that course of conduct, resulting in injury or damage.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive.  "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.  "Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.[97]

Source: Florida Standard Jury Instructions 503.2; see also KIS Grp., LLC v. Moquin, 263 So. 3d 63, 65–66 (Fla. 4th Dist. Ct. App. 2019) (punitive damages are reserved for truly culpable behavior and are intended to "express society's collective outrage.")

---

[97] Florida Standard Jury Instructions § 503.2.

135

If you decide that punitive damages are warranted against Restore, you must decide the amount of punitive damages that will punish Restore and deter others.[98] In determining the amount of punitive damages to be assessed, if any, you should consider:

1. the nature, extent, and degree of Restore's misconduct and the related circumstances, including: (i) whether Restore's wrongful conduct was motivated solely by unreasonable financial gain; (ii) whether the unreasonable nature of Restore's conduct, together with the high likelihood of injury resulting from the conduct, was known to Restore or the persons responsible for making policy decisions on behalf of Restore; and (iii) whether, at the time Intuitive was injured, Restore or the persons responsible for making policy decisions for Restore had a specific intent to harm Intuitive and their conduct did in fact harm Intuitive;

2. Restore's financial resources;

3. the amount of actual harm caused by Restore's conduct, because the size of any punishment should bear a reasonable relationship to the actual harm caused by Restore's conduct; and

---

[98] *See id.* § 503.2(c).

136

4.  any other reasonable circumstances that affect your assessment of the

punitive damages appropriate.[99]

You may in your discretion decline to assess punitive damages, even if you

find that Restore is guilty of tortious interference with contract.[100]

**Commented [ISI225]:** Intuitive asks that the Court include this final instruction on punitive damages, which reflects the Florida Standard Jury Instructions and the instructions in *Slip N' Slide Records,* No. 05-cv-21113 (S.D. Fla.).

**Commented [RST226R225]:** Restore asks the Court to follow the closing punitive damage instruction in Florida Standard Jury Instruction 503.2.c:

If you decide that punitive damages are warranted against Restore then you must decide the amount of punitive damages, if any, to be assessed as punishment against Restore and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should decide any disputed factual issues by the greater weight of the evidence. "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

In determining the amount of punitive damages, if any, to be assessed, you should consider the following:

(1). , the nature, extent and degree of misconduct and the related circumstances, including the following:

(A). , whether the wrongful conduct was motivated solely by unreasonable financial gain;

(B). , whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by Restore or persons responsible for making policy decisions on behalf of the Restore;

(C). , whether, at the time of injury, Restore or persons responsible for making policy decisions on behalf of the Restore had a specific intent to harm Intuitive and the conduct of Restore did in fact harm Intuitive, and

(2). . the financial resources of Restore.

However, you may not award an amount that would financially destroy Restore.

You may in your discretion decline to assess punitive damages.

**Commented [ISI227R225]:** Intuitive responds to note only that the proposed instruction in the body of this document largely mirrors the Standard Jury Instruction pasted into Restore's comment above. Intuitive has attempted in good faith to identify only substantive disputes on the jury instructions which require the Court's resolution. Nevertheless, Intuitive has not accepted tracked changes in the document which Restore has not expressly consented to changing.

---

[99] *See id.*; Jury Instructions, *Slip N' Slide Records*, No. 05-cv-21113 (S.D. Fla.), ECF No. 427, at 13–14.
[100] *See* Florida Standard Jury Instructions § 503.2.

137

| Page 33: [1] Commented [ISI23R22] | Intuitive | 1/10/2023 12:09:00 AM |

Intuitive asks that the Court accept this instruction. It is well-settled that if a plaintiff meets its burden to prove by a preponderance of the evidence that the defendant engaged in anticompetitive conduct, then the defendant may rebut by showing it had a procompetitive justification for its conduct. *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001); *Morris Comm'cns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 364 F.3d at 1295-98 (11th Cir. 2004) (describing the burden-shifting framework); *Behrend v. Comcast Corp.*, 2012 WL 1231794, at \*19 & n. 31 (E. D. Pa. Apr. 12, 2012) (same); *ACT, Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657, 670 (8th Cir. 2002). Restore's case law does not suggest otherwise. *See also McWane, Inc. v. Fed. Trade Comm'n*, 783 F.3d 814, 833 ("If the [plaintiff] succeeds in demonstrating this anticompetitive harm, the burden then shifts to the defendant to present procompetitive justifications for the exclusive conduct, which the [plaintiff] can refute."); *Eastman Kodak*, 504 U.S. at 484 (evaluating defendant's procompetitive justifications and whether there was evidence that those justifications were pretextual).

Once Intuitive shows a procompetitive justification, the burden shifts back to Restore to show that the proffered justifications are pretextual. *Morris*, 364 F.3d at 1295-98. If a defendant proves non-pretextual procompetitive justifications, then a plaintiff cannot meet its burden to show that a defendant willfully acquired or maintained monopoly power in the relevant market.

As explained above in Intuitive's comments on the General Preliminary Instruction, model instructions, are not binding law, and jury instructions must instruct the jury clearly regarding the law to be applied and focus the jury's attention on the essential issues in the case. Intuitive's instruction accounts for relevant, binding case law decided after the ABA issued the model instructions.

| Page 33: [2] Commented [RST24] | Restore | 1/10/2023 12:03:00 AM |

This is not an element of a monopolization claim. See, e.g, *United States v. Grinnell Corp., 384 U.S. 563, 570–71 (1966)*. Again, ABA Model Jury Instruction No. 3.A.1 is correct regarding the elements of a monopolization claim.

Moreover, ABA Model Jury Instruction No. 3.A.9 explains at great length how to determine "whether defendant's conduct was anticompetitive or whether it was legitimate business conduct." 3.A.9 is consistent with circuit precedent: It is a question of "whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane*, 783 F.3d 814, 833 (11th Cir. 2015).

| Page 44: [3] Commented [ISI36R35] | Intuitive | 1/10/2023 12:14:00 AM |

Restore's entire lawsuit concerns alleged aftermarkets, yet Restore refuses to provide any instruction on what an aftermarket is. That approach both ignores antitrust law and will confuse the jury. Thus, Intuitive proposes separate instructions on "Determining Whether an Aftermarket Exists" and "Aftermarket Disclosure" to explain these complex concepts and the applicable law. There are no model instructions on these subjects (further exemplifying the shortcomings in Restore's copy-and-paste approach). But Intuitive's proposal is grounded in ample case law, which Restore has not even attempted to distinguish.

"Many firms supply unique and/or proprietary aftermarket parts and services for their primary market products. As a result, they can be expected to have a very high percentage share of the relevant aftermarket. But high aftermarket share is not necessarily indicative of monopoly power—i.e., the power to charge and maintain a supracompetitive price—because aftermarket behavior generally is disciplined by competition in the primary product market. If the primary market is competitive, a firm exploiting its aftermarket customers ordinarily is engaged in a short-run game—for when buyers evaluate the lifecycle cost of the product, the cost of the product over its full service life, they will shop elsewhere. Eventually, the aftermarket monopolist lacks customers to exploit." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381–82 (3d Cir. 2005) (quotation marks omitted).

*Kodak* teaches that this logic does not apply only "where 'significant information and switching costs' sever the usual link between the primary market and the aftermarket." *Id.* at 382 (quoting *Kodak*, 504 U.S. at 473). But "*Kodak* does not transform every firm with a dominant share of the relevant aftermarket into a monopolist." *Id.* at 383. Rather, the plaintiff "must produce 'hard evidence dissociating the competitive situation in the aftermarket from activities occurring in the primary market.'" *Id.* (quoting *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 17 (1st Cir. 1999)); *see also Avaya Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 404 (3d Cir. 2016) ("a plaintiff pursuing a Kodak-style claim must present evidence to support a plausible economic explanation that

competition in the primary market is dissociated . . . from conditions in the aftermarket."); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 762–63 (7th Cir. 1996) (Easterbrook, J.).

A plaintiff can make such a showing – that competition in the primary market did not prevent the defendant from exploiting aftermarket customers – by proving either (1) that the defendant had monopoly power in the primary market, which first requires defining that primary market, or (2) that the defendant failed to adequately disclose its aftermarket restrictions to its customers before they purchased the primary product. *Avaya*, 838 F.3d at 405 (holding that "no antitrust liability for a *Kodak*-style attempted monopolization claim could lie" after customers were informed of the aftermarket restrictions because "the defendant's power stems not from the market, but from plaintiffs' contractual agreement") (internal quotations omitted); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1048–49 (9th Cir. 2008); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997); *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1024 (N.D. Cal. 2021).

Restore's references to the phrase "commercial realities" in *Kodak* and the ABA Model note refer to exactly this analysis. See *Kodak*, 504 U.S. at 472–76 (finding that for primary market competition to discipline aftermarket behavior, consumers require information on lifecycle costs); 481–83 (repeatedly referring back to more fulsome analysis in discussion of Section 1 claims); ABA Model Instruction 3.A.4 n.5.

Restore is also incorrect that Intuitive bears the burden on this issue. As Restore's own cited ABA note explains, "plaintiff must prove by a preponderance of the evidence that the 'commercial realities faced by consumers' justify such a narrow market definition." *Id.* (emphasis added). Restore appears to have been confused by the *Kodak* Court's references to a defendant's burden on summary judgment.

| Page 63: [4] Commented [RST63] | Restore | 1/10/2023 12:41:00 AM |
| --- | --- | --- |

This an incorrect statement of the law for anticompetitive conduct under Section 2. Restore is not required to prove that any preferred procompetitive justification is pretextual. The prior instructions provide a complete and accurate discussion of anticompetitive conduct under Section 2.

(1) If Restore shows Intuitive's conduct had an anticompetitive effect, the burden of persuasion shifts to Intuitive to show valid, i.e., not pretextual, procompetitive justifications. *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).

*(2)* "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects." *McWane*, 783 F.3d 814, 833 (11th Cir. 2015).

The prior instructions are consistent with the relevant precedent from *McWane*. *Morris* was an earlier circuit decision on a unilateral refusal to deal. The Court already dismissed Restore's allegations of unilateral refusal to deal because they are analyzed very differently under Section 2. Dkt. No. 31 at 16-19.

Section 1 asks the same basic question under per se, quick look, or some form of rule of reason: "the essential inquiry remains the same—whether or not the challenged restraint enhances competition." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984).

"The whole point of the rule of reason is to furnish "an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint" to ensure that it unduly harms competition before a court declares it unlawful." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021).

There is no "rote checklist." *Id.* "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.* The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circuit precedent." *Id.* Of course, every circuit, including the Eleventh Circuit, has created tests for assessing the reasonableness of tying arrangements and exclusive dealing arrangements.

| Page 65: [5] Commented [RST65] | Restore | 1/10/2023 12:42:00 AM |
| --- | --- | --- |

Restore asks the Court to follow the language in ABA Model Jury Instruction No. 1.C.3A because it is consistent with the balancing test for exclusive dealing described by the Eleventh Circuit in *McWane, Inc. v. F.T.C.,* 783 F.3d 814, 833 (11th Cir. 2015).  Section 1 asks the same basic question under per se, quick look, or some form of rule of reason: "the essential inquiry remains the same—whether or not the challenged restraint enhances competition." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984).

When Intuitive "moved" ABA Model Jury Instruction No. 1.C.3A, the highlighted language was not included.  The deleted language mirrors *McWane*.  If the plaintiff shows a harm to competition, the burden shifts to the defendant to present procompetitive justifications for the exclusive conduct, which can be refuted.  Id.  "If the court accepts the defendant's proffered justifications, it must then decide whether the conduct's procompetitive effects outweigh its anticompetitive effects." *Id.*  ABA Model Jury Instruction No. 1.C.3 uses the same balancing test.

There is no "rote checklist." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021)..  "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.*  The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circuit precedent." *Id.*  Of course, every circuit, including the Eleventh Circuit, has created tests for assessing the reasonableness of tying arrangements and exclusive dealing arrangements.

In fact, Intuitive does not dispute that there is a separate test (*e.g.*, separate products) for determining the reasonableness of tying arrangements. *Amey*.  And the Eleventh Circuit uses classic balancing of the effects (along with the added requirement of substantial foreclosure) for exclusive dealing. *McWane*.

| Page 65: [6] Commented [ISI66R65] | Intuitive | 1/10/2023 12:44:00 AM |
| --- | --- | --- |

Intuitive asks the Court to accept this instruction because it is an accurate statement of current antitrust law.  Restore urges the Court to adopt the ABA Model Antitrust Jury Instructions from 2016, but those do not reflect developments on the rule of reason analysis from the Supreme Court in 2018 and 2021.

To determine whether a restraint violates the rule of reason, a three-step, burden-shifting framework applies. *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021); *Ohio v. Amer. Express*, 138 S. Ct. 2274, 2284 (2018).  The Supreme Court's recent decisions in *Alston* and *American Express* provided important clarifications on this framework.  The Court held that if the defendant shows procompetitive benefits resulting from the challenged restraints, then the plaintiff can only succeed on its claim if it shows that those benefits could have been achieved through substantially less anticompetitive means. *Alston*, 141 S. Ct. at 2162; *Amer. Express*, 138 S. Ct. at 2284.  Any alternative to the challenged conduct presented by the plaintiff must be a substantially—not marginally—less restrictive means for achieving the same procompetitive benefits. *Alston*, 141 S. Ct. at 2162, 2164.  Eleventh Circuit precedent (from 2015) on a monopolization maintenance claim (brought under Section 5 of the FTCA) is inapposite to the formulation of the rule of reason for a private claim under Sherman Act Section 1.

| Page 65: [7] Commented [RST67] | Restore | 1/10/2023 12:42:00 AM |
| --- | --- | --- |

Restore objects to the additional language because it is not an accurate statement of the law for exclusive dealing or tying.

The Eleventh Circuit applies a balancing test to exclusive dealing claims asking whether the anticompetitive effects outweigh the procompetitive effects to determine whether the exclusive dealing is unreasonable. *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015).  If the anticompetitive effects outweigh the procompetitive effects, the plaintiff is not required to show that the procompetitive effects could have been achieved through less restrictive means.  Id.

The Eleventh Circuit has five element test for determining whether a tying arrangement is an unreasonable restraint on trade: An illegal tying arrangement has five elements: (1) "a tying  and a tied product"; (2) "evidence of actual coercion by the seller that in fact forced the buyer to [purchase] the tied product"; (3) that the seller have sufficient market power in the tying product market to force the buyer to accept the tied product; (4) "anticompetitive effects in the tied market"; and (5) "involvement of a 'not insubstantial' amount of interstate commerce in the tied product market." Dkt. No. 31 at 5 (Order on Motion to Dismiss) (quoting *Amey, Inc. v. Gulf Abstract & Title*, Inc., 758 F.2d 1486, 1502–03 (11th Cir. 1985)).  Again, the plaintiff is not required to show a substantially less restrictive means.

"The whole point of the rule of reason is to furnish "an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint" to ensure that it unduly harms competition before a court declares it unlawful." *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021).

There is no "rote checklist." *Id.* "As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances." *Id.*

The Supreme Court in *Alston* affirmed the judgment after a bench trial analyzing the rules of a rule-making authority where the "district court followed circuit precedent." *Id.*  Of course, every circuit, including the Eleventh Circuit, has created tests for assessing the reasonableness of tying arrangements and exclusive dealing arrangements.  Neither *McWane* nor *Amey* requires proof of less restrictive means if the restraint has already failed the relevant test of reasonableness.

| Page 113: [8] Commented [ISI129R127] | Intuitive | 1/9/2023 12:02:00 PM |
| --- | --- | --- |

As in the context of the proposed instructions on Restore's antitrust claims, Intuitive maintains that pattern jury instructions are useful models, not the law itself.  *See United States v. Carter*, 776 F.3d 1309, 1324 (11th Cir. 2015); *United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir. 2014).  Intuitive asks that the Court adopt Intuitive's accurate, concise, neutrally-phrased instructions.  The proposals are based on model instructions but provide accurate, helpful statements about settled law relevant to the facts and theories raised by this case.

Intuitive's proposed instructions for its false advertising counterclaim are in large part based on the Eleventh Circuit Pattern Instructions, but as detailed herein, the Pattern Instructions do not present a complete picture of current Lanham Act jurisprudence within the Eleventh Circuit and lack important context that will clarify and contextualize the law for the jury.  The same is true of *Hickson Corp*.  The decision is not inaccurate, but it is not a complete statement of pertinent Lanham Act law.  For example, *Hickson Corp.* does not explain how deception is proved if Intuitive shows Restore's advertising is "misleading" rather than literally false.  *See Hickson Corp.*, 357 F.3d at 1261.  Restore raises very few disagreements about the substantive statements of law in Intuitive's proposed instructions.  Restore also provides no reasoned basis for opposing basic and helpful organizing tools like Intuitive's proposed headings and subheadings.

| Page 113: [9] Commented [ISI130] | Intuitive | 1/9/2023 10:32:00 AM |
| --- | --- | --- |

Intuitive claims that Restore's efforts to convince Intuitive's customers to buy Restore's products and services included numerous false or misleading statements in informal, oral, and emailed communications.  The Eleventh Circuit's model instruction uses the word "advertisement," but that word does not fit as well as Intuitive's proposed word ("advertising") to the facts and circumstances of this case, because it connotes one statement, whereas Intuitive challenges multiple statements by Restore.

| Page 113: [10] Commented [ISI132R130] | Intuitive | 1/9/2023 12:03:00 PM |
| --- | --- | --- |

Restore's comment above is both a mischaracterization of Intuitive's claims and an attempt to use these jury instructions to circumvent the Court's denial of Restore's motion for summary judgment.  As is clear from the pleadings, summary judgment papers, and other submissions, the false advertising challenged in this case is not limited to Restore's flyer (although the flyer is an exemplar of Restore advertising that contains false and misleading statements).  Intuitive will demonstrate that Restore's false and misleading claims about qualifications, cost savings, so-called "repairs," and other issues were present across Restore's marketing.  It is for the jury to determine whether Intuitive has proved that Restore's advertising is deceptive and satisfies the other elements of false advertising.

Restore's comment further demonstrates the importance of using the inclusive "advertising" over the singular "advertisement," to account for Intuitive's theory of its case.  This counterclaim challenges Restore's false and misleading marketing in multiple formats at multiple times, not a single printed advertisement in the form of a flyer.

| Page 115: [11] Commented [ISI139] | Intuitive | 1/9/2023 10:40:00 AM |
| --- | --- | --- |

Intuitive urges the Court to accept the disputed changes for this "Materiality" element.  The Eleventh Circuit Pattern Instruction explains that the claimant must show that the advertising is likely to influence customer's purchasing decisions.  *Diamond Resorts* and the authorities cited therein support Intuitive's position that the instruction should also make clear that the materiality requirement can be established "by proving that the [counter]defendants

misrepresented an inherent quality or characteristic" of the product or good advertised. *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1108 (M.D. Fla. 2019) (internal citation omitted); *see also* 2 Callmann on Unfair Comp., Tr. & Mono. § 5:35 (4th ed.) (collecting cases and noting that "[c]laims relating to the central characteristics of a product, including its purpose, safety, efficacy, and cost, are … presumed to be material. Some private litigation decisions have also said that, where a statement relates to an inherent quality or characteristic of the product, materiality is established")

| Page 115: [12] Commented [RST140R139] | Restore | 1/9/2023 11:48:00 AM |
|---|---|---|

Restore objects to creating entire new sections to the pattern jury instruction. The pattern jury instruction is a correct statement of the law on false advertising. See *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (setting out elements of claim). Intuitive can offer argument by pointing to evidence to show that the advertising was "likely to influence consumers purchasing decisions."

Restore also objects that the additional language presumes that its advertising is deceptive.

Intuitive does not have a basis for adding the language about "inherent quality." The inquiry is still whether the statement is material to customers. *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 797 & n. 11 (11th Cir. 2020); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016). In fact, the plaintiff "must" demonstrate that the statement involved an inherent or material quality of the product in the first place to establish materiality." *Apotex*, 823 F.3d at 63.

In addition, only one category of alleged false advertising relates to an inherent quality or characteristic of the instruments: the addition of the printed circuit board using the Rebotix technology. Dkt. No. 158 at 21-22 & n.16. But Intuitive's survey evidence does not address the question of whether the new chip was likely to influence consumers. *Gorilla Glue*, 978 F.3d at 797 & n.11. It only asks respondents whether they would expect the repair process to include the addition of a new chip. It does not ask whether the change would matter to them.

| Page 115: [13] Commented [ISI141R139] | Intuitive | 1/9/2023 12:09:00 PM |
|---|---|---|

Restore misstates the law. The Eleventh Circuit has explicitly confirmed that "[a] plaintiff may establish [the] materiality requirement by proving that the defendants misrepresented an inherent quality or characteristic of the product. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (citations omitted). *J-B Weld Co.*, cited by Restore, *confirms* the accuracy of Intuitive's instruction. The *J-B Weld* court stated that the "inherent quality or characteristic formulation *adopted by this Circuit* does not replace the consumer-oriented nature of the materiality inquiry with a scientific one." 978 F.3d at 797 (emphasis added).

Restore also again mischaracterizes the nature and scope of Intuitive's false advertising claims. Intuitive challenges Restore's statements about its qualifications, creation of cost-savings, and affiliation with Intuitive, the claimed functionality of Restore's adulterated instruments, and other marketing. That advertising concerns an "inherent quality or characteristic" of Restore's offerings.

Lastly, there is no merit to Restore's purported concern that Intuitive's instruction "presumes that [Restore's] advertising is deceptive." The proposal includes no presumptions. Moreover, if the Court rejects Intuitive's proposed instruction, the Eleventh Circuit Pattern Instruction which Restore prefers would read "Intuitive must prove the materiality of Restore's advertising by showing *that Restore's deception is* likely to influence customers' purchasing decisions."

The parties appear to agree that Intuitive's federal Lanham Act claim allows for damages in the form of compensatory damages, including lost profits; disgorgement; and nominal damages.

Intuitive's common law unfair competition claim also permits recovery of lost profits and disgorgement.  Restore acknowledges that the unfair competition claim permits damages for lost profits.  Lost profits are a form of compensatory damages. *See* 17 Fla. Jur. 2d Damages § 1 (noting "there are two kinds of damages: actual or compensatory damages, and exemplary or punitive damages"); *id.* § 7 ("'Compensatory damages,' also known as actual damages, are awarded for the loss, injury, or deterioration to a person caused by the negligence, design, or accident of another."); *id.* § 78 (describing lost profits within section on compensatory damages).  Unfair competition will also support disgorgement damages. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 2014 WL 1456347, at *12 (M.D. Fla. Apr. 14, 2014) (holding that "disgorgement of profits is an available remedy for . . . an unfair competition claim under Florida law").

Past lost profits are also recoverable under Intuitive's FDUTPA claim, as this Court has already ruled.  *See* Order on Mot. to Dismiss, ECF No. 44, at 14; *see also Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, 2011 WL 13117118 (N.D. Fla. Oct. 24, 2011); *ADT LLC v. Alarm Prot. Tech. Fla., LLC*, 2013 WL 11276119 (S.D. Fla. Apr. 18, 2013); *Global Tech Led, LLC v. HiLumz Int'l Corp.*, 2017 WL 588669 (M.D. Fla. Feb. 14, 2017); *Sun Prot. Factory, Inc. v. Tender Corp.*, 2005 WL 2484710, at *13–14 (M.D. Fla. Oct. 7, 2005) (damages under FDUTPA may include "lost business and lost profits"); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009) (motion to dismiss denied because plaintiff adequately pled damages under FDUTPA when it alleged that "Defendants' conduct has led to lost profits for Plaintiff"); *see also Marco Island Cable v. Comcast Cablevision of S., Inc.*, 312 F. App'x 211 (11th Cir. 2009) (affirming damages for loss of anticipated sales/profit if based on historical performance data).